UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ELLIS DAVON DUDLEY, II,

                 Plaintiff,

v.                                                                          5:24-CV-0048
                                                                            (DNH/ML)
GOVERNOR KATHY HOCHUL, of New York;
NEW YORK STATE; DR. JAMES V.
MCDONALD; RANDAL B. CALDWELL;
MEGAN JOHNSON; CHRISTINA F.
DEJOSEPH; SANDRA MILNER; JEFFREY A.
DOMACHOWSKI; KAREN STANISLAUS;
ARLENE BRADSHAW; JULIE A. CECILE;
ONONDAGA COUNTY SHERIFF; PATRICIA
L. DERUE; SUE OTTAVIANO; JULIE A.
CERIO; KATIE BOYEA; DAVID M. PRIMO;
MARTHA E. MULROY; MICHELLE PIRRO
BAILY; UNKOWN; HISCOCK LEGAL AID;
and DEP'T OF HEALTH AND SOC. SERVS.,

                 Defendants.

_____

APPEARANCES:                                                   OF COUNSEL:

ELLIS DAVON DUDLEY, II
   Plaintiff, *Pro Se*
Post Office Box 7124
Syracuse, New York 13261

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

       The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to

proceed *in forma pauperis* ("IFP") (Dkt. No. 2) and a motion for permission to file electronically

in ECF (Dkt. No. 3) filed by Ellis Davon Dudley, II ("Plaintiff") to the Court for review.  For the

reasons discussed below, I (1) grant Plaintiff's IFP application (Dkt. No. 2), (2) recommend that

Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend, and (3) deny without prejudice Plaintiff's motion for permission to file electronically (Dkt. No. 3).

## I.      BACKGROUND

Liberally construed,[1] Plaintiff's Complaint asserts that his rights were violated by Defendants Governor Kathy Hochul, New York State, Dr. James V. McDonald, Randal B. Caldwell, Megan Johnson, Christina F. Dejoseph, Sandra Milner, Jeffrey A. Domachowski, Karen Stanislaus, Arlene Bradshaw, Julie A. Cecile, Onondaga County Sheriff, Patricia L. DeRue, Sue Ottaviano, Julie A. Cerio, Katie Boyea, David M. Primo, Martha E. Mulroy, Michelle Pirro Baily, Unknown, Hiscock Legal Aid, and Department of Health and Social Service (collectively "Defendants"), who were all involved in Plaintiff's state court family proceedings.  (*See generally* Dkt. No. 1.)

The Complaint is difficult to decipher (*id.*), but alleges that Plaintiff has two minor children, whom Plaintiff refers to as "blue child" and "pink child" throughout the Complaint. (Dkt. No. 1 at 2.)  The Complaint provides a timeline of Plaintiff's experiences with the New York State Family Court system dating back to July 9, 2019.  (*Id.*)  The crux of Plaintiff's grievance appears to be that (1) the court-ordered child support is excessive, (2) Plaintiff and his family have somehow "lost" their nationality because of the family court proceedings, and (3) Plaintiff's wages were garnished to pay his court-ordered child support and he did not consent to the seizure of his property.  (*See generally* Dkt. No. 1.)

The Complaint appears to assert the following nine causes of action: (1) a claim of racketeering, (2) a claim that Plaintiff's rights pursuant to the First Amendment and 42 U.S.C. §

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

1983 were violated; (3) a claim that Plaintiff's rights pursuant to the Second Amendment and 42

U.S.C. § 1983 were violated; (4) a claim that Plaintiff's rights pursuant to the Fourth

Amendment and 42 U.S.C. § 1983 were violated; (5) a claim that Plaintiff's rights pursuant to

the Fifth Amendment and 42 U.S.C. § 1983 were violated; (6) a claim that Plaintiff's rights

pursuant to the Sixth Amendment and 42 U.S.C. § 1983 were violated; (7) a claim that Plaintiff's

rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983 were violated; (8) a claim that

Plaintiff's rights pursuant to the Thirteenth Amendment and 42 U.S.C. § 1983 were violated; and

(9) a claim that Plaintiff's rights pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983

were violated.  (Dkt. No. 1 at 6.)  As relief, Plaintiff seeks damages in the "amount of 20 million

dollars or a full disclosure of all contract terms for a consideration to acceptance at the agreement

of terms of competition.  As well [as] an immediate stop to the organization tasks with damaging

and seizure [of Plaintiff's] property."  (*Id.*)

Plaintiff also filed an application to proceed IFP.  (Dkt. No. 2.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's IFP application

---

[2]      The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit
that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City
of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

(Dkt. No. 2), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's application to proceed IFP is granted.[3]  (*Id.*)

## III.   LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

---

[3]       Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.      Claims Alleging "Racketeering"

To the extent that the Complaint is construed as alleging a claim pursuant to 18 U.S.C. § 1691 et seq., ("RICO") I recommend that it be dismissed.[4]

It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity.  18 U.S.C. § 1964.  This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property 'by reason of a violation of section 1962.'"  *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))), *vacated in part on other grounds by Weiss v. David Benrimon Fine Art LLC*, 20-CV-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order).  More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must

---

[4]      Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint.  Despite thirty days having elapsed since the filing of his Complaint, Plaintiff has failed to file a Civil RICO statement.  (*See generally* docket sheet.)  As a result, I recommend that, in the alternative, Plaintiff's RICO claim be dismissed.  *See Poole v. Bendixen*, 20-CV-0697, 2021 WL 3737780, *12 (N.D.N.Y. Aug. 24, 2021) (Suddaby, C.J.); *Murphy v. Onondaga Cnty.*, 18-CV-1218, 2022 WL 819281, *6 (N.D.N.Y. Mar. 18, 2022) (Sharpe, J.).

allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

The Complaint fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO.  More specifically, Plaintiff fails to allege facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose.  *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit.").  In addition, the Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit.  "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail."  *Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *13 (E.D.N.Y. Sept. 24, 2013); *see also Peterson v. City of New York*, 11-CV-3141, 2012 WL 75029, at *3-4 (S.D.N.Y. Jan. 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

Moreover, the Complaint fails to allege facts plausibly suggesting a pattern of racketeering activity. 18 U.S.C. § 1961(5) (To sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other); *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir 1999)) (To qualify as a "pattern" of racketeering activity, the

predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* . . . amount to or pose a threat of continued criminal activity.'").  The Complaint fails to allege any acts of racketeering activity and instead merely uses the word "racketeering" in a conclusory fashion without facts plausibly suggesting the commission of any predicate acts.  (*See generally* Dkt. No. 1.)

For each of these alternative reasons, I recommend that Plaintiff's RICO claim be dismissed.

### B.      Claims Pursuant to 42 U.S.C. § 1983

After carefully considering Plaintiff's claims pursuant to 42 U.S.C. § 1983, I recommend that they be dismissed for three reasons.

First, to the extent that there are final state court orders or judgments that Plaintiff asks this Court to overturn, those claims are barred by the *Rooker-Feldman* doctrine.  *Porter v. Nasci*, 24-CV-0033, 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (Dancks, M.J.) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)) ("Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment.").  "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court."  *Porter*, 2024 WL 1142144, at *4 (citing *Sims v. Kaufman*, 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, 14-CV-4568, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the

[*Rooker-Feldman*] doctrine in cases . . . in which plaintiffs challenge family court decrees setting

child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016).  Therefore, to the extent Plaintiff

seeks to challenge a final judgment of Onondaga County Family Court or the Oneida County

Family Court, any such claim is barred by the *Rooker-Feldman* doctrine.  *See, e.g., Phillips v.

Wagner*, 22-CV-0833, 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022) (Lovric, M.J.)

("Plaintiff's claims, while not entirely clear, seem to challenge an order . . . in which the Family

Court determined that he owes child support . . . . Plaintiff's claims for relief are barred by the

*Rooker-Feldman* doctrine . . . .") (citation omitted), *report and recommendation adopted*, 2022

WL 17403441 (N.D.N.Y. Dec. 2, 2022) (Hurd, J.), *appeal dismissed*, No. 23-68, 2023 WL

4445323 (2d Cir. Apr. 25, 2023).

Alternatively, "in the event the underlying family court proceedings are pending, such

claims are likely barred by the *Younger* abstention doctrine."  *Walker v. O'Connor*, 22-CV-0581,

2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (citing *Younger v. Harris*,

401 U.S. 37 (1971); *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *11 (N.D.N.Y. Jan.

26, 2022) (Dancks, M.J.)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y.

July 18, 2022) (Hurd, J.).  "*Younger* generally requires federal courts to abstain from taking

jurisdiction over federal constitutional claims that involve or call into question ongoing state

proceedings."  *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)

(citing *Younger*, 401 U.S. at 43-44).  "*Younger* abstention is required when three conditions are

met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that

proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for

judicial review of the federal constitutional claims."  *Diamond "D" Const. Corp.*, 282 F.3d at

198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).  Courts in this circuit have

found these conditions to be satisfied in matters involving child support issues.  *See, e.g.,*
*Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger*
abstention doctrine to dismiss claims which arose from "pending state court proceedings
involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, 19-CV-
2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (citing *Sprint Communications, Inc. v.*
*Jacobs*, 571 U.S. 69, 72-73 (2013) ("[T]his Court abstains under *Younger* from interfering in
Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and
'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.'")).
"Accordingly, to the extent that the child support issues are continuing in Family Court, the
Court should abstain from interfering with that process."  *Bowman v. Morris*, 19-CV-0097, 2019
WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (Stewart, M.J.) (citations omitted), *report and*
*recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019) (Sannes, J.).

Second, Plaintiff's claims are likely barred pursuant to the domestic relations exception
to the jurisdiction of federal courts.  *Dudley v. Montaque*, 24-CV-0223, 2024 WL 1464346, at *4
(N.D.N.Y. Apr. 4, 2024) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006);
*Oliver v. Punter*, 22-CV-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The
domestic relations exception to federal jurisdiction divests the federal courts of power to issue
divorce alimony and child custody decrees . . . . This exception also extends to child support
determinations and the enforcement thereof.") (internal quotations and citations omitted))
("under the domestic relations exception to the jurisdiction of federal courts, cases involving
divorce, alimony, and child custody remain outside this Court's jurisdiction.").  Accordingly, this
Court lacks jurisdiction to adjudicate a claim involving issues of child custody and support.  *See*
*Rotondo v. New York*, 17-CV-1065, 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) (Peebles,

M.J.) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction.  Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *report and recommendation adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017) (Sharpe, J.); *Cruz v. New York*, 17-CV-0510, 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017) (Dancks, M.J.), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (Sannes, J.) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

Third, the claims against Defendants are not cognizable.

### 1.    Claims Against Defendant Hochul

Sovereign immunity bars Plaintiff's claims for damages against Defendant Hochul in her official capacity.  Sovereign immunity extends to "actions for the recovery of money from the state" against "state agents."  *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).  A lawsuit brought against officials of a government entity in their official capacities is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Because Plaintiff's claims for damages against Defendant Hochul in her official capacity is effectively an "action[] for the recovery of money from the state," *Leitner*, 779 F.3d at 134, sovereign immunity bars them.

Moreover, to the extent that Plaintiff's claims against Defendant Hochul in her official capacity seek prospective relief and to the extent that Plaintiff's claims are construed as against Defendant Hochul in her individual capacity, I recommend that they be dismissed for failure to allege Defendant Hochul's personal involvement in any constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although Plaintiff names Defendant Hochul as a party, the body of the Complaint lacks any allegations of wrongdoing by her. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's claims against Defendant Hochul be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 2.    Claims Against Defendant New York State

As set forth above, sovereign immunity pursuant to the Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d

Cir. 2009).  Accordingly, I recommend that Plaintiff's claims asserted against the New York

State be dismissed pursuant to Section 1915(e)(2)(B)(i).

### 3.      Claims Against Defendant McDonald

The Complaint identifies Defendant McDonald "as the commissioner of the Department

of Health in New York State."  (Dkt. No. 1 at 1.)  To the extent that the Complaint is construed

as asserting claims against Defendant McDonald in his official capacity, he is immune from suit

pursuant to the Eleventh Amendment.

Moreover, to the extent that the Complaint is construed as asserting claims against

Defendant McDonald in his individual capacity, I recommend that they be dismissed for failure

to assert his personal involvement in any constitutional violation.

### 4.      Claims Against Defendant Caldwell

Judges are absolutely immune from suit for claims seeking damages for any actions taken

within the scope of their judicial responsibilities.  *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

Generally, "acts arising out of, or related to, individual cases before [a] judge are considered

judicial in nature."  *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad

faith or malice cannot overcome judicial immunity."  *Bliven*, 579 F.3d at 209.  Judicial immunity

does not apply when a judge takes action outside his or her judicial capacity, or when a judge

takes action that, although judicial in nature, is taken "in the complete absence of all

jurisdiction."  *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions

that are judicial in nature).  However, "the scope of [a] judge's jurisdiction must be construed

broadly where the issue is the immunity of the judge."  *Stump v. Sparkman*, 435 U.S. 349, 356

(1978).

Plaintiff asserts claims that appear to arise from the efforts of Defendant Caldwell, in his capacity as a family court judge in Oneida County.  (Dkt. No. 1 at 6.)  Defendant Judge Caldwell is therefore immune from suit under the doctrine of judicial immunity.  As a result, I recommend that Plaintiff's claims against Defendant Caldwell in his individual capacity be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendant Caldwell in his official capacity be dismissed pursuant to the Eleventh Amendment.  *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

### 5.    Claims Against Defendants Johnson, Ottaviano, Boyea, and Primo

The Complaint alleges that Defendant Johnson was an "Onondaga Family Court attorney" who was tasked with conducting a "virtual meeting call for the Onondaga County family Courthouse."  (Dkt. No. 1 at 2.)  The Complaint alleges that Defendant Ottaviano was a court assistant who postponed a hearing that was scheduled for February 15, 2023.  (Dkt. No. 1

at ¶ 18.)  The Complaint alleges that Defendant Boyea was a "Secretary" who emailed a modified custody order signed by Defendant Cecile.  (Dkt. No. 1 at ¶ 23.)  Finally, the Complaint alleges that Defendant Primo is the Clerk of the Court in Onondaga County Family Court (Dkt. No. 1 at ¶ 10) and he notified the parties of a hearing scheduled on July 20, 2023 (*id.* at ¶ 22).

"As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Judicial immunity has been extended to judicial law clerks, the New York State Chief Administrative Judge, court attorneys, and the chief clerks of several state courts. *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)).

As a result, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo in their individual capacities be dismissed, because they are immune from suit.[5]  *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to

---

[5]    In the alternative, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed because the Complaint fails to allege the personal involvement of them in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  Here, although Plaintiff names Defendants Johnson, Ottaviano, Boyea, and Primo as parties to the action, the body of the Complaint lacks any allegations of wrongdoing by them.  (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

[plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

Moreover, I recommend that Plaintiff's claims against Defendants Johnson, Ottviano, Boyea, and Primo in their official capacities as employees of the Onondaga Family Court be dismissed because the Onondaga Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at *4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### 6.      Claims Against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily

Plaintiff's claims against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily relate to their capacities as Onondaga County Family Court judges. (*See generally* Dkt. No. 1.) As set forth above in Part IV.B.4. of this Order and Report-Recommendation, Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily in their individual capacities are immune from

suit pursuant to the doctrine of absolute judicial immunity.  Moreover, as set forth above in Part

IV.B.4. of this Order and Report-Recommendation, claims against Defendants Dejoseph, Cecile,

Cerio, Mulroy, and Pirro Baily in their official capacities are essentially claims against New

York State, which is immune from suit pursuant to the Eleventh Amendment.

### 7.      Claims Against Defendants DeRue and Domachowski

Plaintiff's claims against Defendants DeRue and Domachowski relate to their roles as

Onondaga County Family Court support magistrates.  (*See generally* Dkt. No. 1.)  As set forth

above in Part IV.B.4. of this Order and Report-Recommendation, Defendants DeRue and

Domachowski in their individual capacities are immune from suit pursuant to the doctrine of

absolute judicial immunity.  *See Miller v. Primo*, 23-CV-1051, 2023 WL 6379325, at *6

(N.D.N.Y. Sept. 29, 2023) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims

against "Defendants DeRue and Domachowski, who acted as the support magistrate judges" and

finding that such claims "are barred under the doctrine of judicial immunity"), *report and

recommendation adopted by* 2023 WL 754323 (N.D.N.Y. Nov. 14, 2023) (Sannes, C.J.).

Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, claims

against Defendants DeRue and Domachowski in their official capacities are essentially claims

against New York State, and are immune from suit pursuant to the Eleventh Amendment.

### 8.      Claims Against Defendant Stanislaus

"The law is clear that court referees are entitled to absolute judicial immunity from

liability with respect to acts taken in the scope of their duties."  *Khrapko v. Splain*, 389 F. Supp.

3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108,

115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord

Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing

*Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts . . . are alleged to have been done maliciously or corruptly.'"); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

As a result, I recommend that Plaintiff's claim against Defendant Stanislaus in her individual capacity be dismissed based on the doctrine of absolute judicial immunity.  *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *5 (N.D.N.Y. Sept. 29, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against Defendant Stanislaus because she was entitled to absolute judicial immunity as a court attorney referee), *report and recommendation adopted by* 2022 WL 16551700 (N.D.N.Y. Oct. 31, 2022) (Sannes, C.J.).

Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, any claim against Defendant Stanislaus in her official capacity is essentially a claim against New York State, which is immune from suit pursuant to the Eleventh Amendment.

### 9.  Claims Against Defendant Bradshaw

Based on the allegations contained in the Complaint, it appears that Defendant Bradshaw was an attorney appointed to represent one of Plaintiff's minor children.  (Dkt. No. 1 at ¶ 16.) The Second Circuit has held that "law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983."  *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).

As a result, I recommend that Plaintiff's claims against Defendant Bradshaw be dismissed.

### 10.     Claims Against Defendant Onondaga County Sheriff

Defendant Onondaga County Sheriff is merely a department of a municipality, and thus, is not amenable to suit.  *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal . . . department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).  As a result, I recommend that Plaintiff's claims against Defendant Onondaga County Sheriff be dismissed because it is not an entity amenable to suit.[6]

---

[6]      Even if Plaintiff's claims against Defendant Onondaga County Sheriff were liberally construed as against Onondaga County, I would recommend that they be dismissed.  There is no basis for municipal liability alleged in the Complaint.  Plaintiff essentially complains of a discrete incident, during which an officer or individual employed by Defendant Onondaga County Sheriff did not act properly.  (Dkt. No. 1 at 4.)  There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Onondaga County.

### 11.    Claims Against Defendant Hiscock Legal Aid

The Complaint alleges that Defendant Hiscock Legal Aid and attorneys employed by it represented the mother of Plaintiff's minor children during the State Family Court proceedings. (Dkt. No. 1 at ¶ 5.)  Notwithstanding the appointment of Defendant Hiscock Legal Aid as legal representation, it was not a state actor for purposes of 42 U.S.C. § 1983.  "Although [Defendant Hiscock Legal Aid was] supplied and funded by the state, [it] act[ed] according to the best interests of [its] client with 'no obligation to the mission of the state.'"  *Milan*, 808 F.3d at 964 (quoting *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986)) (internal quotation omitted).

As a result, I recommend that Plaintiff's claims against Defendant Hiscock Legal Aid be dismissed.

### 12.    Claims Against Defendant Department of Health and Social Service

It is unclear based on the allegations in the Complaint if Defendant Department of Health and Social Service is a division of New York State or Onondaga County.  To the extent that it is a department of New York State, it is immune from suit pursuant to the Eleventh Amendment as set forth in Part IV.B.1 of this Order and Report-Recommendation.  To the extent that Defendant Department of Health and Social Service is a department of Onondaga County, it is not amenable to suit pursuant as set forth above in Part IV.B.10 of this Order and Report-Recommendation.[7]

### 13.    Claims Against Defendants Milner and Unknown

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."  *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing *Gonzalez v. City of*

---

[7]     Further, as set forth above in note 6, *supra*, to the extent that the Complaint is liberally construed as alleging a claim against Onondaga County, it fails to allege any basis for municipal liability.

*New York*, 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

The Complaint names Milner and Unknown as defendants, but the body lacks any allegations of wrongdoing by these individuals.  (*See generally* Dkt. No. 1.)  As a result, I recommend that the claims against them be dismissed for failure to state a claim upon which relief may be granted.

For each of these alternative reasons, I recommend that the Complaint be dismissed in its entirety.

## V.   OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[8]

Here, better pleading could not cure the deficiencies described above.  As a result, I

recommend that Plaintiff's Complaint be dismissed without leave to replead.

## VI.    PLAINTIFF'S MOTION TO OBTAIN ECF LOGIN AND PASSWORD

In light of the recommended disposition of this case, Plaintiff's motion for ECF login and

password is denied without prejudice.  (Dkt. No. 3.)  "Because this court is recommending

dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without

prejudice."  *Amato v. McGinty*, 17-CV-0593, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017)

(Baxter, M.J.), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15,

2017) (D'Agostino, J.); *see Mahmood v. United States Gov't*, 20-CV-0207, 2020 WL 3965125, at

*3 (N.D.N.Y. Mar. 17, 2020) (Stewart, M.J.) (same), *report and recommendation adopted*, 2020

WL 1808206 (N.D.N.Y. Apr. 9, 2020) (D'Agostino, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to obtain an ECF login and password (Dkt. No. 3) is

**DENIED without prejudice**; and it is further respectfully

---

[8]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**RECOMMENDED** that the **COURT DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated:  May 1, 2024
         Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[9]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

RICO Bus.Disp.Guide 13,617

2022 WL 819281
United States District Court, N.D. New York.

Kevin MURPHY, Plaintiff,

v.

ONONDAGA COUNTY et al., Defendants.

5:18-cv-1218 (GLS/CFH)
|
Signed 03/18/2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: JEFFREY R. PARRY, ESQ., Office of Jeffrey R. Parry, 7030 East Genesee Street, Fayetteville, NY 13066, JARROD W. SMITH, ESQ., Office of Jarrod W. Smith, 11 South Main Street, P.O. Box 173, Jordan, NY 13080.

FOR THE DEFENDANTS: JOHN E. HEISLER, JR., ESQ., Onondaga County, The Onondaga Sheriff's Department, Carl Hummel, William Fitzpatrick, Stefano Cambareri, Melanie S. Carden & Lindsey M. Luczka, Onondaga County Department of Law, John H. Mulroy Civic Center, 421 Montgomery Street, 10th Floor, Syracuse, NY 13202, ROBERT J. SMITH, ESQ., ELIZABETH A. HOFFMAN, ESQ., Eugene Conway, Joseph Ciciarelli, Michael Dickinson, Jammie Blumer, Jonathan Anderson, Joseph Peluso, Roy Gratien & Jason Cassalia, Costello, Cooney & Fearon, PLLC, 211 W. Jefferson Street, Syracuse, NY 13202, KATHERINE STEWART, ESQ., 500 Plum Street, Suite 300, Syracuse, NY 13204, JOHN L. MURAD, JR., ESQ., ANNELIESE ALIASSO, ESQ., Bryan K. Edwards & Westcott Events, LLC, Hancock Estabrook, LLP, 1800 AXA Tower I, 100 Madison Street, Syracuse, NY 13202, CHRISTINA M. VERONE JULIANO, ESQ., Goldberg, Segalla Law Firm, 5786 Widewaters Parkway, Syracuse, NY 13214.


**MEMORANDUM-DECISION AND ORDER**

Gary L. Sharpe, Senior District Judge

**I. Introduction**

**\*1** Plaintiff Kevin Murphy commenced this civil rights action against defendants Onondaga County, The Onondaga County Sheriff's Department, Eugene Conway, Joseph Ciciarelli, Michael Dickinson,[1] Jammie Blumer, Jonathan Anderson, Joseph Peluso, Roy Gratien, Jason Cassalia, Carl Hummel, William Fitzpatrick, Stefano Cambareri, Melanie S. Carden, Lindsey M. Luczka, Bryan K. Edwards, and Westcott Events, LLC, pursuant to 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. § 1964 (Civil Racketeer Influenced and Corrupt Organizations (RICO) Act), and New York State law, with the individual defendants all being sued in their individual and official capacities. (Am. Compl., Dkt. No. 60.)[2]

Pending before the court are motions for judgment on the pleadings filed by Conway (Dkt. No. 88), Blumer, (Dkt. No. 90), Peluso, (Dkt. No. 92), Gratien, (Dkt. No. 94), Anderson, (Dkt. No. 96), Cassalia, (Dkt. No. 98), Ciciarelli, (Dkt. No. 100), and Dickinson, (Dkt. No. 102) (hereinafter, collectively referred to as the "Sheriff Defendants"), a motion to amend the amended complaint filed by Murphy, (Dkt. No. 123), a motion to dismiss the amended complaint filed by Edwards and Westcott, (Dkt. No. 143), a motion to amend the RICO statement filed by Murphy, (Dkt. No. 157), a motion to construe their prior motion to dismiss as against any second amended complaint and/or to deny the second amended complaint filed by Edwards and Westcott, (Dkt. No. 144), a motion requesting guidance in responding to Murphy's amended RICO statement filed by the Sheriff Defendants, (Dkt. No. 155), a motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint filed by Murphy, (Dkt. No. 156), an August 30, 2021, letter motion seeking relief that, admittedly, is unclear to the court filed by Murphy, (Dkt. No. 159), and, finally, another motion to further amend the amended complaint filed by Murphy, (Dkt. No. 170).

For the reasons that follow, the Sheriff Defendants' Rule 12(c) motions, (Dkt. No. 88; Dkt. No. 90; Dkt. No. 92; Dkt. No. 94; Dkt. No. 96; Dkt. No. 98; Dkt. No. 100; Dkt. No. 102), are granted in part and denied in part, as described below. Edwards and Westcott's Rule 12(b)(6) motion (Dkt. No. 143), is granted. Murphy's motion to amend the amended complaint, (Dkt. No. 123), is denied as moot. Murphy's subsequent motion to amend the amended complaint, (Dkt. No. 170), and his motion to amend the RICO statement, (Dkt. No. 157), are denied. Edwards and Westcott's motion regarding Murphy's proposed amended complaint, (Dkt. No. 144), is granted, to the extent it sought denial of Murphy's motion to amend, and denied in all other respects. The Sheriff Defendants' motion requesting guidance in responding to the amended RICO statement, (Dkt. No. 155), is denied as moot. Murphy's motion informing the court of alleged

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 25 of 338

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

"improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint, (Dkt. No. 156), and August 30, 2021, letter motion, (Dkt. No. 159), are denied.

## II. **Background** [3]

**\*2**  Murphy is a Sergeant in the Onondaga County Sheriff's Department. (Am. Compl. ¶ 2.) The Sheriff Defendants were, or are, also members of the Sheriff's Department. (*Id.* ¶¶ 6-13.) Conway is the Sheriff, Cassalia is the Undersheriff, Gratien, who has since retired, was an Assistant Police Chief, Ciciarelli is the Chief Police Deputy, Dickinson is a Captain and Patrol Commander, Blumer and Anderson are Lieutenants, and Peluso, who has since retired, was a Sergeant and is now a Special Patrol Officer at the Onondaga County Civic Center. (*Id.* ¶¶ 6-13, 67.)

Murphy warned his superior officers in the Sheriff's Department of "illegal arrests, inadequate police work, improper training, poor supervision, racially motivated behavior and improper, unprofessional and illegal conduct" committed by members of the Sheriff's Department. (*Id.* ¶ 29.) As a result of this, Murphy was "forbidden [from] do[ing] police work," relieved of specific duties, forbidden from giving orders to subordinates, "required to sit at a desk during his entire shift doing nothing whatsoever," forbidden from using a patrol car or displaying his uniform in public, "subject[ed] to threatening and abusive behavior" by others in the Sheriff's Department, was "deprived of police assistance and ... castigated for his efforts when his ... wife was menaced and assaulted," has had his overtime opportunities reduced, "has been ordered to undertake menial tasks under circumstances that were deliberately chosen to cause him physical discomfort and agitation," passed over for a promotion, subjected to "repeated unwarranted police and grand jury investigations," "arbitrarily transferred," "depriv[ed] ... of income," and was "subjected to public ridicule and embarrassment." (*Id.* ¶ 245.)

Specifically, around November 2008, Murphy discovered improprieties surrounding the involvement of the Sheriff's Department with respect to an individual who committed suicide in the Onondaga County Justice Center. (*Id.* ¶¶ 36-38.) Murphy reported these improprieties, including the falsifying of medical records, to unnamed "supervising officers," and Conway. (*Id.* ¶¶ 39-43.)

On May 30, 2015, Murphy reported to Peluso an instance where a complaint was made by an African-American woman, which Murphy claimed was not properly addressed "due to her ethnic background and her sex," (*id.* ¶¶ 49-55), and requested that the incident be investigated internally, (*id.* ¶¶ 98-100). Murphy was later aggressively confronted by Peluso, who "was loud, screaming and belligerent," and conveyed to Murphy that Peluso did not want an investigation into the woman's complaint, and insinuated that it was inappropriate for Murphy to go against him. (*Id.* ¶¶ 63-64.) Murphy was again aggressively confronted by Peluso at a later date, and, after the confrontation, "bec[a]me[ ] sick" and was "admitted to a hospital with chest pains and high blood pressure," causing him to miss work for several weeks. (*Id.* ¶¶ 134, 140, 143.)

On March 9, 2016, Murphy informed Conway "of the improper use of a temporary holding cell to hold prisoners," potentially in violation of their rights. (*Id.* ¶¶ 69-70.) Murphy documented a similar violation shortly thereafter to "his chain of command," including Gratien, who, along with Conway, failed to remedy the situation. (*Id.* ¶¶ 72-75.)

On April 23, 2016, Murphy became aware of an unconstitutional search and seizure of a suspect's blood, and, in an attempt to investigate it, contacted Blumer. (*Id.* ¶¶ 78-90.) Blumer told Murphy that she would handle the matter. (*Id.* ¶ 90.) Murphy later discovered that Peluso "falsified the police report to cover up the illegal search and seizure." (*Id.* ¶ 92.) Murphy later learned that Blumer and Peluso contacted others in the Sheriff's Department, including Gratien, and stated that Murphy "was to blame for the illegal search." (*Id.* ¶¶ 93-95.) Murphy was later informed "that, according to ... Gratien, Murphy was not promoted to Lieutenant because he interferes with investigations of others." (*Id.* ¶ 97.) Peluso later filed a "vacuous" hostile work environment complaint against Murphy, intended to prevent him from being promoted. (*Id.* ¶ 101.) Murphy notified Ciciarelli and Gratien of the complaint, and requested that it be investigated, but his request was ignored. (*Id.* ¶¶ 102-04.)

**\*3**  On August 17, 2016, Murphy met with Ciciarelli and informed him of the Sheriff's Department's prior failure to properly investigate the aforementioned complaint made by an African-American woman based on "racial and sexual discrimination." (*Id.* ¶¶ 105-06.) Murphy also informed Ciciarelli of the illegal search and seizure and "illegal and falsified reports filed by Peluso," of which Gratien knew. (*Id.* ¶¶ 107-09.) Murphy reported to Ciciarelli that "Gratien had

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

expressed his opinion that Murphy should not be promoted due to his interference with other investigations." (*Id.* ¶ 111.) Finally, Murphy conveyed to Ciciarelli that an "inordinate number of arrests [were being] made by [members of the Sheriff's Department] that were illegal for lack of probable cause." (*Id.* ¶ 112.) After this meeting, Ciciarelli conveyed to an unnamed individual that "he investigated the situation and discovered that some of ... Murphy's allegations were true." (*Id.* ¶ 116.)

On August 29, 2016, Murphy was ordered to meet with Dickinson and Murphy's direct supervisor, Lieutenant Caruso. (*Id.* ¶¶ 59, 118.) During this meeting Murphy voiced his concerns to Dickinson regarding the illegal arrests conducted by members of the Sheriff's Department. (*Id.* ¶ 119.) Dickinson then ordered Murphy to "no longer do police work while under his command" specifically instructing Murphy "to refrain from initiating investigations ... no longer apply for search warrants." (*Id.* ¶ 121.) Murphy and Caruso both stated that this discipline was unjustified. (*Id.* ¶¶ 122-23.) Ciciarelli was later informed of Dickinson's order. (*Id.* ¶ 132.)

From that point forward, Murphy faced various forms of discipline from members of the Sheriff's Department, including being ordered to "remove" his personal file cabinet, (*id.* ¶ 130), being required to work on Thanksgiving and Christmas, (*id.* ¶ 147), being told that he "ha[d] no duties and no responsibilities and [could not] independently perform any police related duties during his 10-hour shift[s]," (*id.* ¶ 152), and had his teaching schedule at the Police Academy reduced to just one class, at the behest of Dickinson, (*id.* ¶¶ 154-55).

Then, on June 24, 2017, Murphy's wife "was struck by an unruly security guard and subjected to other untoward conduct" while attending a concert at the Amphitheater on Onondaga Lake. (*Id.* ¶ 158b.[4]) The security guard was employed by Westcott, which is owned and operated by Edwards. (*Id.* ¶ 159b.) Murphy was working that day at the venue as "Venue Supervisor." (*Id.* ¶ 164.) Murphy reported the incident involving his wife to Captain M. Pellizzari, and was subsequently relieved of his duties at the Amphitheater based upon complaints made by Edwards, who stated "that if Murphy work[ed there] in the future, the security company w[ould] walk off the job." (*Id.* ¶ 168.)

After the incident with his wife, Murphy continued to faced inter-Department discipline, including threats of "baseless" reprimand from Anderson for "silent insolence," (*id.* ¶

196-98), which Murphy believed was at the behest of Peluso, (*id.* ¶ 198); having an internal investigation opened against him surrounding his alleged improper use of his personal vehicle, (*id.* ¶¶ 202-04), which lead to Murphy's surveillance by Dickinson, (*id.* ¶ 202); further transfer, adding thirty miles to his daily commute, (*id.* ¶¶ 206-08); being prohibited by Dickinson from using a Sheriff's Department vehicle and being forced to cover his uniform when in public, (*id.* ¶ 210). When Murphy "[wa]s flagrantly disobeyed by [his] subordinates," the subordinates "face[d] no discipline" even after Murphy reported their insubordination. (*Id.* ¶¶ 212-13.) Murphy was ordered to inspect thirty patrol vehicles "in contradiction to established policy" even though he was not sufficiently dressed to perform this task. (*Id.* ¶¶ 215-16.) Murphy was given two "counseling memos" at the behest of Dickinson, accusing him of intentionally misrepresenting Dickinson's past orders and alleging violations of department policy. (*Id.* ¶ 219.)

**\*4** Murphy filed this suit on October 11, 2018. (*Id.* ¶ 229; *see* Dkt. No. 1.) After doing so, he "had several improper, unsupported and baseless referrals to the Onondaga County Sheriff's Office Internal Affairs Office" by Dickinson, (Am. Compl. ¶ 229), and he was transferred "without legitimate reason to such a position that would cause him to lose secondary employment opportunities and an immediate loss of income," (*id.* ¶ 242). At an unspecified time, Conway requested that District Attorney Fitzpatrick "institute an unwarranted criminal action against Murphy because it [wa]s impossible to silence him using 'in-house' means." (*Id.* ¶ 234.)

## III. <u>Standard of Review</u>

### A. <u>Leave to Amend</u>

The filing of amended complaint is governed by Rule 15 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15. Rule 15 provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at \*3 (S.D.N.Y. Feb. 17, 2012) (citation omitted). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 27 of 338

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see Monahan*, 214 F.3d at 283. The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion. *See Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

Northern District of New York Local Rule 15.1(a) states, in relevant part: "[A] motion [to amend] must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." Failure to comply with Local Rule 15.1(a) can result in denial of a motion to amend. *See Cottone v. Does*, No. 1:17-cv-1006, 2018 WL 2021513, at *4 (N.D.N.Y. Apr. 30, 2018)

**B. Motion to Dismiss**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

**IV. Discussion**

**A. Murphy's Motions to Amend**

On January 10, 2021, Murphy moved to amend his amended complaint. (Dkt. No. 123). On November 19, 2021, Murphy filed another motion to amend, (Dkt. No. 170), and therefore Murphy's former motion to amend is denied as moot.[5] *See Warren v. U.S.*, 859 F. Supp. 2d 522, 526 (W.D.N.Y. 2012) (denying a pending motion to amend as moot after a subsequent motion to amend was filed).

**\*5** In accordance with the court's October, 18, 2021 Text-Only Order, (Dkt. No. 164), Murphy was required to seek leave of the court before filing anything, which he did, (Dkt. No. 165). In granting leave, the court noted that:

Murphy's motion for leave to amend shall be filed on or before November 19, 2021. Failure to file by that deadline will result in the summary denial of the motion for failure to comply with this Text Only Order. Moreover, failure to strictly comply with the Local Rules of Practice, and, in particular, Rules 7.1 and 15.1, will result in summary denial of the motion.

(Dkt. No. 169.) The court deemed it necessary to be explicit in its instructions due to Murphy's history of untimely filings, (Dkt. 154 (filed two days after the required date)), failure to comply with the Local Rules, (Dkt. No.123 (failing to comply with Local Rule 15.1(a))), and general lack of attention to detail with respect to prior submissions.[6]

Murphy's November 19, 2021, motion to amend indicated via red text proposed amendments to his *proposed second amended complaint*, (Dkt. No. 123, Attach. 1), rather than the operative complaint, (Dkt. No. 60). Therefore, the court cannot "identify the amendments in the proposed pleading" to the "pleading sought to be amended," and can only readily discern the proposed amendments to Murphy's *proposed* second amended complaint, *which is not* the operative pleading. *See* N.D.N.Y. L.R. 15.1(a). For this reason, and because the court took special pains to ensure compliance with the Local Rules, and warned Murphy about the consequences of his failure to do so, Murphy's motion to amend, (Dkt. No. 170), is denied. *See Cottone*, 2018 WL 2021513, at *4 ("[F]ailure to meet the requirements of [the] Local Rule[s] is an independent ground upon which to deny [a motion to amend]."); (Dkt. No. 169 ("[F]ailure to strictly comply with the Local Rules of Practice, and, in particular, Rules 7.1 and 15.1, will result in summary denial of the motion.")).

**B. RICO**

**\*6** Murphy's first and second causes of action allege RICO claims against Conway, Ciciarelli, Dickinson, Blumer, Anderson, Peluso, Gratien, Cassalia, Hummel, Cambareri,[7] Fitzpatrick, Carden, Luczka, and Edwards in both their individual and official capacities.[8] (Am. Compl. at 47, 51.)

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 28 of 338

RICO Bus.Disp.Guide 13,617

The Sheriff Defendants and Edwards move to dismiss these causes of action, for several reasons, (Dkt. No. 88, Attach. 1 at 4-11; Dkt. No. 90, Attach. 1 at 4-11; Dkt. No. 92, Attach. 1 at 5-12; Dkt. No. 94, Attach. 1 at 4-11; Dkt. No. 96, Attach. 1 at 4-11; Dkt. No. 98, Attach. 1 at 3-11; Dkt. No. 100, Attach. 1 at 4-11; Dkt. No. 102, Attach. 1 at 4-11; Dkt. No. 143, Attach. 3 at 4-11), but, most notably, because Murphy failed to comply with Local Rule 9.2. (Dkt. No. 120 at 1; Dkt. No. 143, Attach 3. at 9.) Hummel, Cambareri, Fitzpatrick, Carden, and Luczka did not move to dismiss.

RICO grants standing to pursue a civil damages remedy to "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). The statute "imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a 'pattern of racketeering activity.' " *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (quoting 18 U.S.C. §§ 1962, 1964). A plaintiff asserting a RICO violation must adequately plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to plaintiff's business or property, and (3) the causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (internal quotation marks and citations omitted; alteration in original). To adequately plead the causation element of a RICO claim, the plaintiff must allege that the defendant's conduct was the "legal, or proximate, cause of [his] injury, as well as the logical, or 'but for,' cause." *Id.* at 283-84 (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys.*, 271 F.3d 374, 380 (2d Cir. 2001)).

To allege a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege "a conspiracy to commit a substantive RICO violation." *Spool*, 520 F.3d at 183. In particular, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). As a result, to properly allege a civil RICO conspiracy under Section 1962(d), a plaintiff must allege that the defendant "knew about and agreed to facilitate the [RICO] scheme." *Salinas v. United States*, 522 U.S. 52, 66 (1997). Regarding the facilitation requirement, "a plaintiff must allege that the conspirator intended to further an endeavor that, if completed, would satisfy all of the elements of a substantive" criminal offense; however, it is sufficient for a plaintiff to allege that the "conspirator adopted the goal of furthering or facilitating the criminal endeavor." *Malvar*

*Egerique v. Chowaiki*, No. 19 Civ. 3110, 2020 WL 1974228, at *8 (S.D.N.Y. Apr. 24 2020).

"Local Rule 9.2 requires a party asserting a claim under RICO to 'file a RICO statement within thirty (30) days of the filing of the pleading containing such claim.' " *Poole v. Bendixen*, No. 5:20-CV-0697, 2021 WL 3737780, at *11 (N.D.N.Y. Aug. 24, 2021). Failure to timely file a RICO statement pursuant to this rule is grounds for dismissal of the RICO claims. *See Pierce v. Homecomings Fin. LLC*, No. 17-CV-0882, 2017 WL 5991750, at *2 n.2 (N.D.N.Y. Dec. 4, 2017) (noting that, where a plaintiff failed to file a RICO statement pursuant to Local Rule 9.2, "[p]laintiff's RICO claim may be dismissed for this reason alone"); *see also Amaker v. Kelley*, No. 9:01-CV-877, 2009 WL 385413, at *11 (N.D.N.Y. Feb. 9, 2009) (holding that failure to file a RICO statement "provid[es] a threshold for dismissal of [a] plaintiff's RICO claim"); *Spoto v. Herkimer Cnty. Trust*, No. 99-CV-1476, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he [c]ourt would be justified to dismiss [the] complaint based upon the[ ] very untimely filing of the[ ] Local Rule 9.2 RICO Statement.").

**\*7** Murphy filed the first iteration[9] of his amended complaint alleging RICO causes of action on July 1, 2019, (Dkt. No. 56), and he filed his RICO statement on August 16, 2021, (Dkt. No. 154), well beyond the time permitted by Local Rule 9.2. Because of this violation of Local Rule 9.2, Murphy's first and second causes of action are dismissed as against all defendants. *See Poole*, 2021 WL 3737780, at *11 (denying RICO claims where Plaintiff failed to timely file a RICO statement under Local Rule 9.2, "regardless of Plaintiffs' good-faith work on other aspects of th[e] case"); *see also Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 146-47 (S.D.N.Y. 2000) (dismissing complaint against non-moving defendants where moving defendants raised arguments that supported dismissal of all defendants because plaintiff was "on notice" of these arguments and had "responded in full").

Given that Murphy's RICO statement was untimely, and his RICO claims are dismissed, Murphy's motion to amend the RICO statement, (Dkt. No. 157), is denied, and his motion that, among other things, requested that the amended RICO statement be accepted as timely, to the extent it sought such relief, (Dkt. No. 156), is denied as moot. Further, the Sheriff Defendants' motion requesting guidance on responding to Murphy's amended RICO statement, (Dkt. No. 155), is also denied as moot.

## C. Retaliation

Murphy's third, fourth, and sixth causes of action allege retaliation in violation of 42 U.S.C. § 1983 and Article 1, Section 8 of the New York State Constitution against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. (Am. Compl. at 52, 56, 64.) The Sheriff Defendants moved to dismiss these claims, arguing that there is no causal connection between Murphy's speech and any alleged adverse employment action. (Dkt. No. 88, Attach. 1 at 11-13; Dkt. No. 90, Attach. 1 at 11-13; Dkt. No. 92, Attach. 1 at 12-13; Dkt. No. 94, Attach. 1 at 12-13; Dkt. No. 96, Attach. 1 at 12-14; Dkt. No. 98, Attach. 1 at 11-12; Dkt. No. 100, Attach. 1 at 12-14; Dkt. No. 102, Attach. 1 at 13-15.) Dickinson also contends that Murphy's speech was made as an employee of the Sheriff's Department, rather than as a member of the public, and that any actions taken by Dickinson were "at most *de minimis* inconvenience[s]" but not adverse employment actions. (Dkt. No. 102, Attach. 1 at 14-15.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

Murphy fails to address any of the arguments made by Blumer, Anderson, Peluso, Gratien, and Ciciarelli. (Dkt. No. 124; Dkt. No. 125; Dkt. No. 126.) With respect to Conway, Murphy appears to contend that supervisory liability provides a basis to avoid dismissal, and that a further amended complaint will also support his retaliation claims against Conway. (Dkt. No.116 at 15-16.) Regarding Dickinson and Cassalia, Murphy appears to also argue that supervisory liability provides a basis to avoid dismissal, and that Dickinson and Cassalia's "efforts were focused on the fabrication of false reports." (Dkt. No. 117 at 13; 118 at 13.) Murphy does not provide a single citation to the amended complaint in support of this position. (*Id.*)

To withstand a motion to dismiss on a First Amendment retaliation claim, a plaintiff must demonstrate: (1) that he "engaged in protected First Amendment activity;" (2) that "he suffered an adverse employment action;" and (3) that "there was a causal connection between the protected activity and the adverse employment action." *Osuan v. City of New York*, No. 18cv151, 2019 WL 2544866, at *4 (S.D.N.Y. June 20, 2019) (quoting *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007)); *see Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

**\*8** Whether an employee's speech is protected by the First Amendment is a two-part inquiry. *See Reynolds v. Village of Chittenango*, No. 5:19-cv-416, 2020 WL 1322509, at *3 (N.D.N.Y. Mar. 20, 2020) (citation omitted). First, the subject of the employee's speech must be "a matter of public concern." *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). Second, the employee must be speaking "as a citizen rather than solely as an employee." *Id.* (quoting *Jackler*, 658 F.3d at 235).

An adverse employment action is qualified as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Shanks v. Vill. of Catskill Bd. of Trs.*, 653 F. Supp. 2d 158, 166 (N.D.N.Y. 2009) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225-26 (2d Cir. 2006)). "Under this definition, adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand[;] as well as lesser actions such as negative reviews, false accusations, and menial job assignments." *Id.* (quoting *Zelnik*, 464 F.3d at 226) (internal quotation marks and other citation omitted).

Finally, a plaintiff must establish "a causal relationship between the protected speech and the adverse employment action." *Id.* "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." *Cotarelo v. Vill. of Sleepy Hollow Police Dept.*, 460 F.3d 247, 251 (2d Cir. 2006) (citation omitted). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Shanks*, 653 F. Supp. 2d at 167 (citation omitted). To demonstrate a causal connection, such to "survive a motion to dismiss," a plaintiff "need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect." *Stajic v. City of New York*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999)).

The Second Circuit has recently clarified that "there is no special rule for supervisory liability [under § 1983]. Instead, a plaintiff must plead and prove that each ... defendant, through [their] own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 30 of 338

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

As a preliminary matter, Murphy's retaliation claim pursuant to Article I, Section 8 of the New York State Constitution is duplicative of his § 1983 First Amendment retaliation claim. *See Leibovitz v. City of New York*, No. 14-CV-7106, 2018 WL 1157872, at *21 (E.D.N.Y. Mar. 2, 2018) ("[V]arious federal courts in this circuit have held that there is no private right of action under the New York State Constitution where ... remedies are available under [§] 1983.") (internal quotation marks and citations omitted); *cf. Sanders v. City of New York*, No. 12 CV 2906, 2015 WL 2331105, at *9 (S.D.N.Y. May 11, 2015). Thus, Murphy's sixth cause of action, alleging a violation of the New York Constitution, is dismissed as to all defendants.

**\*9** With respect to Murphy's First Amendment retaliation claims brought pursuant to § 1983, he has adequately pleaded that he was speaking as a citizen on matters of public concern when he reported to his superior officers "illegal arrests, inadequate police work, improper training, poor supervision, racially motivated behavior and improper, unprofessional[,] and illegal conduct" committed by members of the Sheriff's Department. (Am. Compl. ¶ 29); *see Raymond v. City of New York*, 317 F. Supp. 3d 746, 755-56 (S.D.N.Y. 2018) (holding that a police officer "engaged in speech in his capacity as a private citizen on a matter of public concern" when he alerted his commanding officer of improper arrests); *see also Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015) ("[W]hen a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy ... engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee."); *see also Shanks*, 653 F. Supp. 2d at 165 (N.D.N.Y. 2009) (finding that a firefighter reporting fire department safety violations was protected speech).

Further, Murphy has adequately pleaded that he faced adverse employment action. Specifically, Murphy alleges that Conway requested that Fitzpatrick "institute an unwarranted criminal action against Murphy," (Am. Compl. ¶ 234), that Gratien, Blumer, [10] and Peluso colluded to create a falsified police report in an attempt to blame Murphy for an illegal search and seizure conducted by others in the Sheriff's Department, raised by Murphy, (*id.* ¶ 322), that Anderson filed an unsubstantiated internal complaint against Murphy, (*id.* ¶¶ 198, 322), that Peluso filed multiple unsubstantiated internal complaints against him, (*id.* ¶¶ 101, 137), at least one of which was "specifically intended to prevent ... Murphy from being promoted," (*id.* ¶ 101), and, finally, that Dickinson

drastically reduced Murphy's duties and responsibilities, including his teaching role at the police academy, and made "several improper, unsupported and baseless referrals [of Murphy] to the Onondaga County Sheriff's Office Internal Affairs Office," (*id.* ¶¶ 121, 154-55, 229). These all constitute adverse employment actions. *See Shanks*, 653 F. Supp. 2d at 166. [11]

Finally, Murphy has adequately pleaded a causal connection between his speech and these adverse actions with respect to the Sheriff Defendants, other than Ciciarelli and Cassalia. The amended complaint alleges that, after Murphy informed Conway of the alleged corruption in the Sheriff's Department, Conway requested that Fitzpatrick "institute an unwarranted criminal action against Murphy, because it [wa]s impossible to silence him using 'in-house' means." (Am. Compl. ¶¶ 69, 234.) At this stage in the litigation, this is adequate to demonstrate a causal connection between Murphy's speech and the alleged adverse employment action carried out by Conway. *See Reynolds*, 2020 WL 1322509, at *3 (holding a causal connection existed where "after [plaintiff] complained about his defective patrol car, he was subject to ... threats of false and malicious criminal prosecution" (internal quotation marks and citation omitted)).

**\*10** With respect to Gratien, Blumer, and Peluso, the amended complaint alleges that, shortly after raising concerns to Blumer regarding an improper search and seizure conducted by members of the Sheriff's Department, which involved Peluso falsifying a policy report to cover the incident up, Gratien, Blumer, and Peluso "collu[ded]" to create a falsified police report in an attempt to blame Murphy for the incident. (Am. Compl. ¶¶ 88-95, 322). Further, after that incident, Gratien expressed that Murphy "was not promoted to Lieutenant because he interferes with investigations of others." (*Id.* ¶ 97.) At this stage in the litigation, these allegations are adequate to demonstrate a causal connection between Murphy's speech and the adverse employment actions carried out by Gratien, Blumer, and Peluso. [12] *See Jackson*, WL 5698535, at *5 (finding a causal connection existed based on allegations that the defendants threatened and harassed the plaintiff, and falsely represented the plaintiff's performance reviews).

With respect to Anderson, the amended complaint alleges that, he filed an internal affairs complaint against Murphy, "following Peluso's lead." (Am. Compl. ¶¶ 198, 322). Given that Peluso's complaint was brought shortly after Murphy raised concerns to Peluso about an instance where

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

a complainant was not "attent[ed to] by [the Sheriff's Department] ... due to her ethnic background and her sex," that the complaint was "specifically intended to prevent ... Murphy from being promoted," and because Anderson, was "following Peluso's lead," (Am. Compl. ¶¶ 44-55, 101, 322), Anderson's Rule 12(c) motion is denied. *Stajic*, 214 F. Supp. 3d at 235 (holding, that to "survive a motion to dismiss," a plaintiff "need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect" (citation omitted)).

With respect to Ciciarelli and Cassalia, Murphy has failed to adequately plead a cause of action for retaliation. Regarding Cassalia, there is not a single *specific* allegation in the amended complaint demonstrating that Cassalia was a participant in any adverse employment action. Regarding Ciciarelli, Murphy alleges simply that Ciciarelli was aware of the adverse employment action, but not that he was involved in anyway, which is inadequate. *See Tangreti*, 983 F.3d at 618.

To the extent Murphy argues that future amendments will cure any defect with respect to this clause of action, (*see, e.g.*, Dkt. No.116 at 15-16), this argument does not save his claim. [13] *See Austin Air Sys., Ltd. v. Sager Elec. Supply Co., Inc.*, No. 19-CV-562JLS, 2022 WL 464230, at *8 (W.D.N.Y. Feb. 15, 2022) ("In ruling on a motion under Rule 12(b)(6), ... the court may consider only 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference.' ") (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)); *see also supra* Part IV.A. (denying Murphy's pending motions to amend).

**\*11** For these reasons, Murphy's third and fourth causes of action are dismissed as against Ciciarelli and Cassalia, and may proceed against all of the other Sheriff Defendants, as well as the non-moving parties: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

### D. Section 1985 Conspiracy

Murphy alleges a § 1985 conspiracy against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. The Sheriff Defendants move to dismiss this claim, arguing among other things, that, if the court is to construe

this cause of action as brought under § 1985(2), that the "amended complaint contains only vague and conclusory allegations which fail to identify a single act [by any of the Sheriff Defendants] in furtherance of any conspiracy." (Dkt. No. 129 at 7; *see* Dkt. No. 130 at 6; Dkt. No. 131 at 6; Dkt. No. 135 at 6-7; Dkt. No. 136 at 6-7; Dkt. No. 137 at 6-7.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

Murphy argues that "unquestionably, [he] was the subject of efforts by all of the defendants to impede, hinder, obstruct and/or defeat his pursuit of justice during the course of this federal proceeding," citing only one example in support of this position, that he "was the subject of a grand jury target letter" that "was based on no probable cause and was purely an attempt to deter [him]." (Dkt. No. 116 at 18; Dkt. No. 124 at 12; Dkt. No. 125 at 12-13; Dkt. No. 126 at 12.) Further, with respect to certain defendants, Murphy argues that future "supplement[ations]" will cure any defect in the amended complaint regarding his § 1985 claim. (Dkt. No. 117 at 14; Dkt. No. 118 at 14.)

As a preliminary matter, there is some dispute pursuant to which paragraph of 42 U.S.C. § 1985 Murphy brings his fifth cause of action. Murphy's fifth claim is for "conspiracy to retaliate in violation of the first amendment" under 42 U.S.C. § 1985. (Am. Compl. at 60-61.) It appears that Murphy brings this cause of action under 42 U.S.C. § 1985(3) (Am. Compl. ¶ 321 ("Defendants ... entered into a corrupt agreement to injure ... Murphy ... [and] deprive him of his Constitutional rights")); *see Oliver v. N.Y. State Police*, No. 1:19-cv-233, 2020 WL 1849484, at *9 (N.D.N.Y. Apr. 13, 2020) (holding that, "[t]o state a conspiracy claim under Section 1985(3), among other things, a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" " (quoting *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015)).

However, after the Sheriff Defendants, in their various Rule 12(c) motions, noted that, under 42 U.S.C. § 1985(3), a plaintiff must allege "some class based discriminatory amicus," which Murphy had not adequately pleaded, (*see, e.g.*, Dkt. No. 88, Attach. 1 at 14) (citing *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 96 (N.D.N.Y. 2013)), Murphy argues that his fifth cause of action is actually conspiracy to obstruct justice, in violation of the second clause of 42 U.S.C. § 1985(2), (*see, e.g.*, Dkt. 116 at 17-18.)

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

Even though the court is not persuaded that Murphy intended to bring this cause of action under 42 U.S.C. § 1985(2), out of an abundance of caution, it will analyze it as such.

**\*12**  The second clause of 42 U.S.C. § 1985(2) prohibits "two or more persons" from conspiring for to purpose of:

> [I]mpeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

With respect to a claim brought under this clause of § 1985(2), a plaintiff must plead "(1) a conspiracy, (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or Territory, (4) with intent to deny any citizen the equal protection of the laws." *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at \*12 (S.D.N.Y. Mar. 13, 2018) (internal quotation marks and citation omitted). "[A] claim under the second clause of [§] 1985(2) requires a showing of class-based invidiously discriminatory animus on the part of the conspiring parties." *Langton v. Town of Chester Library Bd.*, No. 14-cv-9474, 2020 WL 2850898, at \*4 (S.D.N.Y. June 1, 2020) (internal quotation marks and citation omitted); *see Ruggiero v. City of Cortland*, No. 5:17-CV-790, 2018 WL 5983505, at \*8 (N.D.N.Y. Nov. 14, 2018) (dismissing a conspiracy claim brought under the second clause of § 1985(2) where, plaintiff "failed to plausibly allege that any of th[e] conspiratorial misconduct stem[ed] from the kind of racial or other class-based animus required by controlling federal law" (internal quotation marks and citation omitted)).

Murphy concedes the fact that he "has not alleged that damages were caused as a result of racial discrimination or other discriminatory means," (*see, e.g.*, Dkt. No. 124 at 11), a requirement under the second clause of § 1985(2). *See Langton*, 2020 WL 2850898, at \*4; *see Ruggiero*, 2018 WL 5983505, at \*8. Because Murphy makes no attempt to

demonstrate racial or other class-based animus [14] on behalf of any defendant, he has failed to adequately plead a claim under the second clause of § 1985(2), and, thus, his fifth cause of action is dismissed as against all defendants. [15] *See Citadel*, 123 F. Supp. at 146-47.

### E. **Equal Protection**

**\*13**  Murphy's seventh cause of action alleges violations of the Equal Protection Clause of the Fourteenth Amendment, under 42 U.S.C. § 1983 against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. (Am. Compl. at 68.) The Sheriff Defendants move to dismiss this claim, raising several arguments in support of their position, (Dkt. No. 88, Attach. 1 at 15-17; Dkt. No. 90, Attach. 1 at 16-17; Dkt. No. 92, Attach. 1 at 16-17; Dkt. No. 94, Attach. 1 at 16-18; Dkt. No. 96, Attach. 1 at 16-17; Dkt. No. 98, Attach. 1 at 14-16; Dkt. No. 100, Attach. 1 at 16-18; Dkt. No. 102, Attach. 1 at 17-18).) Relevant here, they contend that Murphy bases his equal protection claim on a class-of-one theory, which is inapplicable. (Dkt. No. 129 at 7-8; Dkt. No. 130 at 7; Dkt. No. 131 at 7; Dkt. No. 135 at 7-8; Dkt. No. 136 at 7-8; Dkt. No. 137 at 7-8.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike." *Young v. Suffolk County*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, (1985)). When a plaintiff does not allege an equal protection violation due to their membership in a protected class, they may still prevail on their claim under a "class-of-one" theory. *See NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177 (2d Cir. 2019) ("[T]he Supreme Court has ... endorsed a class-of-one theory for equal protection claims, under which a single individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment." (internal quotation marks and citations omitted)); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed under a class-of-one theory, a plaintiff must demonstrate "[1] that [ ]he has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted).

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 33 of 338

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

In *Engquist v. Oregon Department of Agriculture*, the Supreme Court held that the class-of-one theory has no application in the public employment context. *See* 553 U.S. 591, 607-08 (2008); *see also Booker v. City of New York*, No. 14 Civ. 9801, 2017 WL 151625, at *5 (S.D.N.Y. Jan. 13, 2017) ("[B]ecause 'class-of-one' Equal Protection claims are unavailable in the public employment context, plaintiff cannot state a viable federal Equal Protection claim [under § 1983].").

Because Murphy's equal protection claim relies on the class of one theory, (Dkt. No. 116 at 18-19 ("It has long been held that plaintiff might bring a suit based upon his membership in [a] class[-]of[-]one.... [Murphy's] class ... may be articulated in any number of ways including 'all Sheriff's Deputies', 'all Sheriff's Deputies in Onondaga County', 'all police officers', etc." (internal citation omitted)); *see* Dkt. No. 117 at 15; Dkt. No. 118 at 15; Dkt. No. 124 at 12-13; Dkt. No. 125 at 13; Dkt. No. 126 at 12-13), and Murphy's claim is in the context of public employment, it must be dismissed. *See Stas v. Lynch*, 576 F. Supp. 2d 322, 323, 325 (D. Conn. 2008) (finding that former Connecticut State Police Trooper did not have a valid claim against Connecticut State Police official pursuant to § 1983, under the class-of-one theory, because this theory was inapplicable in the context of public employment). For this reason, Murphy's seventh cause of action is dismissed as against all defendants. See *Citadel*, 123 F. Supp. 2d at 146-47.

### F. Defamation

Murphy's eighth cause of action is for defamation, defamation per se, slander, and libel against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, Luczka, and Edwards. (Am. Compl. at 70.)

The Sheriffs Defendants and Edwards move to dismiss these claims, with the Sheriffs Defendants arguing that Murphy has not adequately pleaded defamation, (Dkt. No. 88, Attach. 1 at 17-18; Dkt. No. 90, Attach. 1 at 18-20; Dkt. No. 92, Attach. 1 at 18-19; Dkt. No. 94, Attach. 1 at 19-20; Dkt. No. 96, Attach. 1 at 18-19; Dkt. No. 98, Attach. 1 at 16-17; Dkt. No. 100, Attach. 1 at 18-20; Dkt. No. 102, Attach. 1 at 19-21), and that, even if he did, the claims are time-barred, (Dkt. No. 88, Attach. 1 at 19-20; Dkt. No. 90, Attach. 1 at 17-18; Dkt. No. 92, Attach. 1 at 17-18; Dkt. No. 94, Attach. 1 at 18-19; Dkt. No. 96, Attach. 1 at 17-18; Dkt. No. 100, Attach. 1 at 18; Dkt. No. 102, Attach. 1 at 18-19), and Edwards making similar arguments, (Dkt. No. 143, Attach. 3 at 11-14). Onondaga County, the Onondaga County Sheriff's

Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

**\*14** Murphy argues that the statute of limitations does not bar his claims because "[e]ven if the slanderous comments made by defendants during the meeting that [sic.] the Onondaga County District Attorney's Office were the only comments to base his claim on, ... [that] this meeting occurred in or about January of 2019." (Dkt. No. 116 at 20-21; *see* Dkt. No. 117 at 17; Dkt. No. 118 at 17; Dkt. No. 124 at 14-15; Dkt. No. 125 at 15; Dkt. No. 126 at 14-15; Dkt. No. 148 at 24.) He also contends that the statute of limitation does not bar his claims because the defendants' "investigations and allegations against Murphy continued even as this case progressed." (Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at 150; see Dkt. No. 148 at 25.) Murphy further asserts that he has sufficiently pleaded all elements to his defamation claims because "[a]s to who the defaming remarks were made, that would include the defendants herein, selected members of the District Attorney's Office, possibly grand jury participants and others. As to the words stated, that would include false allegations that Murphy had committed a crime." (Dkt. No. 116 at 20; *see* Dkt. No. 117 at 18; Dkt. No. 118 at 18; Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at 15; *see* Dkt. No. 148 at 25.) Murphy also asserts that his proposed second amended complaint establishes additional support for his defamation claims. (Dkt. No. 116 at 21; Dkt. No. 124 at 15; Dkt. 125 at 15-16; Dkt. No. 126 at 15.) Finally, he argues that discovery would allow him to cure any defects in his defamation cause of action. (Dkt. No. 118 at 18; Dkt. No. 148 at 25 ("As it cannot be denied that there was a Grand Jury investigation, there must be a criminal complaint from Edwards/ Westcott. Further, it is obvious that there is no probable cause to institute such an investigation. Undeniably, someone lied. Plaintiff asks only the opportunity to view these documents. That is only fair.").)

"Defamation ... consist[s] of the twin torts of libel and slander." *Alexander v. City of Syracuse*, No. 5:17-CV-1195, 2018 WL 6591426, at *6 (N.D.N.Y. Dec. 13, 2018) (quoting *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001)). To state a claim for defamation under New York law, a plaintiff must allege "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, ... caus[ing] special harm or constitut[ing] defamation per se." *Jackie's Enters., Inc. v. Belleville*, 165 A.D.3d 1567, 1569-70 (3d Dep't 2018) (citations omitted). "While the Second Circuit has abandoned the stringent *in haec verba* standard in defamation cases, to

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 34 of 338

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

comply with the dictates of Rule 8(a) a plaintiff must still 'afford defendant sufficient notice of the communications complained of to enable him to defend himself.' " [16] *Simons v. New York*, 472 F. Supp. 2d 253, 267 (N.D.N.Y. 2007) (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).

For a defamation claim to survive a motion to dismiss, in compliance with Rule 8, a plaintiff must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Hillary v. Vill. of Potsdam*, No. 7:12-cv-1669, 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015) (citation omitted). In other words, the allegations must include "the time, place, and manner of the false statement." *Arvanitakis v. Lester*, 145 A.D.3d 650, 651 (2d Dep't 2016).

As to slander per se, there are four categories of statements for which damages need not be shown: statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992) (citations omitted).

 **\*15**  "Under New York law, the statute of limitations for a defamation claim is one year." *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535 (2d Cir. 2009) (citing N.Y. C.P.L.R. § 215(3)).

With respect to Conway, Murphy fails to adequately plead a claim for defamation. Murphy alleges two arguably [17] defamatory statements attributable to Conway in the amended complaint. (Am. Compl. ¶¶ 73, 234.) The first of these statements occurred on March 9, 2016, (*Id.* ¶ 73), assuming *arguendo* that this statement was defamatory, it is time-barred, as it occurred more than one year prior to the commencement of this action, on October 11, 2018, (Dkt. No. 1). The second statement attributable to Conway is: "Conway request[ed] ... Fitzpatrick to institute an unwarranted criminal action against Murphy because it is impossible to silence him using 'in-house' means." (Am. Compl. ¶ 234.) Although Murphy appears to argue in his opposition papers that this occurred "in or about January of 2019," (Dkt. No. 116 at 21), the amended complaint does not allege when this statement was made, (Am. Compl. ¶ 234), and, thus, fails to adequately plead a claim for defamation against Conway. *See Moleon v. Alston*, No. 21 Civ. 1398, 2021 WL 5772439, at *15 (S.D.N.Y. Dec. 3, 2021) ("Where a plaintiff fails to identify ... the time ...

in which [the statement] w[as] made, a defamation claim does not survive a motion to dismiss." (internal quotation marks and citation omitted)); *see also Austin Air Sys.*, 2022 WL 464230, at *8 ("In ruling on a motion under Rule 12(b)(6), ... the court may consider only 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference.' " (quoting *McCarthy*, 482 F.3d at 191)).

Murphy also fails to adequately plead a claim for defamation against Blumer, Peluso, Anderson, Gratien, and Dickinson. Murphy alleges several arguably defamatory statements attributable to these defendants in the amended complaint. (Am. Compl. ¶¶ 65, 95, 97,111, 118, 124, 136, 141-42, 154, 168, 196, 322.) As alleged in the amended complaint, these statements were made "[a] few days [after]" May 30, 2015, (*id.* ¶¶ 49, 63, 65), on or about April 24, 2016, (*id.* ¶¶ 78, 93, 95), on or before June 3, 2016, (*id.* ¶ 97), on or before August 10, 2016, (*id.* ¶ 101), on September 29, 2016, (*id.* ¶¶ 134, 136-137), on October 5, 2016, (*id.* ¶ 141), "[d]uring the November, 2016 time period," (*id.* ¶ 154), and "on or about June 24, 2017," (*id.* ¶¶ 158, 168), and in or before September 2017, (*id.* ¶ 196). Assuming without deciding that these statements were defamatory, they are time-barred, as they occurred more than one year prior to the commencement of this action, on October 11, 2018, (Dkt. No. 1). [18]

 **\*16**  Nowhere in the amended complaint does Murphy attribute any specific defamatory statements to Cassalia or Ciciarelli, [19] and, thus, he has not made out a claim for defamation as against them. *See Hillary*, 2015 WL 902930, at *11 (for a defamation claim to survive a motion to dismiss, a plaintiff must "identify ... the allegedly defamatory statements ... [and] the person who made the statements" (internal quotation marks and citation omitted)).

Finally, with respect to Edwards, Murphy has failed to adequately plead defamation. The only arguably defamatory statement made by Edwards included in the amended complaint was made "on or about June 24, 2017." (Am. Compl. ¶¶ 158, 168.) Again, assuming *arguendo* that this statement was defamatory, it is time-barred, as it occurred more than one year prior to the commencement of this action, on October 11, 2018. (Dkt. No. 1.)

Finally, in Murphy's various opposition papers, he appears to make the same, or substantially similar, arguments, regardless of the applicability of the arguments to the specific motion

**Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)**

RICO Bus.Disp.Guide 13,617

he is opposing. (*See, e.g.*, Dkt. 118 at 17-18 (responding to a statute of limitations argument that was not made with respect to this specific defendant).) He argues that his claims are not time-barred because "[e]ven if the slanderous comments made by defendants during the meeting that the Onondaga County District Attorney's Office were the only comments to base his claim on, there is no problem with the statute of limitations ... [because] this meeting occurred in or about January of 2019." (Dkt. No. 116 at 20-21; Dkt. 117 at 17; Dkt. No. 118 at 17; Dkt. No. 124 at 14-15; Dkt. No. 125 at 15; Dkt. No. 126 at 14-15). This is borderline nonsensical. It is not apparent to the court to which "meeting that [sic.] the Onondaga County District Attorney's Office" Murphy is referring, as the amended complaint does not discuss such a meeting. If Murphy is referring to his allegation that "Conway request[ed] District Attorney Fitzpatrick ... institute an unwarranted criminal action against Murphy," (Am. Compl. ¶ 234), then this argument would have no baring on any claim against any defendant besides Conway,[20] as there is nothing indicating that any defendant besides Conway and Fitzpatrick were present or involved in this meeting, let alone made defamatory statements during the meeting. Further, Murphy contends that "[defendant's] investigations and allegations against Murphy continued even as this case progressed," (Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at 150; see Dkt. No. 148 at 25), yet he provides no citations to the amended complaint in support of this position. Finally, Murphy's contention that future discovery would cure any defects in his defamation cause of action, (Dkt. No. 118 at 18; Dkt. No. 148 at 25), is equally unpersuasive. *See Arrindel-Martin v. City of Syracuse*, No. 5:18-CV-780, 2018 WL 6622193, at *6 (N.D.N.Y. Dec. 18, 2018) ("[T]he purpose of the plausibility standard is to require a plaintiff to allege sufficient facts to state a claim; it is not a license for a plaintiff to conduct a fishing expedition in an attempt to obtain discovery that might support his allegations." (citation omitted)).

**\*17** For these reasons, Murphy's eighth cause of action for defamation, defamation per se, slander, and libel is dismissed as against the Sheriff Defendants and Edwards, and remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

## G. Conspiracy to Defame

Murphy's ninth cause of action is for conspiracy to defame against Onondaga County, the Onondaga County Sheriff's

Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, Luczka, Edwards, and Westcott. (Am. Compl. at 73.)

"In order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege *a cognizable tort*, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Fairstein v. Netflix, Inc.*, No. 20-cv-8042, 2021 WL 3501527, at *23 (S.D.N.Y. Aug. 9, 2021) (emphasis added) (quoting *Perez v. Lopez*, 948 N.Y.S.2d 312, 314 (2d Dep't 2012)).

Where a plaintiff fails to adequately plead "facts sufficient to demonstrate the underlying tort of defamation" their claims for civil conspiracy to commit defamation must also be dismissed. *See Sparrow Fund Mgmt. LP v. MiMedx Group, Inc.*, No. 18 Civ. 4921, 2019 WL 1434719, at *12 (S.D.N.Y. Mar. 31, 2019); *see also Nunes v. Cable News Network, Inc.*, 520 F. Supp. 3d 549, 561 (S.D.N.Y. Feb. 19, 2021) ("In light of [p]laintiff's failure to plead a viable defamation claim, there is no underlying tort to support a viable claim for conspiracy here.").

Because Murphy's defamation claims against the Sheriff Defendants and Edwards are dismissed, his ninth cause of action for conspiracy to defame as against these same defendants and Westcott is likewise dismissed. *See Sparrow*, 2019 WL 1434719, at *12. His defamation claims remain against the non-moving parties: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

## H. Intentional Infliction of Emotional Distress

Murphy's tenth cause of action alleges intentional infliction of emotional distress (IIED) against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, and Hummel. (Am. Compl. at 77.)

The Sheriff Defendants argue that this claim must be dismissed for several reasons, (Dkt. No. 88, Attach. 1 at 21-23; Dkt. No. 90, Attach. 1 at 21-23; Dkt. No. 92, Attach. 1 at 22-23; Dkt. No. 94, Attach. 1 at 22-23; Dkt. No. 96, Attach. 1 at 22-23; Dkt. No. 98, Attach. 1 at 28-20; Dkt. No. 100, Attach. 1 at 22-23; Dkt. No. 102, Attach. 1 at 22-24), but most notably here, because Murphy's allegations do not meet the high standard required for a claim of intentional affliction of emotional distress, (Dkt. No. 88, Attach. 1 at 22-23; Dkt. No. 90, Attach. 1 at 22-23; Dkt. No. 92, Attach. 1 at 22-23; Dkt. No. 94, Attach. 1 at 22-23; Dkt. No. 96, Attach. 1 at

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 36 of 338

**Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)**

RICO Bus.Disp.Guide 13,617

22-23; Dkt. No. 96, Attach. 1 at 22-23; Dkt. No. 98, Attach. 1 at 19-20; Dkt. No. 100, Attach. 1 at 22-23; Dkt. No. 102, Attach. 1 at 23-24). Onondaga County, the Onondaga County Sheriff's Department, and Hummel do not move to dismiss.

With respect to Conway, Dickinson, and Cassalia, Murphy appears to concede this point, (Dkt. No. 116 at 23-24 ("Plaintiff's proposed amended complaint alleviates this inadvertent error ... [a]ccordingly, plaintiff will move for an amended complaint to alleviate this inadvertent error and place this extreme conduct before the Court in th[i]s ... cause[ ] of action."); *see* Dkt. No. 117 at 19-20; Dkt. No. 118 at 19-20), and argues, that with respect Blumer, Peluso, Gratien, Anderson, and Ciciarelli, the standard has been met, (Dkt. No. 124 at 16-17; Dkt. No. 125 at 17-18; Dkt. No. 126 at 16-17).

  **\*18** IIED is a "highly disfavored tort under New York law.... to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks and citations omitted). Under New York law, IIED has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56 (2016) (citation omitted). As to the first element, the "conduct [must have] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). This standard is "rigorous[ ] and difficult to satisfy." *Id.* Establishing extreme and outrageous conduct "is difficult, even at the pleadings stage." *Ifill v. United Parcel Serv.*, No. 04Civ.5963, 2005 WL 736151, at *6 (S.D.N.Y. Mar. 29, 2005) (quoting *Conboy v. AT & T Corp.*, 84 F. Supp. 2d 492, 507 (S.D.N.Y. 2000)). Indeed, "of the IIED claims considered by [the New York Court of Appeals], 'every one has failed because the alleged conduct was not sufficiently outrageous.' " *Taylor v. N.Y.C. Fresh Market*, No. 19 CV 4797, 2020 WL 10356230, at *8 (E.D.N.Y. Dec. 23, 2020) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993)).

Under the IIED heading in the amended complaint, Murphy alleges that he "was not allowed to appear in public in uniform," "was not allowed to supervise patrol officers," "was not allowed to do police work," "was required to sit at a desk all day, with no work, while others looked on," "was wrongly passed over for promotion in favor of an

officer with less experience," and that his "wife was assaulted without the [Sheriff's] Department so much as instituting an investigation." (Am. Compl. ¶ 391; *see id.* ¶ 245.) These allegations do not meet the standard for IIED. *See Kolchinsky v. Moody's Corp.*, No. 10 Civ. 6840, 2012 WL 639162, at *1-3, 7 (S.D.N.Y. Feb. 28, 2012) (holding that, where a plaintiff alleged, because of his role as a whistle blower, he was barred from meetings, demoted, had his responsibilities and salary decreased, defamed, and ultimately suspended from the company, that these "allegations do not have a hint" of the required extreme and outrageous conduct); *see also Ifill v. United Parcel Serv.*, No. 04Civ.5963, 2005 WL 736151, at *1-2, 7 (S.D.N.Y. Mar. 29, 2005) (finding that allegations that employer harassed, discriminated, demoted, and retaliated against plaintiff were insufficient to state IIED). For this reason, Murphy's tenth cause of action for IIED is dismissed as against the Sheriff Defendants. This cause of action remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, and Hummel.

### I. Negligent Infliction of Emotional Distress

Murphy's eleventh cause of action is for negligent infliction of emotional distress (NIED) against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. (Am. Compl. at 79.)

The Sheriff Defendants argue that this cause of action must be dismissed against them because none of the Sheriff Defendants breached a duty owed to Murphy which resulted in a threat or endangerment to his physical safety. (Dkt. No. 88, Attach. 1 at 24-25; Dkt. No. 90, Attach. 1 at 24-25; Dkt. No. 92, Attach. 1 at 24-25; Dkt. No. 94, Attach. 1 at 24-25; Dkt. No. 96, Attach. 1 at 24; Dkt. No. 98, Attach. at 21; Dkt. No. 100, Attach. 1 at 24-25; Dkt. No. 102, Attach. 1 at 25.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

With respect to Conway, Dickinson, and Cassalia, Murphy appears to concede this point. (Dkt. No. 116 at 23-24; Dkt. No. 117 at 19-20; Dkt. No. 118 at 19-20), and completely fails to address Blumer, Peluso, Gratien, Anderson, and Ciciarelli's arguments regarding NIED. (Dkt. No. 124 at 16-17; Dkt. No. 125 at 17-18; Dkt. No. 126 at 16-17.)

  **\*19** Under New York law, a plaintiff may establish a claim for NIED in two ways, under the "bystander theory" or "direct

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

duty theory." See *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). A plaintiff may recover "under the 'bystander' theory when: (1) [he] is threatened with physical harm as a result of defendant's negligence; and (2) consequently [he] suffers emotional injury from witnessing the death or serious bodily injury of a member of [his] immediate family." *Id.* (citation omitted); *see Quinn v. U.S.*, 946 F. Supp. 2d 267, 278 (N.D.N.Y. 2013). "A plaintiff may recover under a direct duty theory when [he] suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [his] own physical safety." *Quinn*, 946 F. Supp. 2d at 278 (internal quotation marks and citation omitted); *see Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Importantly, "[t]he duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *See Mortise*, 102 F.3d at 696 (citation omitted); *see also Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018).

Murphy appears to seek recovery under a direct duty theory. (Am. Compl. ¶¶ 393-99.) However, Murphy does not plead that any of the Sheriff Defendants owned him a specific duty, but rather that "[d]efendants had a duty not only to avoid such conduct but, to conduct themselves in a civilized and professional manner." (Am. Compl. ¶ 395.) Because Murphy has failed to plead a violation of a *specific* duty owed to him to him by any of the defendants, his eleventh cause of action for NIED is dismissed as against the Sheriff Defendants. See *Burroughs*, 325 F. Supp. 3d at 285; *see also Leibenguth v. U.S.*, No. 08-CV-6008, 2009 WL 3165846, at *4 (W.D.N.Y. Sept. 29, 2009). This claim remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

### J. Murphy's Other Motions

Although it is admittedly not entirely clear to the court the full extent of the relief sought by Murphy in his motion informing the court of alleged "improprieties" by defendants, (Dkt. No. 156), and his August 30, 2021, letter motion, (Dkt. No. 159), to the extent they seek relief inconsistent with the above, they are denied.

### V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Conway's motion for judgment on the pleadings (Dkt. No. 88) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

**ORDERED** that Blumer's motion for judgment on the pleadings (Dkt. No. 90) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

**ORDERED** that Peluso's motion for judgment on the pleadings (Dkt. No. 92) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

**ORDERED** that Gratien's motion for judgment on the pleadings (Dkt. No. 94) is **GRANTED IN PART and DENIED IN PART** as follows:

> **\*20 GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 38 of 338

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

**ORDERED** that Anderson's motion for judgment on the pleadings (Dkt. No. 96) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

**ORDERED** that Cassalia's motion for judgment on the pleadings (Dkt. No. 98) is **GRANTED**; and it is further

**ORDERED** that Ciciarelli's motion for judgment on the pleadings (Dkt. No. 100) is **GRANTED**; and it is further

**ORDERED** that Dickinson's motion for judgment on the pleadings (Dkt. No. 102) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

> **DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain: Murphy's third and fourth causes of action for § 1983 retaliation against Onondaga County, the Onondaga County Sheriff's Department, Conway, Dickinson, Blumer, Anderson, Peluso, Gratien, Hummel, Fitzpatrick, Carden, Luczka; Murphy's eighth cause of action for defamation, defamation per se, libel, and slander against Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; Murphy's ninth cause of action for conspiracy to commit defamation, defamation per se, libel, and slander against Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; Murphy's tenth cause of action for IIED against Onondaga County, the Onondaga County Sheriff's Department, and Hummel; and, Murphy's eleventh cause of action for NIED against Onondaga County, the Onondaga County Sheriff's

Department, Hummel, Fitzpatrick, Carden, and Luczka; and it is further

**ORDERED** that Murphy's motion to amend the amended complaint (Dkt. No. 123) is **DENIED** as moot; and it is further

**ORDERED** that Edwards and Westcott's motion to dismiss (Dkt. No. 143) is **GRANTED**; and it is further

**ORDERED** that Edwards and Westcott's motion regarding Murphy's proposed amended complaint (Dkt. No. 144) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** to the extent it sought denial of Murphy's motion to amend, and

> **DENIED** in all other respects; and it is further

**ORDERED** that the Sheriff Defendants' motion requesting guidance in responding to the amended RICO statement (Dkt. No. 155) is **DENIED** as moot; and it is further

**ORDERED** that the following defendants are dismissed: Cassalia, Ciciarelli, Cambareri, Edwards, and Westcott; and it is further

**ORDERED** that Murphy's motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint (Dkt. No. 156) is **DENIED**; and it is further

 **\*21** **ORDERED** that Murphy's motion to amend the RICO statement, (Dkt. No. 157) is **DENIED**; and it is further

**ORDERED** that Murphy's August 30, 2021, letter motion (Dkt. No. 159), to the extent it seeks relief from the court, is **DENIED**; and it is further

**ORDERED** that Murphy's motion to amend, (Dkt. No. 170) is **DENIED**; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Christian F. Hummel to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)

RICO Bus.Disp.Guide 13,617

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 819281, RICO Bus.Disp.Guide 13,617

## Footnotes

1   Plaintiff refers to Dickinson as both "Dickinson" and "Dickenson," the court will refer to this defendant as Dickinson.

2   For the sake of clarity, Dkt. No. 60, is deemed the operative pleading. On June 7, 2019, Murphy filed a motion to amend the complaint. (Dkt. No. 50.) The motion was unopposed, and the clerk of the court was directed to file Exhibit A to the motion, (Dkt. No. 50, Attach. 1), as the amended complaint, (Dkt. No. 53). On July 1, 2019, the amended complaint was filed. (Dkt. No. 56.) However, on July, 2, 2019, the amended complaint was filed again, by Murphy, with the only apparent change being the inclusion of counsel's name. (Dkt. No. 58.) Then again the amended complaint was filed on July 19, 2019, by Murphy, this time attaching previously omitted summonses. (Dkt. No. 60.) To the extent defendants address Dkt. No. 56, 58, and/or 60 in their submissions, the court will construe them as against Dkt. No. 60.

3   The facts are drawn from Murphy's amended complaint, (Dkt. No. 60), and presented in the light most favorable to him.

4   The amended complaint contains two paragraphs numbered "158" and two numbers "159." To the extent these paragraph are cited, they will be denoted as "158a" and "158b," and "159a" and "159b."

5   On August 8, 2021, Murphy filed a motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint. (Dkt. No. 156.) To the extent this motion sought leave to amend, it is denied as moot for the same reasons. Further, Edwards and Westcotts' motion regarding Murphy's proposed amended complaint, (Dkt. No. 144), is granted, to the extent it sought denial of Murphy's motion to amend, and denied in all other respects.

6   For example, Murphy's amended complaint contains multiple errors in paragraph numbering (*e.g.* subsequent paragraphs being numbered as follows: 157, 158, 159, 158, 159, 160; 266, 195, 267; and omitting paragraph number 248). Further, the amended complaint spells defendant's names in alternating fashions (*e.g.* Dickinson and Dickenson; Blumer and Bloomer). In his response to Ciciarelli's motion for judgment on the pleadings, (Dkt. No. 100), Murphy refers to defendant Conway rather than Ciciarelli, (Dkt. No. 126 at 5). Many of Murphy's responses to the Sheriff Defendants' Rule 12(c) motions contained errors in the table of contents, including omitting or repeating Roman numerals (*e.g.*, subsequent sections being enumerated as follows: I., III., V., VI.; and repeating the numeral VII.). (*See, e.g.*, Dkt. No. 124.) Murphy submitted his motion to amend without a cover page and unsigned. (Dkt. No. 170.) In Murphy's response to Cassalia's motion for judgment on the pleadings, (Dkt. No. 98), Murphy responds to a statute of limitations argument that was not made by Cassalia, (Dkt. No. 118 at 17-18.) Finally, in his various responses to the Sheriff Defendants' Rule 12(c) motions, Murphy completely fails to address arguments made by these defendants. (*See, e.g.*, Dkt. No. 125 (failing to address arguments regarding his § 1983 retaliation claims).) While the court can tolerate the occasional inadvertent typographical error, Murphy's errors are numerous, and occur after his counsel

**Murphy v. Onondaga County, Not Reported in Fed. Supp. (2022)**

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 40 of 338

RICO Bus.Disp.Guide 13,617

has requested a substantial amount of extension of filing deadlines. (Dkt. No. 106; Dkt. No. 109; Dkt. No. 114; Dkt. No. 119; Dkt. No. 146.)

7  Cambareri is not listed as a defendant in any of the causes of action headings in the amended complaint, but is listed as a defendant in the paragraphs following Murphy's first cause of action, (Am. Compl. ¶¶ 250-53), therefore the court will construe Cambareri as a defendant to Murphy's first cause of action only.

8  Unless otherwise noted, for all of Murphy's causes of action, the individual defendants are sued in their individual and official capacities.

9  *See supra* note 2.

10  While the amended complaint refers to an individual named "Bloomer," out of an abundance of caution, the court will assume this was an error by Murphy, and assume he intended to refer to defendant Blumer.

11  Murphy also pleads numerous "lesser" actions, which, when considered together would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik*, 464 F.3d at 225-26; *see Philips v. Bowan*, 278 F.3d 103, 109 (2d Cir. 2002). For example, Murphy alleges he was forbidden from giving orders to subordinates, forbidden from using a patrol car or from displaying his uniform in public, "subject[ed] to threatening and abusive behavior" by others in the department, had his overtime opportunities reduced, was "ordered to undertake menial tasks under circumstances that were deliberately chosen to cause him physical discomfort and agitation," was arbitrarily transferred, and was "subjected to public ridicule and embarrassment." (Am. Compl. ¶ 245.)

12  Further, with respect to Peluso, the amended complaint also alleges that shortly after raising concerns to Peluso that a complainant was not properly "attent[ed to] by [the Sheriff's Department] ... due to [the complainant's] ethnic background and her sex," Murphy was aggressively confronted by Peluso, who later filed a "vacuous" internal complaint against Murphy which was "specifically intended to prevent ... Murphy from being promoted." (Am. Compl. ¶¶ 44-55, 63-66, 101.) This further demonstrates a causal connection between Murphy's speech and the adverse employment actions carried out by Peluso. *See Shanks*, 653 F. Supp. 2d at 167.

13  To the extent Murphy makes this argument with respect to his other causes of action, it is similarly unpersuasive. (*See, e.g.*, Dkt. No. 116 at 21, 23-24; Dkt. No. 117 at 14, 19-20; Dkt. No. 118 at 14, 19-20; Dkt. No. 124 at 15; Dkt. 125 at 15-16; Dkt. No. 126 at 15.)

14  Murphy's argument that he is a member of a "class of one," (*see, e.g.*, Dkt. No. 125 at 13), is inapplicable here. *See infra* Part IV.E.; *see also Volunteer Fire Ass'n of Tappan, Inc. v. Cty. of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *8 n.13 (S.D.N.Y. Nov. 24, 2010) ("A plaintiff alleging a Section 1985 violation may not proceed under a 'class of one' theory." (citation omitted)).

15  Because Murphy is represented by counsel, his amended complaint is not entitled to the special solicitude afforded to pro se pleadings. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). Therefore, the court has not considered whether the amended complaint states a claim pursuant to the first clause of § 1985(2), which requires that a plaintiff plead: "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff," *Greene v. City of New York*, No. 08-cv-00243, 2017 WL 1030707, at *31 (E.D.N.Y. Mar. 15, 2017) (quoting *Chalal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir. 1984)), and which does not require a showing of any class-based animus. *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *c.f. Langton v. Town of Chester*, No. 14 Civ. 9474, 2017 WL 6988708, at *6 (S.D.N.Y. Sept. 26, 2017) (citation omitted).

16    The Sheriff Defendants' argument that Murphy has failed to state a claim for defamation appears to be premised on the more stringent pleading requirements of N.Y. C.P.L.R. § 3016(a), which requires that "the particular words complained of shall be set forth in the complaint." (*See, e.g.*, Dkt. No. 88, Attach. 1 at 19.) While the amended complaint does not meet this standard, "state procedural rules do not apply to federal courts ... and federal courts instead apply the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure." *Nouinou v. Smith*, No. 20-CV-8682, 2021 WL 4340952, at *5 (S.D.N.Y. Sept. 22, 2021) (citing *Treistman v. Wacks*, No. 12-CV-1897, 2017 WL 639322, at *4 (N.D.N.Y. 2017)); *but see Nichols v. BAC Home Loans Servicing LP*, No. 1:13-CV-00224, 2013 WL 5723072, at *12 (N.D.N.Y. Oct. 18, 2013) (applying the heightened pleading standard of C.P.L.R. 3016 and requiring the plaintiff to plead "the particular words giving rise to his [defamation] claim"). However, as explained herein, Murphy's cause of action fails under either pleading standard.

17    The court will not discuss statements attributable to any of the defendants that are clearly non-defamatory, such as: "Blumer indicated that she would address the matter with the deputy," (Am. Compl. ¶ 90), "Peluso ... stated ... that when he 'sixes' a complaint, it stays 'sixed,' " (*id.* ¶ 63), or "Ciciarelli informed Murphy that Gratien had not recorded the fact of the illegal search and seizure in his Duty Commander log for that night," (*id.* ¶ 110). *See Premier Med. Sys., LLC v. NeuroLogica Corp.*, No. 1:21-cv-1337, 2022 WL 603999, at *12 (S.D.N.Y. Feb. 28, 2022) (finding that a defamatory statement must "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and ... deprive him of ... friendly intercourse in society") (citation omitted).

18    Murphy also alleges, with respect to Dickinson, that, after Murphy brought this suit, Dickinson made "had several improper, unsupported and baseless referrals to the Onondaga County Sheriff's Office Internal Affairs Office." (Am. Compl. ¶ 229.) Murphy does not provide the content of these referrals, however, and, thus, this allegation does not allow him to avoid dismissal as to Dickinson. *See Hillary*, 2015 WL 902930, at *11 (holding that, for a defamation claim to survive a motion to dismiss, a plaintiff must "identify ... the allegedly defamatory statements" (citation omitted)).

19    Murphy lists five ambiguous statements within his defamation cause of action, none of which are attributed to a particular defendant. (Am. Compl. ¶ 360.) To the extent these are alleged as against Cassalia, Ciciarelli, or any of the defendants, they do not make out a claim of defamation. See *Hillary*, 2015 WL 902930, at *11 (for a defamation claim to survive a motion to dismiss a plaintiff must "identify ... the person who made the statements" (citation omitted)).

20    For the reasons noted above, Murphy's defamation claims against Conway are dismissed, regardless of this argument.

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

2021 WL 3737780

United States District Court, N.D. New York.

Susan L. POOLE; Thomas Clatterbuck; Sue Clatterbuck; Joseph S. Cochran; Brenda S. Cochran; Charles C. Manner; Dennis H. Owens; Brent Rogers; Robert Shaw; New York Animal and Farm, LLC; John Doe 1; John Doe 2; Jane Doe 2; John Doe 3; John Doe 4; John Doe 5; John Doe 6; John Doe 7; and Jane Doe 7, Plaintiffs,

v.

Brian BENDIXEN; Amber Brown; Karen Cartier; Earl Dehmey; James Kelleher; Sharad Marthur; Alex Bachelor; Martin Bates; Alan Bernon; Andrew Brummel; Kristen Coady; David Darr; Doug Glade; Keith Gomes; Brad Keating; Jackie Klippenstein; Monica Massey; Randy McGinnis; Pat Panko; Dennis Rodenbaugh; Rick Smith; Kevin Strathman; Edward Tilley; Jay Waldvogel; Greg Wickham; John Wilson; Larry Bailey; Bruce Bartley; William Besancon; Patricia Bikowsky; Kenneth Birker; Keith Broumley; Glen Easter; Craig Elder; Travis Fogler; Alan Gerratt; Gregory Gibson; Buster Goff; Larry Griffith; Larry Hancock; Dean Handy; Brian Hardy; Todd Hathorn; Jerrel Heatwole; Kent Herman; Neil Hoff; Garry Kibler; Chris Kraft; Lilah Krebs; Scott Lackey; Byron Lehman; Melvin Medeiros; Randy Mooney; Larkin Moyer; Dwight Nash; Doug Nuttelman; Thomas Oelrichs; Peter Olsen; Leroy Ornellas; Jacques Parent; Valeri Patten; Rick Podburg; Jeff Raney; Brian Rexing; Terry Rowlett; Dan Senestraro; Ron Shelton; Larry Shover; Jerry Spencer; Sandy Stauffer; Steve Strickler; Perry Tjaarda; Case Van Steyn; David White; and John Woebler, Defendants.

5:20-CV-0697 (GTS/ATB)
|
Signed 08/24/2021

**Attorneys and Law Firms**

LAW OFFICE of JOSHUA HAAR, Counsel for Plaintiffs, 1495 Paddock Road, West Edmeston, NY 13485, OF COUNSEL: JOSHUA HAAR, ESQ.

BOND SCHOENECK & KING, PLLC, Counsel for Defendants, One Lincoln Center, Syracuse, NY 14202, OF COUNSEL: BRIAN J. BUTLER, ESQ.

**DECISION and ORDER**

Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this civil Racketeer Influenced and Corrupt Organizations ("RICO") action filed by the above-captioned dairy supply business, dairy company shareholder and seventeen dairy farmers ("Plaintiffs") against the seventy-five above-captioned agents, managers and board members of a national dairy cooperative ("Defendants"), are Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b) (6), and Defendants' motion for sanctions pursuant to Fed. R. Civ. P. 11. (Dkt. No. 11; Dkt. No. 15.) For the reasons set forth below, Defendants' motion to dismiss is granted, and Defendants' motion for sanctions is denied.

**I. RELEVANT BACKGROUND**

**A. Summary of Plaintiffs' Complaint**

Generally, liberally construed, Plaintiffs' Complaint alleges that the Dairy Farmers of America, Inc. ("DFA"), through Defendants (i.e., its agents, managers, and board members), used extortion to gain control of both the exclusive market for dairy farmers' raw milk and the exclusive source of finished dairy products for retail in numerous areas of the country. (See generally Dkt. No. 1 [Plf.'s Compl.].) Based on these factual allegations, Plaintiffs' Complaint claims that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1964, and asks the Court to do the following: (1) declare Defendants liable for damages for racketeering; (2) order the receivership and subsequent divestiture of all processing operations owned or controlled by the DFA; (3) order the DFA be dissolved and any equity returned to its member farms, and that those member farms released from any and all obligation to the DFA; (4) award damages, costs, and attorneys' fees; and (5) award such further relief as the Court sees fit. (See generally id.)

**B. Three Alleged Predicate Acts of Extortion**

Plaintiffs' Complaint and Civil RICO Statement alleges that Defendants committed three acts of extortion that qualify as predicate acts sufficient to support their RICO claims. (Dkt. No. 1; Dkt. No. 10.) [1] To provide context for the parties' legal

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

arguments and the Court's analysis, the Court describes the alleged acts below. [2]

### 1. Consent to Settle Antitrust Claims

The first alleged predicate act originated in June 2014, when the DFA was facing a jury trial in Vermont on antitrust grounds. (Dkt. No. 1, at 42.) According to Plaintiffs, in 2016, after two unsuccessful attempts to settle the lawsuit, the DFA's leadership extorted dairy farmers (who were members of the DFA and had previously rejected the first two settlements) with threats that, if those dairy farmers did not sign and support the DFA's settlement, those farmers should consider switching to organic milk production and start looking for new processing plants, they would be dismissed from their cooperatives, and their cooperatives could lose access to DFA's nation-wide marketing entity Dairy Marketing Services [3] ("DMS"). (*Id.* at 43-44.) More than 1,200 farmers from the DFA and other entities, including "independent" dairy farmers, signed the DFA's form letters, and the suit against the DFA was settled and closed. (*Id.* at 45.)

### 2. Obtaining a Controlling Share of the National Milk Supply

**\*2** The second alleged predicate act occurred when the DFA's leadership, emboldened by the earlier coerced settlement, used its control over national milk markets to make it impossible for a mid-sized plant to find milk outside of the DFA/DMS, or for an individual farmer or small cooperative to send its milk to such a plant. (*Id.* at ¶ 46.) According to Plaintiffs, the DFA managers gave independent farmers and cooperatives who had shipped their products through DMS a choice: market their milk through the DFA and agree to a "market adjustment" deduction from the farmers' pay price, or lose market access. (*Id.* at 47.) Although the U.S. Department of Agriculture estimated the milk per-hundredweight cost of production to be $21.74 in 2018 (including land, equipment, and labor put in by unpaid owner/operator farmers), one Midwest cooperative's DFA market adjustment was more than 25% of its farmers' per-hundredweight milk price of $16.00, and a northeast farm had to choose between losing $2.50 of its per-hundredweight price of $12.00 or having no market access for its milk. (*Id.* at 48-49.)

The DFA managers also used the cooperative's position as the primary supplier of certain regional dairy processors to dictate the terms on which those processors could accept milk from smaller cooperatives or individual farmers, thereby substantially controlling the entire milk market without exercising direct ownership of it. (*Id.* at 50.) After the DFA absorbed another cooperative in 2019, Agri-Mark and its 850 members became the only significant alternative cooperative in the northeast. (*Id.* at 52.) However, Agri-Mark was and is forbidden from taking on members from the DFA without its express permission. (*Id.*) DFA managers were able to charge milk buyers over-market prices for milk products while simultaneously paying farmers less than the cost of production, because prospective dairy farmers had no viable option, aside from the DFA, to whom to sell their milk, and prospective milk processors had no other viable option, aside from the DFA, from which to buy milk. (*Id.* at 53.) Numerous dairy farmers, regardless of whether they are members of the DFA or other smaller "independent" cooperatives, were and are afraid to raise any concern out of a fear of retaliation from the DFA. (*Id.* at 54.)

### 3. Controlling the Nation's Largest Dairy Processing Network

The third alleged predicate act concerned the DFA's relationship with Dean Foods. According to Plaintiffs, DFA's management demanded Dean Foods pay the DFA over-market prices in order to maintain access to its milk, which constituted approximately 60% of Dean Foods' milk utilization. (Dkt. No. 1 at 56.) On or about November 12, 2019, Dean Foods filed for chapter 11 bankruptcy, listing the DFA as its largest trade creditor; the DFA was owed $173 million, while the second-largest trade creditor was owed $8 million. (*Id.* at 58.) During the time leading up to the Dean Foods bankruptcy filing, the DFA was, at substantially all times, Dean Foods' primary supplier of USDA Grade A raw milk, and the amounts paid for the USDA Grade A raw milk were, at substantially all times, Dean Foods' primary input cost. (*Id.* at 59.) When Dean Foods announced its bankruptcy filing, it also announced that it was in advanced discussions with the DFA to transfer substantially all of its assets to the DFA. (*Id.* at 63.)

Despite the availability of financing for an out-of-court restructuring prior to the bankruptcy filing, Dean Foods expressed no real interest in restructuring to avoid bankruptcy. (*Id.* at 65.) Mr. Gary Ralphs served on PepsiCo's senior

management in 2015 when PepsiCo turned over a $206 million plant in Batavia, New York, to the DFA for thirty cents on the dollar following the bankruptcy of a PepsiCo dairy processing joint venture with Quaker Muller. (*Id.* at 64.) In May 2019, Mr. Ralphs became a Senior Vice President at Dean Foods in its Finance and Strategy Division; in September 2019, he became Dean Foods' CFO, a position he held for the duration of the bankruptcy and sale to the DFA. (*Id.*) Dean Foods had no alternative source for the volume of milk which the DFA provided during its working relationship, and, even if it had located an alternative source for the volume of milk, Dean Foods could not materially breach or terminate its milk supply agreement with the DFA without incurring a $96 million penalty. (*Id.* at 66.) Had Dean Foods continued operating into 2021, the penalty would have expired without any obligation to pay any portion of the principal or interest. (*Id.*)

### C. Parties' Briefing on Defendants' Motion to Dismiss

**\*3** Generally, in support of their motion to dismiss, Defendants assert the following six alternative arguments: (1) Plaintiffs' Complaint should be dismissed for failure to comply with the timely filing of a RICO statement, pursuant to Local Rule 9.2 of the District's Local Rules of Practice, because Plaintiffs were required to file their RICO statement by July 22, 2020, and instead filed their RICO statement on September 3, 2020, approximately six weeks late, with no excuse or explanation for their tardiness; (2) Plaintiffs' Complaint fails to satisfy fundamental notice and pleading requirements because (a) it fails to assert a single factual allegation about the conduct of any of the seventy-five (75) Defendants, and Plaintiffs' RICO statement similarly fails to expressly allege that any one individual Defendant actually committed two predicate acts or otherwise conspired to commit a RICO violation, and (b) even where Plaintiffs' RICO statement does refer to individual Defendants, it impermissibly lumps their conduct together without any differentiation or explanation, offering only vague, sweeping allegations that are plainly insufficient to satisfy Rule 8's minimum standard; (3) Plaintiffs lack standing to assert their RICO claim because (a) their Complaint does not allege any link between Defendants' conduct and Plaintiffs in that their first and second alleged predicate acts do not include any allegations that Defendants caused any injury to Plaintiffs, (b) the third predicate act makes no reference to any action by Defendants nor any injury that they allegedly caused Plaintiffs, and, even if the Complaint had alleged that DFA's management pressured Dean Foods to overpay for DFA's milk (which in turn led Dean Foods to declare

bankruptcy, which in turn injured Dean Foods' shareholders), it is nevertheless insufficient to establish RICO standing for Plaintiff Poole or the dairy farmer Plaintiffs, (c) the law is well settled that a company's shareholders generally lack standing to assert a civil RICO claim, and Plaintiff Poole's suit as a shareholder fails to show she suffered any different individual harm as compared to other shareholders, and (d) nothing in Plaintiffs' RICO statement asserts any particularized allegations about how any one of the individual Defendants proximately caused harm to any one of the individual Plaintiffs; (4) Plaintiffs have failed to sufficiently plead a RICO claim because (a) they have failed to allege a RICO conspiracy in that the alleged conspiracy of the operational agreement among the DFA's individual board members and managers to create and use the fear of personal failure to force substantially all U.S. dairy farmers to market their milk through Defendants' enterprise fails to allege that Defendants knowingly conspired to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, (b) Plaintiffs have not adequately alleged a substantive RICO violation in that (i) their Complaint fails to allege which predicate act Defendants committed, and the civil RICO statement also fails to allege that any one Defendant committed two predicate acts, (ii) none of the predicate acts alleged by Plaintiffs qualifies as a RICO extortion under the Hobbs Act given that the use of economic fear as leverage to drive a hard bargain in an ordinary commercial relationship does not support a RICO claim based on extortion, (iii) even if the predicate acts were true and timely (which they are not), the first and second predicate acts cannot constitute extortion under the Hobbs Act given that Defendants' conduct was lawful hard-bargaining, and Plaintiffs did not have any "preexisting right" or entitlement to do business with the DFA, and (iv) Plaintiffs third predicate act, even if true, alleges that Defendants committed extortion against a third party, not Plaintiffs, and, in any event, the alleged conduct does not constitute extortion under the Hobbs Act, (c) Plaintiffs' Complaint fails to allege a pattern of racketeering in that it fails to allege that any Defendant committed two cognizable predicate acts of extortion, and (d) Plaintiffs have not sufficiently alleged Defendants' relationship to a RICO enterprise in that Plaintiffs fail to pled the existence of an enterprise separate and apart from the DFA, which is insufficient as a matter of law; (5) Plaintiffs have failed to establish personal jurisdiction over Defendants because (a) Plaintiffs fail to allege facts plausibly suggesting that a specific Defendant resides in, is found in, has an agent in, or transacts his or her affairs in the Northern District of New York, and (b) Plaintiffs' substantial business standard

RICO Bus.Disp.Guide 13,545

is inapplicable to establish personal jurisdiction for RICO claims; and (6) the claim brought by the anonymous John and Jane Doe Plaintiffs should be dismissed because there is no conceivable privacy concern that could justify any Plaintiff proceeding anonymously. (*See generally* Dkt. No. 11, Attach. 3 [Defs.' Mem. of Law].)

Generally, in opposition to Defendants' motion, Plaintiffs assert the following seven arguments: (1) their Complaint alleges both the direct and proximate cause of their RICO injuries because (a) the sequence between Defendants' alleged extortion and Plaintiffs' injury is direct in that Plaintiffs lost milk income as a result of Defendants' extortion, and (b) Plaintiff Poole's loss of invested shares in Dean Foods is a personal and independent injury in that her loss of share value constituted a personal loss to her; (2) Plaintiffs' Complaint provides fair notice to Defendants because (a) it sufficiently traces Plaintiffs' injuries to each Defendant by initially listing each individual Defendant as an "agent," "manager," or "board member," who "performed," "directed," or "aided and abetted" a conspiracy, and by subsequently describing which conduct was performed by individuals or groups of individuals, and (b) the relevant inquiry is what is the nature of each Defendant's participation in the unlawful agreement, not whether each Defendant committed each predicate act; (3) Plaintiffs' Complaint alleges an unmistakable pattern of racketeering because (a) it alleges three predicate acts of extortion and explains how each successive act made full use of the leverage gained by the preceding acts, (b) the predicate acts cannot be characterized as the use of lawful economic fear as leverage to drive a hard bargain in an ordinary commercial relationship in that Plaintiffs' fear extends beyond mere financial or business concerns due to Defendants' comprehensive control of available milk markets and the distribution network; (4) Plaintiffs' Complaint alleges a separate and distinct RICO enterprise because (a) it alleges that Defendants conspired to operate the DFA by a pattern of racketeering in order to build a personally controlled milk empire and that Defendants were acting on behalf of their own interests when engaging in their "empire building" activities, which are fundamentally different than the DFA's marketing activities, (b) although these empire-building activities benefited the DFA as a whole, they plainly did not benefit the DFA as a cooperative due to the severe injuries suffered by many of the DFA's member-owners, and (c) even where the distinction between Defendants' milk-marketing and empire-building activities is less clear, the law cannot be read so as to merge the person and enterprise wherever some benefit from the person's illegal

conduct can be attributed to the enterprise, or it would insulate racketeering under the very statute designed to eradicate it; (5) Plaintiffs' Complaint establishes personal jurisdiction over each Defendant because corporate agents are subject to personal jurisdiction within a district if their activities in the district are outside of the corporations' ordinary activities, and each Defendant has agreed to further an unlawful course of conduct outside of the DFA's ordinary activities, which is the factual scenario in this case; (6) Plaintiffs' Complaint establishes jurisdiction over the claims of the John and Jane Doe Plaintiffs because a plaintiff may proceed under a pseudonym where his or her interest in anonymity outweighs the general public interest in disclosure as well as any prejudice to Defendants and, in this case, the relative interests weigh in favor of the anonymous Plaintiffs in that they are essentially whistle-blowers and Defendants face no prejudice that the issues raised in this case arise from Defendants' own misconduct, which are not directed at any individual plaintiff or Doe Plaintiff; and (7) Plaintiffs' claims are timely because (a) the statute of limitations runs for four years from the time the plaintiff discovers or reasonably should have discovered the alleged injury (not from the date of the alleged predicate acts) and here Plaintiffs did not reasonably discover the alleged injury until the DMS ceased operations in 2017, (b) Defendants' objection to the RICO statement on timeliness grounds is moot in that they argue that Plaintiffs RICO statement "fails to aid Plaintiffs' claims" and "largely rehashed generic, undetailed, and unspecific allegations," and (c) in any event, both parties were working in good faith on other aspects of the case, and Defendants gained an additional three-and-a-half weeks to review the RICO Statement prior to filing their response to the Complaint, thereby nullifying any good-faith basis to challenge the RICO statement's timing. (*See generally* Dkt. No. 14 [Plfs.' Mem. of Law].)

**\*4**  Generally, in reply to Plaintiff's opposition, Defendants repeat their original arguments, and clarify them as follows: (1) Plaintiffs' Complaint should be dismissed for failure to comply with Local Rule 9.2 because (a) they were required to file their RICO Statement by July 22, 2020, and instead filed it on September 3, 2020, without requesting leave from the Court to file six weeks late, (b) Defendants' view of the quality of Plaintiffs' RICO Statement is irrelevant to its timeliness, and (c) while both parties were working on other aspects of the case, Plaintiffs' deadline for filing their RICO Statement (or an agreement about extending the deadline) was never discussed; (2) Rule 8 of the Federal Rules of Civil Procedure requires the dismissal of Plaintiffs' Complaint because Defendants' conduct is impermissibly

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 46 of 338

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)
RICO Bus.Disp.Guide 13,545

lumped together, and Plaintiffs have not identified any other allegations in their RICO Statement (aside from their "grouping" of Defendants) that provide any greater notice to Defendants of their alleged misconduct; (3) Plaintiffs have failed to establish RICO standing by failing to allege that (a) they fail to allege that Defendants, alone or as a group, proximately caused an injury to any Plaintiff, (b) the subset of dairy farmer-Plaintiffs who allege they have been injured by the extortion of milk-check deductions do not allege a single fact plausibly suggesting that their injury was caused by any Defendant, and (c) Plaintiff Poole has no standing as a shareholder of Dean Foods in that the law is well settled that a company's shareholders generally lack standing to bring a civil RICO claim; (4) Plaintiffs have failed to sufficiently plead a RICO conspiracy because (a) their Complaint fails to allege an agreement to commit a substantive RICO violation in that their allegation that Defendants maintained an "operational agreement among DFA's individual board members and managers to create and use the fear of personal failure as stewards ... to force substantially all U.S. dairy farmers to market their milk through Defendants' enterprise" does not allege that Defendants agreed to commit racketeering, to commit predicate acts, or otherwise commit a substantive RICO violation, and (b) Plaintiffs have failed to allege the required elements of a substantive RICO violation in that (i) their Complaint does not allege the conspiracy included an agreement to commit cognizable predicate acts (given that the DFA, as a cooperative, can certainly engage in hard-bargaining with its members), and the second and third predicate acts do not even concern the DFA's own members, (ii) Second Circuit precedent explains that hard-bargaining can occur even where someone is desperate and the economic consequences of refusing an act are dire, and (iii) Plaintiffs' first alleged predicate act is untimely because Plaintiffs' allege that DFA's managers extorted them into signing letters in support of a settlement, thereby injuring the signees, outside of the four-year statute of limitations period, (c) Plaintiffs have failed to allege a pattern of racketeering activity in that they have failed to allege that a Defendant committed two cognizable predicate acts, and (d) Plaintiffs have failed to sufficiently allege a RICO enterprise in that (i) their Complaint alleges that the enterprise at issue is the DFA, and (ii) their Complaint does not allege that the enterprise at issue is some association-in-fact consisting of Defendants carrying out activities separate and apart from their work as DFA board members and employees; (5) Plaintiffs have failed to establish personal jurisdiction over each Defendant because, in a civil RICO action, a plaintiff must show that a specific defendant resides in, is found in, has an agent in, or

transacts his or her affairs in the district, and Plaintiffs have failed to allege any of these activities occurred within the Northern District of New York; and (6) the claims brought by anonymous Plaintiffs should be dismissed because the law provides for anonymity only in "exceptional cases," and this is no such "exceptional" case. (*See generally* Dkt. No. 16.)

### D. Parties' Briefing on Defendants' Motion for Sanctions

Generally, in support of their motion for sanctions, Defendants assert the following two arguments. First, Defendants argue that sanctions should be imposed on both Plaintiffs' counsel and Plaintiffs themselves because the Complaint is frivolous, unsupported in law, and unsupported in fact. (Dkt. No. 15, Attach. 6, at 14-23.) In support of this argument, Defendants reassert their arguments from their motion to dismiss. (*Id.*) Defendants also highlight the prior history of Plaintiffs' counsel's with the DFA, specifically his prior involvement in *Haar v. Allen*, 687 F. App'x 93, 95 (2d Cir. 2017), the denial of his *pro hac vice* application in *Carlin v. DairyAmerica, Inc.*, 09-CV-0430, 2019 U.S. Dist. LEXIS 115717, at \*6-7 (E.D. Cal. July 11, 2019), and his attempt to intervene in the bankruptcy proceedings concerning Dean Foods, where, after withdrawing a motion under an apparent "threat of sanction," he filed a "highly inflammatory and unprofessional amicus brief." (Dkt. No. 15, Attach. 6, at 11-12.) Second, Defendants argue that Plaintiffs' Complaint was filed for an improper purpose because the Complaint is strikingly inadequate on its face and it was filed in service of the personal agenda of Plaintiff's counsel, not in service of justice. (*Id.* at 23-24.)

Generally, in opposition of Defendants' motion for sanctions, Plaintiffs assert the following three arguments: (1) Plaintiffs have provided each Defendant with objective notice because (a) they have pled facts showing that each Defendant participated in an agreement to use their organization to extort other dairy industry participants to gain substantial control of the U.S. dairy industry, (b) each Defendant had authority over such activities, (c) each Defendant is subject to personal jurisdiction through purposeful availment, thereby satisfying Fed. R. Civ. P. 8, (d) the declarations submitted by Defendants in support of their motion support the fact that each Defendant was well aware of the extortion methods used within their organization, and (e) Defendant Heatwole's declaration is not credible because the evidence underlying Plaintiffs' Complaint involves Defendant Heatwole telling struggling farmers to "find another job [they] like because [the] DFA runs the dairy industry;" (2) Plaintiffs possess standing

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 47 of 338

under the RICO act because (a) Defendants' definition of a legal standard omits the causation elements that places Plaintiffs' injuries within recoverable civil RICO injuries, (b) the predicate acts, by themselves, have no bearing on the statute of limitations issues, and Defendants attempt to conflate the actions of Defendants' first predicate act with the injury suffered by Plaintiffs, and (c) a shareholder has standing to recover personal injuries, and Second Circuit precedent explicitly provides for the recovery of injuries suffered by a shareholder where stock is stolen and the individual suffers an injury personal to him or her and no other; and (3) the facts alleged by Plaintiffs leave no doubt that the threats alleged are distinctly personal, not merely economic, and that the relationship between a dairy farmer and a cooperative which controls all outlets for the farm's milk is anything but an ordinary commercial relationship, both in terms of duty and of comprehensive market control. (*See generally* Dkt. No. 17.)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

**\*5** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R.

Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added). [4]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-82 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561-62. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*6** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 48 of 338

a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.* at 678, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an adorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [5]

**B. Legal Standard Governing a Motion for Rule 11 Sanctions**

**\*7** Rule 11(b)(2) of the Federal Rules of Civil Procedure provides in pertinent part that, by presenting a complaint to the court, the attorney signing or filing the complaint

    certifies that to the best of the person's knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(2). Rule 11(c)(1) provides in pertinent part that sanctions may be imposed on the attorney or any party that is "responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Rule 11 is targeted at situations where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands." *Rodrick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted) (quoting *Associated Indem. Corp. v. Fairchild Indus.*, 961 F.2d 32, 34 [2d Cir. 1992]). Because the inquiry must be "reasonable under the circumstances," liability for Rule 11 violations "requires only a showing of objective unreasonableness" on the part of the attorney or party. *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (emphasis omitted); *accord, ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).

**C. Legal Standard Governing Civil RICO Claims**

It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1962(d) applies the same prohibitions to a defendant who conspires to violate Section 1962(c). *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at \*7 (S.D.N.Y. Apr. 24, 2020). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property "by reason of a violation of section 1962." *Malvar Egerique*, 2020 WL 1974228, at \*7 (citing *Moss v. Morgan Stanley, Inc.*,

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 49 of 338

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

719 F.2d 5, 17 [2d Cir. 1983] [citing 18 U.S.C. § 1962(c)]). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

**\*8** Regarding the second element, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To allege an enterprise, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In particular, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. The Second Circuit has "long recognized [that] the plain language and purpose of the statute contemplate that a person violates the statute by conducting an enterprise through a pattern of criminality. It thus follows that a corporate person cannot violate the statute by corrupting itself." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citing *Bennet v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 315 [2d Cir. 1985]). Accordingly, a plaintiff alleging a civil RICO claim must allege the existence of two distinct entities, a person, and an enterprise. *Chowaiki*, 2020 WL 1974228, at \*8; *Cruz*, 720 F.3d at 120.

Regarding the third and fourth elements, to sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other. 18 U.S.C. § 1961(5). "Racketeering activity" refers to the predicate acts necessary to establish a RICO claim and includes extortion. *See* 18 U.S.C. § 1961(1) (listing predicate acts that constitute a racketeering activity). To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' " *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 [2d Cir 1999]). " 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original) (quoting *Sedima*, 473 U.S. at 496 n.4).

Regarding the relationship factor, for predicate crimes to be considered related to each other under RICO, they must be related to both each other (termed "horizontal relatedness") and the enterprise as a whole ("vertical relatedness"). *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017 (citing *United States v. Cain*, 671 F.3d 271, 284 [2d Cir. 2012]). "Vertical relatedness, which entails the simpler analysis, requires only 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprises' affairs, or because the offense related to the activities of the enterprise.' " *Reich*, 858 F.3d at 61 (quoting *United States v. Burden*, 600 F.3d 204, 216 [2d Cir. 2010]). "[P]redicate acts are *horizontally* related when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 61 (emphasis in original) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 [1989]). Therefore, "when dealing with an enterprise that is primarily a legitimate business ... courts must determine whether there is a relationship between the predicate crimes themselves' and that requires a look at, *inter alia*, whether the crimes share 'purposes, results, participants, victims, or methods of commission.' " *Id.* (quoting *H.J.*, 492 U.S. at 240).

Regarding the continuity factor, "[t]o satisfy continuity, the plaintiff must establish either 'a series of related predicate acts extending over a substantial period of time' ('closed-ended continuity') or 'a threat of continuing criminal activity' ('open-ended continuity'). *Malvar Egerique*, 2020 WL 1974228, at \*9 (quoting *Cofacredit, S.A.*, 187 F.3d at 242). "RICO targets conduct that 'amounts to or poses a threat of continued criminal activity.' " *Reich*, 858 F.3d at 60 (alterations omitted) (quoting *H.J.*, 492 U.S. at 239). Closed-ended continuity is "primarily a temporal concept" *id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 [2d Cir. 2008]), "and it requires that the predicate crimes 'extend over a substantial period of time' " *id.* (quoting *H.J.*, 492 U.S. at 242). Generally, the Second Circuit "requires that the crimes extend over at least two years." *Id.* (citing *Spool*, 520 F.3d at 184). However, criminal activity that by its nature projects into the future with a threat of repetition is considered open-ended continuity and can be established in several ways, including where the predicate acts were the regular way of operating that business, even if the business itself is primarily lawful. *Id.*

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

**\*9** Finally, to allege a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege "a *conspiracy* to commit a substantive RICO violation." *Spool*, 520 F.3d at 183 (emphasis added). In particular, "[b]ecause the core of a RICO civil conspiracy is an *agreement* to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (emphasis added). As a result, to properly allege a civil RICO conspiracy under Section 1962(d), a plaintiff must allege that the defendant "knew about and agreed to facilitate the [RICO] scheme." *Salinas v. United States*, 522 U.S. 52, 66 (1997). Regarding the facilitation requirement, "a plaintiff must allege that the conspirator intended to further an endeavor that, if completed, would satisfy all of the elements of a substantive" criminal offense; however, it is sufficient for a plaintiff to allege that the "conspirator adopted the goal of furthering or facilitating the criminal endeavor." *Chowaiki*, 2020 WL 1974228, at \*8.

### III. ANALYSIS

#### A. Whether Plaintiffs Have Standing to Pursue Their Claims

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 11, Attach. 3; Dkt. No. 16.) To those reasons, the Court adds the following analysis, which is intended to supplement and not supplant Defendants' reasoning.

To establish Article III standing, a plaintiff must demonstrate (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that can likely be redressed by a favorable decision. *Mantena v. Johnson*, 809 F.3d 731, 731 (2d Cir. 2015). "The plaintiff ... bears the burden 'clearly to allege facts [in his complaint] demonstrating that he is a proper party to invoke judicial resolution of the dispute.' " *Steinberger v. Lefkowitz*, 634 F. App'x 10, 11 (2d Cir. 2015) (quoting *Warth v. Seldin,* 422 U.S. 490, 518 [1975]). Plaintiffs must also show that they have "prudential standing," which includes a "general prohibition on a litigant's raising another person's legal rights." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015). The Second Circuit has recognized that "[a] shareholder–even a sole shareholder– does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagra Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (S.D.N.Y. 1983), *aff'd*, 742 F.2d 1440 (2d

Cir. 1983). Rather, the plaintiff must have been injured in a "personal and individual way" in order to have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

RICO standing is more rigorous than Article III standing. *Denny v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). To establish standing to bring a civil RICO claim, a plaintiff must show the following: (1) a violation of Section 1962, (2) an injury to the plaintiff's business or property, and (3) that the defendant's violation was the proximate cause of the plaintiff's injury. *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 112, 120-24 [2d Cir. 2003]). "Proximate cause for RICO purposes ... requires 'some direct relation between the injury asserted and the injurious conduct alleged.' " *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 [1992]).

In this case, there are three groups of Plaintiffs: a dairy supply business (New York Animal and Farm, LLC), a shareholder of Dean Foods (Susan Poole), and seventeen dairy farmers. The Court first addresses the question of the standing of the dairy supply business, New York Animal and Farm, LLC ("Animal and Farm"). "[A] plaintiff does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts...." *Baish v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120-24 [2d Cir. 2003]). Here, Plaintiffs' Complaint merely alleges that Plaintiff Animal and Farm's revenue stream was injured by Defendants' racketeering activity in that Defendants indirectly caused Plaintiff Animal and Farm's injury. (Dkt. No. 1, at ¶ 3.) This allegation, without more, fails to plausibly suggest a direct relationship between the injury suffered and the injurious conduct alleged. Plaintiffs' Complaint also fails to identify which of the seventy-five Defendants were involved in Plaintiff Animal and Farm's injury. In short, because Plaintiffs' Complaint fails to allege that any of the seventy-five Defendants proximately caused the injury to Plaintiff Animal and Farm, the Court finds that Plaintiff Animal and Farm lacks standing to assert a civil RICO claim.

**\*10** The Court next addresses the question of the standing of the shareholder Plaintiff, Susan Poole. For shareholders to have standing, they must plead facts plausibly suggesting that the loss of their shares value was "separate and distinct from the injury sustained by the corporation." *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993). Although Plaintiff Poole

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

argues that she suffered a personal injury through the loss of share value, she fails to plausibly suggest, let alone mention, how her loss is different from that of any other shareholder. Moreover, Plaintiff Poole's argument that "Dean Foods' price and asset losses *may not themselves be wholly derivative*" is speculative. (Dkt. No. 14, at 8 [emphasis added].) For each of these two alternative reasons, the Court finds that Plaintiff Poole lacks standing to assert her civil RICO claim.

Turning to the question of the standing of the dairy-farmer Plaintiffs, the Court also finds that they have failed to establish standing. Specifically, they have failed to plead facts plausibly suggesting that a single Defendant personally harmed a single dairy-farmer Plaintiff. Plaintiffs' argument that there is no requirement to show Defendants personally harmed them is inaccurate. *See Hemi, 559 U.S. at 9)* ("A link [to establish proximate cause] that is too remote, purely contingent' or indirec[t] is insufficient.") (internal quotation marks omitted); *see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998)* (explaining that the "irreducible constitutional minimum of standing" requires "causation–a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.")

For these reasons, as well as the reasons stated in Defendants' memoranda of law, the Court finds that Plaintiffs lack standing to sue the individual Defendants. In the interest of thoroughness, however, the Court will continue with its analysis Defendants' other arguments for dismissal.

**B. Whether Plaintiffs Have Stated a RICO Claim**
After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 11, Attach. 3; Dkt. No. 16.) To those reasons, the Court adds the following analysis, which (again) is intended to supplement and not supplant Defendants' reasoning.

Taking Defendants arguments out of order, the Court finds that Plaintiffs' Complaint fails to satisfy fundamental notice and pleading requirements under Fed. R. Civ. P. 8 (and Fed. R. Civ. P. 12[b][6]). Specifically, Plaintiffs' Complaint fails to make a single allegation about the alleged conduct of any one of the seventy-five individual Defendants, and, even where the Complaint and civil RICO statement does refer to Defendants, it lumps their conduct together by listing each Defendant as an "agent," "manager," or "board member" who "performed," "directed," or "aided and abetted" a

conspiracy without any differentiation or explanation as to which "agents," "managers," or board members engaged in each predicate act. (Dkt. No. 11, Attach. 3, at 17-18.) "Although Fed. R. Civ. P 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.' " *Atauhene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 [2d Cir. 1961]). "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [Plaintiffs'] complaint failed to satisfy [Fed. R. Civ. P. 8's] minimum standard." *Atauhene*, 10 F. App'x at 34. Because Plaintiffs fail to provide the individual Defendants with any meaningful notice of the factual basis underlying Plaintiffs' Complaint, they have failed to provide Defendants with sufficient notice under Fed. R. Civ. P. 8.

**\*11** Alternatively, the Court finds that Plaintiffs' Complaint warrants dismissal due to its failure to state a claim under Fed. R. Civ. P. 12(b)(6). Regarding Plaintiffs' RICO conspiracy claim, even though Plaintiffs' Complaint makes no mention of an alleged conspiracy, their allegation is first mentioned in Plaintiffs' RICO statement. (Dkt. No. 1; Dkt. No. 10.) In particular, Plaintiffs allege that Defendants participated in a conspiracy by engaging in "an operational agreement among the DFA's individual board members and managers to create and use the fear of personal failure ... to force substantially all U.S. diary farmers to market their milk through Defendants' enterprise." (Dkt. No. 10, at 14.) "Because the core of a RICO conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Malvar Egerique, 2020 WL 1974228, at \*8* (quoting *Hecht, 897 F.2d at 25*). Such a broad-sweeping allegation, without more, woefully fails to meet the plausibility standard articulated above in Part II.A. of this Decision and Order. Plaintiffs fail to allege any factual nature of an alleged operational agreement, the particular Defendants who participated in the planning of individual predicate acts, or any particular facts such as dates, times, or locations of meetings where such an agreement was discussed. Accordingly, the Court finds that Plaintiffs have failed to plead facts sufficiently alleging that Defendants engaged in a civil RICO conspiracy.

Turning to Plaintiffs' RICO claim, the Court also finds that Plaintiffs' Complaint fails to allege a substantive RICO violation for the reasons stated in Defendants' memoranda

of law. (Dkt. No. 11, Attach. 23-30; Dkt. No. 16, at 10-13.) For example, the Court finds that Defendants' alleged conduct amounted to lawful hard-bargaining due to the fact that Plaintiffs did not have any "preexisting right" or entitlement to do business with the DFA. For this reason, as well as the reasons raised in Defendants' memoranda of law, the Court finds that Plaintiffs have failed to plead facts plausibly suggesting Defendants committed a civil RICO violation.

### C. Whether the Court Lacks Personal Jurisdiction over Defendants

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 11, Attach. 3; Dkt. No. 16.) To those reasons, the Court adds the following analysis, which (again) is intended to supplement and not supplant Defendants' reasoning.

Section "1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). "In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *PT United Can Co. Ltd.*, 138 F.3d at 71. Section "1965(b) provides for nationwide service and jurisdiction over 'other parties' not residing in the district, who may be additional defendants of any kind ...." *Id.* Jurisdiction is not automatically conferred on the additional defendants; a plaintiff must show that the "ends of justice so require." *Id.* To satisfy the "ends of justice" standard, a plaintiff must show that the RICO claim "could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010) (collecting cases).

As Defendants argue, Plaintiffs' Complaint fails to allege that a specific Defendant resides in, is found in, has an agent in, or transacts his or her affairs in the Northern District of New York. (Dkt. No. 11, Attach. 3, at 32.) Although Plaintiffs argue that Defendants, acting as corporate agents, are subject to the Northern District's personal jurisdiction because their actions were outside of the DFA's ordinary activities, the Court disagrees. In particular, Plaintiffs' Complaint fails to allege any facts plausibly suggesting that a single Defendant conducted business within the Northern District of New York. Plaintiffs also conspicuously chose to not name the DFA as a

Defendant in this action. In any event, the fact that the DFA contracted business within the Northern District of New York, by itself, fails to support Plaintiffs' allegations that any of the individual Defendants were involved in business transactions that were separate from the DFA's ordinary activities within this district.

### D. Whether Plaintiffs Violated Local Rule 9.2

**\*12** After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 11, Attach. 3; Dkt. No. 16.) To those reasons, the Court adds the following analysis, which (again) is intended to supplement and not supplant Defendants' reasoning.

Local Rule 9.2 requires a party asserting a claim under RICO to "file a RICO statement within thirty (30) days of the filing of the pleading containing such claim." N.D.N.Y. L.R. 9.2. Because Plaintiffs filed their Complaint on June 22, 2020 (Dkt. No. 1), they were required to file their RICO statement by July 22, 2020; instead, Plaintiffs filed their RICO statement on September 3, 2020. (Dkt. No. 10.) On this ground alone, the Court can dismiss Plaintiffs' Complaint. *See Spoto v. Herkimery Cnty. Trust*, 99-CV-1476, 2000 WL 533293, at *3 n.3 (N.D.N.Y. Apr. 27, 2000) (Munson, J.) ("Indeed, the Court would be justified to dismiss Plaintiff's complaint based upon their very untimely filing of their Local Rule 9.2 RIC Statement."); *Dicob v. Knuckles*, 07-CV-1044, 2007 WL 3353089, at *1 (N.D.N.Y. Nov. 7, 2007) (McAvoy, J.) (extending the deadline only 20 days for a pro se litigant); *cf. Pierce v. Homecomings Fin. LLC*, 17-CV-0882, 2017 WL 5991750, at *2 n.2 (N.D.N.Y. Dec. 4, 2017) (Sannes, J.) (noting that Plaintiff had failed to file a Civil RICO Statement pursuant to Local Rule 9.2, and explaining that "Plaintiff's RICO claim may be dismissed for this reason alone"); *Amaker v. Kelley*, 01-CV-0877, 2009 WL 385413, at *11 (N.D.N.Y. Feb. 9, 2009) (Scullin, J.) (explaining that the failure to file a RICO Statement provides a threshold for dismissal of a plaintiff's RICO claim). Despite Plaintiffs' arguments that their failure to abide by Local Rule 9.2 is moot and both parties were working in good faith on other aspects of the case, Plaintiffs' arguments defy logic for two reasons.

First, Defendants' argument that Plaintiffs' RICO statement is not helpful to Plaintiffs' claims has no bearing on the "mootness" of Plaintiffs' failure to abide by the Local Rules. Second, regardless of Plaintiffs' good-faith work on other aspects of this case, they still needed to but failed to abide by a Local Rule, and further needed to but failed to seek the Court's

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

RICO Bus.Disp.Guide 13,545

permission to file their RICO statement approximately six weeks late (or provide any explanation for failing to do so). Accordingly, the Court also dismisses Plaintiffs' Complaint for failure to abide by Local Rule 9.2.

### E. Nature of Dismissal

Finally, some discussion is appropriate regarding the nature of the dismissal in this action. Ordinarily, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted). [6] "[A]n opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile." *Sorrentino v. Barr Labs. Inc.*, 09-CV-0591, 2010 WL 2026135, at *5 (May 20, 2010 N.D.N.Y.) (Suddaby, C.J.).

**\*13** Here, because the Court's threshold ground for dismissal was Plaintiffs' lack of standing, the Court must first determine whether that dismissal was pursuant to Fed. R. Civ. P. 12(b)(6) (which would permit a dismissal with prejudice) or Fed. R. Civ. P. 12(b)(1) (which would not permit a dismissal with prejudice). After carefully considering the matter, the Court finds that the dismissal was pursuant to Fed. R. Civ. P. 12(b)(6) for two reasons: (1) the determination was based on the allegations contained within the four corners of Plaintiffs' Complaint and not based on findings of fact derived from documents outside of the four corners of Plaintiffs' Complaint; and (2) the determination addressed the question whether the Court could grant relief to a party in *Plaintiffs'* (alleged) position, not whether the Court could grant relief to *any* plaintiff given the claim asserted. *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 & n.2 (2d Cir. 1993).

Having rendered that determination, the Court next must consider whether it appears that better pleading would cure the defects. The Complaint was 17 pages long, and it was effectively amended by the Civil RICO Statement and attachments (which were approximately 82 pages long). *See, supra,* note 1 of this Decision and Order. Despite the breadth and detail of facts alleged in those documents, the documents were conspicuously absent of either factual allegations establishing standing (the threshold ground for dismissal) or factual allegations plausibly suggesting a claim upon which relief can be granted (an alternative ground for dismissal). For these reasons, the Court finds that the defects

in the Complaint are substantive and not merely formal, and that it does not appear that better pleading would cure these defects.

### F. Whether Defendants Are Entitled to Sanctions

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

The Court begins its analysis by noting that the one of Defendants' arguments in support of sanctions essentially repeats their arguments in support of their motion to dismiss. (Dkt. No. 15, Attach. 6, at 14-23.) Instead of repeating itself, the Court relies on its analysis in Part III.B. of this Decision and Order to conclude that Plaintiffs' Complaint has a basis in law and fact, and it did not present frivolous arguments unsupported by law or factual contentions lacking evidentiary support. *See* Fed. R. Civ. P. 11(b) (indicating that sanctionable conduct includes [1] presenting a paper for an improper purpose, [2] presenting frivolous arguments unsupported by law, [3] presenting factual contentions lacking evidentiary support, and [4] denying factual contentions where denial is not warranted on the evidence). Therefore, the Court rejects Defendants' first argument.

The Court also rejects Defendants' argument that Plaintiffs' Complaint was filed for an improper purpose. "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a pleading in another lawsuit). "The Court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation." *Malvar Egerique*, 2020 WL 1974228, at *7 (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 [2d Cir. 2006]). The Court takes judicial notice of Plaintiffs' Counsel's prior history with the DFA, as detailed in Defendants' memorandum of law. (Dkt. No. 15, Attach. 6, at 11-12.) Although Plaintiffs' Counsel's prior conduct and history with the DFA and Defendants presents a close call, the Court is unable to grant sanctions to Defendants. Plaintiffs' Complaint, although deficient, raised legal and factually challengeable assertions, albeit barely. Plaintiffs and their counsel appear to have filed the current action in good faith on behalf of individual Plaintiffs, and not to harass the DFA and Defendants.

RICO Bus.Disp.Guide 13,545

**\*14** For these reasons, the Court denies Defendants' motion for sanctions.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendants' motion for sanctions (Dkt. No. 15) is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3737780, RICO Bus.Disp.Guide 13,545

---

### Footnotes

1    The Court notes that, pursuant to Local Rule 9.2 of the District's Local Rules of Practice, a Civil RICO Statement shall be construed as an amendment to the pleadings.

2    Because Plaintiffs' RICO Statement contains substantially the same allegations as their Complaint, the Court will cite Plaintiffs' Complaint only.

3    According to Plaintiffs, DMS ceased operations in 2017. (Dkt. No. 1, at 46.)

4    *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

5    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d. Cir. 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

Poole v. Bendixen, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 55 of 338

RICO Bus.Disp.Guide 13,545

6    *Accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that denial was not an abuse of discretion where an amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2020 WL 1808206
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

UNITED STATES of America, Defendant.

1:20-CV-207 (MAD/DJS)
|
Signed 04/09/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, 9-4-86/89, Flat #201, Khan Tower, Salarjung Colony, Hyderabad, Telangana 500 008, India, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, U.S. District Judge:

**\*1** Plaintiff commenced this action on February 25, 2020, against the United States of America asserting the following claims: (1) personal injury; (2) assault and battery; (3) defamation; (4) general damages; (5) intentional infliction of mental distress and physical torture; and (6) wage loss. *See* Dkt. No. 1. In a Report-Recommendation and Order dated March 17, 2020, Magistrate Judge Stewart reviewed the sufficiency of the complaint and recommended that the Court dismiss this action with prejudice. *See* Dkt. No. 7. Specifically, Magistrate Judge Stewart found that Plaintiff's claims, which are brought against the United States of America, are subject to dismissal on the grounds of sovereign immunity. *See id.* at 4-6. Neither party has objected to Magistrate Judge Stewart's Report-Recommendation and Order.

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404

U.S. 519, 520 (1972)). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that Plaintiff's complaint should be dismissed with prejudice. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).

**\*2** As Magistrate Judge Stewart correctly determined, Plaintiff makes no contention that any waiver of immunity applies to the allegations set forth in his complaint. Moreover, although the Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity from suit for tort claims against the United States, it has strict exhaustion requirements and the burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory exhaustion requirements. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). Plaintiff's complaint neither mentions the FTCA nor alleges compliance with its exhaustion requirements. *See Pope v. Geo Grp.*, No. 18-CV-6900, 2019 WL 79426, *3 (E.D.N.Y. Jan. 2, 2019)

**Mahmood v. United States, Not Reported in Fed. Supp. (2020)**

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 57 of 338

("Accordingly, even if a *pro se* 'plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over' the FTCA claim if [the] 'plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action' ") (quoting *Diaz v. MDC Detention* Ctr., No. 17-CV-3768, 2018 WL 472810, *2 (E.D.N.Y. Jan. 17, 2018)). As such, the Court dismisses Plaintiff's complaint. [1]

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1808206

---

### Footnotes

[1]    Since Plaintiff's complaint can be liberally construed as attempting to bring a claim under the FTCA and because it is unclear from the complaint whether Plaintiff may still timely exhaust his administrative remedies, the dismissal will be without prejudice. *See Green v. Fed. Bureau of Prisons*, No. 11 Civ. 2554, 2012 WL 1694632, *3 (S.D.N.Y. May 15, 2012) (holding that if a court dismisses a complaint "for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuant administrative remedies has not expired") (citing *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)).

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 58 of 338

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

2020 WL 3965125
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

UNITED STATES GOVERNMENT, Defendant.

Civ. No. 1:20-CV-207 (MAD/DJS)
|
Signed 03/17/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, Plaintiff Pro Se, 9-4-86/89, Flat #201, Khan Tower, Salarjung Colony, Hyderabad, Telangana 500 008, India.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, this Court granted Plaintiff's Application to Proceed IFP. Also pending are Motions for the Appointment of Counsel an to Obtain and ECF Login. Dkt. Nos. 3 & 5. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

## I. DISCUSSION

### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678-79 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown,* 335 Fed. Appx. 102, 104 (2d Cir. 2009).

### B. Allegations Contained in Plaintiff's Complaint

**\*2** Plaintiff characterizes this action as one against the United States Government for personal injury, assault and battery, defamation, general damages, intentional infliction of mental distress and physical torture, and wage loss. Compl. at pp. 6-7. In summary, Plaintiff alleges a pattern of "unethical, unlawful, and inhumane Electronic Surveillance, Mind-Control, and Cyber-Stalking activities" by unnamed officials of the United States Government. *Id.* at p. 7. He

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 59 of 338

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

makes slightly more specific allegations including alleged physical stalking and monitoring, as well as, phone and cyber stalking of Plaintiff, *id.* at p. 3, allegations that Defendant forced Plaintiff "to travel to United States through cyber stalking and mind control techniques," *id.* at p. 4, and forced Plaintiff to incur debt, make fraudulent money transfers, and make fraudulent benefits applications. *Id.* at p. 5.

### C. Review under Section 1915(e)

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Where, however, the grounds for dismissal offer no basis for curing the defects in the pleading, leave to amend would be futile. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are "substantive rather than formal and [ ] leave to amend would be futile." *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013).

Plaintiff's claims against the United States Government are subject to dismissal on the grounds of sovereign immunity. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). "Consent to suit 'must be unequivocally expressed in statutory text, and cannot simply be implied.' " *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. at 21 (quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004)).

Plaintiff makes no contention here that any waiver of this immunity applies to the allegations set forth in the Complaint. While the Federal Tort Claims Act ("FTCA") provides a limited immunity from suit for tort claims, it has strict exhaustion requirements. *Hill v. United States*, 2019 WL 5694016, at *5 (E.D.N.Y. Aug. 6, 2019). "The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). The Complaint neither mentions the FTCA nor alleges compliance with it. "Accordingly, even if a *pro se* plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over the FTCA claim if [the] plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action." *Moore v. Samuel S. Stratton Veterans Admin. Hosp.*, 2019 WL 251725, at *3 (N.D.N.Y. Jan. 17, 2019) (internal quotations omitted). As such, his claims against the United States should be dismissed with prejudice.

### D. Other Pending Motions

**\*3** In light of the recommended disposition of this case, Plaintiff's other pending Motions are denied.

"In deciding whether to appoint counsel, a court should first determine whether the indigent's position seems likely to be of substance." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Here, given the Defendant's immunity from suit, Plaintiff cannot make this threshold showing of merit and the Motion for Appointment of Counsel is denied.

"Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

### II. CONCLUSION

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED** with prejudice; and it is

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel is **DENIED**; and it is further

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 60 of 338

**ORDERED**, that Plaintiff's Motion to Obtain an ECF Login and Password is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by certified mail, return receipt requested, upon Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [1] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3965125

## Footnotes

1    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

End of Document                                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 61 of 338

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frances AMATO; John Doe, progeny minor child;
Adrienne Auchmoody; Toni Jean Kulpinski;
Vladimir Kulpinski; Michaela Kulpinski; Michelle
Arzola; Jane Doe, minor child; and John Doe,
minor child of Michelle Arzola, Plaintiffs,
v.
Judge Anthony MCGINTY, individually and
as Ulster County Family Court Judge; Attorney
Andrew Gilday, individually and as a public
defender of New York; Amy Ingram, state attorney
for the child; Patrick V. Beesmer, individually;
and Pamela Augustine, individually, Defendants.

1:17-CV-00593 (MAD/ATB)
|
Signed 09/15/2017

**Attorneys and Law Firms**

FRANCES AMATO, P.O. Box 820, Marlboro, New York
12542, Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

**\*1** On May 26, 2017, *pro se* Plaintiff Frances Amato
("Plaintiff Amato") commenced this action pursuant to
42 U.S.C. § 1983 ("Section 1983"). *See* Dkt. No. 1 at
1, 4. Plaintiff Amato is joined in this action with her
son ("Plaintiff CB"); her mother, Adrienne Auchmoody
("Plaintiff Auchmoody"); Plaintiff CB's aunt, Toni Jean
Kulpinski ("Plaintiff TK"); Plaintiff CB's uncle, Vladimir
Kulpinski ("Plaintiff VK"); Plaintiff CB's cousin, Michaela
Kulpinski ("Plaintiff MK"); Plaintiff CB's sister, Michelle
Arzola ("Plaintiff Arzola"); Plaintiff CB's niece ("Plaintiff
Jane Doe"); and Plaintiff CB's nephew ("Plaintiff John
Doe"). *See id.* at 1-2. Plaintiffs have brought this action
against Ulster County Family Court Judge Anthony McGinty
("Defendant McGinty") for his role in a decision dictating
the custody of Plaintiff CB entered on October 24, 2016.

*See* Dkt. No. 17 at 67; Dkt. No. 1 at 3. Plaintiffs
have also sued Plaintiff CB's father, Patrick Beesmer
("Defendant Beesmer"); Plaintiff CB's assigned counsel
for the custody proceedings, Amy Ingram, ("Defendant
Ingram"); Defendant Beesmer's assigned counsel for the
custody proceedings, Attorney Andrew Gilday ("Defendant
Gilday"); and Defendant Beesmer's "paramour" as Plaintiffs
refer to her, Pamela Augustine ("Defendant Augustine"), for
their roles in the custody proceeding. *See* Dkt. No. 1 at 3-4.

Plaintiffs filed a motion for a temporary restraining order
on June 2, 2017, *see* Dkt. No. 8, which the Court denied
that day, *see* Dkt. No. 9. On June 6, 2017, Magistrate
Judge Baxter issued an Order and Report-Recommendation
recommending that Plaintiffs' complaint be dismissed in
its entirety with prejudice as to all named Defendants in
this action. *See* Dkt. No. 11 at 26. Plaintiffs submitted
objections to Magistrate Judge Baxter's Order and Report-
Recommendation on June 19, 2017. *See* Dkt. No. 17.
Currently before the Court is Magistrate Judge Baxter's
Order and Report-Recommendation and Plaintiffs' objections
thereto.

**II. BACKGROUND**

Plaintiff Amato and Defendant Beesmer are the parents of
Plaintiff CB and were involved in custody proceedings over
Plaintiff CB. *See* Dkt. No. 1 at 5. According to the complaint,
Defendant McGinty presided over the custody proceedings
after the originally assigned judge recused herself. *See id.* In
an order dated October 24, 2016, Defendant McGinty granted
Defendant Beesmer primary custody of Plaintiff CB. *See* Dkt.
No. 17 at 64-65, 67.

Upset with the outcome of the custody proceedings, Plaintiff
Amato commenced the instant action against Defendants for
their roles in the proceedings. [1] *See* Dkt. No. 1. Plaintiff
Amato claims that during the custody proceedings, Defendant
McGinty was "[h]ighly abusive" to "all" plaintiffs; violated
Plaintiffs' "constitutional" and "ADA rights;" induced
"[e]xtreme pain and suffering and trauma to all plaintiffs;"
"endanger[ed] the welfare of a child;" and "[i]llegally
extended fictious authority in CLEAR ABSENCE of subject
matter jurisdiction." *Id.* at 6-7. Plaintiff Amato claims that
Defendant McGinty denied her access to "his court," denied
her "rights to proper serving process," and denied the
admission of "any evidence into the court for purpose of
record." *Id.* at 7.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 62 of 338

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

**\*2** Plaintiff Amato claims that Defendant McGinty "co-conspired" with other Defendants in a "mock trial" to punish Plaintiff Amato for her role as an "outspoken community advocate" for human rights and family court reform. *See id.* at 7, 9, 15. Plaintiff Amato alleges that Plaintiff CB's custody proceedings were "plagued by retributions" for Plaintiff Amato's public criticism of Defendant McGinty prior to the custody proceedings. *Id.* at 7.

Plaintiff Amato alleges that Defendant McGinty, with cooperation from Defendants Ingram and Gilday, committed a number of violations resulting in the "kidnaping and endangerment of a minor." *Id.* at 8. Plaintiff Amato claims that Defendants McGinty, Ingram and Gilday committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False [and] unlawful arrest," and "Child Endangerment." *See id.* at 8-9. Plaintiff Amato alleges that Defendant McGinty "[p]re decided [a] trial with no evidence allowed." *Id.* at 8.

Plaintiffs allege "Causes of Action" for "First Amendment," "Parental Impairment," and "Due Process." *Id.* at 14-26. Plaintiffs also allege additional state law claims for "intentional and negligent emotional distress." *Id.* at 24. Plaintiffs request the "immediate return of the child," compensatory damages of $10,000,000 on each cause of action, punitive damages, costs and attorneys' fees, and a "[j]udgment declaring the orders, edicts and processes in th[e] [c]omplaint unconstitutional[,] together with an order permanently enjoining the enforcement of [the family court] orders." *Id.* at 26.

## III. DISCUSSION

### A. Standard of Review

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law." *Massie v. Ikon Office Solutions, Inc.,* 381 F. Supp. 2d 91, 94 (N.D.N.Y.

2005) (quoting *Clarke v. Bank of New York,* 687 F. Supp. 863, 871 (S.D.N.Y. 1988)).

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey,* 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid,* 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart,* No. 02-CV-1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004).

Although a *pro se* litigant's objections should be accorded leniency, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.,* 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quotation omitted); *see also IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,* No. 07 Civ. 6865, 2008 WL 4810043, *1 (S.D.N.Y. Nov. 3, 2008) ("To the extent ... that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.").

**\*3** As mentioned, Plaintiffs have submitted objections to the Order and Report-Recommendation issued by Magistrate Judge Baxter. *See* Dkt. No. 17. The objections submitted by Plaintiffs are 117 pages long. *See id.* Despite the correct caption at the top of the document, the first 25 pages of the document appear to be an appellate brief to the State of New York Supreme Court, Appellate Division, Third Department.[2] *See id.* at 1-25. The remaining 92 pages include a brief analysis of custody factors, Defendant McGinty's custody decision, court transcripts, testimonial statements, and documents outlining the history of the custody proceedings. *See id.* at 25-117. There is no mention of Magistrate Judge Baxter or the Order and Report-Recommendation in any of these documents. Accordingly, Plaintiffs have failed to file specific objections. However, regardless of whether the Court reviews the Order and Report-Recommendation *de novo* or for clear error, Plaintiffs' complaint is still subject to dismissal.

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 63 of 338

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

## B. Judicial Immunity

Judges are afforded absolute immunity from suit for actions related to the exercise of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judges maintain judicial immunity "even when [the] judge is accused of acting maliciously and corruptly." *Id.* at 554. Judicial immunity is only defeated by "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted). A judicial action is "a function normally performed by a judge, and to the expectations of the parties." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). A judge's actions are in "absence of all jurisdiction" when the court has no "statutory or constitutional *power* to adjudicate the case." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Judicial actions made in error or "in excess of his authority" do not defeat judicial immunity. *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356). Furthermore, a district court cannot grant injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quotation omitted).

Plaintiffs have brought a number of allegations against Defendant McGinty, including that he violated their constitutional rights, co-conspired with the remaining Defendants, endangered the welfare of Plaintiff CB, and retaliated against Plaintiff Amato for being outspoken about Defendant McGinty's purported "abuses and discrimination against mothers and children." Dkt. No. 1 at 5-9. Accepting Plaintiff's claims as true, all claims occurred while Defendant McGinty was working within his judicial capacity to determine the proper custody for Plaintiff CB. Accordingly, Defendant McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13. Magistrate Judge Baxter correctly reasoned that any action Defendant McGinty committed with malice or in retaliation of Plaintiff Amato's criticisms was still performed within the judicial functions of a family court judge presiding over a custody dispute. Magistrate Judge Baxter also correctly concluded that Plaintiff's arguments with respect to N.Y. Jud. Law § 21 are unavailing, as Defendant McGinty did not violate that provsion, and, even if he did, he would still be entitled to judicial immunity. *See generally Gross*, 585 F.3d at 84.

Furthermore, law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court. *See Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 0155, 2004 WL 1854082, *11 (S.D.N.Y. Aug. 19, 2004). Therefore, Magistrate Judge Baxter correctly concluded that Defendant Ingram is entitled to quasi-judicial immunity by virtue of her appointment as Plaintiff CB's law guardian. *See* Dkt. No. 11 at 12-13.

## C. State Action

**\*4** To state a claim under Section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)).

The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). However, "private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). The mere conduct of a private party is excluded from the reach of Section 1983 "no matter how discriminatory or wrongful" that conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

Plaintiffs filed suit against Defendant Gilday for his role as Defendant Beesmer's assigned counsel and against Defendant Ingram for her role as Plaintiff CB's assigned attorney. Defendants Gilday and Ingram, even if they were court appointed, cannot be considered state actors. *See Licari*, 374 Fed. Appx. at 231. Furthermore, Defendants Beesmer and Augustine are obvious private parties who are not state actors under Section 1983. Defendants Beesmer and Augustine had no connection to the state beyond their participation in the custody proceedings.

While Plaintiffs have claimed that Defendants Beesmer and Augustine "conspired" with the other Defendants to achieve

the custody outcome, as Magistrate Judge Baxter found, there have been no facts to support these conclusory statements. [3] Conspiracy allegations that are wholly conclusory are insufficient to state a claim under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) (citing *Ciambriello*, 292 F.3d at 325); *see also Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010) ("Complaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights' will be dismissed.") (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)). Accordingly, this Court agrees with Magistrate Judge Baxter that Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the complaint is dismissed as to each of these Defendants.

### D. Minor Child Plaintiffs

An individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Three minor plaintiffs, Plaintiff CB, Plaintiff John Doe, and Plaintiff Jane Doe, have been listed as *pro se* litigants in this action. *See* Dkt. No. 1 at 1-2; Dkt. No. 11 at 16. While the adult Plaintiffs may bring this lawsuit *pro se*, they may not act as counsel for the minor children without being a licensed attorney. *See Cheung*, 906 F.2d at 61. Therefore, this Court agrees with Magistrate Judge Baxter's determination that the adult Plaintiffs in this matter may not bring suit on behalf of the minor Plaintiffs.

### E. Standing

**\*5** A plaintiff who wishes to invoke federal jurisdiction bears the burden of establishing that he or she has adequate standing to bring the action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)) (other citation omitted). To establish standing, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citations omitted). Moreover, there is a "prudential standing rule" which generally bars litigants "from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v.*

*Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quotation omitted).

Here, despite multiple adult Plaintiffs filing suit against Defendants, Plaintiff Amato is the only Plaintiff that was a party to the custody proceedings regarding Plaintiff CB. Plaintiffs Auchmoody, TK, VK, MK, and Arzola only appear to be connected to the custody proceedings by their relationship with Plaintiffs Amato and CB. *See generally* Dkt. No. 1. Pursuant to the prudential standing rule, Plaintiffs Auchmoody, TK, VK, MK, and Arzola cannot assert the rights of Plaintiff Amato or Plaintiff CB. *See Rajamin*, 757 F.3d at 86. Therefore, all Plaintiffs other than Plaintiffs Amato and CB lack standing, and the complaint with respect to these Plaintiffs is dismissed.

### F. Domestic Relations Exception

Magistrate Judge Baxter also noted that the Court lacks subject matter jurisdiction over several of Plaintiffs' claims pursuant to various legal doctrines. Due to the nature of Plaintiffs' complaint, it is difficult to precisely determine exactly which doctrines apply, but the Court will discuss several doctrines which preclude the Court from exercising subject matter jurisdiction over several of Plaintiffs' claims.

The domestic relations exception to federal jurisdiction divests federal courts of jurisdiction in matters involving divorce, alimony, and child custody. *Marshall v. Marshall*, 547 U.S. 293, 307-08 (2006) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992)); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("[I]t has been uniformly held that federal courts do not adjudicate cases involving the custody of minors"). In *Bukowski v. Spinner*, No. 17-CV-0845, 2017 WL 1592578, \*1 (E.D.N.Y. Apr. 28, 2017), the Eastern District of New York dismissed a case with similar allegations as those brought in this case. [4]

Plaintiffs allege that the "orders and processes" of the family court are unconstitutional; however, the crux of their argument arises out of the alleged improper custody determination by Defendant McGinty. *See* Dkt. No. 1 at 14-15, 21, 24, 26. Plaintiffs' alleged injuries stem directly from the disputed family court custody decision. *See id.* at 5-9, 14-16, 21, 24. Additionally, Plaintiffs request that this Court overturn the custody decision and permanently enjoin the enforcement of family court decisions. *See id.* at 26. Accordingly, to the extent that Plaintiffs request that this

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 65 of 338

Court overturn the custody determination, this Court lacks jurisdiction to adjudicate such a case.

### G. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Id.*

**\*6** In *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284. In light of *Exxon Mobile*, the Second Circuit has held that "there are four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted). The requirements are as follows:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Plaintiffs request that this Court overturn and enjoin the unfavorable decisions of the family court. *See* Dkt. No. 1 at 26. Plaintiffs claim that their injuries resulted from the custody determination made by Defendant McGinty prior to the commencement of this action. [5] *See id.* As such, to the extent that Plaintiffs seek to challenge the family court decision, this Court does not have jurisdiction to grant such relief under *Rooker-Feldman*.

### H. *Younger* Abstention [6]

*Younger* abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.' " *Id.* at 636 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)). "If the federal action falls into one of these three categories, a [c]ourt may then consider the additional factors described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)." [7] *Id.* Since the Supreme Court's decision in *Sprint*, several courts in this Circuit have held that *Younger* abstention applies in similar circumstances as this case. *See id.*; *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by *Younger* where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son).

Accordingly, as Magistrate Judge Baxter concluded, to the extent that any issues in this litigation are still pending in family court, this Court is barred from exercising such jurisdiction pursuant to *Younger*.

### I. Opportunity to Amend

**\*7** When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Defendants McGinty and Ingram are entitled to immunity, and, thus, better pleading would not be able to cure the defects in Plaintiffs' allegations against them. Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the conspiracy allegations against them are entirely conclusory. Therefore, better pleading would not cure the substantive defects in the complaint. Accordingly, to the extent that

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 66 of 338

Plaintiffs allege constitutional and state law violations that this Court has subject matter jurisdiction over, those claims are dismissed without leave to amend with respect to all named Defendants in this action.

However, Magistrate Judge Baxter recommended that, to the extent Plaintiff Amato challenges the constitutionality of the New York Domestic Relations Law §§ 236 and 240, she may be able to do so in certain circumstances. *See* Dkt. No. 11 at 25-26. The Court agrees, and Plaintiff's complaint is dismissed without prejudice with respect to a claim challenging the constitutionality of the New York Domestic Relations Law, with only Plaintiff Amato as the named plaintiff, and the complaint must be filed against the proper defendant, at the proper time, and in the appropriate forum, as set forth more fully in the Order and Report-Recommendation. *See id.* at 25-26.

### IV. CONCLUSION

After carefully reviewing the record in this matter, Plaintiffs' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Order and Report-Recommendation (Dkt. No. 11) is **ADOPTED** consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED** as against Defendants McGinty, Ingram, Gilday, Beesmer, and Augustine; and the Court further

**ORDERS** that Plaintiff Amato's complaint (Dkt. No. 1) is **DISMISSED without prejudice** with respect to any claim challenging the constitutionality of the New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4083575

---

### Footnotes

1    While all Plaintiffs have submitted claims against Defendants, the narrative in the complaint and objections is written in a singular voice referring to Plaintiff Amato as "I," "me," and "myself." *See generally* Dkt. Nos. 1, 17.

2    The objections make several comments claiming that "this court" "held" or "ruled" and cited case law from the Third Department. *See, e.g.*, Dkt. No. 17 at 23.

3    Similarly, Plaintiffs' purported state law claims are entirely conclusory and do not come close to alleging facts to support a valid cause of action. *See* Dkt. No. 1 at 24-26.

4    The court determined that despite the plaintiff "raising constitutional issues, the allegations stem from a state domestic relations matter and are thus outside this Court's jurisdiction." *Bukowski*, 2017 WL 1592578, at *3.

5    Plaintiffs filed this action on May 26, 2017 and Defendant McGinty rendered his custody determination on October 24, 2016. *See* Dkt. No. 17 at 4-5, 67.

6    *See Younger v. Harris*, 401 U.S. 37 (1971).

Case 5:24-cv-00048-DNH-ML  Document 5  Filed 05/01/24  Page 67 of 338

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

7     The factors examine "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Torres*, 130 F. Supp. 3d at 636

---

**End of Document**                                               © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 9487185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis AMATO, et al., Plaintiffs,

v.

Judge Anthony MCGINTY, et al., Defendants.

1:17-CV-593 (MAD/ATB)
|
Signed 06/06/2017

**Attorneys and Law Firms**

Frances Amato, Marlboro, NY, pro se.

John Doe, pro se.

Adrienne Auchmoody, pro se.

Toni Jean Kulpinski, pro se.

Vladimir Kulpinski, pro se.

Michaela Kulpinski, pro se.

Michelle Arzola, pro se.

Jane Doe, pro se.

Adrienne J. Kerwin, Office of Attorney General, David B. Cabaniss, Cabaniss Casey LLP, Albany, NY, for Defendants.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

*\*1* The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiffs Francis Amato, her son "John Doe," Adrienne Auchmoody, Toni Jean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, and Ms. Arzola's two children, who have also been referred to as Jane and John Doe. (Complaint ("Compl.") at 1). Plaintiffs have paid the filing fee for this action. However, the court will conduct an initial review of the complaint.[1] Plaintiff Amato has also filed a motion to obtain an ECF Login and Password. (Dkt. No. 10).

A complaint must allege " 'enough facts to state a claim to relief that is plausible on its face.' " *Preacely v. City of*

*New York*, 622 Fed.Appx. 14, 15 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). A claim " 'has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ). A case is "frivolous" when either the factual contentions are "clearly baseless or when the claim is based upon "an indisputably meritless legal theory." " *Id.* (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ). A district court has inherent authority to dismiss a frivolous action sua sponte "even when the plaintiff has paid the required filing fee." *Id.* (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ). Finally, a federal court has a continuing and independent obligation to examine its subject matter jurisdiction sua sponte. *Robbins v. City of New York*, 254 F.Supp.3d 434, 436 (E.D.N.Y. 2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ). *See also Forde v. Hornblower New York, LLC*, 243 F.Supp.3d 461, ——, 2017 WL 1078585, at \*2 (S.D.N.Y. 2017) (citations omitted).

**I. Complaint**

This civil rights action has been brought by plaintiffs Frances Amato, her son ("CB"), Adrienne Auchmoody (CB's grandmother), Toni Jean Kulpinski (CB's Aunt and Godmother), Vladimir Kulpinski (CB's Uncle and Godfather), Michaela Kulpinski (CB's cousin), and Michelle Arzola and her two minor children (CB's sister, niece, and nephew). (Compl. ¶¶ 1-7).

Plaintiffs appear to challenge the conduct of defendant Ulster County Family Court Judge Anthony McGinty relative to a custody proceeding involving CB. (Compl. ¶¶ 8, 16). Plaintiffs have also named Attorney Andrew Gilday, who plaintiffs state is a "Public Defender," but appears to be the assigned counsel for Patrick Bessmer—CB's father[2]—in the custody proceeding. (Compl. ¶ 9). Patrick Bessmer and his alleged "paramour," Pamela Augustine are also named as defendants. (Compl. ¶¶ 11, 12). Plaintiffs have also named Amy Ingram, Esq., CB's assigned attorney for the custody proceeding.

*\*2* Plaintiffs allege that defendant McGinty was "highly abusive" to "all" plaintiffs; violated "constitutional" and "ADA rights;" caused "extreme pain, suffering, and trauma to "all" plaintiffs when he violated their constitutional

rights; endangered the welfare of "a child;" and "illegally extended fictitious authority in CLEAR ABSENCE of subject matter jurisdiction." " (Compl. ¶ 18(a)-18(e) ). Plaintiff Amato then describes conduct that was allegedly directed at her. [3] (Compl. ¶ 20). Plaintiff Amato alleges that defendant McGinty denied access to " 'his court,' " denied plaintiff Amato her "rights to proper serving process," denied "any evidence into the court for purpose of record," and denied "the serious risk and harm to [her] child- who is currently and not by [her] consent in public governmental counseling for high risk children." (Compl. ¶ 20). Plaintiff Amato believes that the state proceedings "remain plagued by retributions [sic] for plaintiff's exercise of First Amendment rights to free speech and petition government [sic] for redress of grievances." (Compl. ¶ 19).

Plaintiff Amato alleges that she is an "outspoken advocate," working along side the District Attorney of Ulster County to compile evidence and to file numerous complaints against defendant McGinty. (*Id.*) Plaintiff Amato states that she has been interviewed by many local newspapers and television stations regarding her concerns about Ulster County Family Court and attorney Amy Ingram. Plaintiff claims she has been "very outspoken" regarding the "countless children" endangered by the "decisions of these judges and the negligence of these public servants and child attorneys mentioned [in the complaint.]" (*Id.*)

Plaintiff Amato lists a series of alleged violations which were committed by defendant McGinty, together with defendants Ingram and Gilday, resulting in the "kidnaping" and "endangerment of a minor." (Compl. ¶ 22). [4] Plaintiff Amato states that these three defendants intentionally inflicted emotional distress by removing her child, "altering the 9 year status quo from me and my entire family, violating ***our*** due process...." (Compl. ¶ 22(a) ). These three defendants also allegedly committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False and Unlawful Arrest," "Pre decided trial with no evidence allowed, Obstructing Justice," "Child Endangerment," and "Falsely placing mother and child on a missing persons clearinghouse...." (Compl. ¶ 22(b)-22(h) ).

The complaint contains three "Causes of Action," which contain additional facts and various citations to case law. (Compl. ¶¶ 30-41). The first cause of action is "First Amendment." (Compl. ¶¶ 30-33). The second cause of action is "Parental Impairment," and the third cause of action is "Due Process." (Compl. ¶¶ 34-37, 38-41). Because of the way that

the complaint is written, rather than repeating all of the facts, the court will discuss the additional facts as necessary to the analysis of plaintiff's complaint.

## II. Judicial Immunity

### A. Legal Standards
With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*3** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F.Supp.2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) ). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself"—whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) ). The judge will not be deprived of absolute immunity if he or she takes action that is

merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

### B. Application

Plaintiffs have named Ulster County Family Court Judge Anthony McGinty as a defendant. Plaintiff states that the "defendants" have violated "clearly established laws." (Compl. ¶ 31). Plaintiffs allege that defendant McGinty is biased, discriminates against women who are victims of domestic violence, and has retaliated against plaintiff Amato because she has spoken out against him and other Family Court judges, staff, and appointed counsel for her child.

Plaintiffs claim that the "federal funding law" rewards "states and judicial agents," based on the "number and size of child support orders." (Compl. ¶ 32). Based on this "fact," plaintiffs state that a "financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged proceedings." However, all of Judge McGinty's alleged "biased" or "illegal" conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on "funding," allegedly biased decisions in favor of defendant Bessmer, or making decisions that were not in the best interest of CB, these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity.

Plaintiff attempts to argue that Judge McGinty acted "in absence" of jurisdiction because he took over plaintiff's custody case from another judge in violation of N.Y. Judiciary Law § 21. (Compl. ¶ 18). Plaintiff Amato's argument is misplaced. N.Y. Judiciary Law § 21 reads as follows:

> A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.

N.Y. Jud. Law § 21. This means that a trial-level judge shall not decide factual issues that were tried before a different judge. *See People v. Hampton*, 21 N.Y.3d 277, 284-85, 970

N.Y.S.2d 716, 992 N.E.2d 1059 (2013). This applies to situations in which the new judge is called upon to make rulings based on an evaluation of testimony that he or she did not hear. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. It does not apply to motions involving pure issues of law. *Id.* at 285, 970 N.Y.S.2d 716, 992 N.E.2d 1059. This also does not mean that a judge cannot take over a custody case, or any other action, after another judge has recused herself. *See id.* Otherwise, no judge could ever be replaced after a case has begun.

**\*4** Plaintiff does not allege that there were motions pending that the previous judge did not address when Judge McGinty took over the case. In fact, the complaint indicates that Judge McGinty presided over the challenged proceedings himself. (Compl. ¶ 22(f) ). Plaintiff Amato states that Judge McGinty "pre-decided" the trial with no evidence allowed. (*Id.*) Plaintiff Amato states that defendant McGinty "struck from the record anything that was pertinent to the safety of the child and mother...." (*Id.*) Finally, plaintiff alleges that defendant McGinty and defendants Gilday and Ingram held a "mock trial." (*Id.*) Thus, the judge heard the factual issues in question, and plaintiff has not alleged a violation of Judiciary Law § 21.

In any event, even if the judge acted in violation of Judiciary Law § 21, the appropriate remedy in state court would be remand to the same judge for his or her own hearing of the issue and a subsequent decision. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. Although the state court has referred to this statute as "jurisdictional," it is only with respect to the particular decision that the judge made without hearing the evidence him or herself. *Id.* It does not deprive the court of "jurisdiction" over custody cases. Judge McGinty was still a family court judge with jurisdiction over custody matters. At worst, if Judge McGinty decided a motion or issue improperly, he would have been acting "in excess" of jurisdiction, and he would still be entitled to judicial immunity.

Plaintiffs challenge rulings by Judge McGinty and complain of the way that he managed his courtroom, allegedly "denying access to what the judge called 'his court.' " (Compl. ¶ 20). Judge McGinty allegedly placed CB in "governmental counseling for high risk children" without plaintiff Amato's consent, "denied evidence ... for purpose of record; and "falsely" placed plaintiff Amato and CB on a "missing persons clearinghouse." " (Compl. ¶¶ 20, 22(h) ). Plaintiffs allege that on January 31, 2017, defendant McGinty

"issued a directive to plaintiff [Amato] under penalty of imprisonment .... sixty days in county jail on a civil offense of a woman with no background at all because she wanted to protect her child from further addiction and domestic violence." (Compl. ¶ 24). Plaintiff Amato alleges that the court mocked her and endangered CB with its rulings. (*Id.*) Plaintiff Amato also claims that a "stay" was granted by the Appellate Division, which ordered plaintiff's immediate release from the Ulster County Jail "false arrest and abuse of power." (*Id.*)

Notwithstanding plaintiffs' allegations that the Judge made improper adverse rulings against plaintiff Amato during the custody proceeding with malice or in retaliation for her "exposing" abuses in Family Court, the judge was still performing judicial functions and presiding over plaintiff's custody action. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corruptly.

In *Koziol v. King*, the plaintiff sued a variety of judges in connection with custody and support proceedings. *Koziol v. King*, No. 6:14-CV-946, 2015 WL 2453481 (N.D.N.Y. May 22, 2015). In *Koziol*, then-Chief District Court Judge Gary Sharpe dismissed claims against County Court Judge King which related primarily to visitation and custody orders in matters pending before him, based on absolute immunity. *Id.* at *8. Plaintiff Koziol had also challenged that way that Judge King "managed his courtroom." *Id.*

In dismissing the claims against Judge King, Judge Sharpe cited *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014), in which the court held that a family court judge was protected by judicial immunity where the plaintiff alleged that the judge denied him custodial and visitation rights because he was a Muslim, which violated his civil rights. Thus, judicial immunity is not lost because plaintiff alleges that the judge's decision was unconstitutional. Plaintiffs in this case disagree with the judge's decisions. (Compl. ¶ 29). Plaintiff Amato quotes the judge's order awarding custody to defendant Bessmer, and states that the judge did not properly consider CB's father's drug dealing, drug abuse, arrests, domestic violence, and probation violations. (*Id.*)

**\*5** Plaintiff Amato also states that defendant McGinty abused his authority when he issued an order of protection without "a trial or hearing," and subjected plaintiff Amato to supervised visitation, allegedly contrary to New York law.

(Compl. ¶ 35). Plaintiff discusses the proper procedure for "imposing supervised visitation," and faults the judge as well as the other defendants for imposing such restrictions on her. However, these decisions are also within the purview of the Family Court Judge. Even if the judge was incorrect in imposing the alleged restrictions to plaintiff Amato's visitation, it would not deprive Judge McGinty of judicial immunity.

Plaintiff Amato clearly has issues with the Family Court system and claims that the system has been abused by Judge McGinty. The complaint also contains two paragraphs which refer to "financially based custody laws" and states that "Plaintiff" seeks an order declaring Sections 236 and 240 of the Domestic Relations Law unconstitutional. (Compl. ¶¶ 36). Judge McGinty's application of the laws that he has jurisdiction to interpret does not deprive him of judicial immunity, even if those laws were unconstitutional. The constitutionality of state statutes is an issue separate from judicial immunity. [5]

Plaintiff Amato claims in her third cause of action that she was denied the right to a "rational, orderly and timely court proceeding before a neutral and detached magistrate or judge." (Compl. ¶ 39). This is clearly an action that is judicial in nature, and Judge McGinty would be entitled to judicial immunity for any such claim. The same is true for plaintiff's state law claims of intentional and negligent infliction of emotional distress. Thus, plaintiffs' [6] complaint must be dismissed as against defendant McGinty.

**\*6** It has also been held that law guardians are entitled to absolute quasi-judicial immunity for their actions in representing children in Family Court. *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014) (citing inter alia *Yapi v. Kondratyeva*, 340 Fed.Appx. 683, 685 (2d Cir. 2009) (citations omitted); *Holland v. Morgenstern*, No. 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 155, 2004 WL 1854082, at *11 (S.D.N.Y. Aug. 19, 2004) (citations omitted). In *Lewittes*, the court held that the plaintiff would have other available remedies if the child's attorney were derelict in performing his or her duties. 2004 WL 1854082, at *12. This holding is supported by New York State court decisions holding that such guardians are protected by quasi-judicial immunity. *Id.* at *11-12, 112 S.Ct. 286 (citing inter alia *Bluntt v. O'Connor*, 291 A.D.2d 106, 737 N.Y.S.2d 471 (4th Dep't), appeal denied, 98 N.Y.2d 605, 746 N.Y.S.2d 279, 773 N.E.2d 1017 (2002) ). Thus, defendant

Ingram, as the attorney for CB would also be entitled to absolute immunity, and the complaint must be dismissed as against her.

## III. **State Action**

### A. Legal Standards

To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ).

Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful that conduct may be.' " *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

### B. Application

Plaintiffs have sued Attorneys Andrew Gilday and Amy Ingram [7] as well as Patrick Bessmer and his girlfriend, Pamela Augustine. With respect to Attorneys Gilday and Ingram, it is well-established that private attorneys do not act under color of state law even if they are court-appointed attorneys, performing their traditional function as counsel. *See Harmon v. New York County Dist. Attorney's Office*, No. 13 Civ. 1711, 2014 WL 1044310, at *9 (S.D.N.Y. March 17, 2014) (citing inter alia *Brown v. Legal Aid Soc'y*, 367

Fed.Appx. 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ). *See also Licari v. Voog*, 374 Fed.Appx. 230, 231 (2d Cir. 2010) (private attorneys, even if they are court-appointed, and/or associated with a Legal Aid organization, do not act under color of state law when representing their clients). According to plaintiffs, defendant Gilday is the court-appointed attorney for defendant Bessmer, and defendant Ingram was appointed by the court as the attorney for CB.

**\*7** Defendants Bessmer (CB's father) and Augustine are clearly private parties who do not act under color of state law for purposes of section 1983. Although plaintiffs allege that Bessmer and Augustine "conspired" with other defendants, plaintiff states no facts to support these conclusory statements that are dispersed throughout the complaint. (Compl. ¶¶ 11, 12). Conclusory allegations of conspiracy are insufficient to state a claim under the civil rights laws. *See Brown*, 367 Fed.Appx. at 216 (color of state law may be established if the individual conspired with a state actor, however, conclusory allegations of conspiracy are insufficient). The only state actor is Judge McGinty, and there is no indication, other than the judge's decision in Bessmer's favor, how defendant Bessmer or defendant Augustine would have "conspired" with the judge sufficient to establish that they acted under color of state law. [8]

Plaintiffs allege that defendants Gilday, Ingram, and Judge McGinty "co-conspired," violated her rights and placed CB in the custody of a dangerous criminal in violation of "Statute." (Compl. ¶ 22). "Merely resorting to the courts and being on the winning side of a lawsuit does not rise to the level of 'conspiracy.' " *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1988). Defendant Gilday was appointed to represent defendant Bessmer and had a duty to represent his interests in the custody proceeding. Defendant Ingram was appointed to protect the interests of CB during the proceedings. Plaintiff faults Attorney Ingram for being ill prepared, not returning plaintiff Amato's calls, and was generally an ineffective advocate for CB. Plaintiff claims that defendant Ingram also "fought vehemently" in favor of custody for defendant Bessmer (Compl. ¶ 26). Plaintiff also states that her "adversary," the judge, and the appointed child attorney "ganged up" on her. (Id.)

Defendant Ingram's alleged incompetence and the fact that the judge ultimately ruled in defendant Bessmer's favor does not indicate that the judge conspired with the attorneys regarding his ruling or that defendants Bessmer and

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 73 of 338

Augustine somehow conspired with the judge to obtain a favorable result. Thus, the complaint may be dismissed in its entirety as against defendants Attorney Gilday, Attorney Ingram, Bessmer and Augustine.

### IV. Minor Child Plaintiffs

#### A. Legal Standards

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself.[9] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

#### B. Application

Plaintiff's have listed various "John" or "Jane" Doe minors as plaintiffs, including CB, plaintiff Amato's child. The adult plaintiffs have all signed the complaint and added their John or Jane Doe children under their names.[10] (Compl. CM/ECF pp. 27, 28, 32). However, while the adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b) ). The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* Thus, the minor children may not be plaintiffs on their own because they are minors,[11] and the adult plaintiffs may not represent their children. *See also Armatas v. Maroulleti*, 484 Fed.Appx. 576 (2d Cir. 2012).

**\*8** The court would also point out that although all the adult plaintiffs have signed the complaint, they did not include their addresses. The only specific contact information is for plaintiff Amato. The complaint contains a description of the various plaintiffs and generally where they live,[12] but no specific addresses have been provided. (Compl. ¶¶ 3-7). Plaintiff Amato may not act on behalf of any of the other plaintiffs because she is not an attorney. This includes accepting mail from the court and sending it to the other plaintiffs. In any event, as discussed below, the adults, other than the plaintiff have no standing to bring this action.

### V. Standing

#### A. Legal Standards

A plaintiff bears the burden of establishing that he or she has standing to bring an action in federal court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) causation between the injury and the offensive conduct, and (3) 'a likelihood that the injury will be redressed by a favorable decision.' " *Heath v. Banks*, No. 16-3493-cv, slip. op. at 2 (2d Cir. June 5, 2017) (quoting *Susan B. Anthony List v. Driehous*, — U.S. —, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) ). In addition, there is a "prudential standing rule" which states that, normally litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2014) ).

#### B. Application

In this case, plaintiff Amato has added other adult plaintiffs, including her mother, CB's Aunt and Uncle, and CB's adult cousin. None of these individuals are parties to the custody action, and it is unclear how family that lives in Ohio, (Compl. ¶ 7), would have standing to assert claims in this case. According to the prudential standing rule, the additional plaintiffs would be barred from asserting the legal interests of either plaintiff Amato or CB even if the other plaintiffs claimed that they are "injured" by any of the defendants' actions. Thus, the complaint may also be dismissed for lack of standing as against all plaintiffs other than plaintiff Amato and CB.

### VI. *Rooker-Feldman*, The Domestic Relations Exception, and *Younger v. Harris*

#### A. The Domestic Relations Exception

##### 1. Legal Standards

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshal v. Marshall*, 547 U.S. 293, 308, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in

adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F.Supp. 1139, 1146 (E.D.N.Y. 1993). In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578 (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action, sua sponte which raised very similar claims to the case herein. In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case,[13] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.* Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected to "unfounded" charges. *Id.* at *1.

### 2. Application

**\*9** Plaintiffs in this case are making the same claims and challenging similar actions by the state court judge and the state court attorneys who appeared in plaintiff Amato's custody case. The plaintiff in *Bukowski* also raised "constitutional" issues, but the court recognized that the allegations essentially challenged a state domestic relations matter, and were therefore, outside the federal court's jurisdiction. 2017 WL 1592578, at *3 (citations omitted). A review of plaintiffs' request for relief in this case shows that they are essentially challenging the state court's action. In addition to substantial monetary damages, plaintiffs seek "immediate return" of CB, together with a judgment "declaring the orders, edicts, and processes described in this Complaint unconstitutional with an order permanently enjoining the enforcement of these orders." (Compl. at CM/ECF p. 26).

In order to return custody of CB to plaintiff, or to "enjoin" the state court's orders, this court would have to re-determine the judge's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F.Supp.3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Thus, the case may be dismissed based on the domestic relations exception. To the extent that the custody case has

been concluded, the court will also discuss alternate bases for dismissal.

### B. *Rooker-Feldman*

#### 1. Legal Standards

A dismissal pursuant to the *Rooker Feldman*[14] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

There are four requirements to the application of *Rooker Feldman*: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must have been caused by the state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the judgment must have been rendered prior to filing the federal court action. *Bukowski*, 2017 WL 1592578, at *3 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ).

#### 2. Application

As Judge D'Agostino stated in her June 2, 2017 decision, under the *Rooker Feldman* doctrine, the district court also does not have subject matter jurisdiction over claims that effectively challenge state court judgments in general. (Dkt. No. 9) (quoting *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F.Supp.2d 146, 151 (E.D.N.Y. 2002) ). Although it is unclear whether the plaintiff's custody case is finally decided because plaintiff claims that the Judge scheduled a proceeding in "October" notwithstanding that the witnesses were ready to testify.[15] (Dkt. No. 8 at CM/ECF p.4). To the extent that plaintiff's custody case is terminated, or to the extent that plaintiff seeks review of decisions that the judge has already issued, this complaint is barred by *Rooker Feldman* because plaintiff is essentially challenging the state court's decision.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 75 of 338

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Plaintiff lost in state court, her injuries are allegedly causes by the state court judgment that she seeks to overturn, plaintiff is asking this court to overturn Judge McGinty's rulings, and it appears that custody was awarded to Mr. Bessmer prior to plaintiff bringing this action. Thus, all the requirements for *Rooker Feldman* have been met with respect to orders that have already been issued by Judge McGinty.

### C. *Younger v. Harris* [16]

#### 1. Legal Standards

**\*10** In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. at 43-44. The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id.* *Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions [17] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts. [18] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of constitutional claims in state court. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Parent v. New York*, 485 Fed.Appx. 500, 503 (2d Cir. 2012) (quoting *Younger, supra; Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997) ).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013), the Court revisited the analysis required to invoke abstention under *Younger*. In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah*, 569 Fed.Appx. 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S.Ct. at 591-94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 134 S.Ct. at 588). In *Sprint*, the Court used state-initiated custody proceedings in its analysis [19] as an example of civil proceedings which are akin to criminal proceedings. 134 S.Ct.

at 592 (citing *Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents) ). *See also Davis v. Baldwin*, 594 Fed.Appx. 49, 51 (2d Cir. 2015) (same).

"If the federal court action falls into one of the three categories listed above, the court may then consider additional factors, such as "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." " *Torres v. Gaines*, 130 F.Supp.3d 630, 636 (D. Conn. 2015). In Judge D'Agostino's decision, she stated that "several courts in the Circuit have held that *Younger* abstention applies in similar circumstances as this case." (Dkt. No. 9 at 5) (citing *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 456 S.W.3d 545, 2015 WL 1120121, at \*2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding).

In *Graham*, the court stated that " 'there can be no doubt that a custody dispute ... raises important state interests.' " 2015 WL 1120121, at \*3, 456 S.W.3d 545 (quoting *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989) ). In addition, the court held that plaintiff was able to raise any potential constitutional claims in state court. *Id.* Therefore, the court applied *Younger* to dismiss plaintiff's claims for injunctive relief. The same is true in this action to the extent that any of the issues upon which plaintiffs base their action are still pending or are to be tried in the future. [20] In fact, plaintiff Amato has cited a quote from a letter, signed by Judge McGinty, telling plaintiff Amato that, if she is unhappy with the court's decision, her recourse is an appeal of that decision. [21] (Compl. ¶ 41).

### VII. Opportunity to Amend

#### A. Legal Standards

**\*11** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 76 of 338

## B. Application

Because Judge McGinty and Attorney Ingram are entitled to absolute immunity, it would be futile to allow the plaintiffs to amend their complaint. No amendment will cure this deficiency. Defendant Gilday does not act under color of state law, and plaintiffs have made no sufficient allegations of a conspiracy with Judge McGinty that would be sufficient to establish state action by defendant Gilday. Thus, the court also recommends that no amendment be allowed. Defendants Bessmer and Augustine also do not act under color of state law, and defendant Bessmer is simply plaintiff Amato's adversary in the custody dispute. Defendant Augustine does not appear to be involved in the litigation at all. Thus, no amendment would change this court's recommendation with respect to defendants Bessmer and Augustine.

The court notes that, as stated above, in two of the paragraphs of her complaint, plaintiff appears to state that New York Domestic Relations Law §§ 236 and 240 are "unconstitutional," but her reasoning for this allegations is completely unclear. (Compl. ¶ 36). While plaintiff Amato might in certain circumstances be entitled to challenge the constitutionality of laws as they applied to her without running afoul of the domestic relations exception, *Younger*, or *Rooker Feldman*, the other plaintiff's do not have standing to assert this claim because the laws have not been applied to them, and plaintiff Amato has not named any defendants that would be able to afford her the relief that she seeks with respect to the sections of the law that she appears to challenge. In addition, it is likely that even a proper challenge to the statute would have to be brought first in state court. *See Kahn, supra.* The court also points out that this claim does not appear in plaintiff's "relief" section. Thus, the court will recommend dismissing this claim without prejudice to filing an amended complaint with only plaintiff Amato as the plaintiff, against the proper defendant, at the proper time, and in the appropriate forum.[22]

## VIII. Motion to Obtain ECF Login and Password

Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE** as against defendants McGinty, Ingram, Gilday, Bessmer, and Augustine, and it is

**RECOMMENDED**, that plaintiff Amato's complaint be dismissed **WITHOUT PREJUDICE** only with respect to any claim challenging the constitutionality of New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above, and it is

**\*12 ORDERED**, that plaintiff Amato's motion to obtain ECF privileges (Dkt. No. 10) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this order on plaintiffs to the extent that addresses are available.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9487185

## Footnotes

1    The court notes that on June 2, 2017, plaintiff Amato filed a motion for a Temporary Restraining Order. (Dkt. No. 8). District Judge D'Agostino denied the motion on the same day. (Dkt. No. 9).

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 77 of 338

2    Plaintiff Amato and defendant Patrick Bessmer were apparently not married.

3    The court notes that, although there are multiple plaintiffs, most of the defendants' alleged conduct was directed at plaintiff Amato alone. Plaintiff Amato appears to allege that the defendants' conduct toward her and CB injured the other defendants because of their family relationship to plaintiff Amato and CB. (*See* Compl. ¶ 45) (stating that "no parties had a due process court hearing or trial, [and] were never served any form of order").

4    There appears to be no ¶ 21 in the complaint.

5    Although plaintiffs' complaint asks that two sections of New York Domestic Relations Law be declared "unconstitutional," the court must first note that, to the extent that the claim could be asserted at all, it could only be asserted by plaintiff Amato because she is the only plaintiff who has been a party to the custody proceedings and to whom the statute would have been applied. In addition, none of the individuals named as defendants are proper defendants in such an action. Finally, in cases involving Domestic Relations issues, the court must afford the state court appropriate deference in light of ongoing proceedings involving the plaintiff. *See Kahn v. Shaiswit*, 414 F.Supp. 1064, 1068 (S.D.N.Y. 1976) (dismissing an action by plaintiff husband in a divorce matter in which he challenged the constitutionality of New York Domestic Relations Law § 239). The court in *Kahn* cited *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), in which Judge Oakes stated in a concurring opinion, that " 'probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern.' " *Id.* at 1067 (quoting *Mendez*, 530 F.2d at 461). Thus, to the extent that plaintiff Amato may be attempting to challenge the constitutionality of sections of the New York Domestic Relations Law, the claim may be dismissed.

6    Judicial immunity applies to shield Judge McGinty's liability as to all the plaintiff's, although plaintiff Amato is generally the plaintiff to whom the complaint refers. Plaintiff Amato appears to attempt to include the other plaintiffs by stating that they did not get "hearings," they do not appear to have been parties to the custody case. To the extent that any of the other "plaintiffs," uncle, aunt, grandmother, sister, niece and nephew had dealings with Judge McGinty, it was only in connection with the custody action, and the judge is entitled to absolute immunity no matter who the plaintiff is.

7    As stated above, defendant Ingram is entitled to immunity. The lack of state action is an alternative basis for dismissal as against this defendant.

8    Plaintiff alleges that she was verbally and physically threatened by defendants Bessmer and Augustine outside the court, and that Judge McGinty only issued an order of protection for plaintiff Amato and not for CB. (Compl. ¶ 29). The alleged attack by Bessmer and Augustine was certainly a "private action," and the judge's failure to issue a protective order for CB is not alleged to have been the result of any "conspiracy."

9    An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case. An exception has also been established for parents representing their children in applications for Supplemental Security Income ("SSI"). *Machadio v. Apfel*, 276 F.3d 103, 106-07 (2d Cir. 2002). However, the interests of the child and the parent were "intertwined," and the Social Security regulations provided for such representation.

10    One plaintiff has attempted to sign the complaint herself as a "minor," with her "guardian" signing the complaint underneath the minor's name. (Compl. at CM/ECF p.32).

11    Fed. R. Civ. P. 17(e).

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 78 of 338

12   Most of the plaintiffs live in New York State, but Michelle Arzola and her two "Doe" "children" live in Ohio. (Compl. ¶ 7).

13   One of the rulings granted sole custody to the father of the child. 2017 WL 1592578, at *1.

14   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 17, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

15   Plaintiff Amato does allege that custody has already been awarded to defendant Bessmer.

16   401 U.S. 37 (1971).

17   *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

18   *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

19   *Sprint* did not involve custody proceedings.

20   *Younger* does not apply to monetary damages, thus, the dismissal of plaintiff's damage claims would be governed by the domestic relations exception and not *Younger.*

21   The letter is referring to a "decision" from 2016. It is unclear what that decision may have been or whether it was the judge's actual custody decision.

22   Although plaintiff also mentions the Family Court Act in paragraph 36 of her complaint, she does not indicate which sections of the Act she believes to be unconstitutional.

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 79 of 338

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,
1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 80 of 338

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 81 of 338

no clear error on the face of the record in order to accept the recommendation").

**\*3**  Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1]  The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4**  Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 82 of 338

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 83 of 338

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 84 of 338

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **_FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW._** _Roldan v. Racette,_ 984 F.2d 85, 89 (2d Cir.1993) (citing _Small v. Secretary of Health and Human Services,_ 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

### Footnotes

1       I note, however, that the report-recommendation would survive even _de novo_ review.

---

**Crown v. Wagenstein, Not Reported in F.Supp. (1998)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 85 of 338

1998 WL 118169

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Lakim CROWN, Plaintiff,

v.

Warden WAGENSTEIN; Parker T. # 10639 of
Emergency Response Unit, et al., Defendants.

No. 96 CIV. 3895(MGC).

|

March 16, 1998.

**Attorneys and Law Firms**

Lakim Crown, Brooklyn, for Plaintiff, Pro Se.

Paul A. Crotty, Esq., Corporation Counsel of the City of New
York, Attorney for Defendants Wangenstein and Parker, New
York, By Renee R. Nebens, Esq.

OPINION AND ORDER

CEDARBAUM, J.

**\*1** This is an action for damages brought by a pro se plaintiff
pursuant to 42 U.S.C. § 1983. Defendant Wangenstein moves,
pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint
for failure to state a claim upon which relief can be granted
against him in either his personal or official capacity. For the
reasons discussed below, defendant's motion is granted.

The complaint alleges that on November 28, 1995, while
plaintiff was incarcerated at New York City's Otis Bantum
Correctional Center ("OBCC"), plaintiff was assaulted by a
number of correction officers. (Compl. at 3–4). As a result,
plaintiff alleges that he sustained injuries to his head, neck,
back, and right leg. (Compl. at 4). In addition to the officers
involved in the assault, plaintiff sues Wangenstein, the warden
of OBCC at the time of the alleged assault.

Discussion

A motion to dismiss for failure to state a claim must be granted
if, when viewed in the light most favorable to the plaintiff
and when all allegations of the complaint are accepted as true,
it appears beyond doubt that the plaintiff can prove no set

of facts in support of the claim which would entitle him to
relief. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465,
469 (2d Cir.1995). In addition, a complaint and supporting
papers prepared by a pro se plaintiff must be read liberally and
interpreted to "raise the strongest arguments they suggest."
*Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

When an individual defendant is sued under § 1983, that
defendant's personal involvement in the alleged constitutional
deprivation is a prerequisite to an award of damages. *See*
*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a
claim under § 1983, a complaint sufficiently alleges personal
involvement of a supervisory official if it alleges one of the
following: (a) direct participation in the alleged wrong; (b)
failure to remedy a violation after receiving notice of it; (c)
creation of a policy or custom under which unconstitutional
practices occur; or (d) grossly negligent management of
subordinates who cause the constitutional violation. *See Black*
*v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official
capacity is treated as a claim against the municipality itself.
*Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873,
83 L.Ed.2d 878 (1985). Section 1983 imposes liability on
municipalities only when the action that is alleged to be
unconstitutional implements or executes an official policy or
custom. *See Monell v. Department of Social Services,* 436
U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

From the complaint, it is unclear whether Wangenstein is
being sued in his personal or official capacity. However, pro
se complaints, if possible, should be construed as asserting
both claims. *Jackson v. Dinkins,* 1995 WL 657075 at \*1
(S.D.N.Y. Nov.8, 1995)(citing *Frank v. Relin,* 1 F.3d 1317,
1326 (2d Cir.)("a plaintiff who has not clearly identified in her
complaint the capacity in which the defendant is sued should
not have the complaint automatically construed as focusing
on one capacity to the exclusion of the other"), *cert. denied,*
510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

**\*2** The complaint does allege an assault by certain members
of the OBCC Emergency Response Unit. (Compl. at 3–4). It
alleges that while the plaintiff was making a telephone call,
members of the Emergency Response Unit entered housing
area 1N and defendant Parker verbally harassed the plaintiff,
and with the assistance of other members of the Emergency
Response Unit, assaulted him. (Compl. at 3–4). However,
the complaint does not allege the personal involvement
of Warden Wangenstein. The complaint mentions Warden

**Crown v. Wagenstein, Not Reported in F.Supp. (1998)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 86 of 338

Wangenstein only in the caption, and fails to allege any act or omission by Wangenstein. *See Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)(Edelstein, J.)(finding mere inclusion of warden's name in a complaint insufficient to allege personal involvement).

As for Warden Wangenstein's liability in his official capacity, the complaint fails to allege a municipal policy or custom that defendant was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation prevents a finding of liability for defendant Wangenstein in his official capacity. *See Monell,* 436 U.S. at 694.

## Conclusion

Because the complaint fails to state a claim against Warden Wangenstein upon which relief can be granted, the motion to dismiss defendant Wangenstein is granted.

SO ORDERED

**All Citations**

Not Reported in F.Supp., 1998 WL 118169

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 87 of 338

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

1998 WL 382055
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Angel GONZALEZ, Plaintiff,

v.

THE CITY OF NEW YORK; New York
City Department of Correction; Warden, Otis
Bantum Correctional Center; Corrections
Officer Summer, Shield No. 11856, Defendants.

No. 97 CIV. 2246(MGC).

|

July 9, 1998.

MEMORANDUM OPINION AND ORDER

CEDARBAUM, J.

**\*1** Plaintiff *pro se,* Angel Gonzalez, brings this action under 42 U.S.C. § 1983. He alleges that while in the custody of the New York City Department of Correction ("NYC DOC"), he was beaten by Correction Officer Summer. This is a motion to dismiss the complaint as against the City of New York, Warden of Otis Bantum Correctional Center (the "Warden") and NYC DOC pursuant to Fed.R.Civ.P. 12(b)(6).

On April 22, 1998, a letter was sent to Gonzalez directing him to respond to this motion by June 22, 1998. The letter advised Gonzalez that if he did not respond by June 22, the motion would be decided on the basis of the existing record, and the City of New York, New York City Department of Correction and Warden of Otis Bantum Correctional Facility might be dismissed from the action. Gonzalez has not responded. For the reasons that follow, the motion to dismiss is granted.

BACKGROUND

The complaint alleges that plaintiff was assaulted by Correction Officer Summer while he was incarcerated at Otis Bantum Correctional Center on Rikers Island, New York City. According to the complaint, as plaintiff was coming into the facility's recreation area from the "yard," he passed through a metal detector which registered that he had a metal object on his person. Defendant Summer then swore at plaintiff and told him to hurry up. As plaintiff passed through the

metal detector a second time, he said to Summer, "You don't have to act like that!" Summer then struck plaintiff in the face repeatedly until he lost consciousness. According to the complaint, when plaintiff regained consciousness, he found Summer "still abusing" him and swearing at him. Plaintiff left, found his way back to the housing area and felt as if he "had been hit with a bat to the face ." Plaintiff alleges that he suffered a cut under his left eye, serious swelling of his face and head, and lacerations of his scalp. He alleges that black and blue shadows still show under his eyes, and that he suffers from headaches. He seeks damages in the amount of three million dollars.

DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of the complaint must be accepted as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and all reasonable inferences must be drawn in favor of the plaintiff, *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

1. NYC DOC and the City of New York

Defendants argue that Gonzalez cannot assert a claim against NYC DOC based on any legal theory because it is not a suable entity. They also contend that the complaint fails to state a claim against the City of New York because it does not allege that the actions complained of were the result of an official policy, custom or practice of the City of New York.

**\*2** In addition to the defect that NYC DOC is an agency of the City of New York that is not a suable entity,[1] the complaint fails to state a claim upon which relief can be granted against either NYC DOC or the City. To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege or immunity guaranteed by federal law. To state a claim against a municipality, a plaintiff must also plead that the wrongful action alleged was the result of an official policy, custom or practice of the municipality, and that that policy caused plaintiff's injury. *Monell v. Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The complaint, however, alleges no official policy, custom or practice resulting in injury to Gonzalez. Indeed, the complaint does not even mention the City of New York or NYC DOC, except to the extent that they are listed as parties.

2. Warden of Otis Bantum Correctional Center

Defendants also urge dismissal of the complaint against the Warden, on the ground that there are no allegations in the complaint concerning that defendant. When an individual defendant is sued under § 1983, that defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a claim under § 1983, a complaint sufficiently alleges personal involvement of a supervisory official if it alleges one of the following: (a) direct participation in the alleged wrong; (b) failure to remedy a violation after receiving notice of it; (c) creation of a policy or custom under which unconstitutional practices occur; or, (d) grossly negligent management of subordinates who cause the constitutional violation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official capacity is treated as a claim against the municipality itself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As noted above, § 1983 imposes liability on a municipality only when the action that is alleged to be unconstitutional implements or executes an official policy or custom. *See Monell,* 436 U.S. at 690–91.

From the complaint, it is unclear whether the warden is being sued in his personal or official capacity. However, *pro se* complaints, if possible, should be construed as asserting both claims. *Jackson v. Dinkins,* 1995 WL 657075, at *1 (S.D.N.Y. Nov.8, 1995) (citing *Frank v. Relin,* 1 F.3d 1317, 1326 (2d

Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

The complaint does not allege the personal involvement of the Warden. The complaint mentions the Warden only in the caption, and fails to allege any act or omission by that party. *See Crown v. Wagenstein,* 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997) (same).

**\*3** Finally, to the extent that the complaint asserts an official-capacity claim against the Warden, the claim fails for the same reason that the claims against the City of New York and NYC DOC fail. There are no allegations of any municipal policy or custom that the Warden was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation precludes a finding of liability against the Warden in his official capacity.

Accordingly, the complaint fails to the state a claim against the Warden upon which relief can be granted.

CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint as against defendants the City of New York, New York City Department of Correction, and Warden of Otis Bantum Correctional Facility is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1998 WL 382055

---

**Footnotes**

1 Defendants correctly point out that New York City agencies, such as NYC DOC, are organizational subdivisions of the City of New York lacking independent legal existence and are not themselves subject to suit. *See, e.g., Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997) ("where a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity").

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 89 of 338

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 90 of 338
Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)
2007 WL 607341

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

### DECISION and ORDER

LAWRENCE E. KAHN, U.S. District Judge.

 **\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

 **\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order.[1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

### Footnotes

1    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation. [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2** **ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 93 of 338

## Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**               © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 94 of 338

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel,
Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq.,
Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel,
Utica, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

#### I. *Introduction*

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through
Barbara McGregor, as administratrix of the estate of Kylie
Ann Turczyn, commenced this action against defendants City
of Utica, City of Utica Police Dept., and Elizabeth Shanley
alleging substantive due process claims pursuant to 42 U.S.C.
§ 1983 and separate state law causes of action. (Am.Compl.,
Dkt. No. 12.) Pending is defendants' motion to dismiss for
failure to state a claim. (Dkt. No. 19.) For the reasons that
follow, the motion is granted in part and denied in part.

#### II. *Background*

##### A. *Facts* [1]
Shanley, an Oneida County domestic violence investigator,
was at all relevant times assigned by the Police Department to
accomplish the goals of reducing "occurrence[s] of domestic

violence by increasing reporting and by identifying and
tracking repeat victims and/or offenders," and "increas[ing]
victims' access to supportive services by encouraging [them]
to report their abuse, thereby increasing arrest rates for
domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012,
Thomas Anderson, Turczyn's former boyfriend and the father
of her daughter, broke into Turczyn's home armed with a 9
mm rifle. (*Id.* ¶ 11.) Anderson repeatedly shot Turczyn, taking
her life in view of their four-year-old daughter, G.T. (*Id.*)
Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn
made between five and ten complaints to Utica police
officers, "including informing them of a specific threat by
Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told
Shanley "that Anderson was armed and had threatened to
kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic
violence between Turczyn and Anderson, neither Shanley,
New York State Police, nor Utica Police took any steps to
arrest Anderson, investigate Turczyn's complaints, or follow-
up with Anderson "as is the policy and protocol of the
domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of
protection, which she attempted to do, but was told by an
unknown person at the Oneida County Family Court to return
the following day because the court was " 'too busy.' " (*Id.*
¶¶ 15–16.) The following day, Turczyn left a voice message
for Shanley, explaining that she was unable to obtain an order
of protection and that Anderson had a gun and planned to
kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge,
"Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly
believed that Turczyn's issues with Anderson were outside of
the purview of Utica Police and should, instead, be dealt with
by New York State Police; however, "she did not inform any
other police agency or take any action herself." (*Id.* ¶¶ 18, 19,
20.)

#### B. *Procedural History*
Turczyn commenced this action by filing a complaint on
October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved
to dismiss, (Dkt. No. 10.) In response, Turczyn filed an
amended complaint as of right, which is now the operative
pleading. (*See generally* Am. Compl.) In her amended
complaint, Turczyn alleges the following causes of action:
(1) a denial of substantive due process rights under the Fifth
and Fourteenth Amendments due to deliberate indifference;
(2) a *Monell* [2] claim against the City; (3) negligence; (4)

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 95 of 338

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

**A.** *Preliminary Matters*
At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201– 02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2.), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at \*6 (N.D.N.Y. May 22, 2014) (internal

quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at \*3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b) (6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19, Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of

those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

## B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

## C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

 **\*4**  Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to

protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see Pena v. DePrisco,* 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin,* 577 F.3d at 428 (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting *Pena,* 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis,* 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions[3] when Shanley knew of

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 97 of 338

Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

**\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ——U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at \*10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y.,* No. 12–CV–6151, 2014 WL 1224257, at \*13 (E.D.N.Y. Mar. 24, 2014).

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 98 of 338

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby

**DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

## Footnotes

1   The facts are presented in the light most favorable to plaintiff.

2   *See Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3   In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." *Okin,* 577 F.3d at 428.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 99 of 338

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1** This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND
Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted.[3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

 **\*2** Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 100 of 338

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

## 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the

individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

## II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 102 of 338

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

## Footnotes

1    Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

3    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4    The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

miller ex v. Primo, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 103 of 338

2022 WL 16551700
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

daishawn-lavon: MILLER EX, Plaintiff,
v.
David PRIMO, et al., Defendants.

5:22-cv-680 (BKS/ML)
|
Signed October 31, 2022

**Attorneys and Law Firms**

Plaintiff Pro Se: daishawn-lavon: miller ex,[1] Syracuse, New
York 13206.

## MEMORANDUM-DECISION AND ORDER

Brenda K. Sannes, Chief United States District Judge:

**\*1** Plaintiff pro se daishawn-lavon: miller ex brought
this action on June 27, 2022, alleging, inter alia, that
Defendants violated his federal rights. (Dkt. No. 1). This
case was referred to United States Magistrate Judge Miroslav
Lovric who, on September 29, 2022, issued a Report-
Recommendation recommending that Plaintiff's complaint
be dismissed in its entirety with leave to amend against
Defendants Bozeman and Newton. (Dkt. No. 6, at 17).
Further, Judge Lovric recommended that Plaintiff's claims
against Defendants Primo, Stanislaus-Fung, Temple, and
Pavone be dismissed without prejudice and without leave to
amend because Plaintiff seeks relief from Defendants who
are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B).
(*Id.*). Magistrate Judge Lovric advised Plaintiff that under 28
U.S.C. § 636(b)(1), he had fourteen days within which to file
written objections to the Report, and that the failure to object
to the Report within fourteen days would preclude appellate
review. (Dkt. No. 6, at 18).

Plaintiff has not filed objections to the Report-
Recommendation. For the reasons set forth below, the Report-
Recommendation is adopted, and the Complaint is dismissed
with leave to amend against Defendants Bozeman and
Newton.

This Court reviews de novo those portions of the Magistrate
Judge's findings and recommendations that have been

properly preserved with a specific objection. *Petersen v.
Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C.
§ 636(b)(1)(C). "A proper objection is one that identifies
the specific portions of the [report-recommendation] that
the objector asserts are erroneous and provides a basis for
this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F.
Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks
omitted). Properly raised objections must be "specific and
clearly aimed at particular findings" in the report. *Molefe
v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487
(S.D.N.Y. 2009). "[E]ven a pro se party's objections to a
Report and Recommendation must be specific and clearly
aimed at particular findings in the magistrate's proposal...."
*Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at
*2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25, 2011)
(citation omitted). Findings and recommendations as to which
there was no properly preserved objection are reviewed for
clear error. *Id.*

Having reviewed the Report-Recommendation for clear error
and found none, the Court adopts it for the reasons stated
therein.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation, (Dkt. No. 6), is **ADOPTED** in all respects;
and it is further

**ORDERED** that that Plaintiff's Complaint, (Dkt. No. 1), is
dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and
it is further respectfully

**ORDERED** that Plaintiff's Complaint, (Dkt. No. 1), is
**DISMISSED WITHOUT PREJUDICE AND WITH
LEAVE TO AMEND** against Defendants Bozeman and
Newton for failure to state a claim upon which relief may
be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is
further

**\*2 ORDERED** that Plaintiff's Complaint, (Dkt. No. 1), is
**DISMISSED WITHOUT PREJUDICE AND WITHOUT
LEAVE TO AMEND** against Defendants Primo, Stanislaus-
Fung, Temple, and Pavone because it seeks relief from
defendants who are immune from suit pursuant to 28 U.S.C.
§ 1915(e)(2)(B); and it is further

**ORDERED** that any amended complaint must be filed
**within thirty (30) days** of the date of this Order; and any

miller ex v. Primo, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 104 of 338

amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16551700

## Footnotes

1       Plaintiff writes his name in lowercase letters.

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

2022 WL 16556060

2022 WL 16556060
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daishawn-Lavon MILLER EX, Plaintiff,

v.

David PRIMO, Chief Clerk; Karen J Stanislaus-Fung, Court Attorney Referee; Tylyn L Bozeman, Attorney for mother; Robert Temple, Attorney for the child; Salvatore Pavone, Court Attorney Referee; and Tanerra CC Newton, mother, Defendants.

5:22-CV-0680 (BKS/ML)
|
Signed September 29, 2022

**Attorneys and Law Firms**

DAISHAWN-LAVON MILLER EX, Plaintiff, Pro Se, 2363 James Street, Number 547, Syracuse, New York 13206.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 3) filed by Daishawn-lavon Miller Ex ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 3), and I recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without prejudice (a) in part with leave to amend, and (b) in part without leave to amend.

## I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his rights were violated by Defendants David Primo, Karen Stanislaus, Tylyn Bozeman, Robert Temple, Salvatore Pavone, Tanerra CC Newton (collectively "Defendants"), who were all involved in Plaintiff's state court child custody dispute. (*See generally* Dkt. No. 1.)

In total Plaintiff's Complaint and the ten attachments are 79-pages long. (*Id.*) The vast majority of Plaintiff's Complaint and attachments are nonsensical, rambling sentences, that strongly suggest Plaintiff is proceeding in the present case on the basis of his purported status as a sovereign citizen.

More specifically, Plaintiff alleges that his due process rights were violated by Defendants when they failed to take notice of his attempts to serve them with notice of his "status as the executor, american national, age of [majority], secured party creditor" and that Defendants enforced and applied a foreign and unconstitutional form of law. (*Id.*) In addition, Plaintiff alleges that Defendants violated his constitutional rights by determining the custody of his child pursuant to the Family Court Act, which is "derrived [sic] from the Social Security Act which was never enacted into positive law." (Dkt. No. 1 at 4.)

Plaintiff alleges that Defendant Primo, the Chief Court Clerk of Onondaga County Family Court, was present during Plaintiff's custody trial where he "watched" (1) Plaintiff question the court's jurisdiction, and (2) Plaintiff's requests to have his name correctly formatted be ignored. [2] (*Id.* at 6.) Plaintiff alleges that the court failed to take notice of "NYS authenticated Power of Attorney and Birth Certificates [Birth Certification is now Authenticated at Federal Level, Bill of Complaint in Equity, Declaration of Nationality, Notice of Restricted Special Appearance, invoices/injunction [cease and desist order], Uniform Commercial Code Financial Statements." (*Id.*)

Plaintiff alleges that Defendant Temple, the attorney for the child in Plaintiff's custody action, did not act in Plaintiff's child's best interest, failed to "honor [Plaintiff's] injunction (cease and desist order), failed to take notice of [Plaintiff's] Bill of Complaint in Equity, NYS authenticated Power of Attorney and Birth Certificate, Declaration of Nationality, [and Defendant Temple wa]s also responsible for drafting the order with the NAMES in all caps." (*Id.*)

 **\*2** Plaintiff alleges that Defendant Stanislaus-Fung, who was the court attorney referee in his custody dispute, "failed to take notice of [Plaintiff's] status," "took joint legal custody away from [Plaintiff] via the FAMILY COURT ACT," failed to recuse herself despite Plaintiff's requests, and did not act as an impartial decision maker in the custody dispute. (*Id.*)

Plaintiff alleges that Defendant Bozeman, who represented the mother of Plaintiff's child in the custody dispute, failed to take notice of Plaintiff's "status." (*Id.*) In addition, Plaintiff alleges that Defendant Bozeman was served with invoices, a private parenting agreement, and an injunction to cease and desist but that she failed to properly respond to those documents. (*Id.*)

Although Plaintiff's Complaint contains virtually no factual detail, it appears to assert one claim that Defendants violated his due process rights. [3] (*See generally* Dkt. No. 1.) Plaintiff does not appear to be seeking any relief. (*See generally* Dkt. No. 1.)

Plaintiff also filed an application to proceed *in forma pauperis*. (Dkt. No. 3.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [4] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 3), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [5]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. 28 U.S.C. § 1915(e); *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983); *see, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory

for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted). "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

"Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources." *Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at \*2 (N.D.N.Y. July 23, 2014) (D'Agostino, J.); *accord, Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (summary order) (noting that "an individual's belief that her status as a 'sovereign citizen' puts her beyond the jurisdiction of the courts has no conceivable validity in American law") (internal quotation marks omitted); *see also United States v. Ulloa*, 511 F. '105, 106 n.1 (2d Cir. 2013) (summary

2022 WL 16556060

order) ("The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group."); *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3rd Cir. 2008) ("[T]he 'Redemptionist' theory ... propounds that a person has a split personality: a real person and a fictional person called the 'strawman.' The 'strawman' purportedly came into being when the United States went off the gold standard ... and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.... Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers."); *Branton v. Columbia Cnty.*, 15-CV-0005, 2015 WL 3397949, at *2-4 (N.D.N.Y. May 26, 2015) (Hurd, J., adopting Report-Recommendation of Dancks, M.J., dismissing plaintiff's complaint, which was "a classic example of [the] 'redemptionist' or 'sovereign citizen' theory," and denying leave to amend); *Green v. Pryce*, 15-CV-3527, 2015 WL 4987893, at *3-4 (E.D.N.Y. Aug. 18, 2015) (dismissing plaintiff's complaint on initial review and denying leave to amend, where the complaint was based "on the 'redemptionist' theory," included claims "pursuant to federal criminal statutes that do not provide a private right of action," and "failed to set forth any facts to support" his § 1983 claim).

**\*4** Here, Plaintiff's Complaint (1) is comprised of repeated references to his status as an "american national ... secured party creditor," (2) is virtually devoid of factual allegations about the incident or incidents at issue (or any other event based in fact), and (3) contains citations to statutes and references to legal concepts that do not provide a private cause of action. (Dkt. No. 1.) Accordingly, I conclude that Plaintiff's Complaint–predicated as it is on a "sovereign citizen" theory that is routinely held to have no basis in law–does not allege facts plausibly suggesting any entitlement to relief.

In addition and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from individuals who are immune from suit and for failure to state a claim upon which relief may be granted. [6]

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

**A. Immunity**

**1. Defendant Primo**

Courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties." *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see Ali v. Pollak*, 182 F.3d 898 (2d Cir. 1999) (unpublished opinion) (extending judicial immunity to a pro se law clerk); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (extending judicial immunity to a judge's law clerk); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same); *Gibson v. Brown*, 12-CV-0622, 2012 WL 1744845, at *4-5 (E.D.N.Y. May 16, 2012) (extending judicial immunity to a pro se writ clerk)).

**\*5** It appears as though Plaintiff's claim against Defendant Primo arises from actions he took with respect to a case before Defendant Stanislaus-Fung in the Onondaga County Family Court. Plaintiff fails to allege any facts showing that Defendant Primo acted beyond the scope of his judicial responsibilities or outside of his jurisdiction. Because Plaintiff sues Defendant Primo for "acts arising out of, or related to, individual cases before" Defendant Stanislaus-Fung, he is immune from suit for such claims. *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).

2022 WL 16556060

#### 2. Defendants Stanislaus-Fung and Pavone

"The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' "); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

As a result, I recommend that Plaintiff's claim against Defendants Stanislaus-Fung and Pavone be dismissed based on the doctrine of absolute judicial immunity.

#### 3. Defendant Temple

"Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "In New York, courts have regularly found that attorneys for children in custody proceedings (called 'law guardians' until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity." *Thomas v. Martin-Gibbons*, 19-CV-7695, 2020 WL 5026884, at *7 (S.D.N.Y. Aug. 25, 2020) (citing *Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012)).

Plaintiff's allegations against Defendant Temple arise out of his court-appointed representation of Plaintiff's child during family court proceedings. As a result, Plaintiff's claim against Defendant Temple be dismissed pursuant to the doctrine of quasi-judicial immunity. *Thomas*

*v. Martin-Gibbs*, 2020 WL 5026884, at *7 (citing *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to quasi-judicial immunity)) (dismissing the plaintiff's claims against the Children's Law Center, which arose out of their court-appointed representation of "J.O." during family court proceedings).

Based on the doctrine of judicial immunity, I recommend that Plaintiff's claim against Defendants Primo, Stanislaus-Fung, Pavone, and Temple be dismissed because the Court lacks subject matter jurisdiction.

### B. Failure to State a Claim Upon Which Relief May Be Granted

#### 1. Defendant Primo

 **\*6**  In the alternative, I recommend that Plaintiff's claim against Defendant Primo be dismissed for failure to state a claim upon which relief may be granted.

"To state a claim for liability under [S]ection 1983 against a government official sued in his or her individual capacity, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, at *3 (2d Cir. June 7, 2022) (summary order) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)). Failing to allege that a defendant was personally involved in, or responsible for, the alleged constitutional violation renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted); *see Dubois v. Beaury*, No. 21-2096, 2022 WL 1701497, at *4 (2d Cir. May 27, 2022) (stating that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983" (internal quotation marks omitted)).

Here, Plaintiff alleges that Defendant Primo "allowed" Plaintiff's rights to be violated "as he sat in on [Plaintiff's custody] Trial and watched [Plaintiff] qu[ ]estion the court['s] jurisdiction, the format of the names in the custodial order." (Dkt. No. 1 at 6.) Plaintiff's allegation that Defendant Primo was present while others allegedly violated his rights, fails to plausibly suggest Defendant Primo's personal involvement in the constitutional violation. *See Roman v. City*

of Mount Vernan, 21-CV-2214, 2022 WL 2819459, at *16 (S.D.N.Y. July 19, 2022) (quoting *Arbuckle v. City of New York*, 14-CV-10248, 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016)) (" 'Simply being present at the scene of an arrest does not suffice for personal involvement.' ").

### 2. Defendant Pavone

In the alternative, I recommend that Plaintiff's claim against Defendant Pavone be dismissed for failure to allege Defendant Pavone's personal involvement in any violation of Plaintiff's rights. The Complaint lists Defendant Pavone as a defendant but fails to allege any action taken by Defendant Pavone.

### 3. Defendants Bozeman and Temple

Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendants Bozeman and Temple is inadequately pled because he failed to allege that they acted under color of state law. 42 U.S.C. § 1983; *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).

"Although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) (Hurd, J.). Thus, I recommend that Plaintiff's claim against Defendant Temple be dismissed for failure to state a claim upon which relief may be granted.

Moreover, although it is not clear from the face of the complaint whether Defendant Bozeman was appointed by the court to represent Defendant Newton, or whether Defendant Newton privately retained Defendant Bozeman, the difference is inconsequential. "It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent*, 786 F. Supp. 2d at 538 (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *accord Agron v. Douglas W. Dunham Esq. & Assocs.*, 02-CV-10071, 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004); *see Walker v. Rivera*, 22-CV-0560, 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (recommending dismissal of the plaintiff's Section 1983 claims against the defendant private attorney and defendant attorney for the child because the plaintiff failed to allege facts plausibly suggesting that they acted under color of

state law); *DeRouseau v. Fam. Ct., Westchester Cnty.*, 21-CV-8716, 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."); *Cleveland v. Schenectady Cnty. Dep't of Children and Families*, 16-CV-1235, 2016 WL 8193590, at *6 (N.D.N.Y. Dec. 30, 2016) (Stewart, M.J.) ("It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action.").

**\*7** As a result, I recommend that Plaintiff's claim against Defendants Temple and Bozeman be dismissed.

### 4. Defendant Newton

Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendant Newton—the mother of his child—was a state actor. "[M]ere use, and even misuse, of state courts does not turn private parties into state actors." *Koziol v. King*, 14-CV-0946, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015) (citing *Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983."); *Dahlberg v. Becker*, 748 F.2d 85, 89-90 (2d Cir. 1984) (dismissing § 1983 action because allegations of "misuse of a state statute" did not give rise to § 1983 action)). Thus, Plaintiff has failed to allege facts plausibly suggesting Defendant Newton was a state actor for purposes of liability pursuant to 42 U.S.C. § 1983. *Koziol*, 2015 WL 2453481, at *11-12 (dismissing the plaintiff's claims against his ex-wife based on the plaintiff's allegations that she "abuse[d] joint custody rights" and filed "false claims" and "specious petitions").

As a result, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to state a claim upon which relief may be granted. [7]

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 110 of 338

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

2022 WL 16556060

amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

**\*8** Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except those against Defendants Bozeman and Newton.

However, in light of Plaintiff's *pro se* status and out of an abundance of caution, a better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's claim against Defendant Bozeman and Newton from being *sua sponte* dismissed on initial review. As a result, I recommend that Plaintiff's claim against Defendant Bozeman and Newton be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant in the constitutional deprivations alleged in sufficient detail to establish that it was tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and

must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Bozeman and Newton, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Primo, Stanislaus-Fung, Temple, and Pavone, because it seeks relief from defendants who are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*9** NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16556060

## Footnotes

1   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2   Although unclear from the content of the Complaint, it appears that Plaintiff prefers his name be written in entirely lowercase letters but that the caption in the state court proceedings listed the parties' names in all capital letters.

3   Plaintiff's Complaint also contains an extensive list with several legal terms that do not appear to have any meaning in context. (Dkt. No. 1 at 7.) More specifically, under the paragraph in the form complaint asking what relief Plaintiff seeks, states:

> see invoices attached, Abuse of Power, Abuse of Process, Appearance in Court, Breach of Contract/ Oath/ Charter, Breach of Duty, Capitis Diminutio Maxima, Check and Balance Violation, Conspiracy/ Collusion, Deceit*, Discrimination/ Vexatious Litigation, Duty of Care Violation, Embezzlement/ Extortion, Entrapment*, Factual Causation*, Fair Hearing Request/ Violation, Fraud Upon the Court, Fraudulent Conveyance/Conversion, Fruit Of The Poisonous Tree, Gross Negligence, Malicious Wrongdoing, Mental Anguish, Mis-Application of Statute, Mis-Information/False Evidence, Misappropriation of Funds, Misrepresentation, Mistrial, Natural Law Violation, Obstruction of Justice, Psychological Warfare, R.I.C.O. (Illegal Activities Per Person), Serving in Multiple Capacities, Speedy Trial Violation, Tax Fraud, The Use of Policies to Override The Law, Treason, Trespassing, Undisclosed Policies/Usury, Unholy Alliance, United States Bill of Rights Violation, Unjust Enrichment, Unlawful Taking, Use of injurious or Damaging Laws, Using Public Funds For Private Interests

> (Dkt. No. 1 at 7.)

4   The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5   Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

6   Due to the nature of Plaintiff's Complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims are also likely barred. "The Second Circuit has recently stated that the *Rooker-Feldman* doctrine bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues." *Arena v. Dep't of Soc. Servs. of Nassau Cnty.*, 216 F. Supp. 2d 146, 152 (E.D.N.Y. 2002) (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002)). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying custody state court proceeding remains pending, his request for this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

2022 WL 16556060

7    In the alternative, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to allege Defendant Newton's personal involvement in any violation of Plaintiff's rights. Again, Plaintiff listed Defendant Newton as a defendant in this case but failed to allege any action taken by Defendant Newton in the body of the Complaint.

8    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1898389
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Elizabeth RENNER, pro se, Plaintiff,

v.

Referee STANTON, Judge Stephen Bogacz, Judge
Sidney Strauss, Judge Maryellen Fitzmaurice, Judge
Jonathan Lippman, Judge William Mastro, Judge Sherri
Roman, Judge Sandra Sgroi, Judge Jeffrey Liebowitz,
Judge Pamela Jackman Brown, Judge Jeremy Weinstein,
Unified Court System, New York State, Defendants.

No. 13–CV–01676 (DLI).
|
May 7, 2013.

**Attorneys and Law Firms**

Elizabeth Renner, Bayside, NY, pro se.

Susan Anspach, State of New York Office of the Attorney
General, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

IRIZARRY, District Judge.

**\*1** *Pro se* plaintiff Elizabeth Renner ("Plaintiff") filed the
instant action against Julie Stanton, New York State Family
Court Referee of Queens County; the Hon. Stephen Bogacz
and the Hon. Maryellen Fitzmaurice, New York State Family
Court Judges of Queens County; the Hon. Sidney Strauss,
the Hon. Jeffrey Liebowitz, and the Hon. Pamela Jackman
Brown, Justices of the New York State Supreme Court,
Queens County; the Hon. Jeremy Weinstein, Administrative
Judge of the New York State Supreme Court, Queens County;
the Hon. Sandra Sgroi, the Hon. William Maestro, and the
Hon. Sherri Roman, Justices of the New York State Supreme
Court, Appellate Division, Second Department; the Hon.
Jonathan Lippman, Chief Judge of the New York State Court
of Appeals; the Unified Court System; and New York State
(collectively, "Defendants"). The complaint alleges violations
of 42 U.S.C. § 1983 for orders issued in Plaintiff's child
custody and divorce proceedings. For the reasons set forth
below, the complaint is dismissed for lack of subject matter
jurisdiction.

## BACKGROUND

Plaintiff brings this *pro se* action against judges and a referee
who presided over Plaintiff's child custody and divorce
proceedings in New York State courts. (Compl. at 1–2.) [1]
Specifically, Plaintiff alleges the judges and referee: were
biased against her, failed to recuse themselves when she
requested them to, engaged in *ex parte* communications and
issued *"ex parte"* orders," refused to "correct" orders that
allegedly harmed Plaintiff and her children, failed to timely
consider motions and issue orders, did not grant her motions,
refused to arbitrate claims that her attorneys had extorted
legal fees, denied her appeal in the New York State Court
of Appeals, and the appellate courts refused to reverse the
rulings of the lower courts. (*Id.* at 4–14.) In addition, Plaintiff
alleges the Unified Court System and New York State failed to:
properly train its judges and referees, select judges who are
qualified, or remove "bad judges" from the bench. (*Id.* at 13.)
Plaintiff seeks monetary damages and injunctive relief barring
Referee Stanton and Judge Bogacz from presiding over any of
Plaintiff's cases going forward and vacating the past decisions
of Referee Stanton. (*Id.* at 7, 9.)

## DISCUSSION

*Pro se* complaints are held to less stringent standards than
pleadings drafted by attorneys and the court is required to
read Plaintiff's *pro se* complaint liberally and interpret it as
raising the strongest arguments it suggests. *Sealed Plaintiff v.
Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008).
Moreover, at the pleadings stage, the court must assume the
truth of "all well-pleaded, nonconclusory factual allegations"
in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621
F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556
U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).
However, a *pro se* plaintiff must still plead sufficient facts to
state a claim that is plausible on its face. *See Triestman v. Fed.
Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006).

### A. Legal Standard

**\*2** It is axiomatic "that federal courts are courts of limited
jurisdiction and lack the power to disregard such limits
as have been imposed by the Constitution or Congress."
*Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C.
v. Dupont,* 565 F.3d 56, 62 (2d Cir.2009) (quotation marks

omitted). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte." Id.; see also* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Second Circuit has "emphasize[d] the need for parties and for district courts to take a hard look at jurisdictional issues early in the litigation." *Wynn v. AC Rochester,* 273 F.3d 153, 159 (2d Cir.2001).

Federal subject matter jurisdiction exists only where the action presents a federal question pursuant to 28 U.S.C. § 1331 or where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See Petway v. N.Y.C. Transit Auth.,* 2010 WL 1438774, at *2 (E.D.N.Y. Apr.7, 2010), *aff'd,* 450 F. App'x. 66 (2d Cir.2011). Federal question jurisdiction is invoked where the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law within the meaning of the general federal question statute only if the federal question appears in the facts of the plaintiff's well pleaded complaint. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

**B. Domestic Relations Exception**

Plaintiff fails to establish any basis for this Court's subject matter jurisdiction and instead sets forth claims related to domestic relations matters, namely divorce and child custody proceedings. Federal courts generally lack subject matter jurisdiction over such claims pursuant to the domestic relations exception. "So strong is [the Supreme Court's] deference to state law in this area that [the Supreme Court has] recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' " *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 12–13, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (quoting *Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)). The exception further counsels that "it might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue." *Id.* at 13 (quoting *Ankenbrandt,* 504 U.S. at 705). Plaintiff alleges constitutional violations, invoking the jurisdiction of this Court under federal question jurisdiction. However, "[d]istrict courts in this Circuit have held that the exception includes civil rights actions directed at challenging ... domestic relations proceedings." *Awan v. Kramer,* 2012 WL 5426088, at *3 (E.D.N.Y. Nov.7, 2012)

(citing *Mitchell–Angel v. Cronin,* 1996 WL 107300, at *2 (2d Cir. Mar.8, 1996)).

**\*3** As Plaintiff challenges the orders made in child custody and divorce proceedings, this Court lacks jurisdiction over Plaintiff's claims. *See Schottel v. Kutyba,* 2009 WL 230106, at *1 (2d Cir. Feb.2, 2009) (plaintiff's claims "begin and end in a domestic dispute" and state courts are better suited to that adjudication); *Sullivan v. Xu,* 2010 WL 3238979, at *2 (E.D.N.Y. Aug.13, 2010) (dismissing action as barred by the domestic relations exception, because "[a]lthough plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters"). Accordingly, the complaint must be dismissed for lack of subject matter jurisdiction.

**C. Judicial Immunity**

Even if the domestic relations exception did not apply, Plaintiff could not maintain this action against any of the named Defendants.

Plaintiff's claims against Referee Stanton and the New York State judges are barred by the doctrine of absolute judicial immunity. It is well settled that judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Forrester v. White,* 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *see also Pierson v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (extending judicial immunity to actions brought pursuant to Section 1983.) Furthermore, a court appointed referee is similarly entitled to absolute immunity for her official acts. *Wilson v. Wilson–Polson,* 446 Fed. App'x. 330, 331 (2d Cir.2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit). Absolute judicial immunity "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles,* 502 U.S. at 11, 13 (quotations and citations omitted). Judicial immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.* at 11–12.

All of Plaintiff's claims challenge judicial decisions made by the judges and Referee Stanton when they presided over Plaintiff's child custody and divorce proceedings. These are clearly judicial actions undertaken within their

judicial capacity. Plaintiff's claims of bias and procedural irregularity are insufficient to overcome immunity. *See Levine v. Lawrence,* 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (neither claims that a judge's decision was "biased and prejudicial" nor that proceedings were conducted "in an irregular or erroneous manner" abrogates absolute immunity).

To the extent that Plaintiff claims the judges' actions were taken in absence of jurisdiction, the complaint only references actions taken in the underlying child custody and divorce proceedings that are clearly within the subject matter jurisdiction of New York State courts. The scope of a judge's jurisdiction "must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). "A judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." *Levine,* 2005 WL 1412143, at *7 (citing *Stump,* 435 U.S. at 357 n. 7.) Accordingly, Plaintiff's claims against Referee Stanton and the New York State judges must be dismissed on judicial immunity grounds.

### D. Sovereign Immunity

**\*4** Plaintiff's claims against New York State and the Unified Court System are barred by the doctrine of sovereign immunity. In interpreting the Eleventh Amendment of the United States Constitution, the Supreme Court has consistently held that "nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *see also Gollomp v. Spitzer,* 568 F.3d 355, 368 (2d Cir.2009) (the New York State Unified Court System is entitled to sovereign immunity as an arm of the State). Title 18, United States Code, Section 1983 does not abrogate a states' immunity under the Eleventh Amendment. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Dube v. State Univ. of N.Y.,* 900 F.2d 587, 594 (2d Cir.1990). Furthermore,

Plaintiff has not alleged, nor is there any indication, that New York State or the Unified Court System has expressly waived immunity. Accordingly, Plaintiff's claims against New York State and the Unified Court System must be dismissed on sovereign immunity grounds.

### E. Futility of Amending the Complaint

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). However, a court may deny an opportunity to amend "when amendment would be futile." *Fulton v. Goord,* 591 F.3d 37, 45 (2d Cir.2009). Here, the complaint gives no indication that Plaintiff has a colorable claim under federal law. As any attempt to amend the complaint would be futile, Plaintiff is denied leave to amend the complaint. *See Cuoco,* 222 F.3d at 112.

### CONCLUSION

For the reasons set forth above, the complaint is dismissed. As it appears from the circumstances of this case that Plaintiff would not be able to make out a federal claim, her complaint is dismissed with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a) (3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1898389

### Footnotes

1    The complaint has been paginated by the Court for ease of reference.

**End of Document**                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2215761
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul TOPOLSKI, Plaintiff,
v.
Susan WROBLESKI; et al., Defendants.

No. 5:13–CV–0872 (LEK/DEP).
|
Signed May 29, 2014.

**Attorneys and Law Firms**

Paul Topolski, Depew, NY, pro se.

Heather L. Youngman, Tully, Rinckey Law Firm, Carol L. Rhinehart, Onondaga County Department of Law, Syracuse, NY, Gregory J. Rodriguez, Office of Attorney General, Albany, NY, for Defendants.

*MEMORANDUM–DECISION and ORDER*

LAWRENCE E. KAHN, District Judge.

**I. INTRODUCTION**

 *1  In this civil rights action, Plaintiff Paul Topolski ("Plaintiff") alleges that Defendants deprived him of his parental and other constitutional rights in violation of 42 U.S.C. § 1983. *See generally* Dkt No. 1 ("Complaint"). Presently before the Court are Motions to dismiss filed by Defendants Susan Wrobleski ("Ms.Wrobleski") and Michael Wrobleski ("Mr.Wrobleski") (collectively, the "Wrobleskis"); Salvatore Pavone ("Pavone") and Sheree Jackson ("Jackson") (collectively, the "Family Defendants"); Onondaga County and Onondaga County Department of Emergency Communications ("Emergency Communications") (collectively, the "County Defendants"); and Zachary L. Karmen ("Karmen"). Dkt. Nos. 22 ("Karmen Motion"); 30 ("Wrobleski Motion"); 36 ("County Motion"); 47 ("Pavone and Jackson Motion"). Plaintiff has filed a Motion for a default judgment as to Defendant Aliza Steemrod ("Steemrod"). Dkt. No. 63 ("Motion for Default Judgment"). For the following reasons, the Motions to dismiss are granted, the Motion for Default Judgment is denied, Plaintiff's claim against Steemrod is dismissed

pursuant to 28 U.S.C. § 1915(e)(2), and the Complaint is dismissed in its entirety.

**II. BACKGROUND** [1]

Plaintiff alleges that the Wrobleskis, his former in-laws, have engaged in a "continuous conspiracy for the purpose of depriving [P]laintiff of his parental rights and his right to life and liberty ." Compl. at 3. According to Plaintiff, the Wrobleskis began plotting in 2000 to have his children taken from his custody. *Id.* at 4. The Wrobleskis proceeded to lodge a number of putatively baseless complaints with Onondaga County Child Protective Services ("CPS") regarding Plaintiff's treatment of his children. *Id.* In 2000, Mr. Wrobleski allegedly followed Plaintiff around "in disguise" and made false reports to the Cicero Police Department that led to Plaintiff's arrest for driving while intoxicated ("DWI") and endangering his children's welfare, although the charges were later dismissed for "legal insufficiency." *Id.*

In 2003, Plaintiff's children were placed in the Wrobleskis' care after the Wrobleskis reported that Plaintiff had left the children alone; Plaintiff claims that his babysitter was late and his girlfriend's daughter watched the children until the babysitter arrived. *Id.* In 2008, following Plaintiff's release from prison on DWI charges, the Onondaga Family Court issued an order giving Plaintiff joint custody of, and certain visitation rights with, his children. *Id.* at 4–5.

In August 2009, Ms. Wrobleski, even though she knew that Plaintiff had been in regular contact with his children, reported otherwise to the Orchard Park Police Department ("Orchard Park") and requested that Orchard Park perform multiple "welfare checks" on Plaintiff. *Id.* at 5. The following month, Plaintiff was arrested for DWI, which he claims was the result of four calls from the Wrobleskis to Emergency Communications operators: one by Mr. Wrobleski, who "stalked" Plaintiff in disguise on the highway, and three by Ms. Wrobleski from her home phone. *Id.* at 5–6. Plaintiff alleges that he was then assaulted by the Cicero police officers dispatched by Emergency Communications. *Id.*

 *2  On September 13, 2012, a custody hearing regarding Plaintiff's daughter was held before Onondaga Family Court referee Pavone. *Id* . at 9. Plaintiff alleges that Karmen, the law guardian appointed to represent Plaintiff's daughter, failed to contact Plaintiff prior to the hearing and that Pavone excluded Plaintiff from the hearing. *Id.* Plaintiff further alleges that the Wrobleskis and Steemrod negotiated an illegal

custody agreement at this hearing that "deprive[d] Plaintiff of his parental rights," and that Pavone "authorized" this agreement. *Id.* at 9–10. Pursuant to this agreement, Steemrod was given custody of Plaintiff's daughter. *Id* . Steemrod subsequently forced Plaintiff's daughter and another of his children out of their "court ordered primary residence" and canceled Plaintiff's daughter's health insurance. *Id.* at 10. Plaintiff subsequently sent a request for records regarding the September 13, 2012 proceeding to Jackson, the Chief Clerk of the Onondaga Family Court. *Id.* Plaintiff received no response. *Id* .

On July 24, 2013, Plaintiff filed the Complaint and a Motion for a preliminary injunction preventing the Wrobleskis from dissipating assets needed to satisfy a judgment in this case and restraining the Wrobleskis and Steemrod from falsely reporting that Plaintiff was mistreating his children or driving while intoxicated. *See* Compl.; Dkt. No. 2 ("PI Motion"). The Court denied the PI Motion in light of Plaintiff's failure to demonstrate a likelihood that: (1) the Wrobleskis and Steemrod were acting under color of state law as required by § 1983; or (2) the Wrobleskis would render a judgment uncollectible in the absence of a preliminary injunction. *See generally* Dkt. No. 11 ("October Order") at 3–9. The October Order also approved and adopted a ReportRecommendation and Order by the Honorable David E. Peebles, U.S. Magistrate Judge, recommending that Plaintiff's claim against the State of New York be dismissed pursuant to 28 U.S.C. § 1915(e) on sovereign immunity grounds but that his claims against other Defendants be accepted for filing. *See id.* at 9– 11; Dkt. No. 5 ("Report–Recommendation"). The Motions to dismiss and Motion for default judgment followed. *See generally* Docket.

## III. MOTIONS TO DISMISS

### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also* FED. R. CIV. P. 12(b) (6). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Twombly,* 550 U.S. at 556. "[U]nadorned, the-defendant-unlawfullyharmed-me accusation[s]" do not suffice. *Iqbal,* 556 U.S. at 678 (citing

*Twombly,* 550 U.S. at 555). Thus, although a court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff, *see Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir.2006), an action is subject to dismissal where the court is unable to infer more than the "sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).

### B. County Motion

**\*3** The County Defendants correctly assert that Plaintiff has failed to allege a basis for liability under § 1983. Dkt. No. 38– 2 ("County Memorandum") at 10. "Municipalities, including counties, can be liable under § 1983 if the municipality itself can be said to have been responsible for the constitutional violation." *Sheriff's Silver Star Ass'n of Oswego Cnty., Inc. v. Cnty. of Oswego,* 56 F.Supp.2d 263, 266 (N.D.N.Y.1999) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "Municipalities may be held liable for violations of constitutional rights under Section 1983 if 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " *Drew v. Connolly,* 536 F. App'x 164, 165 (2d Cir.2013) (quoting *Monell,* 436 U.S. at 690). "Additionally, a plaintiff may hold a municipality liable for a constitutional violation as a result of that municipality's failure to train its employees." *Drew,* 536 F. App'x at 165 (citing *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "A plaintiff may establish a municipal policy or custom by showing that the municipality's failure to train its officers 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.' " *Drew,* 536 F. App'x at 165 (quoting *Anthony v. City of New York,* 339 F.3d 129, 140 (2d Cir.2003)).

Plaintiff alleges that dispatchers at Emergency Communications improperly credited the Topolskis' calls and sent officers to investigate Plaintiff. *See* Compl. at 5–6. But he has not argued, let alone alleged facts plausibly suggesting, that the dispatchers' actions were taken pursuant to any policy or custom of the County Defendants or resulted from a failure to train. *See generally id.;* Dkt. No. 46 ("Response to County Motion") at 8. As there is no basis for liability under § 1983, the County Motion is granted.

### C. Pavone and Jackson Motion

*1. Pavone*

Plaintiff challenges Pavone's September 13, 2012 "authoriz[ation]" in "open court" of a custody agreement between the Wrobleskis and Steemrod, and Pavone's failure to include Plaintiff in the "proceeding" that produced that agreement. Compl. at 9. The Complaint alleges that Pavone thereby violated a pre-existing Onondaga Family Court custody order and Plaintiff's parental and due process rights. *Id.* Pavone responds that Plaintiff's claim is barred by the doctrine of absolute judicial immunity. Dkt. No. 60 ("Pavone and Jackson Memorandum") at 1–3. [2]

Judges are generally "immunized ... from damage claims arising out of their judicial acts." *Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997); *see also McKnight v. Middleton,* 699 F.Supp.2d 507, 523 (E.D.N.Y.2010) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions"), *aff 'd,* 434 F. App'x 32 (2d Cir.2011) (citing *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009)). "Furthermore, a court appointed referee is similarly entitled to absolute immunity for her official acts." *Renner v. Stanton,* No. 13–CV–01676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (citing *Wilson v. Wilson–Polson,* 446 F. App'x. 330, 331 (2d Cir.2011)). Judicial immunity is so broad that judges and referees "are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly." *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (quotation marks omitted); *see also Cleavinger v. Saxner,* 474 U.S. 193, 199–200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (noting that judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff").

**\*4** However, "[e]ven judicial immunity, which provides judges with very broad protection, may be overcome." *Gross v. Rell,* 585 F.3d 72, 82 (2d Cir.2009). Immunity is inapplicable if the judge or referee: (1) did not perform the challenged action in her judicial capacity; or (2) "acted in the 'clear absence of all jurisdiction.' " *Tucker,* 118 F.3d at 932 (quoting *Stump,* 435 U.S. at 356–57 (1978)). Plaintiff argues that both exceptions are met here. *See* Dkt. No. 57 ("Response to Pavone and Jackson Motion") at 7–9.

*a. Judicial Capacity*

" '[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself,' such as 'whether it is a function normally performed by a judge,' and 'whether [the parties] dealt with the judge in his judicial capacity.' " *Bobrowsky v. Yonkers Courthouse,* 777 F.Supp.2d 692, 712 (S.D.N.Y.2011) (quoting *Stump* 435 U.S. at 362). Plaintiff argues that, because Pavone "sanctioned" only an "off the record informal agreement" between Steemrod and the Wrobleskis, he did not act in his judicial capacity. Resp. to Pavone and Jackson Mot. at 9. But "[t]he fact that a proceeding is 'informal and ex parte ... has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." *Bliven,* 579 F.3d at 210; *see also Bobrowsky,* 777 F.Supp.2d at 714 ("[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." (citing *Bliven,* 579 F.3d at 210)). As alleged, Pavone's custody-arrangement authorization took place during a "family court proceeding" at the Onondaga County Courthouse and was undertaken "under color of law" and in Pavone's capacity as a "final decisionmaker." Compl. at 9, 15; *see also* Dkt. No. 51 (alleging that Pavone "*awarded* custody of [Plaintiff's daughter] to Defendant Steemrod") (emphasis added). The place, procedural context, and subject matter of Pavone's authorization render it an act taken in his judicial capacity. [3]

*b. Clear Absence of All Jurisdiction*

Plaintiff also contends that Pavone acted in the clear absence of all jurisdiction. Resp. to Pavone and Jackson Mot. at 8–9. To defeat judicial immunity, a plaintiff must demonstrate that the challenged judicial action was not merely taken "in excess of jurisdiction," but was taken in the "clear absence of all jurisdiction." *Tucker,* 118 F.3d at 934. This requirement has both objective and subjective elements: "a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction ." *Id.* "[T]he scope of the judge's jurisdiction must be construed broadly when the issue is the immunity of the judge." *Stump,* 435 U.S. at 356. This exacting standard is met where, *e.g.,* a court of specific jurisdiction exercises jurisdiction over a matter far outside its jurisdictional grant, *see, e.g., Tucker,* 118 F.3d at 934 ("Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of usurped authority."), or where a statute plainly divests a court of jurisdiction over the

performance of a certain act, *see, e.g., Maestri v. Jutkofsky,* 860 F.2d 50 (2d Cir.1988).

**\*5** Plaintiff argues that his wife Deborah Topolski's withdrawal of her custody petition prior to Pavone's authorization of the custody arrangement rendered custody "no longer at issue" and thereby divested Pavone of jurisdiction. Resp. to Pavone and Jackson Mot. at 8. But a party to a family court proceeding "cannot withdraw the proceeding without the court's approval." 45 N.Y. JUR. 2D DOMESTIC RELATIONS § 473. Here, according to Plaintiff, Pavone's authorization of the custody arrangement took place after Deborah Topolski withdrew her petition but *before* Pavone issued an order of dismissal. Compl. at 10; Resp. to Pavone and Jackson Mot. at 8. Thus, the proceeding had not terminated prior to Pavone's challenged actions. And even if the authorization had taken place after the proceeding ended, courts that have previously issued a custody determination have "continuing jurisdiction over the determination" unless a judicial finding is made that the child, parents, and custodians have no connection to New York. N.Y. DOM. REL. LAW § 76–a. Here, Plaintiff alleges that the Onondaga Family Court had previously made a custody determination. *See* Compl. at 5, 10, 15; Dkt. No. 2–1 at 29– 30.[4] Pavone, as an Onondaga Family Court referee, therefore had continuing jurisdiction; Plaintiff has not alleged that the conditions for the cessation of continuing jurisdiction were met. *See generally* Compl.; Resp. to Pavone and Jackson Mot. Thus, Plaintiff has failed to show that Deborah Topolski's withdrawal of the petition rendered Pavone's actions taken in excess of jurisdiction, let alone taken in the clear absence of all jurisdiction.

That Plaintiff was absent from the proceeding, see Compl. at 9, also did not deprive Pavone of jurisdiction. *See* N.Y. DOM. REL. LAWW § 76 ("Physical presence of, or personal jurisdiction over, a party ... is *not* necessary ... to make a child custody determination." (emphasis added)). Finally, even if, as Plaintiff alleges, Pavone's actions somehow contravened a prior custody order, see Compl. at 9–10; Resp. to Pavone and Jackson Mot. at 8–9, such a violation does not amount to an action taken in the clear absence of jurisdiction, cf. *Ryan v. Cholakis,* No. 13–CV–1451, 2014 WL 803776, at \*2 (N.D.N.Y. Feb. 25, 2014) ("Generally, violating a stay, in and of itself, does not appear to be an act in the clear absence of jurisdiction."). Pavone and Jackson's Motion, to the extent it seeks dismissal of Plaintiff's claim against Pavone, is therefore granted.

*2. Jackson*

Plaintiff alleges that he sent a request for records related to the September 13, 2012 proceeding to Jackson, the Chief Clerk of the Onondaga Family Court, but received no response. Compl. at 10. He now seeks damages for Jackson's failure to respond. *Id.* at 16. Jackson argues that she is entitled to absolute immunity. *See* Pavone and Jackson Mem. at 4– 6. "Judicial immunity may extend to persons other than a judge 'who perform functions closely associated with the judicial process.' " *McKnight,* 699 F.Supp.2d at 525 (quoting *Cleavinger,* 474 U.S. at 200). However, "absolute judicial immunity covers only certain functions performed by court clerks." *McKnight,* 699 F.Supp.2d at 507. Where a clerk "implement[s] judicial decisions," performs tasks under the "direction or ... supervision of a judicial officer," or acts "pursuant to the established practice of the court," she is entitled to absolute immunity. *Id.* However, "where a court clerk performs 'ministerial, non judicial duties,' or 'purely administrative tasks,' only qualified, good faith immunity attaches." *Id.* (quoting *Isasi v. Heinemann,* No. 08–CV–5284, 2009 WL 159601, at \*2 (E.D.N.Y. Jan. 22, 2009)).

**\*6** It is not clear from the Complaint that Jackson's non-provision of the requested records was at the behest of a judge or was taken pursuant to established court procedures. *See generally* Compl. Nevertheless, she is entitled to qualified immunity. "Under this immunity, clerks are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Isasi,* 2009 WL 159601, at \*2 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The right alleged to have been violated must be clearly established at a level of specificity such that 'a reasonable official would understand that what he is doing violates that right.' " *Cahill v. O'Donnell,* 7 F.Supp.2d 341, 350 (S.D.N.Y.1998) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Thus, "[t]o be deprived of the defense of qualified immunity, the violation of plaintiff's rights must be so clear that no reasonable public official could have believed that his actions did not violate plaintiff's rights." *Cahill,* 7 F.Supp.2d at 350 (citing *Anderson,* 483 U.S. at 640).

Here, Plaintiff has pointed to no authority clearly establishing that a clerk's failure to provide requested family court records violates parental or due process rights. *See* Jackson and Pavone Resp. at 10–11. Nor has the Court found such authority. Thus, Jackson is entitled to qualified immunity, and

Pavone and Jackson's Motion, to the extent it seeks dismissal of Plaintiff's claim against Jackson, is granted.

### D. Karmen Motion

Plaintiff alleges that Karmen, the law guardian for his daughter, violated the existing custody order and Plaintiff's constitutional rights by failing to "contact and/or consult" with Plaintiff prior to the September 13, 2012 proceeding and by "advocat[ing]" the custody arrangement reached by the Wrobleskis and Steemrod. Compl. at 9–10. Karmen argues that he is entitled to dismissal because Plaintiff has failed to allege that Karmen acted under color of state law. *See* Dkt. No. 22–2 ("Karmen Memorandum") at 3–6.

Section 1983 applies only to defendants "acting under color of state law." *Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir.2013). "The 'color of state law' requirement results in the imposition of liability only upon those who "carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.' " *Elmasri v. England,* 111 F.Supp.2d 212, 217 (E.D.N.Y.2000) (quoting *Nat'l Collegiate Athletic Ass'n. v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). A nominally private entity acts under color of state law:

> (1) [when] the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

**\*7** *Arar v. Ashcroft,* 585 F.3d 559, 637–28 (2d Cir.2009) (second and third alterations in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008)). Conclusory allegations that a private entity acted in concert with a state actor are insufficient to establish a § 1983 cause of action against that private entity. *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992).

Plaintiff has not adequately alleged that Karmen acted under color of law. As alleged, Karmen was a law guardian appointed to represent Plaintiff's daughter. *See* Compl. at 9–10. Plaintiff asserts that Karmen's appointment by Pavone and his receipt of compensation from New York renders him a joint actor with Pavone. *See* Karmen Resp. at 6–8. This

is not so. "When considering the state action requirement of a court appointed representative, courts focus on whether the duty of the person appointed runs to the state or the individual client." *Storck v. Suffolk Cnty. Dep't of Soc. Servs.,* 62 F.Supp.2d 927, 941 (E.D.N.Y.1999). Thus, a law guardian, whose duty of representation runs solely to the child, does not act under color of law even though she is appointed and paid by state actors. *See id.* ("Neither the fact that the law guardians were appointed by a New York State court nor the fact that they were paid by state funds is sufficient to render these individuals state actors.... [T]he independent judgment that these individuals were bound to exercise on behalf of their clients further negates a finding that they acted under color of state law."); *Parent v. New York,* 786 F.Supp.2d 516, 538 (N.D.N.Y.2011) ( "[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent."), *aff'd,* 485 F. App'x 500 (2d Cir.2012); *Elmasri,* 111 F.Supp. at 221 (finding that court appointed legal guardian in custody proceedings was not a state actor, despite her appointment by a New York state court payment by state funds).

While a conspiracy with a state entity may constitute sufficiently joint action, *see Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999), Plaintiff offers entirely conclusory allegations regarding a conspiracy between Karmen and certain state entities. *See* Compl. at 9–10. This does not suffice. *See Spear,* 954 F.2d at 68. The Karmen Motion is therefore granted.

### E. Wrobleski Motion

Plaintiff brings a claim against the Wrobleskis arising out of: (1) false reports they allegedly made regarding Plaintiff's alleged drunk driving and mistreatment of his children; and (2) the September 13, 2012 custody arrangement between the Wrobleskis and Steemrod. *See generally* Compl. The Wrobleskis seek dismissal for failure to allege that they acted under color of state law. *See generally* Dkt. No. 30–1 ("Wrobleski Memorandum").

**\*8** Plaintiff argues that Emergency Communications' decision to dispatch police officers despite its awareness that Susan Wrobleski was reporting Plaintiff's drunk driving from a landline phone establishes the requisite joint action. *See* Dkt. No. 51 ("Response to Wrobleski Motion") at 5–6; Compl. at 13–14. But as the October Order explained, this does not suffice. First, "[e]ven a causal relationship between a private party's complaints to state actors and subsequent state action

is insufficient to establish the 'close nexus' required to impose § 1983 liability on the private party." Oct. Order at 5. Second,

> even if Plaintiff could show that Emergency Communications knew Ms. Wrobleski was not personally observing Plaintiff as she claimed and was instead relaying information received from Mr. Wrobleski, there is nothing unreasonable or conspiracy-indicating about a decision to dispatch officers regarding a second-hand DWI report. Finally, Plaintiff has acknowledged that Mr. Wrobleski observed Plaintiff's driving and made a call to Emergency Communications from his cellular phone, thereby providing a first-hand-report basis for the dispatch decision. *See* Compl. at 5–6. Thus, nothing about the Wrobleskis' calls or the manner in which they were handled suggests that the Wrobleskis were conspiring with Emergency Communications or any other state entity.

Oct. Order at 6–7.

Plaintiff also argues that the Wrobleskis acted under color of state law because: (1) they formed a custody arrangement with Karmen; and (2) Pavone authorized and approved that arrangement. Resp. to Wrobleski Mot. at 6–7. But as noted *supra,* Karmen was a private actor, and therefore any putative joint action with Karmen cannot render the Wrobleskis actions taken under color of state law. Moreover, mere state approval, adoption, or authorization of an agreement between private parties is not sufficient to render those parties joint actors with the state. Cf. *Katz v. Cellco P'ship,* No. 12 CV 9193, 2013 WL 6621022, at *6 (S.D.N.Y. Dec. 12, 2013) ("[T]here is no state action in the application or enforcement of the parties' private agreement to arbitrate"); *Missere v. Gross,* 826 F.Supp.2d 542, 568 (S.D.N.Y.2011) (holding that state approval of building application did not render applicant a joint actor); *Cassaboon v. Town of Somers,* 359 F.Supp.2d 320, 326 (S.D.N.Y.2005) (holding that private property owners who merely applied for and were awarded a permit from town were not state actors); *Fisk v. Letterman,*

401 F.Supp.2d 362, 377 (S.D.N.Y.2005) (holding that the plaintiff's § 1983 allegations were insufficient where "[a]t most, the plaintiff's allegations ... could be construed as supporting an inference that [the private individual] attempted to influence the state actors' decision"). The Wrobleskis Motion, to the extent it seeks dismissal of the claim against them, is therefore granted. [5]

## IV. MOTION FOR DEFAULT JUDGMENT

**\*9** On April 10, 2014, the Clerk of the Court granted Plaintiff's request for an entry of default as to Steemrod. Dkt. Nos. 61; 62 ("Entry of Default"). Pursuant to Federal Rule of Civil Procedure 55(c), a court may *sua sponte* set aside an entry of default pursuant to Rule 55(a) "for good cause." *See Negrin v. Kalina,* No. 09 CIV. 6234, 2012 WL 4074992, at *2 (S.D.N.Y. Sept. 11, 2012) ("Rule 55(c) of the Federal Rules of Civil Procedure does not refer to a motion, and the court may set aside an entry of default *sua sponte.*"); *Rock v. AM. Express Travel Related Servs. Co.,* No. 08–CV–0853, 2008 WL 5382340, at *2 n. 4 (N.D.N.Y. Dec. 17, 2008). "A district court should consider three criteria when determining under Rule 55(c) whether good cause exists to vacate an entry of default: '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.' " *Miller v. Madison,* No. 12–CV–0874, 2013 WL 2181240, at *2 (N.D.N.Y. May 20, 2013) (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993)). Willfulness requires "more than mere negligence on the part of the defendant in defaulting." *Swarna v. Al–Awadi,* 622 F.3d 123, 142 (2d Cir.2010). To determine prejudice, a district court "must consider the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy ... result[ing] in the loss of evidence, creat[ing] increased difficulties of discovery, or provid[ing] greater opportunity for fraud and collusion." *Id.* (quotation marks omitted). The meritoriousness of a potential defense turns on "evidence of facts that, if proven at trial, would constitute a complete defense." *Swarna,* 622 F.3d at 142. "Because there is a 'preference for resolving disputes on the merits, good cause ... should be construed generously' with any doubt as to whether a default should be vacated resolved in favor of the defaulting party." *Miller,* 2013 WL 2181240, at *2 (quotation marks omitted).

There is good cause to vacate the Entry of Default. First, Steemrod was not properly served until approximately three months ago. *See* Dkt. Nos. 53; 58. The Court finds that her

delay in answering, on its own, does not amount to more than mere negligence. Second, the Court discerns no prejudice-such as the destruction of evidence or the opportunity for fraud or collusion-that would result from vacatur. Third, and most importantly, the Court finds that Steemrod has a meritorious defense: Plaintiff's failure to allege any facts indicating that Steemrod acted under color of law as required for § 1983 liability. Plaintiff alleges only that Steemrod reached a custody arrangement with the Wrobleskis that was then authorized by Karmen. *See* Compl. at 9–10, 14. As discussed *supra,* this does not suffice. The Court therefore vacates the Entry of Default. As an entry of default is required for the Clerk of the Court to enter a default judgment, *see* FED. R. CIV. P. 55(b)(1), the Motion for Default Judgment is denied. [6]

### V. 28 U.S.C. § 1915 REVIEW

**\*10** 28 U.S.C. § 1915(e)(2) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "[t]he court shall dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted." Thus, although a court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (citations omitted and emphasis in original), a court also has a responsibility to determine that a claim is viable before permitting a plaintiff to proceed with an action *in forma pauperis.* Moreover, a Court may perform § 1915(e)(2) review more than once. *See* 28 U.S.C. § 1915(e)(2) (noting that a court may dismiss a case "at any time"); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 434–35 (N.D.N.Y.2009).

Although Plaintiff's claim against Steemrod survived initial review under § 1915(e)(2), see Report–Rec. at 8; Oct. Order at 11, the Court, upon further review, finds that dismissal is warranted. As noted *supra,* Plaintiff has failed to allege a basis

for § 1983 liability. Dismissal for failure to state a claim is therefore appropriate.

### VI. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that the Motions (Dkt. Nos. 22; 30; 36; 47) to dismiss are **GRANTED** consistent with this Memorandum–Decision and Order; and it is further

**ORDERED,** that the Wrobleski Motion (Dkt. No. 30) is, to the extent it seeks an award of attorneys' fees and costs, **DENIED;** and it is further

**ORDERED,** that the Motion (Dkt. No. 63) for Default Judgment is **DENIED;** and it is further

**ORDERED,** that the Entry of Default (Dkt. No. 62) is **VACATED;** and it is further

**ORDERED,** that the Complaint's (Dkt. No. 1) claim against Steemrod is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim; and it is further

**ORDERED,** that the Complaint (Dkt. No. 1) is **DISMISSED without leave to amend;** [7] and it is further

**ORDERED,** that the Clerk of the Court close this case; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 2215761

---

### Footnotes

1    Because this matter is before the Court on motions to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section. *See Boyd v. Nationwide Mut. Ins.* Co., 208 F.3d 406, 408 (2d Cir.2000); *see also Matson v. Bd. of Educ.,* 631 F.3d 57, 72 (2d Cir.2011) (noting that, in addressing a motion

to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[ ] all reasonable inferences in her favor").

2    Pavone also argues that the Court lacks subject matter jurisdiction over Plaintiff's claim pursuant to the domestic relations exception. *See* Pavone and Jackson Mem. at 6. This exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). It is "very narrow" and does not "strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree ... or a child custody decree." *Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995). Here, Plaintiff seeks only money damages, not the issuance or modification of a child custody decree. *See generally* Compl.; *see also* Dkt. No. 57 ("Response to Pavone and Jackson Motion") at 5–6. "[T]herefore, the domestic relations exception has no bearing on these claims." *McKnight v. Middleton,* 699 F.Supp.2d 507, 519 (E.D.N.Y.2010), aff'd, 434 F. App'x 32 (2d Cir.2011).

3    Moreover, even if the authorization was merely an extrajudicial, informal expression of Pavone's purely personal approval that bore no relationship to his judicial role, Plaintiff could not demonstrate that Pavone acted under color of state law as required for § 1983 liability. *See* Oct. Order at 4–8.

4    The pagination corresponds to the page numbers assigned by ECF.

5    The Wrobleskis also seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988. Wrobleski Mem. at 5–6. "Section 1988 permits the court, in its discretion, to award reasonable attorneys' fees to a 'prevailing party' in any action or proceeding brought to enforce the provisions of 42 U.S.C. § 1983." *Nelson v. Ulster Cnty.,* 789 F.Supp.2d 345, 358 (N.D.N.Y.2010) (citing 42 U.S.C. § 1988(b)). "Although § 1988 permits a court to award attorney's fees to a prevailing defendant, public policy dictates that a court should be hesitant to make such an award because of the chilling effect it might have on § 1983 plaintiffs-the 'chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority.' " *Doehr v. DiGiovanni,* 8 F.Supp.2d 172, 173 (D.Conn.1998) (quoting *Christiansburg Garment Co. v. Equal Empl't Opportunity Comm'n,* 434 U.S. 412, 418, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). "Accordingly, a prevailing defendant in a § 1983 action may only be awarded attorney's fees if the court finds that the plaintiff's claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Doehr,* 8 F.Supp.2d at 173 (citing *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986)). The Wrobleskis argue that Plaintiff's claim is frivolous, unreasonable, and without foundation. Wrobleski Mem. at 6. But in light of Plaintiff's *pro se* status, the gravity of the misconduct alleged in the Complaint, and the complexity of the color-of-state-law doctrine pursuant to which Plaintiff's claim against the Wrobleskis is dismissed, the Court declines to award attorneys' fees. Cf. *Doehr,* 8 F.Supp.2d at 173 ("The court finds that this case is not akin to the type of frivolous, groundless case in which a plaintiff disingenuously cloaks himself in the Civil Rights Act, and in which an award of attorney's fees to a defendant would be appropriate."). Moreover, the Court is loath to deem Plaintiff's claim against the Wrobleskis sufficiently frivolous for an award of attorneys' fees despite previously permitting that claim to survive 28 U.S.C. § 1915(e) review. *See* Report–Rec. at 4, 8; Oct. Order at 11; cf. *Doehr,* 8 F.Supp.2d at 173 ("[G]iven that the Second Circuit stated in its opinion that plaintiff should be given the chance to have his claims heard on remand, this court finds that plaintiff's pursuit of those claims was not frivolous.").

6    Even if the Entry of Default Judgment were not vacated, the Motion for Default Judgment would be denied. Under Federal Rule of Civil Procedure 55(b)(1), the Clerk may enter a default judgment only where Plaintiff's "claim is for a *sum certain* or a sum that can be made *certain* by computation." (emphases added). Here, Plaintiff seeks a $600,000 judgment, but, other than dividing that total into various categories of damages, provides no basis for this figure. *See* Mot. for Default J.; Dkt. No. 63–1 at 2, 56. This is a far cry from a sum certain. *See Bellet v. City of Buffalo,* No. 03–CV–00027, 2010 WL 3522224, at *3 (W.D.N.Y. Sept. 8, 2010) ("A claim does not become certain merely because the complaint or affidavit identifies a purported total.").

7    Leave to amend should be denied if any amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Rivera v. Governor of N.Y.,* No. 02–7962, 2004 WL 569274, at *1 (2d Cir. Mar.23, 2004). The Court finds, in light of the deficiencies discussed *supra* and the extensive opportunity afforded Plaintiff to clarify his allegations in briefing following the Motions to dismiss and the October Order's provision of notice regarding those deficiencies, that any such amendment would be futile. Cf. *Rother v. NYS Dep't of Corr. & Cmty. Supervision,* 970 F.Supp.2d 78, 91 (N.D.N.Y.2013) (Kahn, J.) (noting that dismissal without leave to amend is often appropriate "[w]here a plaintiff has already been given notice of a claim's deficiencies and the opportunity to amend her complaint").

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Witcher v. Moriber, Not Reported in Fed. Supp. (2022)

2022 WL 1085297

2022 WL 1085297
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Selena C. WITCHER, Plaintiff,

v.

Referee Marilyn J MORIBER,
Queens Family Court, Defendant.

21-CV-6168
|
Signed 04/11/2022

**Attorneys and Law Firms**

Selena C. Witcher, Astoria, NY, Pro Se.

### MEMORANDUM & ORDER

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Selena C. Witcher filed this *pro se* action against Defendant Family Court Referee Marilyn Moriber in the United States District Court for the Southern District of New York. (Compl., Dkt. 1.) By Order dated October 28, 2021, Plaintiff's application to proceed *in forma pauperis* ("IFP") was granted. (Dkt. 4.) On November 5, 2021, the action was transferred to this Court. (Dkt. 5.) On December 6, 2021, Plaintiff filed an Amended Complaint. (Am. Compl., Dkt. 8.) As set forth below, this action is dismissed without leave to amend.

### BACKGROUND

On October 1, 2021, Queens County Family Court Referee Marilyn Moriber issued a final order setting forth the visitation terms and schedule for the father of Plaintiff's minor child. (Am. Compl., Dkt. 8, at 11–13.) Plaintiff alleges that Defendant proceeded with the Family Court case even though Plaintiff was "not properly served," and that Defendant disclosed Plaintiff's "address and medical records knowing that [Plaintiff is] a domestic violence victim." (*Id.* at 4–5.) She seeks $100,000 in damages for emotional distress. (*Id.* at 6.)

### STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the Court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* Where a plaintiff is proceeding *pro se*, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, an *in forma pauperis* action shall be dismissed when the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

An action "is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; ... (2) the claim is based on an indisputably meritless legal theory," *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks omitted); or (3) "it is clear that the defendants are immune from suit," *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)); *see also Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) (suit against defendant who has absolute immunity is frivolous for purposes of IFP statute).

### DISCUSSION

Plaintiff's Amended Complaint cannot proceed against Defendant. It is well-settled that judges have absolute immunity from suit for judicial acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (*per curiam*); *Forrester v. White*, 484 U.S. 219, 225–26 (1988); *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 524–25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). Judicial immunity "is not overcome by allegations of bad faith or malice," nor can judges "be deprived of immunity because the action [the judge] took was in error ... or was in excess of [the judge's] authority." *Mireles*, 502 U.S. at 11, 13 (second alteration in original). Judicial immunity may only be overcome where

2022 WL 1085297

(1) the challenged acts were not taken in the judge's judicial capacity or (2) the acts, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *Id.* at 11–12; *accord Gross v. Rell,* 585 F.3d 72, 82 (2d Cir. 2009).

**\*2** Absolute judicial immunity extends to court-appointed referees, such as Defendant. *Wilson v. Wilson-Polson,* 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski,* No. 13-CV-0872 (LEK) (DEP), 2014 WL 2215761, at \*3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' " (quoting *Stump v. Sparkman,* 435 U.S. 349, 356 (1978) (internal quotation marks omitted)); *Renner v. Stanton,* No. 13-CV-1676, 2013 WL 1898389, at \*3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity). Here, Plaintiff sues Defendant precisely for her official acts in presiding over the Family Court matter involving visitation of Plaintiff's minor child. (*See generally,* Am. Compl., Dkt. 8.[1]) Therefore, Defendant is entitled to absolute immunity.

## CONCLUSION

For the reasons explained above, the action is dismissed in its entirety as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court declines to allow Plaintiff an opportunity to amend her complaint a second time, *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000), because doing so would be futile. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 1085297

## Footnotes

1    To the extent that Plaintiff alleges that Defendant negligently or even recklessly disclosed Plaintiff's address or medical records, that is not enough to overcome judicial immunity. *Mireles,* 502 U.S. at 11 (judicial immunity cannot be overcome "by allegations of bad faith or malice" or that an action was taken in err); *Topolski,* 2014 WL 2215761, at \*3 (applying *Mireles* to court-appointed referees).

**End of Document**                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7545323
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daishawn Lavon MILLER, Plaintiff,

v.

David PRIMO, Sarah G. Merrick, Patricia DeRue, Jeffrey
Alan Domachowski, and Kelly Murphy, Defendants.

5:23-cv-1051 (BKS/ML)
|
Signed November 14, 2023

**Attorneys and Law Firms**

Plaintiff pro se, Daishawn Lavon Miller, Syracuse, NY
13206.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**I. INTRODUCTION**

\*1 Plaintiff Daishawn Lavon Miller commenced this
proceeding pro se under 42 U.S.C. § 1983, alleging numerous
federal and constitutional violations that appear to stem
from child support proceedings. (Dkt. No. 1). Plaintiff also
sought leave to proceed *in forma pauperis* ("IFP"). (Dkt.
Nos. 2, 7). Approximately one month after commencing
this action, Plaintiff filed an Amended Complaint. (Dkt. No.
6). This matter was referred to United States Magistrate
Judge Miroslav Lovric who, on September 29, 2023, granted
Plaintiff's application to proceed IFP and issued a Report-
Recommendation, recommending that Plaintiff's Amended
Complaint be dismissed without prejudice and that leave to
amend be granted in part and denied in part. (Dkt. No. 8).
Plaintiff was informed that he had fourteen days within which
to file written objections to the Report-Recommendation
under 28 U.S.C. § 636(b)(1), and that failure to object
to the Report-Recommendation within fourteen days would
preclude appellate review. (*Id.* at 10).

Plaintiff filed objections to the Report-Recommendation on
October 10, 2023. [1] (Dkt. No. 9). For the reasons set forth
below, the Report-Recommendation is adopted in its entirety.

**II. STANDARD OF REVIEW**

This court reviews *de novo* those portions of the Magistrate
Judge's findings and recommendations that have been
properly preserved with a specific objection. *Petersen v.
Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C.
§ 636(b)(1)(C). "A proper objection is one that identifies
the specific portions of the [report-recommendation] that
the objector asserts are erroneous and provides a basis for
this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F.
Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks
omitted). Properly raised objections must be "specific and
clearly aimed at particular findings" in the report. *Molefe
v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487
(S.D.N.Y. 2009). "[E]ven a pro se party's objections to a
Report and Recommendation must be specific and clearly
aimed at particular findings in the magistrate's proposal ...."
*Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920
at *2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25,
2011) (citation omitted). Findings and recommendations as to
which there was no properly preserved objection are reviewed
for clear error. *Id.* To the extent a party makes "merely
perfunctory responses, argued in an attempt to engage the
district court in a rehashing of the same arguments" in the
original submission, the Court will only review for clear error.
*Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

**III. REPORT-RECOMMENDATION**

\*2 At the outset, Magistrate Judge Lovric noted that the
Amended Complaint was "difficult to decipher" and did
not provide "sufficient factual information" regarding the
claims Plaintiff sought to assert against Defendants. (Dkt.
No. 8, at 2). However, as best as Magistrate Judge Lovric
could discern, the Amended Complaint appeared to "allege
that Defendants refuse to terminate Plaintiff's child support
obligation," and appeared to seek termination of the child
support order, reimbursement, and damages for amounts
garnished from his wages. (*Id.* at 2 (citing Dkt. No. 6, at 7)).

Magistrate Judge Lovric recommended dismissal on three
grounds. First, Magistrate Judge Lovric found that the
Amended Complaint was "largely incomprehensible," failed
to "provide fair notice of the claims [Plaintiff] attempt[ed] to
assert," and thus was "not acceptable under Rules 8 and 10
of the Fed. R. Civ. P.," noting that "Plaintiff's Section 1983
claims against Defendants are entirely unclear." (*Id.* at 7).

Second, in the alternative, Magistrate Judge Lovric found
that the Amended Complaint failed to allege the personal
involvement of any Defendant, a necessary element of
a § 1983 claim, *see Tangreti v. Bachmann*, 983 F.3d

609, 618 (2d Cir. 2020) (explaining that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution' " (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009))), and recommended that the Amended Complaint be dismissed for failure "to state a claim upon which relief may be granted," (Dkt. No. 8, at 7–8). As Magistrate Judge Lovric explained:

> [T]he Amended Complaint includes the following allegations related to actions taken by Defendants, in full:
>
>> David Primo, Jeffrey Alan Domachowski, Sarah Merrick, and Patricia DeRue are all in breach of trust for refusing appointment by me to settle the account and terminate the unconditional bill of attainer they are refusing due to the cooperative arrangement they have in order to provide Title IV-D services. The form is child support and the substance is securities because child support is not in the best interest of the child or mother it's in the states [sic] best interest.
>
> These allegations fail to allege the personal involvement of any of Defendants in a violation of Plaintiff's rights.

(*Id.* at 8 (quoting Dkt. No. 6, at 4)).

Third, Magistrate Judge Lovric found dismissal warranted as to Defendants Primo, Merrick, Domachowski, and DeRue, on grounds of immunity. (*Id.*). Specifically, Magistrate Judge Lovric noted that according to the Amended Complaint Defendant Primo was the Chief Clerk of Onondaga County Family Court, and entitled to quasi-judicial immunity, and, to the extent Plaintiff sued Defendant Primo in his official capacity as "an arm of the New York state court system," he was "immune from suit pursuant to the Eleventh Amendment." (*Id.* at 9–10). Magistrate Judge Lovric found that to the extent Plaintiff sued Defendant Merrick, as the Commissioner of Social Services-Economic Security, in connection with her enforcement of Plaintiff's child support obligations, Defendant Merrick was entitled to qualified immunity. (*Id.* at 10–11). Magistrate Judge Lovric further found that, as support magistrate judges, Defendants DeRue and Domachowski were entitled to judicial immunity, and, to the extent Plaintiff sued these Defendants in their official capacities, any such claims were barred by the Eleventh Amendment. (*Id.* at 11–13).

In addition, Magistrate Judge Lovric noted that the claims in the Amended Complaint were "likely barred" by the *Rooker-Feldman* doctrine, the domestic relations exception to federal court jurisdiction, and that "[i]n the event that Plaintiff's underlying state family court proceeding remains pending," the *Younger* doctrine may be implicated. (*Id.* at 7 n.5). However, Magistrate Judge Lovric did not recommend dismissal under these doctrines.

## IV. OBJECTIONS

**\*3** Although Plaintiff asserts a number of objections, only the following appear to concern the findings in the Report-Recommendation. Plaintiff asserts that: (1) "there is not [sic] basis for government involvement as I have lost the ability to shape decisions affecting my offspring and there has been no record or harm, proof of neglect, or abandonment," (Dkt. No. 9, at 1); (2) the "*Rooker-Feldman* Doctrine is not plausible because the enforcement brings about constitutional violations," (*id.* at 2); (3) immunity is inapplicable "due to the hierarchy of law, whenever there is a conflict with between the different levels of law, for example Federal and State, Federal prevails see supremacy clause, the parties involved are mixing public with private," (*id.*); (4) "the parties involved" have failed to "take notice of" the change in Plaintiff's "circumstances they are all now aiding and abetting and colluding and conspiring to trespass on my estates, in breach of trust" and in "violation of Bill of Rights ... rights to privacy/religion," (*id.* at 3); and (5) the "parties involved are engaging in securities fraud" and have "refused [Plaintiff's] tender by special deposit ... to settle account on behalf of the principal and close account," (*id.*). Finally, Plaintiff asserts that he is "a private citizen (citizen of Heaven) non US Citizen" and is "not a enemy nor a friend of an enemy to the United States." (*Id.*).

Other than Plaintiff's challenge to Magistrate Judge Lovric's immunity-based recommendation and footnote on the *Rooker-Feldman* doctrine, none of Plaintiff's objections are aimed at a particular aspect of the Report-Recommendation. Plaintiff's objection to Magistrate Judge Lovric's conclusions regarding immunity stems from Plaintiff's claim that he is not "a statutory citizen" and "the court in which [his] complaint stems from is not judicial in nature (child support) because judicial decisions are not being made in a quasi-judicial setting." (*Id.* at 2). Courts regularly reject as frivolous claims by litigants asserting they are not subject to state or federal authority. *See*, *e.g.*, *Robinson v. Fischer*, No. 9:13-cv-1545, 2014 WL 1289611, at \*5, 2014 U.S. Dist. LEXIS 44644 (N.D.N.Y. Mar. 31, 2014) (dismissing the sovereign citizen claims as frivolous and for failure to state a claim when reviewing a pro se complaint). And although there is authority

for the proposition that an official acting outside the scope of his or her authority may not be entitled to immunity, *see*, *e.g.*, *Levine v. Lawrence*, No. 03-cv-1694, 2005 WL 1412143, at *9, 2005 U.S. Dist. LEXIS 11663 (E.D.N.Y. June 15, 2005) ("[M]ost courts seem to agree that absolute quasi-judicial immunity should not extend to court officers enforcing judicial orders if ... the court officer exceeds the scope of that order ... or enforces it in an improper manner."), even construed liberally, there are no allegations in the Amended Complaint that suggest any Defendant was acting outside the scope of his or her authority. Thus, Plaintiff's objection regarding immunity is without merit.

Plaintiff's objection to the application of the *Rooker-Feldman* doctrine is also unavailing because even if Plaintiff is correct that it is inapplicable, Magistrate Judge Lovric did not recommend dismissal on the basis the *Rooker-Feldman* doctrine. In this case, Magistrate Judge Lovric did no more than reasonably note that such a doctrine might be applicable where, as here, state court proceedings appear to be implicated. (Dkt. No. 8, at 7 n.5). Thus, Plaintiff's objection is without merit.

As discussed, none of Plaintiff's other objections concerns any particular aspect of the Report-Recommendation. Accordingly, the Court reviews the remainder of the Report-Recommendation for clear error, and having found none, adopts the Report-Recommendation in its entirety.

## V. CONCLUSION

For these reasons, it is

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 8) is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) is **DISMISSED** in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** as against Defendants Merrick and Murphy in their individual and official capacities; and it is further

**ORDERED** that Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** as to Defendants Primo, DeRue, and Domachowski in their individual and official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**\*4 ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that Plaintiff's "Notice" (Dkt. No. 10) and his submission filed on November 7, 2023 (Dkt. No. 12) are **stricken from the docket** and that Plaintiff's document titled "Support for Summary Judgment" (Dkt. No. 11) is **DENIED as moot**; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 7545323

## Footnotes

1    Plaintiff filed three documents in addition to his objections. On October 15, 2023, Plaintiff filed a "Legal Notice and Demand Fiat Justitia, Ruat Coelum." (Dkt. No. 10). On November 7, 2023, Plaintiff filed a document captioned "prayer to the court under the grace of God for abatement, damages, setoff, and redemption." (Dkt.

No. 12). It is unclear what relief, if any, Plaintiff seeks through these documents. Accordingly, they are stricken from the docket. On October 25, 2023, Plaintiff filed a document titled "Support for Summary Judgment." (Dkt. No. 11). To the extent Plaintiff intends this document to be a motion for summary judgment under Federal Rule of Civil Procedure 56, it is premature, and is, in any event, denied as moot in light of the dismissal of the Amended Complaint.

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6379325
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daishawn Lavon MILLER, doing business as
Daishawn Lavon Miller Living Express Trust, Plaintiff,
v.
David PRIMO, Onondaga Family Court; Sarah
G. Merrick, Title IV-D Agency; Patricia DeRue,
Onondaga Family Court; Jeffrey Alan Domachowski,
Onondaga Family Court; and Kelly Murphy,
Director of Human Resources, Defendants.

5:23-CV-1051 (BKS/ML)
|
Signed September 29, 2023

**Attorneys and Law Firms**

DAISHAWN LAVON MILLER, Plaintiff, Pro Se, 2363
James Street, #547, Syracuse, New York 13206.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1**  The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
("IFP") (Dkt. No. 2), an Amended Complaint (Dkt. No.
6), and an amended IFP application (Dkt. No. 7) filed
by Daishawn Lavon Miller ("Plaintiff") to the Court for
review. For the reasons discussed below, I (1) deny Plaintiff's
IFP application (Dkt. No. 2) as moot, (2) grant Plaintiff's
amended IFP application (Dkt. No. 7), and (3) recommend
that Plaintiff's Amended Complaint (Dkt. No. 6) be dismissed
in its entirety without prejudice (a) in part with leave to
amend, and (b) in part without leave to amend.

## I. BACKGROUND

On August 24, 2023, Plaintiff commenced this action by
the filing of a *pro se* Complaint against Defendants David
Primo, Sarah G Merrick, Patrick DeRue, and Jeffrey Alan
Domachowski. (Dkt. No. 1.) On September 25, 2023, Plaintiff
filed an Amended Complaint, as of right, which supersedes
his original Complaint. (Dkt. No. 6); *Int'l Controls Corp. v.
Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established
that an amended complaint ordinarily supersedes the original,

and renders it of no legal effect."). Thus, presently before
the undersigned for review pursuant to 28 U.S.C. § 1915, is
Plaintiff's Amended Complaint. (Dkt. No. 6.)

Liberally construed, [1] Plaintiff's Amended Complaint—
which is on a form complaint alleging violations of
civil rights—asserts that his rights were violated by
Defendants David Primo, Sarah G Merrick, Patrick DeRue,
Jeffrey Alan Domachowski, and Kelly Murphy (collectively
"Defendants"), who were all involved in Plaintiff's state court
family proceeding. (*See generally* Dkt. No. 6.)

The Amended Complaint is difficult to decipher and fails to
provide sufficient factual information for the Court to review
or for Defendants to have notice of the claims against them.
(*See generally* Dkt. No. 6.) From what the undersigned can
glean, Plaintiff appears to allege that Defendants refuse to
terminate Plaintiff's child support obligation. (*Id.*) As relief,
Plaintiff requests that this court terminate the child support
order, reimburse him for all amounts paid, and award him
damages in the amount of three times what has been garnished
from his wages. (Dkt. No. 6 at 7.)

Plaintiff also filed an application to proceed IFP and an
amended IFP application. (Dkt. Nos. 2, 7.)

## II. PLAINTIFF'S APPLICATIONS TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district
court, the statutory filing fee, currently set at $402, must
ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized,
however, to permit a litigant to proceed IFP status if a
party "is unable to pay" the standard fee for commencing an
action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's
amended IFP application (Dkt. No. 7), the Court finds that
Plaintiff meets this standard. [3] Therefore, Plaintiff's amended
application to proceed IFP is granted. [4] In addition, Plaintiff's
original application to proceed IFP is denied as moot. (Dkt.
No. 2.)

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*2**  "Notwithstanding any filing fee, or any portion thereof,
that may have been paid, the court shall dismiss the case at any
time if the court determines that ... the action ... (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may be

granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

**\*3** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 [1990] (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Amended Complaint is largely incomprehensible and must be dismissed for three reasons.

### A. Frivolous

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if

it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

As it currently stands, Plaintiff's Amended Complaint wholly fails to provide fair notice of the claims he attempts to assert. Given its lack of clarity, the Court recommends dismissal of the Amended Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claims against Defendants are entirely unclear.

### B. Failure to State a Claim Upon Which Relief May be Granted

**\*4**  Second, and in the alternative, I recommend that Plaintiff's Amended Complaint be dismissed because it fails to state a claim upon which relief may be granted.[5]

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

Here, the Amended Complaint includes the following allegations related to actions taken by Defendants, in full:

> David Primo, Jeffrey Alan Domachowski, Sarah Merrick, and Patricia DeRue are all in breach of trust for refusing appointment by me to settle the account and terminate

> the unconditional bill of attainer they are refusing due to the cooperative arrangement they have in order to provide Title IV-D services. The form is child support and the substance is securities because child support is not in the best interest of the child or mother it's in the states best interest

(Dkt. No. 6 at 4.)

These allegations fail to allege the personal involvement of any of Defendants in a violation of Plaintiff's rights.[6]

### C. Immunity

**\*5**  Third and in the alternative, I recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts claims against Defendants Primo, Merrick, Domachowski, and DeRue, because it seeks relief from individuals who are immune from suit.

#### 1. Defendant Primo

Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Plaintiff's Amended Complaint identifies Defendant Primo as "Chief Clerk of Onondaga County Family Court." (Dkt. No. 6 at 2.) Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, 08-CV-0095, 2013 WL 1294412, at *12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)), *aff'd*, 594 F. App'x 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015).

As a result, I recommend that Plaintiff's claims against Defendant Primo in his individual capacity be dismissed, because he is immune from suit. *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431,

2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

Moreover, I recommend that Plaintiff's claims against Defendant Primo in his official capacity as Chief Clerk of Onondaga County Family Court be dismissed because the Onondaga County Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at *4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### 2. Defendant Merrick

Defendant Merrick, as the Commissioner of Social Services-Economic Security, is "not entitled to judicial immunity because her responsibilities are not closely associated with the judicial process nor is her agency a quasi-judicial body. However, she [is] entitled to qualified immunity." *Parent v. New York*, 786 F. Supp. 2d 516, 537 (N.D.N.Y. 2011) (Hurd, J.), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); *but see Ramos v. Putnam Family Court*, 15-CV-1443, 2017 WL 3083727, at *3 (D. Conn. July 18, 2017) (quoting *Lomtevas v. Cardozo*, 05-CV-2779, 2006 WL 229908, at *5 (D. Conn. Jan. 31, 2006)) (finding that "[o]fficials involved with ... the enforcement of [a] child support order are entitled to 'absolute quasi-judicial immunity.' "). Defendant Merrick's conduct in "enforcing the petition [ordering Plaintiff to pay child support] did not violate any clearly established right. There is no right to refuse to pay child support. Moreover, even if there was such a right and it was clearly established, it

was objectively reasonable for [Defendant Merrick] to believe that carrying out her duties and enforcing the petition did not violate [P]laintiff's rights." *Parent*, 786 F. Supp. 2d at 537. As a result, I recommend that all claims against Defendant Merrick in her individual capacity be dismissed based on the doctrine of qualified immunity. *See also Chris H. v. New York*, 16-CV-6807, 2017 WL 2880848, at *9 (S.D.N.Y. July 5, 2017) (finding that the plaintiff's claims against the New York City Human Resources Administration/Department of Social Services Commissioner were subject to dismissal pursuant to the doctrine of qualified immunity). [7]

### 3. Defendants DeRue and Domachowski

**\*6** Plaintiff's claims under § 1983 against Defendants DeRue and Domachowski, who acted as the support magistrate judges, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). "District courts within this Circuit have applied this immunity doctrine to New York Family Court Support Magistrates," like Defendants DeRue and Domachowski. *Roger of the Family Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, 18-CV-10866, 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting cases).

Plaintiff asserts claims that appear to arise from the efforts of Defendants DeRue and Domachowski, in their capacities as a New York Family Court Support Magistrates, to assess and collect child support that Plaintiff owes pursuant to Family Court orders and judgments. Defendants DeRue and Domachowski are therefore immune from suit under the doctrine of judicial immunity. As a result, I

recommend that Plaintiff's claims against Defendants DeRue and Domachowski in their individual capacities be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendants DeRue and Domachowski in their official capacities be dismissed pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

*7 Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims against Defendants Primo, DeRue, and Domachowski.

Although I have serious doubts about whether Plaintiff can further amend the Amended Complaint to assert an actionable claim against Defendants Merrick and Murphy, given Plaintiff's *pro se* status and that Plaintiff has not had the benefit of the Court's analysis prior to amending, out of an abundance of caution, I recommend that Plaintiff's claims against Defendants Merrick and Murphy be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file a second amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant in the constitutional deprivations alleged in sufficient detail to establish that it was tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such second amended complaint will replace the existing Amended Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 7) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** Plaintiff's Amended Complaint (Dkt. No. 6) against Defendants Merrick and Murphy in their individual and official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Amended Complaint (Dkt. No. 6) against Defendants Primo, DeRue, and Domachowski in their individual and official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*8 NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2023 WL 6379325

---

### Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    The Court notes that Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. Although Plaintiff's income appears to be above the federal poverty guidelines (Dkt. No. 7 at ¶ 2), based on his monthly expenses (*id.* at ¶ 6) and support contributions for his minor children (*id.* at ¶ 7), I find that he has established—albeit barely—that he is "unable" to pay the filing fee, or that paying the filing fee would pose a "serious hardship."

4    Plaintiff is reminded that, although his amended IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

5    Due to the nature of Plaintiff's Amended Complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims are also likely barred. "[I]n the event the underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine." *Walker v. O'Connor*, 22-CV-0581, 2022 WL 2341420, at \*6 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker-Feldman* bars Phifer's challenges to the family

court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, 12-CV-4092, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022) (Hurd, J.). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying state family court proceeding remains pending, his request for this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

6      The Court notes that the Amended Complaint includes two pages with each Defendant listed as a heading and a bullet point list under each heading. (Dkt. No. 6 at 5-6.) These pages do not contain factual allegations and instead appear to include legalese phrases that largely do not make sense. By way of example, under the heading naming Defendant Primo, Plaintiff alleges:

- Breach of Agreement

- Securities fraud

- Trespass of my estate

- Neglect/failed to prevent

- Violation of the hierarchy of law

(Dkt. No. 6 at 5.) The list also includes a heading for Defendant Murphy. (Dkt. No. 6 at 6.) However, the Amended Complaint fails to allege factual allegations plausibly suggesting any action taken by Defendant Murphy and therefore fails to allege her personal involvement in any violations.

7      However, the undersigned notes that Plaintiff's claims against Defendant Merrick in her official capacity are not barred by the Eleventh Amendment. *Meyers v. Becker*, 23-CV-0173, 2023 WL 3079611, at *4 (N.D.N.Y. Apr. 5, 2023) (Hummel, M.J.), *report and recommendation adopted*, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023) (Hurd, J.). Notwithstanding that conclusion, I recommend that any claims against Defendant Merrick in her official capacity be dismissed because—in addition to the reasons set forth above—the Complaint fails to allege facts plausibly suggesting that Defendant Merrick's actions were pursuant to any policy or custom of Onondaga County. Official capacity suits are merely an alternative way to plead a claim against an entity of which an officer is an employee. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). "[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Graham,* 473 U.S. at 166 (quoting *Polk Cnty. v. Dodson,* 454 U.S. 312, 326 (1981)). In an official capacity suit against a municipal employee, a plaintiff must show that the acts were performed pursuant to a policy or custom. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004).

8      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4034038
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Nella MANKO, Plaintiff,

v.

Leon RUCHELSMAN, individually and in his official
capacity as Justice of the N.Y.S. Supreme Court of Kings
County; Kagan, individually and in his official capacity
as Law Clerk of Part 16 of the Supreme Court of Kings
County; Leslie Torres, individually and in her official
capacity as Deputy Commissioner of the N.Y.S. Division
of Housing and Community Renewal Office of Rent
Administration; Jerry M. Scher, individually and in his
official capacity as Rent Administrator of the N.Y.S.
Division of Housing and Community Renewal Office of
Rent Administration; Mary Elizabeth Lacerenza, Esq.,
individually and in her official capacity as Attorney of
the N.Y.S. Division of Housing and Community Renewal
Office of Rent Administration; Susan E. Kearns, Esq.,
individually and in her official capacity as Attorney
of the N.Y.S. Division of Housing and Community
Renewal Office of Rent Administration; New York
State Division Of Housing And Community Renewal
Office Of Rent Administration; Shorefront Apartment
Co., in its individual and professional capacities;
Shorefront Apartments, LLC, in its individual and
professional capacities; Alan Polen, in his individual
and professional capacities; Robert Polen, in his
individual and professional capacities HOward M.
File, P.C., in his individual and professional capacities;
Sylvia O. Hinds–Radix, individually and in her official
capacity as Administrative Judge of the Supreme Court
of Kings County; Kings County Supreme Court of
the State of New York; Supreme Court of the State
of New York, Kings County; Chief Clerk Nancy T.
Sunshine, individually and in her official capacity as
County Clerk of the Kings County Clerk's Office; Kings
County Clerk's Office; William F. Mastro, Presiding
Justice, Appellate Division of the N.Y.S. Supreme
Court (Second Department); Appellate Division of
the N.Y.S. Supreme Court (Second Department); A.
Gail Prudenti, Former Presiding Justice, Appellate
Division of the N.Y.S. Supreme Court (Second

Department); CHief Judge Jonathan Lippman; New
York Court of Appeals; John Doe 1, individually and
in official capacity; John Doe 2, individually and in
official capacity; JOHN DOE 3, individually and
in official capacity; John Doe 4, individually and
in official capacity; John Doe 5, individually and in
official capacity; State of New York, Defendants.

No. 12–CV–4100 (KAM)(LB).
|
Sept. 10, 2012.

**Attorneys and Law Firms**

Nella Manko, Brooklyn, NY, pro se.

### *MEMORANDUM AND ORDER*

MATSUMOTO, District Judge.

**\*1** On August 13, 2012, *pro se* plaintiff Nella Manko
filed this action pursuant to 42 U.S.C. §§ 1983 and 1985,
alleging that defendants violated and conspired to violate
her constitutional rights during her 2008 and 2010 state
court housing actions, Kings County Supreme Court Index
Numbers 26610/2008 and 21055/2010. Plaintiff also alleges
various pendent state law claims. Plaintiff seeks damages
in the amount of $12 million. (*See* ECF No. 1, Complaint
("Compl.") at 37–38.) Plaintiff's request to proceed *in
forma pauperis* is granted solely for the purpose of this
Memorandum and Order, but the action is hereby dismissed
under 28 U.S.C. § 1915(e)(2)(B).

### 1. Litigation History

Plaintiff has filed five prior actions in this court, all of which
challenge decisions made in state court actions and allege
constitutional violations by judges, attorneys, court officers,
court reporters, and the courts involved in those state court
actions. *See Manko v. Finkelstein,* No. 11–CV–5054 (KAM)
(E.D.N.Y. filed Oct. 14, 2011, dismissed Feb. 7, 2012);
*Manko v. Steinhardt,* No. 11–CV–5103 (KAM) (E.D.N.Y.
filed Oct. 17, 2011, dismissed Jan. 27, 2012); *Manko v.
Steinhardt,* No. 11–CV–5430 (KAM) (E.D.N.Y. filed Oct.
31, 2011, dismissed Jan. 27, 2012); *Manko v. Steinhardt,*
No. 12–CV–1472 (KAM) (E.D.N.Y. filed March 21, 2012,
dismissed April 20, 2012); *Manko v. Steinhardt,* No. 12–CV–
2964 (KAM) (E.D.N.Y. filed June 12, 2012, dismissed June
20, 2012).

Manko v. Ruchelsman, Not Reported in F.Supp.2d (2012)

2012 WL 4034038

Although each of the five actions plaintiff previously filed in this court names slightly different parties, each seeks to challenge the proceedings and outcomes of state court actions and alleges that the defendants violated her constitutional rights during the course of the proceedings. In every instance, plaintiff's case has been dismissed on the bases of the *Rooker–Feldman,* [1] res judicata, or judicial and sovereign immunity doctrines.

By Order dated February 7, 2012, under docket number 1 1–CV–5054, the court requested that the plaintiff "abstain from filing further duplicative or frivolous litigation in this court." *Manko v. Finkelstein,* 2012 WL 407092, at *1 (E.D.N.Y. Feb.7, 2012). In addition, under docket number 12–CV–1472, the court "notifie[d] plaintiff that similar future filings will subject her to a filing injunction." *Manko v. Steinhardt,* 12–CV–1472 (KAM), Order dated April 17, 2012, at 3, 6–7 (setting forth plaintiff's litigation history and giving notice that similar future filings will likely subject her to a filing injunction). Then, in its Order dated May 15, 2012, denying plaintiff's motion for reconsideration in *Manko v. Steinhardt,* No. 11–CV–5103 (KAM), the court reiterated its warning but did not yet enjoin plaintiff because she "filed this motion to reconsider on the same day that the court entered the Memorandum and Order in the subsequent action, *Manko v. Steinhardt,* 12–CV–1472." *Manko v. Steinhardt,* 2012 WL 1744836, at *2 (E.D.N.Y. May 15, 2012).

**\*2** Finally, by Order dated June 20, 2012, the court dismissed plaintiff's fifth duplicative action and ordered plaintiff to show cause within thirty days why she should not be barred from filing any new actions under the *in forma pauperis* statute without first obtaining the court's permission to do so. *Manko v. Steinhardt,* No. 12–CV–2964, slip op. at 7–8 (E.D.N.Y. June 20, 2012). On July 20, 2012, plaintiff requested an extension of time until August 20, 2012, to respond to the order to show cause. Although the court granted plaintiff's request, plaintiff's response failed to address the court's order to show cause. On August 30, 2012, the court entered an Order barring plaintiff from filing any new actions under the *in forma pauperis* statute without first obtaining the court's permission. Plaintiff filed this action on August 13, 2012, without seeking or obtaining prior court permission.

## 2. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A court must construe a *pro se* litigant's pleadings liberally, however, *see Chavis v. Chappius,* 618 F.3d 162, 171 (2d Cir.2010), especially when those pleadings allege civil rights violations. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008).

## 3. Deficiencies in the Complaint

Plaintiff is advised that, as currently stated, the complaint is barred by the doctrines of *Rooker–Feldman* and judicial, quasi-judicial and sovereign immunity. In *Hoblock v. Albany Cnty. Bd. of Elections,* the Second Circuit set forth four factors to determine whether the Rooker–Feldman doctrine applies: (1) plaintiff lost in state court; (2) plaintiff complains of the injury caused by the state court order; (3) plaintiff wants this court to review and reject the state court's determinations, and (4) the state court determinations in question were rendered before this action was commenced. 422 F.3d 77, 85 (2d Cir.2005). Each of the *Hoblock* requirements are met in the instant case which, in essence, asks for relief from a state court order against the plaintiff. Therefore, because the district court lacks subject-matter jurisdiction over this action, the court dismisses the complaint pursuant to Federal Rule of Civil Procedure 12(h)(3). *See id.* at 86.

In addition, each of the named state court employee defendants are protected from suit by absolute immunity. Because the claims against the judges are based solely on judicial acts performed in their judicial capacity, such claims against the judicial defendants are barred by the doctrine of judicial immunity. *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009). Moreover, a clerk of court, like defendant Sunshine named herein, and law clerks, like defendant Kagan, are absolutely immune from claims arising from their failure to properly manage the court calendar. *See Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (finding that the court's "inherent power to control its docket is part of its function of resolving disputes between parties" and is therefore "a function for which judges and their supporting staff are afforded absolute immunity"); *Oliva v. Heller,* 839 F.2d 37, 39–40 (2d Cir.1988).

**\*3** Plaintiff has also named as defendants a host of private parties, including her apartment building and its operators.

These private parties are not subject to suit under 42 U.S.C. § 1983. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838–42, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (affirming dismissal of § 1983 claim because defendants not state actors); *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (stating § 1983 reaches only deprivations of rights by persons acting under color of law); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (distinguishing private conduct from state action).

Finally, plaintiff has named as defendants the State of New York, the New York State Division of Housing and Community Renewal Office of Rent Administration ("HCR"), and several New York state courts. All of these parties are absolutely immune from suit. The Eleventh Amendment bars § 1983 claims against states, absent their consent. *Penhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (the New York State Unified Court System is an arm of the State, and therefore protected by Eleventh Amendment immunity); *Morris v. Katz,* No. 11–CV–3556, 2011 WL 3918965, at *5 (E.D.N.Y. Sept.4, 2011) (HCR is immune from suit under the Eleventh Amendment); *Mullin v. P & R Educ. Servs., Inc.,* 942 F.Supp. 110, 112–13 (E.D.N.Y.1996) (holding that § 1983 claims against former DMV Commissioners are barred by the Eleventh Amendment).

Finally, the court finds that the filing of this action is frivolous and malicious. 28 U.S.C. § 1915(e)(2)(B)(i).

### *CONCLUSION*

For the reasons set forth above, the complaint is dismissed. 28 U.S.C. § 1915(e)(2)(B). The court's Order enjoining plaintiff from filing any new *in forma pauperis* action without first obtaining permission from the court remains in effect. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is respectfully requested to serve a copy of this Memorandum and Order on plaintiff and note service on the docket.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4034038

---

**Footnotes**

1    Under the *Rooker–Feldman* doctrine, cases "brought by [a] state-court loser[ ] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" are barred in federal courts, which lack subject-matter jurisdiction over such actions. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

---

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 142 of 338

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

2018 WL 2138631
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Linda Lan CHMURA, Plaintiff,

v.

NORTON, HAMMERSLEY, LOPEZ & SKOKOS
INVERSO PA, Acme Investment Group LLC,
John W. Deidre Jago, Sanctuary Pelican Pointe
Hoa, Progressive Community MGT Inc., Judd,
Ulrich, Scarlett, Wickman, Simmonti & Dean, PA,
Stephen H. Kurvin, Judges LoGalbo Jr., Haworth,
Bennett Jr., Dakin, Roberts, Rushing, Sheriff
Thomas Knight, The Florida Bar, Defendants.

No. 3:17-cv-2164 (MPS)
|
Signed 05/09/2018

**Attorneys and Law Firms**

Linda Lan Chmura, Stamford, CT, pro se.

## INITIAL REVIEW ORDER

Michael P. Shea, U.S.D.J.

### I. Background

**\*1** Plaintiff Linda Lan Chmura, appearing *pro se*, brings this action under 42 U.S.C. §§ 1983, 1985, the Racketeer Influences and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1965(a), *et seq.*, and other statutory provisions. She seeks declaratory and injunctive relief, as well as punitive damages, in connection with a foreclosure action filed against her in Sarasota County, Florida.

Ms. Chmura's complaint arises out of a foreclosure of a property she owned in Sarasota County, Florida ("the Property"). Ms. Chmura alleges that she retained a law firm, Norton, Hammersley, Lopez & Skokos PA ("Norton Hammersley"), to represent her in the foreclosure action. Eventually, as a result of disagreements between Ms. Chmura and her counsel, Norton Hammersley terminated its representation. Ms. Chmura filed a legal malpractice action against the firm in Florida state court (Case No. 09 CC 001986 NC) and retained attorney Stephen Kurvin to represent her. Norton Hammersley asserted counterclaims, including that

Ms. Chmura owed the firm unpaid fees. Ms. Chmura fired Kurvin in May 2010 and ultimately lost the suit against Norton Hammersley. On September 13, 2010, Judge LoGalbo of the Florida Circuit Court for Sarasota County entered final judgment against Ms. Chmura and in favor of Norton Hammersley. (ECF No. 1-2 at 36-38.)

On May 26, 2011, Sheriff Thomas Knight executed the judgment by foreclosing upon and selling the Property to Acme Investment Group, LLC ("Acme"). (ECF No. 1-2 at 50.) Ms. Chmura then filed another lawsuit (Case No. 11 CA 004853 NC) against Norton Hammersley and Acme, seeking a declaratory judgment that the foreclosure sale was void. (ECF No. 1-2 at 91-94.) On October 28, 2011, Judge Roberts of the Florida Circuit Court for Sarasota County entered final judgment against Ms. Chmura and in favor of Norton Hammersley and Acme, stating that Acme owned the Property. (ECF No. 1-2 at 34.)

Ms. Chmura brings this action against Norton Hammersley, Acme Investment Group, her former attorney Stephen Kurvin, the Florida state court judges who rendered rulings against her, Clerk of Court Karen Rushing, Sheriff Thomas Knight, the Florida Bar, and various other individuals and entities. She seeks a declaration that the Sheriff's foreclosure sale was void, an injunction granting her the right to repossess the Florida property, and punitive damages.

### II. Legal Standard

Because Ms. Chmura seeks to proceed *in forma pauperis*, the Court must evaluate her complaint and determine whether it should advance. 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss [a] case at any time if the court determines that [the action] is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.") The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 143 of 338

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

### III. Discussion

#### A. Absolute Judicial Immunity

**\*2**  Ms. Chmura's claims against Florida state court judges fail under the doctrine of absolute judicial immunity, which renders judges immune from suit for damages for judicial acts. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute judicial immunity protects judges from liability for their judicial acts, even when the plaintiff alleges that the judge acted "maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Absolute immunity shields judges from all civil suits for damages, including suits under Section 1983, Section 1985, or civil RICO. *See, e.g.*, *Peia v. U.S. Bankruptcy Court*, 62 Fed.Appx. 394, 396 (2d Cir. 2003) (summary order affirming dismissal of RICO claim as barred by judicial immunity); *Turner v. Boyle*, 116 F. Supp. 3d 58, 81-82 (D. Conn. 2015) (dismissing Section 1983 and 1985 claims as barred by judicial immunity).

Absolute immunity also bars Ms. Chmura's Section 1983 claim for injunctive relief. The 1996 amendments to Section 1983 make injunctive relief unavailable for claims against judges for actions taken in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Ms. Chmura's claims against Defendants LoGalbo, Haworth, Bennett, Dakin, and Roberts arise from acts the judges took in their judicial capacities while presiding over Ms. Chmura's Florida lawsuits. Ms. Chmura does not allege that any of the actions violated a declaratory decree or that declaratory relief was unavailable. Therefore, the claims against Florida state court Judges LoGalbo, Haworth, Bennett, Dakin, and Roberts are dismissed under the doctrine of judicial immunity and because they are frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis*] statute.").

#### B. Absolute Quasi-Judicial Immunity

Clerk of Court Karen Rushing and Sheriff Thomas Knight are also immune from suit based on Ms. Chmura's allegations that Rushing entered writs of execution and Knight completed a Sheriff's sale as part of the foreclosure proceedings. Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, No. 3:08CV95 (DFM), 2013 WL 1294412, at \*12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ), *aff'd*, 594 Fed.Appx. 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015). *See also Tornheim v. Eason*, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005) (sheriff had absolute quasi-judicial immunity for effectuating a judgment's mandate). Ms. Chmura's claims against Rushing and Knight arise out of acts that were integrally related to the Florida foreclosure proceedings. Therefore, the Court dismisses Ms. Chmura's claims against Rushing and Knight as frivolous.

#### C. *Rooker-Feldman* Doctrine

The Court must also dismiss this action because it lacks jurisdiction over Ms. Chmura's claims under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). That doctrine precludes federal district courts from reviewing final judgments of state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). The *Rooker-Feldman* doctrine applies where the plaintiff (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The *Rooker-Feldman* doctrine "concerns a district court's subject-matter jurisdiction." *Lance v. Coffman*, 549 U.S. 437, 439 n.\* (2007).

**\*3**  Ms. Chmura lost her cases in the Florida state courts before she filed this suit. She complains of injuries that she suffered as a result of those losses and requests that this Court declare that the foreclosure sale was void and order that she may take possession of the Property. Thus, Ms. Chmura's federal claims are "inextricably intertwined" with the Florida

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 144 of 338

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

state court judgments, and this Court lacks jurisdiction to hear those claims. *See, e.g., Andrews v. Citimortgage, Inc.,* No. 14-CV-1534 (JS)(AKT), 2015 WL 1509511, at *4 (E.D.N.Y. Mar. 31, 2015) (holding that *Rooker-Feldman* doctrine precluded federal court jurisdiction over claims alleging injuries that occurred as a result of a state court foreclosure judgment); *Done v. Option One Mortg.,* No. 09-CV-4770, 2011 WL 1260820, at *7 (E.D.N.Y. Mar. 30, 2011) ("Although plaintiff has made a cursory reference to seeking monetary damages, it is abundantly clear that the whole purpose of this action is to undo the foreclosure judgment. Therefore, *Rooker-Feldman* clearly applies."). Therefore, the Court dismisses Ms. Chmura's claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). [1]

**D. Statute of Limitations**

Ms. Chmura's claims also fail because they are barred by the statute of limitations. The statute of limitations for a section 1983 claim is "that which the State provides for personal-injury torts." *Wallace v. Kato,* 549 U.S. 384, 387 (2007). The Connecticut statute of limitations for personal injury actions is three years. "When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski,* 159 F.3d 117, 119 (2d Cir. 1998). "RICO claims are subject to a four-year statute of limitations." *Koch v. Christie's Intern. PLC,* 699 F.3d 141, 148 (2d Cir. 2012). "A cause of action to recover damages based on [a] RICO injury accrues to plaintiff at the time [she] discovered or should have discovered the injury." *Eno Farms Co-op. Ass'n., Inc. v. Corp.*

*for Indep. Living,* 2007 WL 3308016, at *4 (D. Conn. Nov. 5, 2007) (quoting *Bankers Trust Co. v. Rhodes,* 859 F.2d 1096, 1102 (2d Cir. 1988) ) (alterations omitted).

Here, all of the conduct underlying Ms. Chmura's claims occurred more than four years ago, with the most recent conduct occurring on October 28, 2011, when Judge Roberts entered final judgment against Ms. Chmura and in favor of Norton Hammersley and Acme. Ms. Chmura does not allege that she discovered her injuries at a later point in time. Therefore, Ms. Chmura's claims are barred by the statutes of limitations applicable to both Section 1983 and RICO claims and must be dismissed. [2]

**IV. Conclusion**

**\*4** For the reasons stated above, Plaintiff's claims are DISMISSED. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. The motion for leave to proceed *in forma pauperis* (ECF No. 2), emergency petitions (ECF Nos. 3 and 7), and motion to appoint counsel (ECF No. 6) are DENIED as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2138631

---

**Footnotes**

1    Further, the complaint fails to plead facts showing why the Court would have personal jurisdiction over any of the defendants. *See* Fed. R. Civ. P. 8(a)(1) (requiring allegations showing that the court has jurisdiction); *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.,* 619 F.3d 207, 213 (2d Cir. 2010) (where defendants have not appeared in a case, the court may dismiss a case *sua sponte* for lack of personal jurisdiction).

2    While the statute of limitations is an affirmative defense, the Court may consider it upon the filing of the complaint if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 425 (2d Cir. 2008). Further, while the statute of limitations may be avoided where equitable tolling or other tolling doctrines apply, in this case the inapplicability of such doctrines is apparent because Ms. Chmura pleads no facts demonstrating that she was reasonably diligent in pursuing her claims and that extraordinary circumstances prevented her from filing her complaint within the limitations period. *See Walker v. Jastremski,* 430 F.3d 560, 564 (2d Cir. 2005). The facts alleged indicate not only that she knew of the cause of action but that she was actively litigating related claims in another forum at a time that is well beyond the statute of

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 145 of 338

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

limitations. Ms. Chmura asserts a "fraud upon the court" but pleads no facts alleging "fraudulent concealment of the existence of a cause of action," as required for equitable tolling on the basis of "fraud." *See Pearl v. City of Long Beach*, 296 F.3d 76, 84 (2d Cir. 2002).

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 146 of 338

**Mendez v. Johnson, Not Reported in Fed. Supp. (2022)**

2022 WL 3587600
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Hiram Noel MENDEZ, Plaintiff,

v.

Reginald J. JOHNSON; Stephen A. Ronco;
Spencer Guerrero; Tina Cardinale; Belle Bowen;
Officer Dycktra; Officer Santos, Defendants.

22-CV-6811 (LTS)
|
Signed August 22, 2022

**Attorneys and Law Firms**

Hiram Noel Mendez, Cortland Manor, NY, Pro Se.

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

 **\*1** Plaintiff, who is appearing *pro se*, invokes the
Court's federal question jurisdiction, alleging that Defendants
violated his civil rights. The Court construes the complaint
as asserting claims under 42 U.S.C. § 1983. Named as
Defendants are City of Peekskill Judge Reginald J. Johnson;
Assistant District Attorney (ADA) Stephen A. Ronco; City of
Peekskill Clerk of Court Spenser Guerrero; City of Peekskill
Chief Clerk Belle Bowen; [1] Tina Cardinale; and Officers
Dycktra and Santos. By order dated August 10, 2022, the
Court granted Plaintiff's request to proceed *in forma pauperis*
(IFP), that is, without prepayment of fees.

For the reasons set forth below, the Court dismisses Plaintiff's
claims against Judge Johnson, Clerk of Court Guerrero, and
Chief Clerk Bowen, and grants Plaintiff leave to file an
amended complaint with respect to the remaining defendants
within 60 days of the date of this order.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief

from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id. at
475* (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

BACKGROUND

The complaint alleges that Plaintiff's claims arose on January
12, 2020, in Peekskill, New York. The "facts" section of the
complaint states in its entirety: [2]

> I bealieve and do believe that I have
> concerning fiduciary relationships
> in the matter of HIRAM NOEL
> MENDEZ Estate Peekskill City Court
> claimed to be fiduciary's trustees over
> one's estate and they're also claiming
> to be beneficiaries so they're collecting
> on the estate I'm standing in there
> courts venue being auctioned off
> without my knowledge or concent or
> authorization and at the same time
> they're collecting. They want me to pay
> whether it's in my physical being or
> FRN what have you [F]ederal Reserve
> Notes. I do not wish to bring liability
> issues upon that court however my life
> has been place in jeopardy. I am being
> targeted and I require an advocate and
> the underline subject here is I don't

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 147 of 338

want to be a party of any tax fraud.
Nunc pro tunc.

**\*2**  (ECF 2, at 5.)

Plaintiff describes his injuries as the following: "I had to go
to the hospital because my handcuff I mean there had cuffs
hurt me so bad I was bleading I needed to get professional
help." (*Id.* at 6.)

In the section of the complaint form to state the relief he is
seeking, Plaintiff writes,

> I demand compensation from the state
> in the amount of $240,000.00 for the
> commercial injuries I have sustained
> from the loss of my property, loss
> of time from work and cost certify
> mailings and affidavit notice of man's
> and parties involved the cost of filing
> and according as well the expensive
> and curve traveling as resolved to
> being deprived of use my private
> property automobile.

(*Id.*)

### DISCUSSION

Because Plaintiff states that Defendants violated his civil
rights, the Court construes the complaint as asserting claims
under 42 U.S.C. § 1983. To state a claim under Section, a
plaintiff must allege both that: (1) a right secured by the
Constitution or laws of the United States was violated, and
(2) the right was violated by a person acting under the color
of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42,
48-49 (1988).

### A. Judicial and Quasi-Judicial Immunity

The Court dismisses Plaintiff's claims against Judge Johnson,
Clerk of Court Guerrero, and Chief Clerk Bowen. Judges
are absolutely immune from suit for damages for any actions
taken within the scope of their judicial responsibilities.
*Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts

arising out of, or related to, individual cases before the judge
are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d
204, 210 (2d Cir. 2009). "Even allegations of bad faith or
malice cannot overcome judicial immunity." *Id.* (citations
omitted). This is because, "[w]ithout insulation from liability,
judges would be subject to harassment and intimidation ...."
*Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition,
Section 1983, as amended in 1996, provides that "in any
action brought against a judicial officer for an act or omission
taken in such officer's judicial capacity, injunctive relief shall
not be granted unless a declaratory decree was violated or
declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action
"outside" his judicial capacity, or when the judge takes action
that, although judicial in nature, is taken "in absence of
jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven*, 579
F.3d at 209-10 (describing actions that are judicial in nature).
But "the scope of [a] judge's jurisdiction must be construed
broadly where the issue is the immunity of the judge." *Stump
v. Sparkman,* 435 U.S. 349, 356 (1978).

This immunity also applies to government officials, including
clerks of court and other court employees, for their acts
that assist a judge in the performance of his or her judicial
duties. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985);
*Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see
also Ali v. Pollak*, 182 F.3d 898 (2d Cir. 1999) (unpublished
opinion) (extending judicial immunity to a pro se law clerk);
*Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (extending
judicial immunity to a judge's law clerk); *Chmura v. Norton,
Hammersley, Lopez & Skokos Inverso PA*, No. 3:17-CV-2164,
2018 WL 2138631, at \*2 (D. Conn. May 9, 2018) (extending
judicial immunity to a clerk of court); *Manko v. Ruchelsman,*
No. 12-CV-4100, 2012 WL 4034038, \*2 (E.D.N.Y. Sept.
10, 2012) (same), *appeal dismissed*, 12-4080 (2d Cir. Jan.
31, 2013); *Gibson v. Brown*, No. 12-CV-0622, 2012 WL
1744845, at \*4-5 (E.D.N.Y. May 16, 2012) (extending judicial
immunity to a pro se writ clerk), *appeal dismissed*, No.
12-2748 (2d Cir. Dec. 20, 2012).

**\*3**  Although the factual basis is not entirely clear, it
appears that Plaintiff's claims against Johnson, Guerrero, and
Bowen arise from actions taken with respect to a case before
Judge Johnson in the Peekskill City Court. Plaintiff fails to
allege any facts showing that these defendants acted beyond
the scope of their judicial responsibilities or outside their
jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiff
sues Johnson, Guerrero, and Bowen for "acts arising out of,

or related to, individual cases before" Judge Johnson, these defendants are immune from suit for such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses Plaintiff's claims against Johnson, Guerrero, and Bowen because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

**B. Claims against ADA Ronco**

Plaintiff also asserts claims against ADA Ronco. However, prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are " 'intimately associated with the judicial phase of the criminal process.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70-72 (2d Cir. 2019) (holding that ADAs' direction as to where criminal defendant would be arraigned was in preparation for a court proceeding in which the prosecutors were acting as advocates, and ADAs were therefore shielded by absolute immunity (citing, *inter alia*, *Van de Kamp*)).

Because the complaint does not allege any facts explaining how ADA Ronco allegedly violated Plaintiff's rights, the Court is unable to determine whether prosecutorial immunity applies. If Plaintiff believes that Ronco has committed acts outside of the scope of his official duties as a prosecutor that have violated Plaintiff's rights, Plaintiff may reassert his claims against Ronco in the amended complaint, and Plaintiff must allege facts suggesting that prosecutorial immunity does not apply.

**C. Claims against Dycktra, Santos, and Cardinale**

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief

"that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

Here, Plaintiff does not allege facts suggesting a plausible Section 1983 claim against Officer Dycktra, Officer Santos, or Tina Cardinale. Plaintiff names the two police officers as defendants and states that he was bleeding due to handcuffs, but he does not allege any facts explaining how these two defendants were personally involved in causing such injuries. Furthermore, Plaintiff names Tina Cardinale as a defendant in the caption, but the complaint does not allege any facts regarding Cardinale, including who she is or how she was personally involved in violating Plaintiff's rights. The Court therefore grants Plaintiff leave to file an amended complaint that alleges facts suggesting that Officer Dycktra, Officer Santos, and Tine Cardinale violated his rights.

### LEAVE TO AMEND

**\*4** Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because it is not clear at this point that amendment would be futile, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his Section 1983 claims against ADA Ronco, Tina Cardinale, and Officers Dycktra and Santos. If Plaintiff chooses to reassert his claims against Ronco, he must allege facts suggesting that Ronco has committed acts outside

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 149 of 338

of the scope of his official duties as a prosecutor that have violated Plaintiff's rights.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

   a) the names and titles of all relevant people;

   b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

   c) a description of the injuries Plaintiff suffered; and

   d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's claims against Johnson, Guerrero, and Bowen because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills,* 645 F.3d at 177 ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order,

caption the document as an "Amended Complaint," and label the document with docket number 22-CV-6811 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States,* 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

### Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*(In the space above enter the full name(s) of the plaintiff(s).)*

   -against-

**AMENDED COMPLAINT**
under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial: ☐ Yes ☐ No
(check one)

___ Civ. _____ ( )

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**I.    Parties in this complaint:**

A.   List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff  Name _____
   ID# _____
   Current Institution _____
   Address _____

B.   List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1  Name _____ Shield # _____
   Where Currently Employed _____
   Address _____

*Rev. 01/2010*   1

Defendant No. 2    Name _____   Shield #_____
                   Where Currently Employed _____
                   Address _____

Defendant No. 3    Name _____   Shield #_____
                   Where Currently Employed _____
                   Address _____

Defendant No. 4    Name _____   Shield #_____
                   Where Currently Employed _____
                   Address _____

Defendant No. 5    Name _____   Shield #_____
                   Where Currently Employed _____
                   Address _____

## II.    Statement of Claim:

State as briefly as possible the _facts_ of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur?
      _____
      _____

B.    Where in the institution did the events giving rise to your claim(s) occur?
      _____
      _____

C.    What date and approximate time did the events giving rise to your claim(s) occur?
      _____
      _____
      _____

D.    Facts:_____
      _____
      _____
      _____

*Rev. 01/2010*                          2

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.
_____
_____
_____
_____
_____
_____

## IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?
      Yes _____   No _____

*Rev. 01/2010*                          3

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).
_____
_____
_____

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?
      Yes _____   No _____   Do Not Know _____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?
      Yes _____   No _____   Do Not Know _____
      If YES, which claim(s)?
      _____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?
      Yes _____   No _____
      If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?
      Yes _____   No _____

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance?
      _____

      1.    Which claim(s) in this complaint did you grieve?
            _____

      2.    What was the result, if any?
            _____

      3.    What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.
            _____
            _____
            _____

F.    If you did not file a grievance:

      1.    If there are any reasons why you did not file a grievance, state them here:
            _____
            _____

*Rev. 01/2010*                          4

            _____
            _____
            _____

      2.    If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any:
            _____
            _____
            _____
            _____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.
      _____
      _____
      _____
      _____

Note:    You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V.    Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for each amount).  _____
_____
_____
_____
_____
_____
_____
_____

*Rev. 01/2010*                          5

Mendez v. Johnson, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 151 of 338



**All Citations**

Not Reported in Fed. Supp., 2022 WL 3587600

## Footnotes

1    Plaintiff sometimes lists this defendant's last name as "Bowmen."

2    Plaintiff writes using irregular capitalization. For readability, the Court uses standard capitalization when quoting from the complaint. The Court otherwise quotes from the complaint verbatim and all grammar, spelling and punctuation are as in the original.

**End of Document**         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Braithwaite v. Tropea, Slip Copy (2023)**

2023 WL 4207907
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Keston BRAITHWAITE, Plaintiff,

v.

Frank TROPEA, Clerk of Court, County
Court, Suffolk County; Honorable John B.
Collins, Justice Supreme Court; and Susan
Conner, Senior Court Reporter, Defendants.

23-CV-1431(JS)(AYS)
|
Signed June 27, 2023

**Attorneys and Law Firms**

For Plaintiff: Keston Braithwaite, pro se, 22B4593, Sing Sing
Correctional Facility, 354 Hunter Street, Ossinig, New York
10562.

For Defendants: No appearance.

MEMORANDUM AND ORDER

SEYBERT, District Judge:

**\*1** By Order dated March 2, 2023 (the "Order"), the
Court granted the Application to Proceed in District Court
Without Paying Fees or Costs (Application, ECF No. 2)
filed by incarcerated Plaintiff Keston Braithwaite ("Plaintiff")
together with his pro se Complaint (Compl., ECF No. 1). [1]
(See Order, ECF No. 9.) The Complaint is brought pursuant to
42 U.S.C. § 1983 ("Section 1983") against Frank Tropea, the
Clerk of the Court, County Court Suffolk County ("Tropea"),
Honorable John B. Collins ("Judge Collins"), and Susan
Conner, [2] Senior Court Reporter ("Conner"; collectively, the
"Defendants").

Upon review of Plaintiff's Complaint (ECF No. 1) in
accordance with 28 U.S.C. § 1915A(a), the Court finds
that Plaintiff has not alleged a plausible claim for relief.
Accordingly, for the reasons that follow, the Complaint is
DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §
1915A(b). Given the dismissal of the Complaint, Plaintiff's
motion seeking a preliminary injunction (ECF No. 4) is
DENIED.

RELEVANT BACKGROUND AND
SUMMARY OF THE COMPLAINT

Plaintiff is a prolific filer in this Court; excluding the instant
action, since January 2022, he has filed eight unsuccessful pro
se in forma pauperis complaints relating to his arrest and state
court criminal prosecution. See Braithwaite v. Gaitman, No.
22-CV-0974, 2022 WL 14059127, at *1 n.2 (E.D.N.Y. Oct.
24, 2022) (identifying those eight other actions). In his present
Section 1983 Complaint, which relates to his arrest and state
court criminal prosecution, [3] Plaintiff asserts that: (1) (a) even
though Plaintiff requested specific documents and his entire
state-court file from May 5, 2022 from the County Court, (b)
the County Court responded to Plaintiff's request indicating
those documents were available, consisted of 220 pages, and
would cost $143 to copy, and (c) Plaintiff submitted the $143
copying fee (as a money order), Tropea failed to turn over the
requested copies of Plaintiff's state-court file (see Compl. at
ECF pp. 5-7, 11-12); (2) thereafter, "Tropea chose to forward
Plaintiff's $143 money order to Judge John B. Collins" (id.
at ECF p. 16); (3) in turn, Judge Collins returned Plaintiff's
$143 money order to Plaintiff's defense attorney in open court
"to block Plaintiff from inspecting his Court file" (id. at ECF
pp. 9, 12); and (4) on July 5, 2022, Plaintiff's defense attorney
handed Plaintiff a partial copy of his state-court file, which
did not include filings made prior to June 2022 (see id.; see
also id. at ECF p. 16), and which Plaintiff believes was done
under Tropea's and Judge Collin's directives (see id. at ECF
p. 15).

**\*2** As to Conner, Plaintiff alleges: "Conner[ ] deliberately
[sic] falsified documents for the District Attorney of Suffolk
County and Judge Collins to hinder Plaintiff's appeal," (id. at
ECF p. 16), to wit, "Conner[ ]chose not to record Plaintiff's
Statement 'Ping Data' in favor for her colleagues [sic] Jacob
Kubetz [the Assistant District Attorney] and Judge Collins."
(Id. at ECF p. 18.) Moreover, despite Plaintiff's requests
that Conner correct the sentencing transcript during which
Plaintiff referred to "Ping Data", she has not done so. (See id.)

Based upon these allegations, Plaintiff claims his First, Fifth,
Sixth, and Fourteenth Amendment Constitutional rights have
been violated. (See Compl. at ECF p. 4.) He further asserts
the following ten purported causes of action:

1. denial of judicial records;

2. fraud on the court;

3. concealment of records;

4. falsify evidence/documents;

5. altered transcripts;

6. procedural due process;

7. substantive due process;

8. Fourteenth Amendment violation;

9. Conspiracy to interfere with civil rights; and

10. Deprivation of civil rights.

(Compl. at ECF p. 19.) By way of relief, Plaintiff requests:

> [d]eclaratory relief, injunctive relief in that my court file that consist of 220 pages that was filed before May 5th, 2022, that the Clerk of the Court including Frank Tropea refrain from falsifying documents for the District Attorney Suffolk County, and Judge Collins such as back dating and filing Search and Arrest warrants after they admitted that there was no Search and Arrest warrants filed in their office, and Susan O'Conner [sic] fix errors in my sentencing transcripts so I can bring up those issues in my appeal. I am seek [sic] compensatory damages in that I would like my entire Court file with no pages missing (Certified, true and accurate filing dates), a True and accurate copy of my sentencing transcript, and the costs and fees I spent to prosecute this action, Past and future damages, Punitive damages. I would like all money damages in the sum of $30,000,000.00.

(Id. at ECF pp. 20-21.)

DISCUSSION

I. Legal Standards

A. Consideration of the Complaint Under 28 U.S.C. § 1915A

Section 1915A of Title 28 requires federal district courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's civil rights complaint, or any portion of that complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

B. Section 1983

**\*3** Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356 (2012). To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

Plaintiff alleges a deprivation of his First, Fifth, Sixth, and Fourteenth Amendment rights (Compl., ECF No. 1, at 4 (Section II.B)) and, as liberally construed, the Complaint purports to allege denial of a fair trial, as well as procedural and substantive due process claims.

### C. Application

Before addressing the merits of Plaintiff's Section 1983 claims, the Court first considers several threshold barriers to the adjudication of his claims.

#### 1. Immunity

##### a. Absolute Judicial Immunity

Plaintiff's Section 1983 claims against Judge Collins are subject to dismissal because, as a judge employed by the state of New York, he is absolutely immune from suit. It is well-established that judges "generally have absolute immunity" from suit for judicial acts performed in their judicial capacities. Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991)); Hardy-Graham v. Southampton Just. Ct., No. 20-CV-0981, 2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (Seybert, J.). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." Mireles, 502 U.S. at 11, 13 (internal quotation marks and citation omitted; ellipsis in original). Rather, judicial immunity is overcome in only two instances. The first instance is "liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Bliven, 579 F.3d at 209 (quoting Mireles, 502 U.S. at 11). The second instance is liability arising from actions taken " 'in the

complete absence' of all jurisdiction.' " Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (quoting Mireles, 502 U.S. at 11-12; emphasis in original).

Here, even upon a liberal construction, Plaintiff's allegations do not suggest that either exception applies to overcome absolute judicial immunity. Clearly Judge Collins acted within his jurisdiction given that the alleged conducted occurred in open court during the criminal prosecution that lead to Plaintiff's state court conviction. There can be no doubt that state court prosecution for violations of state laws relating to drug possession and weapon possession is the very kind of case over which state courts have jurisdiction. Accordingly, Judge Collins is shielded from suit by absolute immunity. [4]

**\*4** The absolute immunity afforded to judges is not limited to judges alone, but also extends to "certain others who perform functions closely associated with the judicial process." Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988) (citation omitted); see also McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2016). Here, Tropea is entitled to absolute immunity given that Plaintiff's allegations against him concern conduct that is "closely related to the judicial process." Jackson v. Pfau, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding "defendants were entitled to judicial immunity, because [ ][the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process") (citing Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (noting that "[c]ourts have extended the absolute judicial immunity afforded judges to individuals ... who perform functions closely associated with the judicial process," and holding that judges and their supporting staff are absolutely immune in matters regarding "[a] court's inherent power to control its docket")).

As a result, Plaintiff's Section 1983 claims against Judge Collins and Tropea are not plausible as a matter of law and are, therefore, DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). See Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

#### b. Eleventh Amendment Immunity

" '[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity....' " Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *2 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (quoting Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original)). "This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief." Griggs, 2021 WL 1535056, at *2 (citing Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)).

Plaintiff claims that Tropea failed to perform his duties; yet, there are no allegations that Tropea acted outside of his official capacity. (See Compl., in toto.) Indeed, Tropea is a state officer because he is the Chief Clerk of the Suffolk County Court, and the Suffolk County Court is an arm of the New York state court system.[5] See Gollomp, 568 F.3d at 366–67 ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."); Fishman v. Off. of Ct. Admin. N.Y.S. Cts., No. 18-CV-0282, 2020 WL 1082560, at *7 (S.D.N.Y. Mar. 5, 2020), aff'd, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021) ("[T]he Second Circuit has specifically held that the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." (internal quotation marks and citation omitted)). Accordingly, Tropea is shielded from suit by the Eleventh Amendment, and Plaintiff's Section 1983 claims are therefore implausible. See Watanmaker v. Clark, No. 09-CV-3877, 2010 WL 3516344, at *7 (E.D.N.Y. Aug. 31, 2010) (dismissing Section 1983 claims alleged against the Chief Clerk of the Suffolk County District Court as barred by the Eleventh Amendment (citing Casaburro v. Guiliani, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds)); Davis v. State of N.Y., No. 90-CV-6170, 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), aff'd 106 F. App'x 82 (2d Cir. 2004); see also Manko v. Steinhardt, No. 11-CV-5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (finding clerk of court immune from claims arising from alleged failure to perform duties where there were no allegations that clerk of court acted in individual capacity); Peterkin v. Carr, No. 20-CV-0524, 2020 WL 7186796, *3 (E.D.N.Y. Dec. 7, 2020) (finding court staff member named in his official capacity entitled to judicial immunity (citing Treistman v. McGinty, 804 F. App'x 98 (2d Cir. 2020)) (affirming district court's determination that family court employees were immune from suit))). Thus, Plaintiff's Section 1983 claims against Tropea are also barred by the Eleventh Amendment and are DISMISSED WITH PREJUDICE as pursuant to 28 U.S.C. § 1915A(b).[6]

#### c. Qualified Immunity

**\*5** Plaintiff's Section 1983 claims against Conner are not plausible because she is entitled to qualified immunity. Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions only where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wallace v. Suffolk County Police Dep't, 396 F. Supp. 2d 251, 265 (E.D.N.Y. 2005) (Seybert, J.) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, courts consider "whether the facts shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." Tankleff v. County of Suffolk, No. 09-CV-1207, 2017 WL 2729084, at *17 (E.D.N.Y. June 23, 2017) (Seybert, J.) (quoting Estate of Devine v. Fusaro, 676 F. App'x 61, at *1 (2d Cir. 2017) (cleaned up)). Whether a right was clearly established should be analyzed from the perspective of a reasonable official, and the relevant inquiry is whether "it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." Id.

The United State Supreme Court has long extended qualified immunity to court reporters, such as Conner, where their conduct does not violate clearly established statutory or constitutional rights. See Antoine v. Byers & Anderson Inc., 508 U.S. 429 (1993) (holding that court reporters are qualifiedly, not absolutely, immune from suit); Harlow, 457 U.S. at 818 (discussing standard for establishing qualified immunity); see also Green v. v. Maraio, 722 F. 2d 1013, 1019 (2d Cir. 1983) (finding Rule 12(b)(6) dismissal of claim against court reporter on grounds of qualified immunity was appropriate where the complaint alleged court reporter acted

pursuant to judge's explicit instructions). Indeed, "there is no constitutional or federal statutory right to an absolutely accurate trial transcript." Burrell v. Swartz, 558 F. Supp. 91, 92 (S.D.N.Y. 1983). Thus, insofar as Plaintiff complains that Conner excluded the words "ping data" at pages 86 and 87 from the 121-page sentencing transcript, in the absence of any constitutional or federal statutory right to an "absolutely accurate" transcript, Conner is protected by qualified immunity.[7] McCaw v. McPartland, No. 17-CV-6431, 2018 WL 10701609, at *1 (S.D.N.Y. Apr. 2, 2018).

**\*6** Accordingly, Plaintiff's Section 1983 claims against Conner are not plausible and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). See Green, 722 F. 2d at 1019 (affirming dismissal of claims against court reporter on basis of qualified immunity and stating: "allowing ... dismissal whenever the basis for finding qualified immunity applicable is established by the complaint itself 'permit[s] "[i]nsubstantial lawsuits [to] be quickly terminated" ' ") (quoting Harlow, 457 U.S. at 814; further citation omitted); Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *3 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (sua sponte dismissing Section 1983 claims pursuant to 28 U.S.C. § 1915(e)(2)(B) against two court reports in the absence of "any facts that suggest that the court reporters' conduct violated any of [p]laintiff's clearly established statutory or constitutional rights").

Given the dismissal of Plaintiff's federal claims against the Defendants on immunity grounds, the Court need not reach the merits. However, in light of his pro se status, the Court explains, to the extent that Plaintiff complains that the allegedly inaccurate sentencing transcript "deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts." See id., (citing Curro, 884 F. Supp. at 720-23); Collins v. N.Y. City, No. 19-CV-7156, 2019 WL 4805692, at *3 (S.D.N.Y., 2019) (sua sponte dismissing Section 1983 claims upon initial screening, explaining "[t]o the extent [p]laintiff attempts to assert that inaccurate transcriptions deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts") (citing Curro, 884 F. Supp. at 720-23) (discussing New York's transcript settlement procedures and finding they provide all the process due plaintiff). Notwithstanding having filed a complaint with the Tenth District Administrative Office, Suffolk County ("Tenth District AO") (see Compl. at ECF p. 18), Plaintiff has not

alleged to have availed himself of other available transcript settlement procedures and Plaintiff has other means to seek the correction of his sentencing transcript. See Curro, 884 F. Supp. at 718 ("In addition [to available N.Y.S. post-deprivation remedies], any significant unresolved questions concerning the transcript's accuracy could be raised on appeal, and if found to be substantial, would permit a remand of the proceedings back to the original trial judge to resettle the transcript.") (citations omitted).[8]

Moreover, "[a] claim that deficiencies in the trial transcripts were so great that the plaintiff's constitutional rights on appeal were violated is 'a direct challenge to the validity of the conviction and the legality of plaintiff's confinement.' " Stokes v. Kreidler, No. 18-CV-0113, 2018 WL 1226027, at *3 (N.D.N.Y. Jan. 30, 2018), report and recommendation adopted, 2018 WL 1229699 (N.D.N.Y. Mar. 8, 2018) (citing Davison v. Reyes, No. 11-CV-0167, 2012 WL 948591, at *3 (E.D.N.Y. Mar. 20, 2012)). The sole remedy for a challenge to Plaintiff's conviction is under 28 U.S.C. § 2254, after exhausting his state court remedies. See, e.g., Bridgeforth v. County of Rensselaer, No. 08-CV-0779, 2008 WL 5156936, at *4 (N.D.N.Y. Dec. 8, 2008), adhered to on denial of reconsideration, 2009 WL 102959 (N.D.N.Y. Jan. 13, 2009) (dismissing Section 1983 claims alleging, inter alia, that the prosecutor, judge, and court reporter conspired to alter official court records because "any attack on the sentence for which Plaintiff is currently serving cannot be attacked in a § 1983 action without an indication that such sentence has been reversed") (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)).

**\*7** Accordingly, as is readily apparent, Plaintiff's Section 1983 claims are not plausible even if the Court were to consider the merits.

## II. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted. Here, because Plaintiff could not cure the substantive deficiencies set forth above with better pleading, amendment would be futile. Accordingly leave to amend the Complaint is DENIED.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that, upon this Court's Section 1915A(a) screening of the Complaint, Plaintiff fails to allege a plausible claim for relief for the reasons set forth above; and

**IT IS FURTHER ORDERED** that the Complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b) given that it fails to state a claim and seeks monetary relief from Defendants who are immune from such relief and it is frivolous; and

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking a preliminary injunction (ECF No. 4) is DENIED; and

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies any appeal from this Order would not be taken in good faith. Therefore, in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the pro se Plaintiff at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**All Citations**

Slip Copy, 2023 WL 4207907

## Footnotes

1    The Order also denied Plaintiff's Motion for Order to Show Cause seeking an order: (1) directing Defendants to show cause "why a preliminary injunction should not issue" enjoining "them from denying the Plaintiff access to the Records in his Case, County Court Ind. No. 308C-2020 and falsifying documents in the past and in the future," and (2) requesting Defendants temporarily be ordered to "restrain[ ] from commiting [sic] crimes including concealment of Records and falsifying documents." (Order at 1-2 (citing OSC Motion, ECF. No. 4, and Pl.'s Support Aff., ECF No. 4-1).) The Court ruled on Plaintiff's OSC Motion to the extent it sought a temporary restraining order ("TRO") and held in abeyance any determination regarding Plaintiff's request for a preliminary injunction pending its initial screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (See Order at 2 n.1.)

2    Notably, the Sentencing Transcript filed by Plaintiff as Exhibit 18 to his Complaint (see ECF No. 7-4 at 2) reflects that the Court Reporter's sur-name is "Connors" rather than "Conner". For consistency with Plaintiff's Complaint, the Court will use "Conner" in this Memorandum and Order.

3    The Court presumes familiarity with Plaintiff's underlying state court criminal action, but notes that according to the information maintained by the New York State Office of Court Administration on its public website, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, on July 18, 2022, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony. See https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022). In sum, Plaintiff challenges his arrest and conviction, asserting that he was illegally apprehended, and then convicted, based upon cellphone "ping data" collected without a warrant; he also maintains that evidence used against him at trial was illegally obtained via a warrantless search of his apartment. (See Sept. 23, 2022 Sent'g Hr'g Tr., ECF No. 7-4, at ECF pp. 81-87; see also Compl. at ECF pp. 16-17, 19.)

4    Although "[t]he doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief," Krupp v. Todd, No. 14-CV-0525, 2014 WL 4165634, at *4 (N.D.N.Y. Aug. 19, 2014), "[a]bsolute judicial immunity bars declaratory judgment claims that are retrospective in nature in that they seek a declaration that a judge's past behavior has violated the Constitution." Leathersich v. Cohen, No. 18-CV-6363, 2018 WL 3537073, at *4 (W.D.N.Y. July 23, 2018) (internal quotation omitted) (citing cases); see also Moore v. City

of N.Y., No. 12-CV-4206, 2012 WL 3704679, at *2 (E.D.N.Y. Aug. 27, 2012) ("Judicial immunity also bars ... claims for retrospective declaratory relief."). A review of the Complaint makes clear that it is targeted at Judge Collins's conduct in Plaintiff's concluded state court action. (See Compl., ECF No. 1, in toto.) Indeed, Plaintiff seeks not to vindicate some prospective right, but a declaration that Judge Collins's prior judicial actions were erroneous. Given that Plaintiff seeks retrospective relief, such claims are barred. Montesano v. New York, Nos. 05-CV-9574, 05-CV-10624, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006) (neither "injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments") (citing Huminski v. Corsones, 396 F.3d 53 (2d Cir. 2005)).

5    Although Plaintiff alleges Tropea is the Clerk of the Court, County Court of Suffolk County (see ECF No. 1 at 2), the information maintained by the New York State Office of Court Administration on its public website reflects that Tropea is the Chief Clerk of that court. See https://ww2.nycourts.gov/courts/10jd/suffolk/county.shtml (last visited on June 16, 2023).

6    Similarly, given that Judge Collins is also a New York state employee, he too is shielded from liability in his official capacity by the Eleventh Amendment. See Silvels v. New York, 81 F. App'x 361, 362 (2d Cir. 2003) (affirming dismissal of Section 1983 claims sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) on the grounds of judicial and Eleventh Amendment immunity). Moreover, given Conner's apparent employment by the New York State Office of Court Administration as an Official Senior Court Reporter, she too would be shielded from liability in her official capacity by the Eleventh Amendment. However, the Court need not reach that question for the reasons that follow.

7    Insofar as Plaintiff complains that the alleged transcript errors prejudice an appeal of his conviction, such facts may form the basis of a proper Section 1983 claim at the appropriate time. A criminal defendant possesses a due process right to a "substantially accurate" transcript in a criminal proceeding. Argentieri v. Majerowicz, 158 F. App'x 306, 307 (2d Cir. 2005) (summary order). However, "[m]ore than an inaccurate transcript is necessary to state a claim, [ ] [and] a [p]laintiff must also show that the alleged inaccuracies adversely affected the outcome of her proceedings." Wilson v. Richards, No. 14-CV-2459, 2014 WL 6682579, at *2 (S.D.N.Y. Nov. 25, 2014) (citing Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993) (internal quotation marks omitted); also citing Argentieri, 158 F. App'x at 308 (affirming summary judgment for defendant because plaintiff was not "deprived in any way of his access to courts or right to an effective appeal")). Any such claim is premature at this juncture given that the appeal filed by Plaintiff is not yet perfected. See People v. Braithwaite, No. 2022-09001, May 5, 2023 Decision and Order (N.Y. App. Div., 2d Dep't 2023) (granting Braithwaite leave to prosecute the appeal as a poor person, assigning appellate counsel, and granting extension to perfect appeal). In turn, any related claim of prejudice is currently speculative, making it implausible. See Burrell, 558 F. Supp. at 92 ("[I]f a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment might be violated.... To prove such a violation plaintiff would have to show ... the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal." (citations omitted)); Godfrey v. Irvin, 871 F. Supp. 577, 584 (W.D.N.Y. 1994) ("In order to demonstrate denial of a fair appeal, [plaintiff] must show prejudice resulting from the missing or incomplete transcript."). Thus, any substantive due process claim is not plausible given the absence of any allegation that Plaintiff suffered "some tangible harm." Curro v. Watson, 884 F. Supp. 708, 720 (E.D.N.Y. 1995), aff'd, 100 F.3d 942 (2d Cir. 1996); see also Collins, 438 F. Supp. 2d 399, 415–16 (2d Cir. 2006) (plaintiff alleging violation of right to access to the courts must allege an "actual injury"). Upon careful review of the Complaint, Plaintiff has not alleged any tangible harm. (See Compl., in toto.) Plaintiff does not allege that he was not successful in his Article 78 proceedings. Even if he was unsuccessful in those proceedings, he does not allege that any such failure stemmed from the transcriptions. Compare Collins, 438 F. Supp. 2d at 417 (prisoner adequately alleged tangible harm where he

alleged that his Article 78 proceeding was dismissed when prison officials failed to provide him with necessary copies of documents).

8    Plaintiff's allegation that the transcript was <u>deliberately</u> tampered with does not save his procedural due process claim because the state provides adequate post-deprivation remedies. <u>See</u> Curro, 884 F. Supp. at 717–19 (prisoner who alleged that court reporters deliberately altered the transcript of his criminal trial did not state procedural due process claim because New York provides a procedure for challenging inaccuracies in trial transcripts).

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   8

2023 WL 4304792

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Vernon J. LEFTRIDGE, Jr., Plaintiff,

v.

State of Connecticut JUDICIAL
BRANCH et al., Defendants.

No. 3:22-cv-411 (JAM)
|
Signed June 30, 2023

**Attorneys and Law Firms**

Vernon J. Leftridge, Jr., Hagerstown, MD, Pro Se.

Blake Thomas Sullivan, Timothy J. Holzman, State of CT, Office of the Attorney General, Hartford, CT, for Defendants Judicial Branch, Joan Andrews, Cassandra Williams, Andrea Gaines, Steven Samalot, Richard Julius, Carolyn Anderson, David Gage, Leanne Shaughnessy.

Tanya Feliciano DeMattia, State of CT, Office of the Attorney General, Hartford, CT, for Defendant Connecticut Department of Social Services.

Bobbi Lynn Wallace, Office of the Attorney General, Baltimore, MD, Timothy J. Holzman, State of CT, Office of the Attorney General, Hartford, CT, for Defendant Alyson Saunders.

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS**

Jeffrey Alker Meyer, United States District Judge

**\*1**  The plaintiff has filed a complaint *pro se* and *in forma pauperis* against the Connecticut Department of Social Services, the Connecticut Judicial Branch, several state court employees, state prosecutors, and other state employees for actions relating to the plaintiff's various child support and child custody cases. For the reasons set forth below, I will grant the defendants' motions to dismiss.

**BACKGROUND**

The complaint spans 97 pages—not including 226 pages of exhibits—and numbers 361 paragraphs. [1] Here I recite only those alleged facts that appear relevant to this ruling and I assume these alleged facts to be true solely for purposes of this ruling.

Plaintiff Vernon J. Leftridge is a disabled African American and Native American male. [2] Leftridge has a minor child, R.L., who resides in Maryland, and an adult child, Juwan James Leftridge ("Juwan"), who resides in Maine. [3] His claims in this case revolve around custody and child support orders entered by the state courts of Connecticut and Maryland.

In 2005, Norwich Superior Court Judge Cynthia Sweinton awarded Leftridge primary custody of Juwan. [4] At some point, David Gage, Chief Clerk of New London and Norwich Judicial Districts, along with Norwich Superior Court Deputy Chief Clerks Corinne McCarthy and Cara Parkinson, modified the court order to remove Leftridge's custody award and insert a $50 weekly child support requirement. [5] Leftridge and his attorney were "victims of severe racial discrimination, harassment, racism and unlawfully kicked out" of the Norwich Superior Courthouse by Gage and a Connecticut Assistant Attorney General. [6] The Appellate Court of Connecticut later vacated and remanded Judge Sweinton's order on the ground that Leftridge had not been served with Connecticut's motion to modify the child support obligation. [7] See *Leftridge v. Wiggins*, 44 A.3d 217, 220–21 (Conn. App. 2012).

Fast forward to 2017, when R.L.'s mother, Niambi Kafi Heyward, filed a paternity and support petition in Maryland. [8] Leftridge was not served with Heyward's petition and was not notified of the subsequent hearing. [9] On the date of the hearing, in which Connecticut Assistant Attorney General Andrea Gaines represented the State of Connecticut, Family Magistrate Judge David A. Dee ordered Heyward to file an amended petition. [10] The Hartford Interstate Support Enforcement Supervisor removed the court order from the website of the State of Connecticut Judicial Branch ("Judicial Branch"). [11]

In April 2018, Judge Dee entered a default order for retroactive child support without notifying Leftridge or Heyward. [12] During the course of these proceedings, Gaines

appeared *ex parte* before Judge Dee and made numerous misrepresentations. [13] In August 2018, Uniform Interstate Family Support Act ("UIFSA") Support Enforcement Supervisor Richard Julius falsely certified that Leftridge has been served with process in the Heyward action. [14]

**\*2** In January 2019, Leftridge asked Gaines for a copy of documents in the Heyward action, but Gaines refused and "became very hostile towards plaintiff in a racially motivated derogatory t[o]ne of voice." [15] Leftridge then filed a misconduct complaint against Gaines with the Connecticut Statewide Grievance Committee, which he followed up with two additional complaints against Gaines. [16]

On May 9, 2019, Family Magistrate Judge Glady I. Nieves modified Leftridge's child support obligations and arrearage to zero because Leftridge became unable to work due to disability. [17] Nieves ordered Gaines and Connecticut Assistant Attorney General Steven Samalot to produce documents relating to the child support proceedings pertaining to Juwan, but they did not do so. [18] Leftridge subsequently served discovery requests on Heyward, who did not complete them because Gaines told her not to. [19] Leftridge also alleges that Gaines and "unknown defendants she involved" "robbed [him] of his favorable May 9, 2019 court ruling." [20]

In September 2019, Family Court Clerk Cassandra Williams, Family Court Clerk Carolyn Anderson, and Gaines disclosed Leftridge's medical records to Judicial Branch employees. [21] Family Court Clerk Manager Leanne Shaughnessy is Williams's and Anderson's supervisor. [22] Leftridge filed requests for electronic access and for information relating to his court records, but the Judicial Branch and Williams denied them. [23]

At a December 2019 hearing before Family Magistrate Judge Donald Green, Gaines, Anderson, and Williams made numerous misrepresentations, withheld documents, and refused to produce witness statements. [24] Leftridge also alleges that Williams, Anderson, and unknown employees modified court records and that Gaines, Williams, and Anderson attempted to have Leftridge "arrested, prosecuted, and convicted" for not paying his child support. [25] As a result of the hearing, the Connecticut Department of Social Services ("DSS") reported Leftridge's credit information to

credit reporting agencies. [26] The day after the hearing, Judge Green's rulings at the hearing were vacated but Judge Nieves's modification of Leftridge's child support obligation to zero was not restored, which Leftridge alleges was because of "continued lies by [Connecticut Assistant Attorney General] Andrews and Anderson." [27]

In September 2021, Leftridge requested family court records from Child Support Specialist Alyson Saunders, an employee of the Maryland Department of Human Services, who denied his requests. [28] In October 2021, Leftridge attended an appeals hearing before Judge Klau and alleges that Andrews once again made misrepresentations to the court. [29] Later that month, Williams denied Leftridge's request for copies of court documents, and Judicial Branch Deputy Chief Clerk Rene L. Roberston returned his motion for review on the ground that it was premature. [30]

**\*3** In April 2022, DSS refused to provide Leftridge with documents that form the basis of DSS's negative reports to credit bureaus. [31] DSS also refused to alter the credit information that it reported to credit bureaus. [32]

I previously entered an order to show cause explaining that Leftridge's original complaint did not comply with Rule 8 of the Federal Rule of Civil Procedure. This rule requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." *See Leftridge v. Jud. Branch*, 2022 WL 867543, at \*2–3 (D. Conn. 2022) (quoting Fed. R. Civ. P. 8(a)(2) and 8(d)(1)). I also noted that it was unclear whether Leftridge's original complaint complied with Rule 20's limits on permissive joinder of claims against multiple defendants. *See id.* at \*3.

Now Leftridge has filed an amended complaint *pro se* and *in forma pauperis* alleging 26 claims against the following defendants: Assistant Attorney General for the Connecticut Office of the Attorney General Andrea Gaines, Assistant Attorney General Joan Andrews, Assistant Attorney General Steven Samalot, UIFSA Support Enforcement Supervisor Richard Julius, Family Court Clerk Carolyn Anderson, Family Court Clerk Cassandra Williams, Family Court Clerk Manager Leanne Shaughnessy, Maryland Department of Human Services Child Support Specialist Alyson Saunders, Chief Clerk of New London and Norwich Judicial Districts David Gage, "unknown employees," the Connecticut Department of Social Services, and the State

of Connecticut Judicial Branch.[33] Leftridge names all but the last two defendants in their individual and official capacities.[34]

*Counts One and Seventeen.* Leftridge alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 42 U.S.C. § 1983.[35]

*Count Two.* Leftridge alleges that the defendants violated the common law by engaging in the spoliation of evidence.[36]

*Count Three.* Leftridge alleges that the defendants engaged in witness tampering, manipulation of court records, and obstruction of court proceedings in violation of the United States Constitution and the Connecticut Constitution.[37] Leftridge does not cite which provision of the United States Constitution the defendants violated, but I will presume that he alleges a violation of his due process rights under the Fourteenth Amendment as enforceable under 42 U.S.C. § 1983.

*Count Four.* Leftridge alleges that the defendants discriminated against him on the basis of his gender and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60 *et seq.*[38]

*Count Five.* Leftridge alleges that the defendants discriminated against him on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*[39]

**\*4** *Count Six.* Leftridge alleges that Shaughnessy engaged in negligent supervision of her employees Williams and Anderson.[40]

*Count Seven.* Leftridge alleges that the Judicial Branch denied Leftridge access to public accommodation by denying him electronic access to the court system.[41] Leftridge does not specify the statute the Judicial Branch violated, but I will presume that he alleges a violation of the ADA.

*Count Eight.* Leftridge alleges that the Judicial Branch denied him equal protection under state law.[42]

*Count Nine.* Leftridge alleges that DSS denied him equal protection under the law, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* and violated Title IV-D of the Social Security Act ("SSA"), 42 U.S.C. § 651 *et seq.*[43]

*Counts Ten and Thirteen.* Leftridge alleges that the defendants violated the FCRA and state tort law, and that they discriminated against him on the basis of his age.[44] Leftridge does not specify which law the defendants violated in discriminating on the basis of age, but I will presume that he alleges a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

*Count Eleven.* Leftridge alleges that the defendants violated his First Amendment right to freedom of speech as enforceable under 42 U.S.C. § 1983.[45]

*Count Twelve.* Count Twelve is titled "pendent cause of action" and repeats several causes of action already alleged in prior counts. It also alleges that the defendants committed extortion and violated section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794.[46]

*Count Fourteen.* Leftridge alleges that the defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*[47]

*Count Fifteen.* Leftridge alleges that the defendants violated the "Consumer Fraud Act."[48] There is no federal statute by that name. Accordingly, I will assume he is trying to allege a claim under Connecticut's consumer-fraud statute: the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq.*

*Count Sixteen.* Leftridge alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[49]

*Count Eighteen.* Leftridge alleges that the defendants violated the Fourth Amendment as enforceable under 42 U.S.C. § 1983 by prosecuting him without probable cause.[50]

**\*5** *Count Nineteen.* Leftridge alleges that the defendants violated § 1983 by failing to intervene in the deprivation of his constitutional rights.[51]

*Count Twenty.* Leftridge alleges that the defendants violated § 1983 by conspiring to deprive him of his civil rights. [52]

*Count Twenty-One.* Leftridge alleges that the Judicial Branch and DSS promulgated policies that resulted in the violation of Leftridge's constitutional rights. [53]

*Count Twenty-Two.* Leftridge alleges that the defendants maliciously prosecuted him. [54]

*Count Twenty-Three.* Leftridge alleges that the defendants engaged in intentional infliction of emotional distress. [55]

*Count Twenty-Four.* Leftridge alleges that the defendants conspired to deprive him of his rights in violation of state law. [56]

*Count Twenty-Five.* Leftridge alleges that the supervisor defendants are liable for the misconduct of their employees under the principle of *respondeat superior.* [57]

*Count Twenty-Six* (mislabeled as Count Twenty). Leftridge alleges that the government agencies of which the defendants are members are obligated to indemnify their employees and agents for their torts. [58]

Leftridge seeks compensatory and punitive damages, injunctive and declaratory relief, and attorney's fees and costs. [59] The defendants have moved to dismiss all of Leftridge's claims. [60] For the reasons set forth below, I will grant the defendants' motions.

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King,* 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). [61] The Court must "accept as true all factual allegations and draw from them all reasonable inferences," but it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States,* 939 F.3d 191, 198 (2d Cir. 2019).

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.,* 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

### *Federal claims against DSS, the Judicial Branch, and the individual defendants in their official capacities*

**\*6** DSS and the Judicial Branch are agencies of the State of Connecticut, and the individual defendants are employees of various state agencies. The Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of subject matter jurisdiction over lawsuits by private citizens against the States, state government entities, and state government officials in their official capacities. *See generally Lewis v. Clarke,* 137 S. Ct. 1285, 1290–91 (2017); *T.W. v. N.Y. State Bd. of L. Examiners,* 996 F.3d 87, 92 (2d Cir. 2021). "The Eleventh Amendment, however, is not without exception." *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.,* 579 F. Supp. 3d 290, 300 (D. Conn. 2022). "Congress may abrogate a state's immunity by statute, a state may waive its immunity, or a state official may be sued in his or her official capacity under the *Ex Parte Young* doctrine." *Ibid.* (citing *In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir. 2007)); *see also Ex parte Young,* 209 U.S. 123 (1908).

I will dismiss Leftridge's claims alleging violations of 42 U.S.C. § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA because they do not fall within any exception to Eleventh Amendment sovereign immunity. First, Congress has not abrogated Eleventh Amendment immunity for claims arising under 42 U.S.C. § 1983, the FCRA, the FDCPA, SSA Title IV-D, and TILA. *See Quern v. Jordan,* 440 U.S. 332, 340–45 (1979) (§ 1983); *Badger v. CUNY Graduate Ctr.,* 2023 WL 35223, at \*5 (S.D.N.Y. 2023) (citing, *inter alia, Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 59 (1996)) (FCRA); *Banks v. ACS Educ.,* 638 F. App'x 587, 589 (9th Cir. 2016) (citing 15 U.S.C. § 1692a(6)(C)) (FDCPA); *Parent v. New York,* 786 F. Supp. 2d 516, 531 (N.D.N.Y. 2011) (SSA Title IV-D), *aff'd,* 485 F. App'x 500 (2d Cir. 2012); *Patel v. Univ. of Md. Coll. Park,* 2023 WL 2023264, at \*4 (D. Md. 2023) (citing, *inter alia,* 15 U.S.C. § 1612(b)) (TILA). The Supreme Court has rejected Congress's attempt to abrogate state sovereign immunity under the ADEA. *See Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 66–67 (2000). Nor has Leftridge alleged that Connecticut has waived its immunity with respect

to any of these laws. *Cf. Cohen v. Postal Holdings, LLC,* 873 F.3d 394, 400 (2d Cir. 2017) ("[T]he plaintiff bears the burden of establishing that her claims fall within an applicable waiver.").

Finally, the *Ex parte Young* exception, which permits prospective injunctive and declaratory relief against state officials, does not apply. To invoke *Ex parte Young,* a plaintiff must "(a) allege[ ] an ongoing violation of federal law and (b) seek[ ] relief properly characterized as prospective." *In re Deposit Ins. Agency,* 482 F.3d at 618. Leftridge's claims arise out of alleged actions taken by the defendants in 2005, 2017–2019, and 2021–2022, but Leftridge does not state what, if any, actions of the defendants constitute ongoing violations of his federal rights. Nor does his request for injunctive relief —blanket requests that the Court order the defendants to "fully comply" with various federal laws—shed light on the matter.[62]

As best I can discern, the only ongoing harm Leftridge alleges is DSS's refusal to alter the credit information it reports to credit bureaus. But the *Ex parte Young* exception to state sovereign immunity "has no application in suits against the States and their agencies." *Silva v. Farrish,* 47 F.4th 78, 84 (2d Cir. 2022). And in any event, an injunction must "be 'more specific than a simple command that the defendant obey the law.' " *L.V.M. v. Lloyd,* 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (quoting *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 144 (2d Cir. 2011)).

**\*7** For example, in *Burns v. Rovella,* 2020 WL 12863774 (D. Conn. 2020), the Court denied a plaintiff's "request[ ] that this court 'prohibit[ ] defendants from denying his rights protected by the [Family and Medical Leave Act],' and 'denying him his rights ... [under] the Fourteenth Amendment Due Process clause of the United [S]tates Constitution." *Id.* at *12. The Court reasoned that "[t]hese are simply requests that the court command the defendant to obey the law, and therefore, are insufficient to seek injunctive relief." *Ibid.* Like the plaintiff in *Burns,* the injunctive relief Leftridge seeks—a court order that defendants obey the law—does not give rise to a valid claim for injunctive relief.

The same goes for Leftridge's request for declaratory relief in the form of a "declar[ation] that the acts of the Defendants alleged in applicable Counts with respect to the acts, policies, practices, and customs deprived Plaintiff of federal rights."[63] "Courts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring

past wrongs." *Huminski v. Connecticut,* 2015 WL 1650845, at *5 (D. Conn. 2015). Leftridge's request for declaratory relief "asks the Court only to recognize a past wrong, which, in the context of declaratory relief, does not in itself 'amount to that real and immediate threat of injury necessary to make out a case or controversy.' " *Morales v. City of New York,* 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983)); *see also H.B. v. Byram Hills Cent. Sch. Dist.,* 648 F. App'x 122, 125 (2d Cir. 2016) ("[T]he requested declaratory relief is aimed at past conduct, a target that is impermissible."). In short, Leftridge is not entitled to declaratory relief that would fall within the *Ex parte Young* exception to Eleventh Amendment immunity.

Given that no exception to Eleventh Amendment immunity applies, I will dismiss Leftridge's claims arising under § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the individual defendants in their official capacities.

The defendants further argue that Eleventh Amendment immunity also bars Leftridge's ADA claims.[64] They cite *Hamzik v. Office for People with Developmental Disabilities,* 859 F. Supp. 2d 265, 276 (N.D.N.Y. 2012) and *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 374 (2001), for the proposition that Title I did not abrogate the states' sovereign immunity.[65] But Title I of the ADA applies to disability discrimination by employers, *see* 42 U.S.C. § 12112(a), and Leftridge does not allege that he was employed by any of the entities involved in the lawsuit. As for Title II, which forbids discrimination by public services, programs, and activities, *see id.* § 12132, the extent to which Congress has abrogated the states' sovereign immunity remains unclear after the Supreme Court's decision in *United States v. Georgia,* 546 U.S. 151 (2006), which held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. *See Schmiege v. New York,* 2022 WL 16922123, at *3 n.6 (W.D.N.Y. 2022) ("Since *Georgia,* courts in this Circuit have taken different approaches when faced with the question of whether Congress has validly abrogated sovereign immunity under Title II.").[66]

**\*8** But "the Court need not wade into these turbulent constitutional waters." *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision,* 2020 WL 7338586, at *18 (N.D.N.Y. 2020). The state entity bears the burden of demonstrating that Eleventh Amendment immunity applies. *See Woods v.*

*Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006). Because the defendants make no argument and cite no law regarding Title II of the ADA, they have not carried their burden and I will consider Leftridge's ADA claims on the merits. I will similarly consider the merits of Leftridge's claims arising under the Rehabilitation Act and Title VII because the defendants do not contest that Congress waived the states' sovereign immunity for these two statutes. *See* 42 U.S.C. § 2000d–7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973."); *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 143 S. Ct. 1176, 1178 (2023) ("Title VII of the Civil Rights Act abrogates the immunity of 'governments' and 'governmental agencies' from all actions it authorizes.") (citing 42 U.S.C. §§ 2000e(a)–(b)).

I will begin with Leftridge's ADA and Rehabilitation Act claims. "[F]or a plaintiff to establish a *prima facie* violation under these Acts, she must demonstrate (1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected on other grounds*, 511 F.3d 238 (2d Cir. 2004).

Leftridge's complaint fails to state a claim under the ADA or the Rehabilitation Act because it does not allege that he was discriminated against because of his disability. Leftridge's claims center on the defendants' "denying equal access to electronic filing, public accommodations and access to Judicial Branch state government' programs and services that was critical to plaintiff being able to file pleadings electronically for his defense of, and presentation of, his case in the Family Support Court." [67] But "[Leftridge's] complaint contains no plausible allegations that ... the Defendants' actions were taken *by reason* of his [disability], or even that they were *aware* of his [disability]." *Barone v. Lawyers' Fund for Client Prot.*, 2023 WL 1975783, at *2 (2d Cir. 2023). Without more, Leftridge fails to state a claim under the ADA, *see ibid.*, or the Rehabilitation Act, *see Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009).

Leftridge's Title VII claim fails as well. Title VII makes it "an unlawful employment practice for an employer ...

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Because Leftridge does not allege that he had an employment relationship with any of the defendants, his Title VII claim fails. *See, e.g.*, *Pandozy v. Tobey*, 335 F. App'x 89, 91 (2d Cir. 2009) ("[Plaintiff's] complaint fails to state a cause of action under Title VII, since he does not allege an employer-employee relationship between himself and any of the Defendants.").

**\*9**   Accordingly, I will dismiss Leftridge's claims arising under the ADA, the Rehabilitation Act, and Title VII with respect to the agency defendants and the individual defendants in their official capacities. Having already dismissed Leftridge's claims arising under § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the individual defendants in their official capacities, I will turn to Leftridge's claims against the individual defendants in their individual capacities.

### Federal claims against the individual defendants in their individual capacities

The individual defendants filed motions to dismiss Leftridge's individual-capacity claims on various grounds. [68] For the reasons set forth below, I will grant their motions.

Defendants Anderson, Williams, Shaughnessy, and Gage are state court clerks or supervisors of state court clerks. Defendant Julius is a UIFSA Support Enforcement Supervisor who Leftridge alleges had falsely certified that Leftridge had been served in the 2017 paternity and support action brought by Heyward.

"Courts have extended the absolute judicial immunity afforded judges to individuals, such as prosecutors and witnesses, who perform functions closely associated with the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). "[A]cts arising out of, or related to, individual cases before the judge" are entitled to absolute quasi-judicial immunity because they are considered "judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The relevant

inquiry "is the nature and function of the act, not the act itself." *Mireles v. Waco*, 502 U.S. 9, 13 (1991). "A defendant entitled to quasi-judicial immunity loses that privilege only if she acts 'in the clear absence of all jurisdiction.' " *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). That a defendant is alleged to have acted erroneously, maliciously, dishonestly, in bad faith, or in excess of her authority does not undermine quasi-judicial immunity. *See ibid.*; *Mireles*, 502 U.S. at 11.

For example, in *Leftridge v. Support Enforcement Services*, 2013 WL 1947174 (D. Conn. 2013), the Court determined that quasi-judicial immunity barred Leftridge's claims against Support Enforcement Officers and court employees for actions related to Leftridge's child custody and child support proceedings "since all of the allegations asserted against these defendants pertain to their performance of official duties integral to the judicial process." *Id.* at *6; *see also Skipp v. Conn. Jud. Branch*, 2015 WL 1401989, at *8 (D. Conn. 2015) ("As all of the challenged actions of court employees were taken in relation to plaintiff's divorce and custody proceedings, the court employees and agents are immune from a claim for money damages.").

Leftridge does not allege that Anderson, Williams, Shaughnessy, Gage, or Julius acted in the clear absence of all jurisdiction. Instead, all of their alleged actions arose out of or related to Leftridge's child support and child custody proceedings before Judge Sweinton, Judge Dee, Judge Nieves, Judge Green, and Judge Klau. Accordingly, quasi-judicial immunity bars Leftridge's claims against these five defendants.

The state prosecutor defendants—Gaines, Andrews, and Samalot—are entitled to absolute immunity as well. "Prosecutors are entitled to absolute immunity with respect to their prosecutorial functions, which include their actions as advocates and when their conduct involves the exercise of discretion." *Bouchard v. Olmsted*, 775 F. App'x 701, 703 (2d Cir. 2019). For example, in *Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986), the Second Circuit held that an Assistant Attorney General, "representing [the] state as its attorney" in state court, was entitled to absolute immunity. *Id.* at 573. According to the Court, "[t]he fact that [the attorney] may or may not have engaged in questionable or harmful conduct during the course of his representation of the State in that litigation is irrelevant. The immunity attaches to his function, not to the manner in which he performed it." *Ibid.*; *see also Contreras v. Perimenis*, 562 F. App'x

50, 51 (2d Cir. 2014) (affirming district court's finding that Assistant Attorney General for the Connecticut Department of Children and Families "was entitled to absolute immunity because he was sued in his capacity as a government advocate prosecuting child welfare cases").

**\*10** And again, in *Leftridge v. Support Enforcement Services.*, 2013 WL 1947174, the Court determined that absolute immunity barred Leftridge's claims concerning "assistant attorney generals' conduct in carrying out their jobs as assistant attorney generals." *Id.* at *6; *see also Coke v. Samalot*, 2021 WL 4034168, at *7 (D. Conn. 2021) ("As an Assistant Attorney General, Mr. Samalot has immunity while serving in his function as an advocate for the state.").

As with the court-affiliated defendants, Leftridge's allegations regarding Gaines, Andrews, and Samalot pertain exclusively to their roles in Leftridge's child support and child custody proceedings. Absolute prosecutorial immunity thus bars Leftridge's claims against these three defendants.

I turn next to Leftridge's claims against defendant Saunders. Saunders is a Child Support Specialist employed by the Maryland Department of Human Services who Leftridge alleges refused his requests for family court records.

Saunders has moved to dismiss in part for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). [69] A court lacks personal jurisdiction over an out-of-state defendant if the defendant is not subject under state law to the "long-arm" jurisdiction of the courts of that State, or if exercise of jurisdiction over the defendant would not comport with constitutional principles of fairness and due process. *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). "[T]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing." *Ibid.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits," *ibid.*, but the Court may dismiss for lack of personal jurisdiction when the plaintiff "failed to controvert the defendants' affidavits showing that the court lacked personal jurisdiction," *Emiabata v. Seton Healthcare Fam.*, 2021 WL 4256846, at *2 (2d Cir. 2021).

Under Connecticut's long-arm statute, "a court may exercise personal jurisdiction over any non-resident individual ... who in person or through an agent ... commits a tortious act outside the state causing injury to a person or property within the state ... if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52–59b(a). The statute also extends to any person or agent who "uses a computer ... or a computer network ... located within the state." *Ibid.*

Saunders has attached to her motion an affidavit stating that she has been a Maryland resident since 2003, she has worked as a Maryland state employee for the Montgomery County Office of Child Support for the past 15 years, she has never transacted or solicited business in Connecticut, she does not engage in any persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in Connecticut, and she does not use a computer or computer network in Connecticut. [70]

**\*11** To make out a *prima facie* case, a plaintiff must plead "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffharts*, 604 F. App'x 16, 19 (2d Cir. 2015). Leftridge has not done so. Saunders and Leftridge are Maryland residents, and all of Saunders's alleged actions took place in Maryland in her capacity as an employee for the Maryland Department of Human Services. [71] Moreover, Leftridge does not controvert Saunders's affidavit. He does not allege, even in conclusory fashion, that Saunders satisfies prong (A) or (B) of § 52–59b(a), that Saunders uses a computer or computer network in Connecticut, or that Saunders's actions otherwise satisfy Connecticut's long-arm statute. Because there is no statutory long-arm jurisdiction over Saunders, I need not consider whether exercising jurisdiction over Saunders would be consistent with constitutional due process.

Even if the Court had personal jurisdiction over Saunders, dismissal would nonetheless be proper because Leftridge does not state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6) and because the complaint does not comply with Rule 8's pleading requirements. Leftridge's only allegations against Saunders—appearing in

3 of the complaint's 361 paragraphs—are that Saunders refused to provide him with family court records. Leftridge does not explain how Saunders's conduct violated state or federal law. Indeed, none of the 26 counts in his complaint mention Saunders at all. Instead, some counts mention defendants other than Saunders, and the remaining counts refer collectively to the "Defendants," of whom there are at least 11.

Drafting a complaint in this way runs afoul of Rule 8's requirement that each defendant have "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, 422 F. App'x 61, 62–63 (2d Cir. 2011); *see also* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief."). A complaint does not satisfy Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (affirming dismissal of "shotgun pleading" complaint on Rule 8 grounds where it was "nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief"). Because the Court lacks personal jurisdiction over Saunders and Leftridge does not state a plausible or Rule-8-compliant claim for relief against her, I will grant Saunders's motion to dismiss.

In sum, I will grant the individual defendants' motions to dismiss Leftridge's claims against them in their individual capacities. With no federal claims remaining against the defendants in either their individual or official capacities, the Court finds it unnecessary to address the defendants' additional arguments for dismissal on grounds of qualified immunity, litigation privilege, the *Rooker-Feldman* doctrine, or improper service of process.

### Federal claims against unknown employees

Leftridge mentions "unknown employees" at various points in his complaint, whom he identifies as either employees of the Judicial Branch or the Executive Branch of Connecticut. [72] As explained above, Rule 8 requires that the complaint gives each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad*, 422 F. App'x at 62–63. Naming "unknown employees" or "unknown defendants" does not comply with

Rule 8's fair notice requirement where, as here, the allegations are so vague as to make it impossible to identify them. *See, e.g., Matthews v. NYPD,* 2023 WL 3505634, at *1–2 (S.D.N.Y. 2023) (dismissing *pro se* complaint against "unknown employees" because "Plaintiff's complaint does not include allegations about 'unknown employees' that are sufficient to put them or the Court on notice of her claims against them. She also does not plead facts that are sufficient to identify such Defendants."); *Ritchie v. N. Leasing Sys., Inc.,* 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014) ("Although courts sometimes allow plaintiffs to plead causes of action against a 'John Doe' defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense.").

 **\*12** In any event, there are no freestanding allegations of wrongdoing by the unknown employees. All mentions of unknown employees are tacked on to allegations against other employees of the Judicial Branch and the Office of the Connecticut Attorney General. Having already concluded that all claims against the named employees fail, I will dismiss the claims against the unknown employees on the same grounds. *See, e.g., Gabriel Cap., L.P. v. Natwest Fin., Inc.,* 137 F. Supp. 2d 251, 269–70 (S.D.N.Y. 2000) ("I assume ... that the theory of liability [against the John Doe defendants] is the same as that pled against [named defendants]. As these claims have been dismissed, there is no reason to allow the [complaint] to stand against the Does. Therefore, the claims against John Does 1 through 50 are also dismissed.").

*State law claims*

Having dismissed Leftridge's federal law claims, I turn to his state law claims. Leftridge argues that the Court has diversity jurisdiction over his state law claims because "[t]he

plaintiff[ ] and some of the defendants to this case live in the State of Maryland." [73] *See* 28 U.S.C. § 1332 (federal diversity jurisdiction statute). But diversity jurisdiction exists only if there is "complete" diversity among the opposing parties—in other words, only if the plaintiff is a citizen of a different state than all of the defendants. *See Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 388 (1998); *Strawbridge v. Curtis,* 3 Cranch 267 (1806) (Marshall, C.J.). And as explained above, both Saunders and Leftridge are Maryland residents. In the absence of federal diversity jurisdiction, and because there are no facially plausible federal claims against the defendants, I conclude that the state courts of Connecticut are best positioned to address Leftridge's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 117–18 (2d Cir. 2013); *Williams v. Katz,* 2022 WL 3646200, at *6 (D. Conn. 2022). Accordingly, I decline to exercise supplemental jurisdiction over Leftridge's state law claims, which I will dismiss without prejudice to Leftridge's right to seek any relief that may be available in state court.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss (Doc. #81, Doc. #123). In light of the granting of the motions to dismiss, the Court DENIES as moot all other pending motions (Docs. #136, #138, #140, and #150).

It is so ordered.

### All Citations

Slip Copy, 2023 WL 4304792

### Footnotes

| 1 | *See* Doc. #18. |
|---|---|
| 2 | *Id.* at 3 (¶¶ 6–7). |
| 3 | *Id.* at 8 (¶¶ 20, 22). |
| 4 | *Ibid.* (¶ 25). |

5      *Id.* at 8–11 (¶¶ 25–30, 34).

6      *Id.* at 10 (¶ 33). Leftridge does not specify the name of the Assistant Attorney General.

7      *Id.* at 39 (¶ 153).

8      *Id.* at 11 (¶ 35).

9      *Id.* at 12–13 (¶¶ 41–42).

10     *Id.* at 12 (¶¶ 38–39).

11     *Ibid.* (¶ 40). Leftridge does not specify the name of the Hartford Interstate Support Enforcement Supervisor.

12     *Id.* at 13 (¶ 43).

13     *Id.* at 12–15 (¶¶ 38–50).

14     *Id.* at 16 (¶¶ 55–57).

15     *Id.* at 18 (¶ 64).

16     *Ibid.* (¶ 64).

17     *Id.* at 21–22 (¶¶ 81–85).

18     *Id.* at 22 (¶¶ 87–88).

19     *Id.* at 25–27 (¶¶ 98, 102–03), 36 (¶ 141).

20     *Id.* at 56 (¶ 219).

21     *Id.* at 28–29 (¶¶ 109, 111).

22     *Id.* at 38 (¶ 150).

23     *Id.* at 29–30 (¶¶ 113, 118), 32 (¶ 124).

24     *Id.* at 32–36 (¶¶ 125–31, 137–39), 50–55 (¶¶ 191–204, 210, 212–17).

25     *Id.* at 34 (¶ 133), 40 (¶¶ 156–58), 53–54 (¶¶ 205, 207, 211), 56 (¶ 218).

26     *Id.* at 34 (¶ 132).

27     *Id.* at 34–35 (¶ 134), 37 (¶ 144).

28     *Id.* at 41–42 (¶¶ 162–64).

29     *Id.* at 44–45 (¶¶ 170–72).

30     *Id.* at 45 (¶¶ 173–74).

31     *Id.* at 47–48 (¶ 181).

32     *Id.* at 48 (¶ 182).

33    *Id.* at 1; *see id.* at 3–7 (¶¶ 9–19) (defendants' full names and positions); *id.* at 61–94 (¶¶ 237–361) (causes of action).

34    *Id.* at 1.

35    *Id.* at 61 (¶¶ 237–39), 75–80 (¶¶ 285–304).

36    *Id.* at 61 (¶¶ 240–42).

37    *Id.* at 61–62 (¶¶ 243–45).

38    *Id.* at 62–63 (¶¶ 246–48).

39    *Id.* at 63–64 (¶¶ 249–51).

40    *Id.* at 64–67 (¶¶ 252–54).

41    *Id.* at 67–68 (¶¶ 255–57).

42    *Id.* at 68 (¶¶ 258–60).

43    *Id.* at 68–69 (¶¶ 261–63).

44    *Id.* at 69–70 (¶¶ 264–66), 72–73 (¶¶ 273–75). Count Ten also alleges that the defendants violated the ADA, the Civil Rights Act of 1964, and the Connecticut Fair Employment Practices Act—allegations that are duplicative of the allegations in Counts Four and Five.

45    *Id.* at 70–71 (¶¶ 267–69).

46    *Id.* at 71–72 (¶¶ 270–72).

47    *Id.* at 73 (¶¶ 276–78).

48    *Id.* at 73–74 (¶¶ 279–81).

49    *Id.* at 74–75 (¶¶ 282–84).

50    *Id.* at 79–80 (¶¶ 297–304). Count Eighteen also alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 42 U.S.C. § 1983—an allegation that is duplicative of the allegations in Counts One, Three, and Seventeen.

51    *Id.* at 80–82 (¶¶ 305–12).

52    *Id.* at 82–83 (¶¶ 313–19).

53    *Id.* at 83–89 (¶¶ 320–40). Count Twenty-One also mentions policies of three additional agencies—the Maryland Department of Human Services, Montgomery Count Office; the Office of the Connecticut Attorney General; and the Connecticut Interstate Government UIFSA Department—but the complaint does not name these agencies as defendants. *See ibid.*

54    *Id.* at 89–91 (¶¶ 341–46).

55    *Id.* at 91 (¶¶ 347–49).

56    *Id.* at 91–92 (¶¶ 350–54).

57    *Id.* at 92–93 (¶¶ 355–57).

58    *Id.* at 93–94 (¶¶ 358–61).

59    *Id.* at 94–96.

60    Doc. #81; Doc. #123.

61    Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

62    Doc. #18 at 95–96.

63    *Id.* at 95 (¶ 8).

64    Doc. #81-1 at 8–9; Doc. #123-1 at 15–16.

65    Doc. #81-1 at 8–9.

66    To the extent Leftridge alleges that the defendants violated Title *III* of the ADA, Leftridge fails to state a claim because "Title III is not applicable to public entities." *Morales v. New York*, 22 F. Supp. 3d 256, 266–67 (S.D.N.Y. 2014) (citing cases).

67    Doc. #18 at 63–64 (¶ 250). Leftridge does not explain what acts the defendants took that violate the RA, but the Court takes them to be the same as those acts that Leftridge alleges violated the ADA. *Cf. Paystrup v. Benson*, 2015 WL 506682, at *11 (D. Utah 2015) (assuming plaintiff's RA claim to be "based on the same actions as the ADA claims" where it was unclear which of defendants' actions were alleged to violate the RA).

68    Doc. #81 at 10–22, Doc. #123 at 9–15, 17–22.

69    Doc. #123 at 11–14.

70    Doc. #123-3 at 1–2 (¶¶ 1–2, 5).

71    *See* Doc. #18-1 at 1, 7; Doc. #137 at 9 (Leftridge's opposition to defendants' motion to dismiss stating that "[t]he plaintiff[ ] ... live[s] in the State of Maryland").

72    Doc. #18 at 58 (¶¶ 225–26).

73    Doc. #137 at 9.

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 5625440
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Cecil Roy KING, Plaintiff,

v.

NEW YORK STATE, James Francis Mathews [sic],
William B. Rebolini, Howard Heckman, Defendants.

23-CV-3421(GRB)(ST)
|
Signed August 31, 2023

**Attorneys and Law Firms**

Cecil Roy King, Coram, NY, Pro Se.

Lori L. Pack, Office of the New York State Attorney General, Hauppauge, NY, for Defendants New York State, James Francis Mathews, William B. Rebolini.

**ORDER**

GARY R. BROWN, United States District Judge:

 *1  Before the Court is the fee paid *pro se* complaint of Cecil Roy King ("Plaintiff") brought pursuant to 42 U.S.C. § 1983 against New York State ("NYS") and three NYS judges: Hon. James Francis Matthews ("Judge Matthews"), Hon. William B. Rebolini ("Judge Rebolini"), and Hon. Howard Heckman ("Judge Heckman" and collectively, "Defendants"). *See* Docket Entry "DE" 1; Receipt No. 200001582. Upon initial review of Plaintiff's complaint and Defendants' letter motion requesting a pre-motion conference in anticipation of filing a motion to dismiss the complaint (DE 5), the Court ordered Plaintiff to show cause within thirty days why the claims set forth in the complaint should not be dismissed for lack of subject matter jurisdiction. (DE 7.) Plaintiff has responded by filing a "Response to Order to Show Cause & Temporary Restraining Order." [1] (DE 8.)

For the reasons that follow, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims. Accordingly, the complaint is dismissed without prejudice pursuant to Federal Rule of civil Procedure 12(h)(3). Given the dismissal of the complaint, the request for a restraining order is denied.

**BACKGROUND**

**1. Summary of the Complaint**

Plaintiff's complaint is brought against NYS and three state judges arising from an underlying state mortgage foreclosure action and subsequent eviction proceedings. *See* DE 1. The brief complaint is submitted on the Court's form for civil rights actions brought pursuant to Section 1983 and has an additional 169 pages of attachments. [2] *Id.* According to the complaint, Defendants violated Plaintiff's civil rights by depriving Plaintiff of property rights without due process of law. *Id.* at ¶ II.B. In its entirety, Plaintiff's Statement of Claim alleges:

> Mortgage was illegally assigned to PHH Mortgage. Original mortgage was Fleet Bank in 2003. Assigned to PHH on 12/16/10. Referee's deed executed 2/14/20. Referee's deed executed 2/14/20 and sold in a no due process foreclosure sale. James Mathew denied plaintiff's motion to have fair trial 11/2/22. Judge Heckman signed illegal foreclosure with equal protection of law. Promissory note was illegally assigned to PHH Mortgage on 12/16/10. Referee's deed was executed without due process denying the plaintiff equal protection of law and depriving plaintiff of life, liberty and property without due process or no recourse. Plaintiff's property was sold to Federal National Corp – not sure when they became the owner – defendant took Plaintiff to District Court on 9/28/22 as the owner/ petitioner of the home. PHH Mortgage and Federal National Mortgage does not have standing. There is a title dispute as to who owns the property.

*Id.* at ¶ III. In the space on the form complaint that calls for a description of any injuries sustained as a result, Plaintiff wrote:

**\*2** The Plaintiff did not get a fair and impartial procedure/trial/hearing in Supreme Court or District Court. The defendants conspired and acted with deliberate indifference to the Constitution and federal laws when making decisions without investigating the facts. The defendants were provided notice that there is a title dispute. Plaintiff suffered wrongful eviction, slander, libel and intentional infliction of emotional distress.

Id. at ¶ IV. For relief

plaintiff requests 20 million dollar payment on this claim to be divided among the defendants. The plaintiff requests the state and district court judges licenses to practice law revoked. The judges assets to be liquidated to pay the judgement in full. The plaintiff demands complete control of the state's corporate charter and to have all records of illegal assignments, deed and all records to the plaintiff.

*Id.* ¶ V.

**2. Plaintiff's Response to the Order to Show Cause**
By Order to Show Cause dated June 16, 2023, the Court ordered Plaintiff to show cause why the claims in the complaint should not be dismissed without prejudice for lack of subject matter jurisdiction. DE 7. The Court explained that Eleventh Amendment immunity, absolute judicial immunity, and the *Rooker-Feldman* doctrine appeared to divest the Court of subject matter jurisdiction and set forth the legal and factual bases for that circumstance. *Id.* at 5-9. The Court invited Plaintiff to demonstrate why these doctrines do not bar adjudication of Plaintiff's claims in this Court and suggested that Plaintiff consult with the Hofstra Law *Pro Se* Clinic. *Id.* at 9.

Plaintiff's twenty-two page response does not address any of the issues raised by the Court and, instead, re-alleges the claims set forth in the complaint and argues the merits thereof. *See* DE 8, *in toto.* The only mention of "immunity" is at page 14 of Plaintiff's submission where in a single paragraph asserts that:

The judge has qualified immunity when he/she follows the constitution and the law. The Tucker Act exposes the government to liability for certain claims. Specifically, the Act extended the court's jurisdiction to include claims for liquidated or unliquidated damages arising from the Constitution (including takings claims under the Fifth Amendment), a federal statute or regulation, and claims in cases not arising in tort. The relevant text of the Act is codified in 28 U.S.C. §§ 1346(a) and 1491. The Tucker Act (March 3, 1887, Ch. 359, 24 Stat. 505, 28 U.S.C. § 1491) is a federal statute of the United States by which the United States government has waived its sovereign immunity with respect to lawsuits pertaining to 5th Amendment violations of due process.

*Id.* at 14.

**LEGAL STANDARDS**

Regardless of whether a plaintiff has paid the Court's filing fee, a district court may *sua sponte*, that is, on its own, dismiss a frivolous *pro se* complaint. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (*per curiam*) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee" because "as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."); *Clark v. Schroeder*, 847 F. App'x 92, 93 (2d Cir. 2021) (summary order) ("District courts have the inherent power to dismiss a complaint as frivolous, even when, as here, the plaintiff has paid the filing fee."); *Hawkins-El III v. AIG Fed. Sav. Bank*, 334 F. App'x 394, 395 (2d Cir. 2009) (affirming the district court's *sua sponte* dismissal of fee paid frivolous complaint).

**\*3** A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v.*

*Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). In addition, a complaint is frivolous where it seeks relief from defendants who are immune from suit. *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.") (internal quotation marks omitted).

*Pro se* complaints are to be examined with "special solicitude," *Tracy v. Freshwater*, 620 F.3d 90, 102 (2d Cir. 2010), and are to be "interpreted to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citation omitted).

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 70-01 (2d Cir. 2000). Lack of subject matter jurisdiction cannot be waived and may be raised at any time or by the court *sua sponte. Id.*; *see also* FED. R. CIV. P. 12(h) (3)("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits."). Although *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, *Erickson v. Pardus*, 551 U.S. 89 (2007), a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law", *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983), and still must establish that the Court has subject matter jurisdiction over the action. *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005).

Even where subject matter is established, the Court may be divested of subject matter jurisdiction in certain circumstances, such as where the defendant is immune from suit. *See*, e.g., *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (federal courts lack subject matter jurisdiction over claims against judges relating to the exercise of their judicial functions on immunity grounds); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]").

## DISCUSSION

### I. Eleventh Amendment Immunity

*4 The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens in federal court. *See*, e.g., *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges. *Thomas v. Martin-Gibbons*, No. 20-3124, 2021 WL 2065892 (2d Cir. May 24, 2021) (summary order) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity).

However, sovereign immunity "is not absolute," and the Supreme Court "ha[s] recognized ... two circumstances in which an individual may sue a State." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, "a State may waive its sovereign immunity by consenting to suit." *Id.* Second, "Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment." *Id.*; *see also Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 80 (2000). Neither of these exceptions applies in this case. It is well-established that New York State has not waived its sovereign immunity from Section 1983 claims. *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order). Moreover, Congress did not abrogate that immunity when it enacted Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]"); *Clark v.*

*Schroeder*, 847 F. App'x 92, 93-94 (2d Cir. 2021) ("Absent the State's express waiver or a congressional abrogation of immunity, the Eleventh Amendment renders a state immune from federal lawsuits brought either by its own citizens or by citizens of another state.").

Thus, the Eleventh Amendment precludes Plaintiff's claims against NYS and the individuals Defendants sued in their official capacities. *See, e.g.*, *Parker v. New York*, No. 22-CV-3170(GRB)(AYS), 2022 WL 2441215, at *3 (E.D.N.Y. July 1, 2022) (finding New York state has not waived its Eleventh Amendment immunity and dismissing *pro se* plaintiff's Section 1983 claims against New York State). Plaintiff does not argue otherwise having been given an opportunity to do so. *See* DE 8. Accordingly, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's Section 1983 claims brought against NYS and the individual Defendants in their official capacities. Thus, such claims are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3). [3]

## II. Judicial Immunity

Judges have absolute immunity from suit for judicial acts performed in their judicial capacities. *Mireles*, 502 U.S. at 11 ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages."). Indeed, "judicial acts -- even if they are alleged to have been done maliciously or corruptly -- are not subject to civil liability." *Davis v. Gillespie*, No. 22-CV-6207, 2023 WL 5002553, at *5 (E.D.N.Y. Aug. 4, 2023) (citing *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (finding state court judge absolutely immune from § 1983 suit where that judge had power to entertain and act upon motions in an underlying case)). "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *See Brady v. Ostrager*, 834 F. App'x 616, 618 (2d Cir. 2020) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). Absolute judicial immunity "is not overcome by allegations of bad faith or malice," and a judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles*, 502 U.S. at 11 (internal quotation marks omitted); *Bliven*, 579 F.3d at 209.

**\*5** Here, the challenged conduct of the individual Defendants occurred during the course of the underlying state court proceedings and any actions they took in those cases were judicial acts for which they are afforded absolute judicial immunity. Accordingly, Plaintiff's claims against the individual Defendants are dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). [4]

## III. State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims that may be reasonably construed from the complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state-law claims contained in Plaintiff's complaint and dismisses any such claims without prejudice.

## IV. Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Given that Plaintiff's claims could not be cured with amendment, leave to amend would be futile and is, thus, denied.

## CONCLUSION

Based on the foregoing, Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). Given the dismissal of the complaint, Plaintiff's request for injunctive relief is denied and Defendants' request for a pre-motion conference is denied as moot. The Clerk of the Court shall enter judgment accordingly and mark this case closed. The Clerk of the Court shall also mail a copy of this Order to the *pro se* Plaintiff at the address of record and note service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**\*6  SO ORDERED**.

**All Citations**

Slip Copy, 2023 WL 5625440

## Footnotes

1      Plaintiff also seeks an order "restrain[ing] the [D]efendants from any further state court action until the federal court dispute is adjudicated. Plaintiff also requests the court to vacate any state court judgments or orders in the interest of justice," (DE 8 at 21.)

2      The exhibits are largely excerpts from law treatises, copies of cases, and state and federal statutory laws, well as several reports prepared on Plaintiff's behalf concerning the mortgage at issue in the underlying state case. *See* DE 1-1.

3      Plaintiff's Section 1983 claims against NYS are frivolous for the additional reason that New York State is not a "person" within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (State is not a "person" for the purpose of § 1983 claims); *Zuckerman v. Appellate Div., Second Dep't Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (Court not a "person" within the meaning of 42 U.S.C. § 1983).

4      Given that the Eleventh Amendment and judicial immunity divest this Court of subject matter jurisdiction, the Court need not address the application of the *Rooker-Feldman* doctrine and declines to do so.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 177 of 338

2017 WL 6001833
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-0510 (BKS/TWD)
|
Signed 12/04/2017

**Attorneys and Law Firms**

Kiplind L. Cruz, Cincinnatus, NY, Plaintiff, pro se

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

*1 On May 9, 2017, pro se Plaintiff Kiplind L. Cruz initiated this action by filing a document described as a "petition for writ of habeas corpus" and "defendants federal removal from State of New York, County of Cortland, Chenango, Onondaga, New York State Cortland County Combined Court" to this Court (Dkt. No. 1), with an attached "Complaint" under 42 U.S.C. §§ 1983, 1985, and 1986 (Dkt. No. 1-2). Plaintiff later filed a motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) and a motion to amend (Dkt. No. 9). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on October 27, 2017, issued an Order and Report-Recommendation recommending that: 1) any state court proceedings arguably covered by Plaintiff's notice of removal be remanded to state court, and the Court find that no state court proceedings have been properly removed; 2) Plaintiff's petition for writ of habeas corpus be dismissed with prejudice; 3) Plaintiff's motion to amend be denied; 4) Plaintiff's complaint be dismissed on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), and, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be with prejudice; 5) Plaintiff's motion for a temporary restraining order and a preliminary injunction be denied as moot, or in the alternative, on the merits; and 6) the Court order that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children. Dkt. No. 15. Magistrate Judge Dancks advised Plaintiff that, under 28 U.S.C. § 636(b)(1),

he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. Id. at 49. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. See Petersen v. Astrue, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 15) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's petition for writ of habeas corpus (Dkt. No. 1) is **DISMISSED WITH PREJUDICE;** and it is further

**ORDERED** that no state court proceedings have been properly removed to this Court; and it is further

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1-2) is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal is **WITH PREJUDICE**; and it is further

*2 **ORDERED** that Plaintiff is granted leave to file an amended complaint with respect to the sex discrimination claim which is the subject of his Human Rights Division complaint, within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within the thirty (30) days, that this action be closed without further Order of the Court; and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) is **DENIED AS MOOT**; and it is further

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 178 of 338

**ORDERED** that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children, and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6001833

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 179 of 338

2017 WL 6021838
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-00510 (BKS/TWD)

|

Signed 10/26/2017

|

Filed 10/27/2017

**Attorneys and Law Firms**

KIPLIND L. CRUZ, 5825 Townline Road, Cincinnatus, NY 13040, pro se.

**ORDER AND REPORT-RECOMMENDATION**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** This matter has been referred to the undersigned by the Hon. Brenda K. Sannes, U.S. District Judge, for a report and recommendation on the initial review of *pro se* Petitioner/ Plaintiff (hereinafter "Plaintiff") Kipland L. Cruz's motions to amend his complaint and for a temporary restraining order ("TRO") and preliminary injunction. (Dkt. Nos. 8, 9 and 11.) The Court also has before it the initial review under 28 U.S.C. § 1915(e) of Plaintiff's original filings (Dkt. Nos. 1, 1-1, and 1-2.) For the reasons explained herein, the Court recommends that (1) none of the state court proceedings Plaintiff has described in his removal notice and exhibits be deemed to have been properly removed to, or to be subject to removal to, federal district court [1]; (2) his petition for a writ of habeas corpus be dismissed with prejudice on initial review; (3) his motion to amend be denied; (4) civil rights complaint be dismissed on initial review; and (5) his motion for a temporary restraining order and preliminary injunction be denied as moot or, in the alternative, on the merits.

**I. BACKGROUND**

**A. Plaintiff's Original Filings**
On May 9, 2017, Plaintiff Kipland L. Cruz, individually and on behalf of his two minor children, submitted for filing by the Clerk a notice of removal to federal court, pursuant to 28 U.S.C. § 1443, and with it a habeas corpus petition under 18 U.S.C. §§ 242, 1512(b)(3), and 1513(b). [2] The various state court proceedings identified by Plaintiff, and out of which his habeas corpus petition arises, involve unpaid child support, child custody, and visitation disputes between Plaintiff and his estranged wife Nicole A. Cruz. (*See generally* Dkt. Nos. 1; 1-1 at 1-3. [3])

Plaintiff also filed a civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. Nos. 1 and 1-2.) Plaintiff named nearly seventy defendants whom he presumably believes to have been involved in matters related, either directly or indirectly, to the subject matter of the state court proceedings, reports made to the New York State Central Register of Child Abuse and Maltreatment ("SCR"), or his former employment. (*See generally* Dkt. No. 1-2.) The complaint contains factual allegations similar to those in Plaintiff's removal/habeas corpus papers. [4]

**\*2** In addition to his federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff has asserted claims for unfair employment practices and discrimination; claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. §§ 245 (federally protected activities), § 2258 (sexual exploitation of children), and 18 U.S.C. § 3509 (child victims and witnesses rights); and Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 101-105, *et seq.* [5] (Dkt. No. 1-2 at 16.) Plaintiff's complaint seeks money damages, along with declaratory and injunctive relief. *Id.* at 29-31.

**B. Stay Order**
In May of this year, the Clerk sent Plaintiff's notice of removal with habeas petition and civil rights complaint to the Court for initial review pursuant to 28 U.S.C. § 1915(e). The Court, noting that Plaintiff, who is not an attorney, was impermissibly seeking to represent both his own and the interests of his two minor children in the case, issued an Order finding that initial review was premature and staying the action for ninety days in order to give Plaintiff time to retain counsel to represent the interests of his children. [6] (Dkt. No. 6 at 6.) The Order advised Plaintiff if the Court did not receive notice by September 11, 2017, that Plaintiff had retained counsel with regard to all claims being pursued on behalf of his minor children, moved for appointment of

counsel, or filed an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children, it would issue a Report-Recommendation to the assigned District Court judge recommending dismissal of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint without prejudice. *Id.*

### C. Plaintiff's Failure to Comply with the Court's Stay Order

Plaintiff has failed to comply with the Court's Order regarding counsel for his minor children. (Dkt. No. 6.) He has, however, filed motions to amend and for a TRO and preliminary injunction in which he has omitted his minor children from the caption and has identified himself as "Man-prosecutor." (Dkt. Nos. 8-9, 11.) Therefore, the Court concludes that Plaintiff, whom the Court notes has requested that he be called by his natural name, Beau Jangles,[7] intends to proceed in federal district court solely on his own behalf. As such, the Court will conduct its initial review of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint under 28 U.S.C. § 1915(e), in conjunction with its review of Plaintiff's motions to amend and for a TRO and preliminary injunction, with the understanding that Plaintiff is appearing solely on his own behalf. It is the express intention of the Court that the recommendations made by it with respect to claims that may relate in some fashion to his minor children have no affect whatsoever on the minor children's right to have those claims properly pursued by them, or by counsel on their behalf, in any other proceeding.

### II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

 **\*3** 28 U.S.C. § 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage*

*Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 181 of 338

### III. NOTICE OF REMOVAL AND HABEAS CORPUS PETITION

**\*4** On May 9, 2017, Plaintiff submitted to the Clerk a petition which he entitled:

> 5 Day Notice: Petition for Writ of Habeas Corpus in United States District Court pursuant to 18 USC 1512(b)(3) & 18 U.S.C. § 1513(b)[;] 18 USC § 242[;] Defendants Federal Removal from State of New York, County of Cortland, Chenango, Onondaga, New York State[;] Cortland County Combined Court to US District Court pursuant to 28 U.S.C. § 1443[;] State of New York, County Court Case # 9788 Docket#v-01361/1362 16/16A file # 9788 docket #v01361-16/17B file #9788 docket#v-1361/1362 16/17F file #9788 docket # v-1361/1362 16/17F and any other unlawfully ordered hearings of cases Federal Removal pursuant to 28 U.S.C. § 1443 child abuse cover-up U.S. Code § 241 For witness and victim Retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of Justice, Unlawful Activities, slander, perjury, false Statements, violations and denial of movants Constitutional I, V, VI & XIV Amendment Rights's, privileges, and immunities, Civil Human Universal, International & Fundamental

(Dkt. No. 1 at 1-2.)

Plaintiff has named as Respondents in his removal notice and petition for a writ of habeas corpus the State of New York, Cortland County, Chenango County, Onondaga County, Hon. William Ames, Hon. Julie Campbell, Chenango and Cortland County Departments of Social Services, CPS/DSS,

Court appointed Law Guardian Ad Litem Natalie Miner, Nicole Cruz, and S. Francis Williams, attorney for Nicole Cruz. (Dkt. No. 1 at 1.) Plaintiff has identified his grounds for removal to federal district court under 28 U.S.C. § 1443 and for a writ of habeas corpus as: (1) deprivation of rights under color of law in violation of criminal statute 18 USC § 242; (2) witness and victim retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of justice, unlawful activities, slander, perjury, false statements in violation of criminal statutes 18 U.S.C. §§ 1512(b)(3) and 1513(b), the United States Constitution Amendments I, V, VI and XIV, and civil human, universal, international, and fundamental rights. *Id.* at 4.

### A. Plaintiff's Affidavit in Support of Removal and his Habeas Corpus Petition

In an affidavit submitted by Plaintiff in support of his notice of removal and petition for a writ of habeas corpus, he describes a child support proceeding in Chenango County Family Court in which he planned to place a lien and judgment on real property of his estranged wife, Nicole Cruz, that had a pending sale during the spring and summer of 2016. (Dkt. Nos. 1 at 5-7; 1-1 at 1-4; 8-5 at 2.) Nicole Cruz owed Plaintiff back child support in the amount of $7,813.97. *Id.* In response, Nicole Cruz filed what Plaintiff claims to have been a fraudulent contempt proceeding against him claiming violation of her visitation rights with the couple's minor children. *(*Dkt. No. 1-1 at 5-8.)

According to Plaintiff, a hearing was held on August 10, 2016, behind closed doors with the Judge and counsel, after which his attorney came out and told him that the Judge had made him an offer that he should accept. (Dkt. No. 1 at 11.)

**\*5** Plaintiff's employment with the New York State Education Department was terminated on September 19, 2016, and Plaintiff claims the termination was unlawful. (Dkt. No. 1 at 32.) Thereafter, the superintendent and administration at Unadilla Central School began to make false allegations against Plaintiff, his home was broken into and recordings of court hearings were stolen, and he was forced to move to Cayuga County. *Id.* at 33.

On October 7, 2016, Plaintiff was advised by his counsel that his former wife had no intention of continuing a relationship with his minor children, and the Judge was forcing the children to go with abusers. *Id.* at 34. On December 21, 2016, Plaintiff appeared for a custody hearing in Cortland County

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 182 of 338

Family Court, planning to submit documentary evidence that would result in dismissal of the case. *Id.* at 37. Instead, the Judge denied Plaintiff's right to be heard and appointed a guardian ad litem for the minor children. (Dkt. No. 1 at 37.)

On January 3, 2017, Plaintiff realized everything was a conspiracy in which his counsel were members, and his minor children were being targeted by Chenango, Cortland, and Onondaga County, and the State of New York. *Id.* at 38. The same day he emailed his attorney, demanding that she recuse herself and informing her of his findings of fraud and malpractice. *Id.* at 39; Dkt. No. 1-1 at 24. In another email to his attorney the same day, Plaintiff stated that his children had been abused for five years. (Dkt. No. 1-1 at 24.)

Plaintiff received a January 9, 2017, letter from the Cortland County Department of Social Services informing him that a suspected child abuse or maltreatment report against him had been received by the SCR. (Dkt. Nos. 1 at 39; 1-1 at 27-28.) From that point forward, Plaintiff has constantly received summonses for preliminary conferences held by a clerk or county attorney in the Judge's chambers, with a woman named J. Kuhn impersonating Nicole Cruz at the hearings. *Id.* at 40.

On March 30, 2017, Plaintiff tried to serve a federal removal notice on Cortland County Family Court but was told he could not serve it because he had no case in the court. *Id.* at 41. On April 5, 2017, the Cortland County Family Court Judge dismissed all petitions. *Id.* Plaintiff claims retaliation against him and his children by the Cortland County Sheriff, Cortland County DSS/CPS, and the Cortland County Family Court since he served removal papers. *Id.* at 43. According to Plaintiff, they have ignored his removal notice. *Id.*

**B. Removal**

Plaintiff seeks to remove Cortland County Family Court proceedings involving child support, custody, and visitation, which Plaintiff has stated are no longer be pending (*see* Dkt. No. 1 at 41), to federal district court pursuant to 28 U.S.C. § 1443, which provides that:

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for

the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**\*6** 28 U.S.C. § 1443.

28 U.S.C. § 1446(a) provides that "a defendant ... shall file in the district court ... a notice of removal containing a short and plain statement of the grounds for removal, with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446. Plaintiff's notice of removal identifies two state court proceedings his petition for child support and Nicole Cruz's petition to hold Plaintiff in contempt for violating a visitation order. (Dkt. Nos. 1 at 5-6; 1-1 at 1-8.) Plaintiff has also submitted documentation regarding a custody/visitation proceeding commenced by Nicole Cruz in Cortland County Family Court, FF No. 9788, Dkt. No. V-01361/132-16/16A, for enforcement of a preliminary conference agreement reached on August 10, 2016, in connection with the proceeding referenced in the notice of removal. (Dkt. No. 1-1 at 35-42.)

**1. No Action or Proceeding is Pending in State Court**

Under the clear language of § 1443, a state court action must be pending in order for the provision to apply. *See, e.g., Nuccio v. Heyd*, 299 F.Supp. 939, 940 (E.D. La. 1969) (there must exist either a civil action or criminal prosecution to invoke federal jurisdiction under § 1443; otherwise there is nothing to remove). Plaintiff has stated in his affidavit that the Cortland County Family Court Judge dismissed all state court petitions on April 5, 2017. (Dkt. No. 1 at 40.) Documentation submitted by Plaintiff shows that Nicole Cruz's petition in FF No. 9788 was dismissed by the Family Court Judge on April 5, 2017. (Dkt. No. 1-1 at 36-37.) Therefore, by Plaintiff's own admission, there is no federal removal jurisdiction under § 1443.

Furthermore, even if the child support proceeding against Nicole Cruz were still pending, as petitioner in that proceeding, Plaintiff lacks authority to remove the proceeding to federal district court under the applicable federal removal statutes. *See* 28 U.S.C. §§ 1441(a), (b); 1443(a); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (no section in the removal statutes provides for removal by a plaintiff).

## 2. The Court is Without Removal Jurisdiction under 28 U.S.C. § 1443

Even if Nicole Cruz's visitation contempt and custody/ visitation proceedings were presently pending in state court, Plaintiff has failed to show the state court proceedings are subject to removal under § 1443.[8] In *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), the Supreme Court concluded that the phrase " 'any law providing for ... equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *See also Chestnut v. People of State, N.Y.*, 370 F.2d 1, 3-4 (2d Cir. 1966) (only due process and equal protection claims which specifically involve racial equality can support a valid claim for removal under § 1443(1)).

**\*7** Plaintiff has not alleged the violation of his civil rights based on race as a ground for removal under § 1443, nor has he identified himself as a member of a racial minority. (*See generally* Dkt No. 1.) Furthermore, Plaintiff is identified in SCR records as "White." (Dkt. No. 8-10 at 7.) Therefore, the Court finds Plaintiff has failed to make a plausible showing that removal is available under § 1443(1).

Removal is likewise unavailable under § 1443(2). In *People of State of N.Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965), the Second Circuit described the phrase "color of authority" in § 1443(2) as "primarily aimed" at "acts of officers or quasi-officers," and concluded it was necessary that the party seeking removal not be "relying on a general constitutional guarantee but on a special statute or order telling him to act." *Id.* The Court determined that "[a] private person claiming the benefit of § 1443(2) can stand no better; he must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him." *Id.* Plaintiff has failed to point to any law directing or encouraging him to act in a certain manner with regard to his estranged wife's visitation contempt or custody/visitation proceedings which he seeks to remove to federal court.

The "refusal to act clause" of § 1443(2) is available "to state officers, and those acting with or for them including local and municipal officers."[9] *White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980); *see also Wells Fargo Bank, N.A. v. Stephens*, No. 3:14-cv-1982 (VLB), 2015 WL 6551782, at \*3 (D. Conn.

Oct. 29, 2015)[10] (citing *White*, 627 F.2d at 585). Plaintiff has not alleged facts plausibly showing that he is a state officer or that he was or is acting with or for state actors in connection with the proceedings on which he seeks removal.

## 3. The Domestic Relations Exception Would Divest the Court of Subject Matter Jurisdiction in Any Event

In *Ex Parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890), the Supreme Court held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State and not to the laws of the United States." A century later, in *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the Supreme Court reaffirmed what had become known as "the domestic relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees."

Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction. *See, e.g., Sobel v. Prudenti*, 25 F.Supp.3d 340 (E.D.N.Y. 2014) (federal district court without jurisdiction to hear child support claims); *Neustein v. Orbach*, 732 F.Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation ..."). Courts have relied on the domestic relations exception to dismiss complaints and petitions removed to federal court under 28 U.S.C. § 1443 for lack of subject matter jurisdiction on initial review under 28 U.S.C. § 1915(e). *See, e.g., Steele v. Steele*, No. 1:12-cv-439 (KLL), 2012 WL 3061028 (S.D. Ohio July 3, 2012) (dismissal on initial review on removal dealing with dispute over child support and custody in state court domestic relations proceeding). It is clear that even if there were a pending state court proceeding subject to removal jurisdiction under 28 U.S.C. § 1443, the district court would be without subject matter over claims related to custody, child support, and visitation under the domestic relations exception.[11]

**\*8** Based upon the foregoing, the Court recommends that none of the state court proceedings Plaintiff has described in his removal notice or with respect to which he has submitted documentation be deemed to have been properly removed to, or to be subject to removal to federal district court.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 184 of 338

Cruz v. New York, Not Reported in Fed. Supp. (2017)

**C. Habeas Corpus Petition**

Plaintiff has filed his writ of a petition for habeas corpus under 18 U.S.C. §§ 242, 1512 (b)(3), and 1513(b). All three are criminal statutes. Section 242 is for criminal deprivation of rights under color of law. Section 1512(b)(3) is for hindering, delaying, or preventing communication to a law enforcement officer or federal judge relating to the possible commission of a federal offense or violation of conditions of probation, supervised release, parole, or release pending judicial proceedings. Section 1513(b) is for "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damages to the tangible property of another person, or threaten[ing] to do so, with the intent to retaliate against a person for (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in any official proceeding; or (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer." 18 U.S.C. § 1513.

None of the three criminal statutes provides a private right of action. See *Weinstein v. City of New York*, No. 13 Civ. 06301 (LGS), 2014 WL 2991000, at *4 (S.D.N.Y. April 8, 2014) (collecting cases). Nor has the Court found any legal support for seeking a writ of habeas corpus under any of the criminal statutes. Furthermore, the Supreme Court long ago held that a habeas petition under 28 U.S.C. § 2254 could not be used to collaterally attack a state decree awarding child custody. *Lehman v. Lycoming Co. Children's Services Agency*, 458 U.S. 502, 515-16, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017) ("It is well established that a petitioner for habeas relief pursuant to section 2254 is not an appropriate vehicle for challenging a child custody determination.") (citing *Davis v. Baldwin*, 594 Fed.Appx. 49, 50 (2d Cir. 2015)).

The Court, therefore, recommends that Plaintiff's petition for a writ of habeas corpus be dismissed with prejudice.

## IV. PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Plaintiff has filed a civil rights complaint under 42 U.S.C. §§ 1983, 1985, and 1986 with his notice of removal and habeas corpus petition. (Dkt. No. 1-2.) As noted above, the

Court's initial review of Plaintiff's complaint presumes he is proceeding solely on his own behalf.

**A. Named Defendants in Plaintiff's Complaint, Including Parties added in Joinder and as Necessary Parties**

Plaintiff's complaint names nearly seventy Defendants including those named in the caption and those identified as "required parties in joinder." (Dkt. No. 1-2 at 1-5.) Party Defendants named in the caption of Plaintiff's complaint include:

> Chenango, Cortland, Onondaga Counties, the State of New York & the following additional defendants in joinder: Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; Joseph McBride, District Attorney; Steven M. Dunshee, Chenango County First Assistant District Attorney; Chenango County Public Defender; Sabrina Dier Public Defenders Office; James Taylor, Esq.; James H. Fertig, Esq., Court appointed Guardian ad Litem; Chenango County Sheriff's Office; Ernest R. Cutting, Sheriff; Joe Warren owner of Lakeside Rentals—landlord; Ben Bergman part owner of Jackson Bergman LLP; Alyssa Cogden, Jackson Bergman LLP; Hon. William Ames; Kristen Monroe, Commissioner Cortland County DDS; David K. Knickerbocker, Director of Administrative Services, Cortland County DDS; Cortland County CPS; Melissa Archer, CPS; Colin [CPS], Supervisor Cortland County Child Advocacy Center; Jane Doe, Cortland County; 2 Cortland County Officer John Does; S. Francis Williams, Esq.; Cincinnatus CSD—Board of Education; Thomas Durkot, Elementary Principal; Cathy Aitchison LCSW, Cincinnatus CSD; Carnitra White, County Director of Human

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 185 of 338

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Resources at Anne Arundel CSCU, City of Annapolis, State of Maryland; Nicole Cruz, Broward County, Davie, State of Florida.

Principal Chris Harper; Elementary Principal Sherri Houck; Elementary School Counselor; Chris Wilkinson, Labor Negotiations; and Mike Lyn, Regional President.

**\*9** (Dkt. No. 1-2 at 1-2.) The following Defendants have been joined by Plaintiff as necessary defendants:

Brian J. Doliver, Second Ward Alderman; Detective John Fern; Sheila J. Poole, Acting Commissioner NYS Central Register OFCS; Sarah Simon, Regional Director of Child Welfare Services; Betty Osborne, Commissioner, Cathy Lavoli, Supervisor, Beth Beers, and CPS Patricia Luca, Chenango County DSS; Sarah Fitzpatrick, Esq., Chenango County DSS; Irene A. Flores, Esq.; DCMOBOCES Board of Education Superintendent Doreen Rowe, Deputy Superintendent Kim Corcoran, District School Lunch Director, Connie Bambino, Asst. District School Lunch Director, Pam Rowe, School Lunch Cook; City of Norwich Fire Department, Terry Kuhn; Johanna Kuhn, City of Norwich Police Department; Chief Joseph Angelino; Sergeant John Doe; Norwich Central School District Board of Education President Joseph McBride, Vice-President Tom Sutton, and member Howie Sullivan; Gerrard O'Sullivan Superintendent; Karrie Stainbauer Director of Special Education; Nicole A. Cruz, Special Education Teacher; Christine Bienick, NYSUT President, Unadilla Valley Teacher Assoc.; Dr. Alfred Barnes; Unadilla Valley Central School District Board of Education President Kristen Romavicz, Vice-President Mark Davis, Vicky Gregory, Kim Murray, and Robert Mackey; Superintendent Mike Brown; Business Official Frank Johnson; Building

(Dkt. No. 1-2 at 3-5.)

Another group of defendants added in joinder include Cortland County Sheriff's Department; Hon. Julie Campbell, Cortland County Family Court; three Jane Doe Cortland County Family Court Clerks; and four John Doe officers. *Id.* at 6.

**B. Factual Allegations in the Complaint**

The factual allegations in Plaintiff's complaint and his claims for relief arise in substantial part out of the child support, custody, and visitation disputes between the Plaintiff and Nicole Cruz. (*See generally* Dkt. No. 1-2.) Reference is also made to both Nicole Cruz and the Plaintiff having been made the subject of reports of child abuse or maltreatment received by the SCR. *Id.* at 12; Dkt. No. 1-1 at 27-28. In addition, there are references in the complaint to the transfer and subsequent termination of Plaintiff's employment. (Dkt. No. 1-2 at 13-14.)

Plaintiff has made specific factual allegations against a mere fraction of the Defendants named by him in his original complaint. They include the following.

1. Defendants Nicole Cruz, Terry Kuhn, and Johanna Kuhn

Plaintiff alleges that beginning in June 2012, he and estranged wife Nicole were in the process of starting a business in the City of Norwich and were approved for loans from the City and Chamber of Commerce. (Dkt. No. 1-2 at 10-11.) Plaintiff claims that Terry Kuhn, acting out of power and jealousy, along with his wife Johanna Kuhn, forced Nicole to force Plaintiff from his home and to default on the loans and a business Plaintiff and Nicole were buying. *Id.* at 11. A short time later, Terry Kuhn, through the abuse of his power as a local firefighter, conspired with his friends at the Chenango County Sheriff's office and buddy Frank Revoir and conjured up baseless false statements about Plaintiff. *Id.* at 11-12. Terry Kuhn also allegedly has the Chenango County Sheriff's Department and the court in his pocket. *Id.* at 19.

**\*10**  The alleged conspiracy caused a temporary order for protection to be issued against Plaintiff, who received no due process, not even a hearing. *Id.* at 12. Plaintiff was required to pick his children up at the police department for three years while one of the Kuhns was president of the Union, and he was harassed and discriminated against the entire time. *Id.* From December 2012 to the present, Nicole Cruz had three indicated reports of child abuse and two indicated reports for child maltreatment. *Id.* Copies were given to Plaintiff by Defendant Sheila Poole, Acting Commissioner of the New York State Office of Children and Family Services ("OCFS"). *Id.*

Plaintiff alleges that Nicole Cruz fled the State in July 2016 in the middle of a child abuse trial, owing Plaintiff over $8,000 in back child support since October 2015. *Id.* at 13. On August of 2016, Plaintiff learned that Nicole had moved to North Carolina. (Dkt. No. 1-2 at 13.) Plaintiff has also alleged:

18. Complainant(s) have been subjected to and have witnessed as well as fell subject to multiple crimes and actions committed by the defendants, including crimes committed and against minor children under the ages of 5 years old. The Complainants minor children were victims of repeated sexual abuse, mental and emotional abuse, and child maltreatment by N. Cruz an elementary Special Education teacher, abused the oldest Minor Child while on duty at work in the School, Johanna Kuhn, Terry Kuhn City of Norwich Paid Fireman, and from (sic) I been told the President of the Union for the Fireman and Police officers, see NYS Registry case # the defendants have committed multiple federal felonies and misdemeanor crimes and actions committed against the complainant.

19. The complainant alleges that the defendants Nicole A. Cruz, Johanna Kuhn and Terry Kuhn, recently have committed Multiple federal crimes including HUD Fraud, mail fraud, recent S. Francis Williams Esq., and Johanna posing as N. Cruz, (I have documentary evidence and eye witnesses to this crime False Impersonation in Cortland County Family Court), falsifying government documents, perjury libel in writing on court documents, Multiple at least 40 counts of False information and Hoaxes placed against the complainant, child abuse, child exploitation, public corruption, Unlawful transfer and Unlawful termination of the complainants tenure position with the NYSED,

and conspiracy with 5 counties, 4 in the State of NY and 1 in the State of Maryland.

(Dkt. No. 1-2 at 14-16.)

Plaintiff further alleged that "Nicole Cruz appeared before Chenango County Court and Hon. Kevin M. Dowd in violation of a federal Felony owing the complainants over $8,000 in back non-paid child support, and also had fled the state in the middle of a child abuse custody trial, this abuse was repeated sexual abuse ..." *Id.* at 20.

### 2. Chenango County Sheriff's Department

Plaintiff alleges that members of the Chenango County Sheriff's Department conspired with Terry Kuhn to conjure up baseless false statements against Plaintiff. (Dkt. No. 1-2 at 11.) Plaintiff also alleges that Terry Kuhn has the Chenango County Sheriff's Department in his pocket. *Id.* at 19.

### 3. Hon. Kevin M. Dowd, New York State Supreme Court Justice, Chenango County

Plaintiff alleges that after purposefully postponing a custody trial between Plaintiff and Nicole Cruz for over a year, during which time Nicole fled the State, Judge Dowd held a "surprise" initial appearance "that apparently overruled the complaints (sic) due process mandated by the congressional act of CAPTA Act of 2010 and the Adam Walsh Act 2006." (Dkt. No. 1-2 at 13.) Plaintiff claims that he was deprived of the opportunity to be heard and call witnesses, and that Judge Dowd, who met with counsel behind closed doors for almost an hour, then told Plaintiff that Nicole had moved and explained an offer being made to Plaintiff. *Id.*

**\*11**  Plaintiff also alleges that Judge Dowd had his brother-in-law and his assistant pay a staff member at the Public Defender's Office to impersonate a child care provider at a non-profit childcare center paid for by Plaintiff without financial assistance from his estranged wife. *Id.* at 19. In addition, Plaintiff contends that Judge Dowd's order, received by Plaintiff via email fifty-nine days after the hearing, was completely illegal and unconstitutional, and that Judge Dowd is in contempt and in violation of an act of Congress as well as international law and treaties. *Id.* at 20. Plaintiff claims that Judge Dowd's order is null and void under the Supremacy Clause, Cannon Law, and the Fourteenth

Amendment, and that Judge Dowd became a witness and denied Plaintiff his rights under the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments continuously, and purposely, and engaged in a completely premeditated action with malice. (Dkt. No. 1-2 at 21.)

#### 4. Hon. William Ames, Cortland County Family Court

In the affidavit in support of his notice of removal and habeas corpus petition, Plaintiff stated that certain petitions had been transferred to Cortland County Family Court, and Plaintiff reported for a hearing before Judge Ames on December 21, 2016. (Dkt. No. 1 at 37.) The sole allegation regarding Judge Ames in Plaintiff's civil rights complaint is that:

> The complainant appeared before the Hon. Ames at Cortland County Family Court locked and loaded with enough documentation to tear the Court house down, the complainant aske (sic) Honorary W. Ames to be herd (sic) at this very hearing, my 1 st amendment right as a US Citizen, not to mention Son of the Revolution. The Complainant explained clearly and sternly that he had the documentation to have the petition dismissed on the ground of documentary defense, not to mention the defendant N. Cruz petition also lacks validity nor executes any claim. Hon. W. Ames denied the complainants right to be heard as well as right as a pro se litigant, Hon. Ames is also guilty of misappropriate of Federal funds by hiring a Law Guardian for an act of fraud and conspiracy.

(Dkt. No. 1-2 at 20.)

#### 5. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's counsel in the Family Court proceedings involving child support and visitation issues. (*See* Dkt. No. 1 at 38.) In his civil rights complaint, Plaintiff appears to allege that Williams appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole Cruz. (Dkt. No. 1-2 at 15.)

Attorney James Taylor, Esq. was Plaintiff's counsel prior to April 2016. (Dkt. No. 1 at 40.) In his civil rights complaint, Plaintiff alleges that Judge Dowd had his brother-in-law, the Chenango County Public Defender, and his assistant, an associate of Taylor, pay a staff member at the Public Defender's Office "to impersonate a child care provider at a non-profit childcare center" paid for by Plaintiff. (Dkt. No. 1-2 at 19.)

Attorney James Fertig was appointed as Guardian ad Litem for Plaintiff's children in connection with the child support and visitation proceedings. (Dkt. Nos. 1 at 6; 1-2 at 1.) In his civil rights complaint, Plaintiff alleges that Fertig, as law guardian, engaged in misconduct and malpractice by: (1) violating the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 5101-5106, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act; and (2) violating 18 U.S.C. § 3509, and the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911 *et seq.,* transferred to 34 U.S.C. § 20911 (eff. September 1, 2017), thereby denying Plaintiff the services and privileges he deserved. (Dkt. No. 1-2 at 21-22.)

#### 6. Sheila Poole, Acting Commissioner of OCFS

Plaintiff has alleged that Sheila Poole, the Acting Commissioner of the OCFS (Dkt. No. 1-2 at 4), released three indicated reports of child abuse and two indicated reports of child maltreatment, including sealed reports, from December 2012 to the present to Plaintiff. *Id.* at 12.

#### 7. Chenango County Department of Social Services

**\*12** It is not clear from Plaintiff's complaint that he named the Chenango County Department of Social Services ("Chenango County DSS") as a Defendant. He has, however, named Chenango County. (Dkt. No. 1-2 at 4.)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 188 of 338

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Plaintiff alleges that the Chenango County DSS and CPS (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly 42 U.S.C. §§ 16911 *et seq.*, thereby denying Plaintiff the protection, safety, services, and privileges he deserved by failing to prosecute defendants. (Dkt. No. 1-2 at 21-22.)

### 8. Cortland County Department of Social Services, Commissioner Kristen Monroe, and Director of Administrative Services David Knickerbocker

It is also not clear from Plaintiff's complaint that he named the Cortland County Department of Social Services ("Cortland County DSS") as a Defendant. He did, however, name Kristen Monroe, Commissioner; David Knickerbocker, Director of Administrative Services; and employees in CPS. (Dkt. No. 1-2 at 2, 5.) Plaintiff alleges that Commissioner Monroe and Knickerbocker tried to trick and then force Plaintiff to rent Monroe's parents' house and stole $1000 from Plaintiff's grandmother, who last he knew was left in a home with no shower or means to take one. (Dkt. No. 1-2 at 2, 19.)

Plaintiff also alleges that the Cortland County DSS and CPS, which is within the Department: (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911, *et seq.*, thereby denying Plaintiff the protection, safety, services and privileges he deserved by failing to prosecute defendants. *Id.* at 21-22.

### 9. DCMO BOCES and Unadilla Valley Central School District

Plaintiff alleges that he was illegally transferred from DCMO BOCES to Unadilla Valley Central School District ("Unadilla"). Plaintiff's employment at Unadilla was terminated effective October 3, 2016. (Dkt. No. 1-1 at 15.) Plaintiff alleges that the termination was unlawful, and that he was denied tenure and rights under the Taylor Law, and section 75. (Dkt. No. 1-2 at 13.)

Plaintiff's complaint includes no factual allegations against named Defendants Mike Lyn or Lynch, Unadilla Principal

Chris Harper, Superintendent Robert Mackey, Business Officer Mike Brown, Food Service Director Kim Corcoran, and Cook Manager Pamela Rowe. In his affidavit in support of his notice of removal and petition for habeas corpus, Plaintiff states that when he was illegally transferred to Unadilla, he was stripped of his benefits and forced to fill two full time management positions at Unadilla while he had custody of his children. (Dkt. No. 1 at 33.) Plaintiff also claims that following his termination, Superintendent Robert Mackey, named as a Defendant, and unidentified members of the administration at Unadilla, began to make false allegations against Plaintiff. *Id.*

Furthermore, in his motion papers on his motion for a TRO and preliminary injunction, Plaintiff claims that Lyn or Lynch was involved in denying Plaintiff a hearing, tenure, and section 75 rights. (Dkt. No. 8-7 at 8.) Plaintiff also claims that he was subjected to involuntary servitude and peonage, purposefully harassed at work, and bullied by Harper, Mackey, Brown, Corcoran, and Rowe. *Id.*

### 10. Conspiracy

**\*13** Plaintiff alleges in conclusory fashion that Defendants acted in a premeditated conspiracy for the one objective of covering up the sexual abuse by an elementary school special education teacher somehow connected to Terry and Johanna Kuhn. (Dkt. No. 1-2 at 23.) Plaintiff has identified the membership in the conspiracy as follows:

> The Defendants constructed a conspiracy, this conspiracy was premeditated, and it was 5 counties wide, including the total of three states, 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney,

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 189 of 338

The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee. Defendants continually denied the complainant(s) (sic) rights.

*Id.* Plaintiff alleges that the conspirators are "guilty of intentionally interfering, denying, absolutely stripping the complainant of [his] Constitutional privileges, rights, and protections, and did so with malice. The complainant[ ]'s 1 $^{st}$, 2 $^{nd}$, 4 $^{th}$, 5 $^{th}$, 6 $^{th}$ 8 $^{th}$, 9 $^{th}$, 10 $^{th}$, 13 $^{th}$ (sec. 1) and 14 $^{th}$ (equal protection of the law)." (Dkt. No. 1-2 at 23-24.)

### C. Claims and Relief Requested

Plaintiff has identified "actions" against the Defendants under: (1) 42 U.S.C. § 1983 civil action for deprivation of rights, including violation of Amendments 1, 4-8, 10, and 14 to the Constitution; (2) 42 U.S.C. § 1985 (1)-(3) for conspiracy to interfere with civil rights; (3) 42 U.S.C. § 1986 for neglect to prevent action; (4) 42 U.S.C. § 3631 for criminal interference with right to fair housing; (5) 18 U.S.C. § 245 federally protected activities; (6) 42 U.S.C. § 14141 for pattern and practice; and (7) 18 U.S.C. § 2258 for failure to report child abuse. [12] (Dkt. No. 1-2 at 16.) Plaintiff also claims to have been the victim of sex discrimination in his employment and to have filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

Plaintiff seeks monetary damages for sex discrimination; defamation; retaliation and prevention of his business venture in Norwich; loss of tier 4 State retirement benefits; loss of family and loved ones; destruction of social relationships, friendships, and his family relationship; unlawful labor practices; unlawful termination; disruption of the parent child relationship; past, present, and future medical expenses, court and attorney's fees; and the cost of providing a nanny for the children until age eighteen. *Id.* at 30. Plaintiff also seeks damages in the amount of $60,000,000, with the ability to seize retirement and properties for illegal actions. *Id.*

**\*14** In addition, Plaintiff seeks appropriate injunctive and declaratory relief in his complaint. *Id.*

Prior to the Court's initial review of his original filings under 28 U.S.C. § 1915(e), Plaintiff submitted to the Clerk an ex parte motion to amend. On September 11, 2017, Plaintiff filed a "Motion to Amend due to failure to comply By the State of New York, *et al.*" (Dkt. No. 9 at 1.) Plaintiff's request to amend his complaint arises out of: (1) New York State's stonewalling his request under the State Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90, his appeals, and his requests for crucial information necessary to amend his complaint; (2) the Defendants/Respondents' failure to return a waiver of service of the summons, object to removal, seek remand, file an answer, file Plaintiff's requests, file any motions; and (3) an unidentified Defendant's actions in exceeding his or her jurisdiction by repeatedly and irreparably injuring Plaintiff, unlawfully kidnaping his children, and seizing his property. *Id.* at 2.

Plaintiff also filed a document entitled "Motion to Amend State Action for violation of a man's I, IV, V, XIV, VI amendments of the US constitution, 42 U.S.C. 1983." (Dkt. No. 9-1.) In the motion, Plaintiff has added as Defendants New York State Governor Andrew Cuomo; Attorney General Eric Schneiderman; Cortland County Sheriff Mark E. Helms; Budd Rigg, Cortland County Undersheriff; Captain Robert Derkson; Sgt. Paul Knapp; and Jane Doe, Deputy. *Id.* at 1. Plaintiff alleges in what he has identified as a "complaint" in the motion to amend that he has served three notices, three requests for waiver of summons, electronic and certified mailings to all of the Defendants in the action, and that because this Court ordered a stay "this means ALL matters pursuant to the case, if this court Cortland County Family Court or Chenango County Family Court or either County department of Social Services Proceed any further in any more unlawful and fraudulent actions against the complainant the complainant will take this matter to the United States Attorney's Office Immediately proceeds any further this will be yet another trespass on the complainant and his people." (Dkt. No. 9-1 at 2.)

Plaintiff also alleges that the Defendants have all been served with FOIL requests and requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as well as the complaint, and that State has stonewalled his FOIL requests and is engaged in a conspiracy to cover up the abuse of his children by a special education teacher and a Norwich fireman in violation of the Federal Child Kidnaping laws. [13] *Id.* at 3.

## V. MOTION TO AMEND

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 190 of 338

## VI. MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On September 11, 2017, Plaintiff submitted to the Clerk a "Motion for Verbal Argument and ORDER to Show Cause, before Honorable Daniel J. Stewart ... for Preliminary ORDER and Judgement RULE 72 Pretrial Order." [14] (Dkt. No. 8.) Included among Plaintiff's submissions in support of his motion for a TRO and preliminary injunction are: (1) Table of Authorities with father's rights case law (Dkt. No. 8-1); (2) Table of Authorities with case law involving removal of children from the home (Dkt. No. 8-2); (3) "DEMANDANTS DEMAND WRIT OF QUO WARRANTO DEMAND TO VACATE CPLR 5015(a)(4)," in which Plaintiff demands that Respondents vacate and dismiss immediately any New York State matters for lack of subject matter jurisdiction pursuant to CPLR 5015(a)(4) (Dkt. No. 8-3); (4) "NOTICE: Ex parte Motion for Order to Show Cause for a Writ of Mandamus for Writ of Habeas Corpus; Ex Parte motion for Order to Show Cause for Writ of Mandamus; Order to Show Cause for preliminary injunction and Temporary Restraining order; prayer for remedies for irreparable harm pursuant to Invidious Gender Discrimination, 18 U.S. Code § 1201, Kidnaping, 18 U.S. Code § 242 Deprivation of rights under color of law, and 18 U.S. Code § 241 Conspiracy against rights (RUL 72 Pretrial Order)" (Dkt. No. 8-4); (5) Plaintiff's "Declaration, Proclamation and Reclamation to His natural rights as Son of the revolution & The Original Republic of 1789" (Dkt. No. 8-5); (6) "Written Objections to Chenango and Cortland County Family Court for Lack of Subject Matter & Personal Jurisdiction & Cross Claim" (Dkt. No. 8-6); (7) "Affidavit in support of written objections to the State of New York et al. For Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Cross Claim" (Dkt. No. 8-7); (8) "NOTICE: ex parte Motion Order to Show Cause for Writ of Habeas Corpus ex parte Motion for Order to Show Cause for Writ of Mandamus" (Dkt. No. 8-8); (9) July 15, 2017, "Actio Contrcto Actio Vi Bono Rum Raptorum Actio Ex Contractu Actio Mixta Actio Personum Actio Ex Delicto" to Governor Andrew Cuomo (Dkt. No. 8-9); (10) records from the SCR labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 8-10); (11) "Order to Show Cause for Injuries for Irreparable Injury caused by Trespass exceeding Jurisdiction Discrimination, and Malice (Ex Parte)" (Dkt. No. 8-11); (12) "Memorandum of the Law and Laws of a Writ of Quo Warrento (Rule 72 Pretrial order)" (Dkt. No. 8-12); (13) "Affidavit and Memorandum of the law in Support of a Writ of Quo Warrento and Complaint pursuant to US federal Codes: 18 U.S.Code § 1201 Kidnaping, 18 U.S. Code 242 Deprivation of rights under color of law, 18 U.S. Code § 241 Conspiracy against rights 28 U.S.C. § 1343(a)(3)" (Dkt. No. 8-13); and (14) collection of statutory provisions labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 14.)

**\*15** Unfortunately, Plaintiff's voluminous submissions consist largely of irrelevant material, repetitive accusations, conclusory assertions, and hard to follow open ended allegations against frequently unidentified Defendants, with few nonconclusory assertions of wrongdoing by specific Defendants, and an ill-defined request for the injunctive relief being sought. As best the Court can ascertain, Plaintiff's request for injunctive relief is based at least in part on his mistaken belief that the Court's earlier Order staying this action stayed all state court proceedings and in essence enjoined any actions by the multitude of Defendants named by him with regard to matters about which Plaintiff complains herein. (*See* Dkt. No. 9-1 at 2.) Plaintiff, failing to understand that his notice of removal, petition for a writ of habeas corpus, and civil rights complaint have yet to be accepted for filing by the District Court, also appears to justify his request for injunctive relief on the absence of any response to those papers by Defendants, for whom summonses will not be issued unless and until those papers are accepted by the District Court and Defendants are directed by the District Court to respond in some fashion. (*See* Dkt. No. 9 at 2.)

Plaintiff may be seeking a mandatory injunction directing Defendants to respond to his notice of removal habeas petition, and civil complaint. (Dkt. 8-3 at 2.) Plaintiff has also raised the State Defendants' failure to respond to his FOIL requests and may be seeking a mandatory injunction directing a response. (Dkt. Nos. 8-11 at 5; 8-13 at 2-3.) Plaintiff claims that the day after he commenced this action/proceeding, his children were unlawfully seized and taken to Florida by unidentified "respondents" in violation of federal kidnaping laws, and he may be seeking injunctive relief with regard to the allegedly illegal seizure. (Dkt. 8-11 at 2.) Plaintiff also claims he is being harassed, defamed, and attacked; he has had false allegations placed against him on the SCR; and the State has black balled him from future state employment. (Dkt. No. 8-11 at 3-4.) Plaintiff may be seeking injunctive relief with regard to those claims as well. In addition, Plaintiff is seeking a mandatory injunction directing the payment of back wages and health care benefits; placing him back on the payroll with benefits; and returning various property taken from him. *Id.* at 5-7.

## VII. LEGAL ANALYSIS OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT, MOTION TO AMEND, AND MOTION FOR A TRO AND PRELIMINARY INJUNCTION

### A. Elements of a 42 U.S.C. §§ 1983 Claim

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, ––– U.S. ––––, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." [15] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

**\*16** In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do more than plead in conclusory fashion that a defendant "conspired" with a state actor. [16] *Ciambriello,* 292 F.3d at 324; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The elements of a conspiracy claim under § 1983 are: "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### B. Personal Involvement Requirement of § 1983

A § 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant ... § 1983 requires individualized, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 192 of 338

the body of the complaint. *See McAvoy v. Suffolk County Sheriff DeMarco*, No. 14-CV-6293 (SJF) (AKT), 2015 WL 1802601, at *5 (E.D.N.Y. April 16, 2015); *McClenic v. Shmettan*, No. 15-CV-00705 (SJF) (SIL), 2015 WL 1930088, at *5 (E.D.N.Y. April 28, 2015); *Rogue v. Iannotti*, No. 3:11-cv-2012 (SRU), 2012 WL 3939922, at *2 (D. Conn. Sept. 10, 2012).

Therefore, the Court recommends dismissal of Plaintiff's complaint as against Defendants Onondaga County, Chenango County District Attorney Joseph McBride, Steven M. Dunshee (First Assistant District Attorney), Sabrina Dier, Sheriff Ernest R. Cutting, Joe Warren, Ben Bergman, Alyssa Cogden, Melissa Archer, Colin Supervisor Cortland County Advocacy Center), Cortland County Jane Doe, two Cortland County Officer John Does, Thomas Durkot, Cathy Aitchison, Carnita White, Brian Doliver, Detective John Fern, Sarah Simon, Betty Osborne, Cathy Lavoli, Beth Beers, Patricia Luca, Sarah Fitzpatrick, Irene Flores, Connie Bambino, Joseph Angelino, Norwich Sgt. John Doe, Norwich School District Board of Education President Joseph McBride, Tom Sutton, Howie Sullivan, Gerrard O'Sullivan, Karrie Stainbauer, Christine Bienick, Dr. Alfred Barnes, Kristen Romavicz, Mark Davis, Vicky Gregory, Kim Murray, Frank Johnson, Sherri Houck, Chris Wilkinson, three Jane Doe Cortland County Family Court Clerks, and four John Doe Officers. [17]

**\*17** Although Plaintiff would ordinarily be granted leave to amend to allege facts plausibly showing that the Defendants listed above had violated his constitutional rights under § 1983, for reasons discussed below, the Court finds that allowing amendment in this case would be futile.

### C. Eleventh Amendment Immunity

Plaintiff has sued New York State. (Dkt. No. 1-2 at 1.) It is well settled that in the absence of consent by the state or abrogation of immunity by Congress under the Fourteenth Amendment, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55-56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment also bars suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Although the allegations in Plaintiff's complaint are inadequate to provide notice of any claim against the State, in his motion to amend Plaintiff complains of the State's alleged bad faith in stone-walling his FOIL request and his appeals and failing to provide information necessary to finish his complaint. (Dkt. No. 9 at 1.) Federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios v. New York Executive Dept. of Parole*, No. No. 07-CV-3598 (DLI) (LB), 2008 WL 150209, at * 2 (E.D.N.Y. Jan. 14, 2008). Plaintiff's recourse is the commencement of a CPLR Article 78 proceeding in state court. *Id.*

In addition, although Plaintiff has not named the OCFS as a Defendant in his complaint, he has alleged that the State agency was a member of a conspiracy to deny Plaintiff of his constitutional rights. (Dkt. No. 1-2 at 23-24.) Were the agency a named Defendant, Plaintiff's conspiracy claim under § 1983 against it would be barred by the Eleventh Amendment.

Finding that Plaintiff has failed to allege any claim against New York State with respect to which there has been consent to suit by the State or an abrogation of Eleventh Amendment immunity by Congress, the Court recommends that Plaintiff's complaint be dismissed with prejudice against the State of New York and to the extent Plaintiff intended to name the OCFS as a Defendant, against the agency as well.

### D. Judicial Immunity

In his original complaint, Plaintiff has named as Defendants the Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; the Hon. William Ames, Cortland County Family Court; and the Hon. Julie Campbell, Cortland County Family Court. [18] (Dkt. No. 1-2 at 1, 4, 6.) All are sued in connection with the support, visitation, and custody proceedings involving Plaintiff and his estranged wife Nicole. (*See generally* Dkt. Nos. 1, 1-2, and 9-1.)

**\*18** It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) (holding that "judicial immunity is an immunity from suit, not just

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 193 of 338

from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. A judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of authority." *Id.* at 13, 112 S.Ct. 286 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

Because the allegations in Plaintiff's complaint indicate that his claims against Judges Dowd, Ames, and Campbell, and Support Magistrate Dunshee were all related to the support, visitation, and/or custody proceedings between Plaintiff and Nicole Cruz, the Court finds that they are all entitled to judicial immunity and recommends dismissal of Plaintiff's complaint against them with prejudice on judicial immunity grounds.

### E. Plaintiff's Conspiracy Claim

Plaintiff has alleged a conclusory claim for conspiracy against:

> 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law

> Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee.

(Dkt. No. 1-2 at 23.)

Plaintiff claims that those Defendants conspired for the sole purpose of covering up the sexual abuse, apparently of Plaintiff's children, by an elementary school special education teacher connected to Terry and Johanna Kuhn, possibly Nicole Cruz. *Id.* at 23-24. Plaintiff's complaint is devoid of facts regarding the alleged sexual abuse, and is equally devoid of facts plausibly showing that the identified parties conspired to interfere with, deny, or strip Plaintiff of his constitutional rights. *Id. See Dwares*, 985 F.2d at 100 (requiring allegations of specific acts of misconduct as a part of the conspiracy). Furthermore, because the rights of Plaintiff's minor children would clearly be implicated in any conspiracy to cover up sexual abuse by a teacher, the Court finds that consideration of the issue without proper representation of the interests of the children would be improper.

Therefore, the Court recommends that Plaintiff's conspiracy claim against 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD, City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz['s] Attorney, the OFCA Albany, NY, the Law Guardian Ad Litem, Plaintiff's own Self hired attorneys, and the Hon. Dowd and Hon. Dunshee be dismissed.

### F. Chenango and Cortland Counties

**\*19** Plaintiff has named Chenango and Cortland Counties as Defendants. (Dkt. No. 1-2 at 1.) Plaintiff has asserted claims against both the Chenango and Cortland County Departments of Social Services and Sheriff's Departments. Because the Departments of Social Services and Sheriff's Departments are administrative arms of their respective counties, the Court will treat Plaintiff's claims against the County Departments as claims against the Counties themselves and recommend dismissal of the complaint with prejudice against both the Departments of Social Services and Sheriff's Departments.

See *Mulvihill v. New York*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013).

#### 1. Claims Against the Departments of Social Services

Plaintiff claims in wholly conclusory fashion that the Chenango and Cortland County Departments of Social Services violated CAPTA, 18 U.S.C. § 3509, and SORNA, 34 U.S.C. §§ 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911, *et seq.* (Dkt. No. 1-2 at 21-22.) CAPTA does not create a private right of action for sexual and physical abuse, neglect, and maltreatment while in foster care. *See Alger v. County of Albany, New York*, 489 F.Supp.2d 155, 159 (N.D.N.Y. 2006) (collecting cases). Moreover, if it did that would be a claim that should not be addressed in this action in which the interests of Plaintiff's minor children are not represented by counsel. *See, e.g., Ingrao v. County of Albany, NY*, No.1:01-CV-730 (TJM), 2006 WL 2827856 (N.D.N.Y. Oct. 2, 2006) (counseled lawsuit raising unsuccessful CAPTA claim by plaintiffs as parents and natural guardian of an infant).

18 U.S.C. § 3509, which is entitled "Child victims' and child witnesses' rights," is a criminal statute that provides for the manner in which child victims and their right to privacy is protected in connection with the judicial process in criminal matters involving abuse, including sexual abuse. If by chance a person were found to have a private right of action under the provision, it would be Plaintiff's minor children, whose interests are not before the Court in this litigation. SORNA provides for the registration of convicted sex offenders and appears to have no relevance whatsoever to Plaintiff's lawsuit.

#### 2. Claims Against the Sheriff's Departments

The sole claim against the Chenango County Sheriff's Department is that members of the Department conspired with Terry Kuhn to conjure up baseless claims against Plaintiff resulting in the issuance of a temporary protective order against Plaintiff. (Dkt. No. 1-2 at 11-12.) Plaintiff's conclusory claim of conspiracy is inadequate to state a claim under § 1983. *See Pangburn*, 200 F.3d at 72. Plaintiff has alleged no specific facts plausibly showing wrongdoing by the Cortland County Sheriff's Department resulting in the violation of Plaintiff's constitutional rights under § 1983.

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cause of action against either Chenango or Cortland County and recommends that the complaint be dismissed as against them.

#### G. Nicole Cruz and Terry and Johanna Kuhn

Although the relationship between Nicole Cruz and Terry and Johanna Kuhn is not well explained in the complaint, the Kuhns appear to be Nicole's friends. The allegations in the complaint indicate that Nicole and Johanna Kuhn are private actors. Terry Kuhn is a member of the City of Norwich Fire Department. (Dkt. No. 1-2 at 14-16.) However, except for wholly conclusory allegations that Terry Kuhn abused his power as a Norwich fireman by conspiring with his friends at the Chenango County Police Department to conjure up baseless false statements against Plaintiff which resulted in issuance of a temporary order of protection against Plaintiff, the allegations against him arise of out his actions as an individual rather than a state actor.[19] *Id.* at 11-12.

**\*20** Nicole Cruz is alleged to have joined with the Kuhns in forcing Plaintiff from his home and causing him to default on a loan Plaintiff and his estranged wife had on a business they were buying. *Id.* at 11. Plaintiff alleges that Nicole fled the State in July of 2016 in the middle of a child abuse trial owing Plaintiff over $8,000 in child support. *Id.* at 13. According to Plaintiff, Nicole and Terry and Johanna Kuhn are guilty of multiple federal felonies and misdemeanors against him including HUD fraud, mail fraud, false impersonation, falsifying government documents, and unlawful termination of Plaintiff's tenured position in the New York State Education Department. ("NYSED"). *Id.* at 14-16.

The factual allegations against the three do not plausibly show that they were acting under color of state law with regard to Plaintiff's claims. *See Cornejo*, 592 F.3d at 127. Moreover, the allegations of conspiracy by Terry Kuhn are wholly conclusory and therefore inadequate to make a plausible showing that he was acting in concert with state actors. *See Dwares*, 985 F.2d at 100. Therefore, the Court recommends that the complaint be dismissed as against Nicole Cruz and Terry and Johanna Kuhn for failure to state a claim under § 1983. The Court further recommends that the dismissal be with prejudice given the absence of factual allegations in the complaint suggesting Plaintiff could state a cause of action against them under § 1983 if given leave to amend.

#### H. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's attorney in connection with the child support, visitation, and custody

dispute and is alleged to have appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole. (Dkt. Nos. 1 at 38; 1-2 at 15.) Attorney Taylor was Plaintiff's attorney in the domestic relations dispute for a period of time. (Dkt. No. 1 at 40.) The sole allegation against Taylor in Plaintiff's complaint is that an associate of his was involved in paying a third party to impersonate a child care provider at the daycare center attended by Plaintiff's children. (Dkt. No. 1-2 at 19.) Attorney James Fertig was appointed as a guardian ad litem for Plaintiff's children, and Plaintiff has alleged that he engaged in misconduct and malpractice in violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Private attorneys do not act under color of state law and are not state actors for purposes of § 1983 simply by virtue of their state-issued licenses to practice law. *See Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975) (private attorney not a state actor). Similarly, public defenders and court-appointed counsel do not act under color of state merely by virtue of their position. *Harrison v. New York*, 95 F.Supp.3d 293, 328-29 (E.D.N.Y. 2015) (collecting cases). Guardians ad litem are included among court-appointed counsel who do not act under color of state law by virtue of their position. *Neustein v. Orbach*, 732 F.Supp. 333, 346 (E.D.N.Y. 1990). Furthermore, Plaintiff has failed to plead any nonconclusory facts showing that the three attorneys were conspiring with state actors. *See Dwares*, 985 F.2d at 100.

Moreover, for the reasons set forth above in the analysis of Plaintiff's claims against Defendants Chenango and Cortland Counties, the Court finds that Plaintiff has failed to state a claim against Fertig violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed as against Defendants Williams, Taylor, and Fertig with prejudice inasmuch as a better pleading will not correct the deficiencies in Plaintiff claims.

### I. Kristen Monroe and David Knickerbocker

**\*21** Plaintiff claims that Monroe and Knickerbocker, both officials in the Cortland County DSS, attempted to trick and then force Plaintiff to rent Monroe's parents' house. (Dkt. No. 1-2 at 2, 19.) Plaintiff has not alleged facts plausibly showing that Monroe and Knickerbocker were acting under color of state law in connection with the rental of Monroe's parents' house. Nor has he alleged facts showing that Monroe or Knickerbocker deprived him of rights, privileges, or

immunities secured by the Constitution or laws of the United States. *See Cornejo*, 592 F.3d at 127.

Therefore the Court recommends that the complaint be dismissed as against Monroe and Knickerbocker, and because the allegations against them do not remotely support the existence of a civil rights claim against them under § 1983, that the complaint be dismissed against them with prejudice.

### J. Sheila Poole

While Plaintiff has alleged that Poole, in her capacity as Acting Commissioner of the NYS OCFS, released indicated reports of child abuse and mistreatment of Plaintiff children by him and Nicole Cruz, his complaint is devoid of factual allegations plausibly showing that she deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States by doing so. *See Cornejo*, 592 F.3d at 127.

Therefore, the Court recommends that the complaint be dismissed as against Poole, and that in light of the failure by Plaintiff to allege any facts suggesting he might be able to plead a § 1983 claim against Poole the dismissal be with prejudice. [20]

### K. DCMO BOCES and Unadilla Valley Central School District

Plaintiff claims, *inter alia*, that his transfer from DCMO BOCES to Unadilla was illegal, that his termination was unlawful in that he was denied tenure, rights under the Taylor Law, and Section 75 rights, and that Defendant Lyn or Lynch was involved in the denial. (Dkt. Nos. 1-1 at 15; 1-2 at 13; 8-7 at 8.) Plaintiff also claims that he was harassed, bullied, and forced into involuntary servitude by Defendant Harper, Mackey, Brown, Corcoran, and Rowe at Unadilla. (Dkt. No. 8-7 at 8.) According to Plaintiff, he was also the victim of sex discrimination in his employment and has filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." *Baumgart v. Stony Brook Children's Serv., P.C.*, 249 Fed.Appx. 851, 852 (2d Cir. 2007). Public employees covered under the Public Employees' Fair Employment Act ("Taylor Law"), N.Y. Civ. Serv. Law § 201(7) are precluded from filing federal claims under the LMRA. *See Sales v. Clark*, No. 14-CV-8091 (PAC)(SN), 2017 WL 892609, at \*5 (S.D.N.Y. Feb.

3. 2017).) Plaintiff concedes he is covered under the Taylor Law. (Dkt. No. 1-2 at 13.)

Furthermore, Plaintiff's claims, if any, against the individual Defendants for involuntary servitude, harassment, and bullying are state law claims over which this Court has no jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). Federal question jurisdiction exists if a plaintiff's claim "aris[es] under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

**\*22** Plaintiff's claims against DCMO BOCES and Unadilla and the individual Unadilla Defendants do not present a federal question. [21] Moreover, diversity jurisdiction requires complete diversity between Plaintiff and all of the Defendants, which does not exist in this case. *See Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("complete diversity [is required] between all plaintiffs and all defendants.").

In addition, it is not clear from the complaint that the amount in controversy exceeds $75,000. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to be a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time action is commenced. *Id.*

Finally, Plaintiff claims to have filed a sex discrimination complaint with the New York Human Rights Division but has provided no information regarding the nature and status of that claim, including whether the EEOC has issued a right to sue letter. Therefore, the Court recommends dismissal.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed against DCMO BOCES, Unadilla, Harper, Mackey, Brown, Corcoran, and Rowe, and that with the exception of his sex discrimination claim against his employer, that the dismissal be with prejudice.

### L. Domestic Relations Exception

The Court has recommended dismissal on various grounds of all of Plaintiff's claims either with or without prejudice. Even if it had not, with the exception of Plaintiff's employment claims, all of the claims asserted by him in his civil rights complaint fall within the domestic relations exception discussed above, which divests the district court of subject matter jurisdiction because the claims relate, directly or indirectly, to the issues of support, custody, and visitation. *See Ankenbrandt*, 504 U.S. at 703, 112 S.Ct. 2206. Therefore, the Court recommends that Plaintiff's complaint, with the exception of his employment related claims, be dismissed with prejudice under the domestic relations exception. [22]

### M. Plaintiff's Motion to Amend

Plaintiff's motion to amend his complaint does not change the Court's recommendation that his civil rights action be dismissed. Plaintiff's notice to amend involves the failure of the State and perhaps other Defendants to respond to his FOIL requests, Defendants' failure to return waivers of summonses and to respond to papers he has served on them in the action, and the alleged kidnaping of his children. (Dkt. No. 9 at 2.) As noted above, federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios*, 2008 WL 150209, at *2. Furthermore, inasmuch as Plaintiff's complaint has not yet been accepted for filing, Defendants are under no obligation to return service waivers or respond to any of Plaintiff's papers.

**\*23** Finally, there is no private right of action under 18 U.S.C. § 1201, the federal criminal statute relating to kidnaping. *See Giano v. Martino*, 673 F.Supp. 92, 95 (E.D.N.Y.), *aff'd*, 853 F.2d 1429 (2d Cir. 1987) (Table). Moreover, to the extent the alleged kidnaping of Plaintiff's minor children is a part of the custody dispute between Plaintiff and his estranged wife, Plaintiff's claim falls within the domestic relations exception to subject matter jurisdiction. [23]

Therefore, the Court recommends that Plaintiff's motion to amend (Dkt. No. 9) be denied.

### N. Motion for a TRO and a Preliminary Injunction

Inasmuch as the Court is recommending dismissal of Plaintiff's complaint, its recommends that Plaintiff's motion for a TRO and a preliminary injunction be denied as moot.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 197 of 338

Cruz v. New York, Not Reported in Fed. Supp. (2017)

*See Melnitzky v. Lopreto*, No. 06 Civ. 13206 (SHS), 2006 WL 3500016, at \*4 (S.D.N.Y. Dec. 4, 2006) (request for a TRO and preliminary injunction moot where underlying complaint dismissed). Even if the request were not moot, the Court would recommend denial because Plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits of his claims to make them a fair ground for litigation, and a balance of hardships decidedly tipping in his favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Therefore, the Court recommends that Plaintiff's motion for a TRO and preliminary injunction (Dkt. No. 8) be denied as moot, or in the alternative, on the merits.

**ACCORDINGLY**, the Court hereby

**RECOMMENDS** that if there are presently any state court proceedings that arguably could be covered by Plaintiff's notice of removal (Dkt. No. 1) that the District Court issue an order remanding them to state court, and if not, that the Court find that no state court proceedings have been properly removed to state court; and it is further

**RECOMMENDED** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to amend his complaint (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1-2) be **DISMISSED** on initial review under 28 U.S.C. 1915(e)(2)(B)(ii), and that with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be **WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion for a TRO and a preliminary injunction (Dkt. No. 8) be denied as moot or, in the alternative, on the merits; and it is further

**RECOMMENDED** that the District Court order that the determination in this matter have no effect on the legal rights of Plaintiff's minor children; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [24] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6021838

## Footnotes

1    Since Plaintiff has acknowledged there are no pending state court proceedings, remand does not appear to be an option. (Dkt. No. 1 at 40.)

2    Plaintiff also submitted an application for leave to proceed *in forma pauperis* (Dkt. No. 2), which was granted by the Court in its June 13, 2017, Order. (Dkt. No. 6.)

3    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 198 of 338

4    Plaintiff's complaint also contains factual allegations that his minor children were subjected to repeated sexual, mental, and emotional abuse. (Dkt. No. 1-2 at 15.) Those allegations will be considered solely to the extent, if at all, they are relevant to claims asserted by Plaintiff solely on his own behalf.

5    The applicability of the statutes cited by Plaintiff will be addressed only to the extent, if at all, they are relevant to claims asserted by him solely on his own behalf.

6    The only effect of the Court's ninety-day stay Order was to place the Court's initial review of the lawsuit on hold while Plaintiff pursued legal representation for his minor children. (Dkt. No. 6 at 6.) The stay did not, as Plaintiff appears to claim in his motion papers, have any impact on the ability of those individuals and entities whom Plaintiff has named as Defendants herein to take action or refrain from taking action, or upon the jurisdiction, orders, or other actions of the New York State courts. (See Dkt. Nos. 8-3 at 3; 9-1 at ¶ 1.) Plaintiff's apparent attempted service of summonses and papers to which Defendants would be required to respond was premature and unauthorized.

7    Plaintiff, who describes himself as an American Patriot, has also filed as a part of his motion for a preliminary injunction, a "Declaration, Proclamation and Reclamation to his natural rights as Son of the Revolution & The Original Republic of 1789," in which he describes his ancestors as having included soldiers in the French and Indian War, the American Revolution, and the Civil War. (Dkt. No. 8-5.)

8    Plaintiff's notice of removal also appears to be untimely since it was filed more than thirty-days after he received the petitions in the contempt and custody/visitation proceedings. See 28 U.S.C. § 1446(b). However, because the thirty-day requirement, while mandatory, is procedural rather than jurisdictional, and can be waived by the plaintiff/petitioner in the state court action, the Court finds that Plaintiff's failure to file a timely notice of removal does not provide grounds for *sua sponte* dismissal on initial review. See *Flood v. CSX Transp., Inc.*, No. 11-CV-162S (WMS), 2012 WL 464189, at * 2 (W.D.N.Y. Feb. 13, 2012) (while the thirty-day time limit under § 1446(b) is mandatory, failure to adhere to it constitutes a procedural rather than a jurisdictional defect) (citing *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005)).

9    In *White v. Wellington*, 627 F.2d 582, 585 n.4 (2d Cir. 1980), the Second Circuit opined that the statutory language would also allow removal by federal officials.

10   Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

11   The papers do not provide the Court with sufficient information to determine on initial review whether the *Younger* abstention, (*see Younger v. Harris*, 401 U.S. 37, 53-54 (1971)), or *Rooker Feldman* doctrines apply to Plaintiff's filings. See *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal courts may not sit in direct review of state court judgments unless directly authorized by Congress).

12   There is no private right of action under 42 U.S.C. § 3631 (*see DeSouza v. Taiman*, No. 3:16-cv-00490 (MPS), 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases)); 42 U.S.C. § 14141 (*see Miller v. Carpinello*, No. 06 CV 12940 (LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); 18 U.S.C. § 245 (*see, Gunter v. Long Island Power Auth./Keyspan*, No. 08 CV 498 (RRM) (LB), 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011)); or 18 U.S.C. § 2258. *See Davis v. City of New Haven*, No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Con. March 30, 2014).

13    In his complaint, Plaintiff identifies the abuser of his children as N. Cruz. (Dkt. No. 1-2 at 14-16.) However, because Plaintiff never specifically identifies the alleged abuser as his estranged wife, Nicole Cruz, the Court is uncertain as to whether that is the case.

14    The undersigned, not Judge Stewart, is the U.S. Magistrate Judge to whom the case has been assigned.

15    A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

16    Plaintiff has also alleged a conspiracy under 42 U.S.C. § 1985(3) and a claim under 42 U.S.C. § 1986. (Dkt. No. 1-2 at 1.) However, under § 1985(3), "the conspiracy must [ ] be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Securities, Corp.*, 7 F.3d 1085, 1088 (2d Cir. 2d Cir. 2000), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). As noted above, Plaintiff has been identified as White, and there are no facts in any of Plaintiff's submissions suggesting any otherwise class-based animus. When a claim under 42 U.S.C. § 1985(3) fails, a claim under 42 U.S.C. § 1986 fails as well. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

17    The Court has not included Defendants Lyn or Lynch, Harper, Brown, Corcoran, or Rowe on the list of those against whom dismissal is recommended for failure by Plaintiff to include any allegations of wrongdoing by them in the complaint because of the allegations against them in his TRO and preliminary injunction papers. (Dkt. No. 8-7 at 8.) The Court has recommended dismissal against school board members and administrators at the Cincinnatus School District and Norwich Central School for lack of factual allegations against them in the complaint. Because it appears that they have been named as Defendants with respect to claims involving Plaintiff's minor children, which should not be addressed by the District Court without the interests of the children being properly represented, the Court would recommend dismissal even if Plaintiff had included allegations to that effect.

18    While Plaintiff did not include specific factual allegations against Judge Campbell in his complaint, he did contend in his habeas corpus petition that Judge Campbell dismissed all of his Cortland County Family Court petitions and "apparently" placed a conditional discharge against Plaintiff. (Dkt. No. 1 at 41-42.)

19    Plaintiff also alleges that Terry Kuhn's buddy Frank Revoir was involved in the conspiracy. (Dkt. No. 1-2 at 11-2.) That is the sole mention of Revoir in the complaint. He has not been identified as a state actor and the wholly conclusory allegation that he was part of a conspiracy is insufficient to state a claim against him under § 1983. *See Dwares*, 985 F.2d at 100. Therefore the Court recommends dismissal of the complaint against Revoir and that the dismissal be with prejudice since the allegations in the complaint give no indication Plaintiff could state a claim against him.

20    As noted above, Plaintiff has alleged that the OCFS was part of a conspiracy to cover up sexual abuse against Plaintiff's minor children by a special education teacher which the Court has recommended be dismissed. There are no allegations in Plaintiff's complaint suggesting that Poole played any role in the alleged conspiracy.

21    A plaintiff bears the burden of establishing subject matter jurisdiction over his claims, including citing the relevant federal statute. *Cherry v. New York City Dept. of Corr.*, 698 Fed.Appx. 27, 2017 WL 4457140 (Mem), at *1 (2d Cir. Oct. 5, 2017.)

22    The Court intends for its recommendation for dismissal with prejudice to apply solely to Plaintiff and to have no impact on pursuit of the minor children's claims.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 200 of 338

23    The Court has refrained from considering the legal rights the minor children may have in connection with the alleged kidnaping.

24    If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 5198194
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Joseph ROTONDO, Plaintiff,

v.

The State of NEW YORK, Defendant.

5:17-cv-1065 (GLS/DEP)
|
Signed 11/09/2017

**Attorneys and Law Firms**

FOR PLAINTIFF: Michael Joseph Rotondo, 408 Weatheridge Dr. Camillus, NY 13031, pro se.

## **ORDER**

Gary L. Sharpe, U.S. District Judge

 **\*1** The above-captioned matter comes to this court following an Order, Report, and Recommendation (R&R) by Magistrate Judge David E. Peebles, duly filed on October 31, 2017. (Dkt. No. 5.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

Plaintiff *pro se* Michael Joseph Rotondo has filed a document labeled "Objections to the Report-Recommendation," which consists of a single sentence wherein he summarily "respectfully reasserts the merit of his allegations." (Dkt. No. 6.) Because Rotondo's objections are general and conclusory, the court will review the R&R for clear error only. *See Almonte v. N.Y.S. Div. of Parole*, No. Civ. 904CV484, 2006 WL 149049, at \*5-\*6 (N.D.N.Y. Jan. 18, 2006). After careful consideration, the court finds no clear error and adopts the R&R in its entirety.

Accordingly, it is hereby

**ORDERED** that the Order, Report, and Recommendation (Dkt. No. 5) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Rotondo's complaint (Dkt. No. 1) is **DISMISSED** without leave to amend; and it is further

**ORDERED** that Rotonodo's letter motion seeking to expedite review of this matter (Dkt. No. 4) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5198194

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 202 of 338

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5201738
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Joseph ROTONDO, Plaintiff,

v.

The State of NEW YORK, Defendant.

Civil Action No. 5:17-CV-1065 (GLS/DEP)
|
Signed 10/31/2017

**Attorneys and Law Firms**

MICHAEL JOSEPH ROTONDO, 408 Weatheridge Dr., Camillus, NY 13031, Pro se.

ORDER, REPORT, AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

**\*1** This is a civil rights action brought by *pro se* plaintiff Michael Joseph Rotondo against the State of New York pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that during the course of proceedings in New York State court, he was denied due process.

Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me for review. Based upon my review of those materials, I conclude that plaintiff qualifies for leave to proceed without prepayment of fees, and therefore will grant his IFP application. I further find, however, that plaintiff's claims in this action are precluded by the *Rooker-Feldman*[1] doctrine and the domestic relations exception to this court's jurisdiction.

I. BACKGROUND

Plaintiff commenced this action on September 25, 2017. Dkt. No. 1. Named as the sole defendant in the action is the State of New York. *Id.* at 1. Plaintiff claims that throughout the course of proceedings in the New York State Supreme Court Appellate Division, Fourth Judicial Department, he was denied due process when (1) Associate Justice Edward D. Carni declined to issue an order to show cause applied for by plaintiff to stay a support order entered in Onondaga County Family Court, and (2) the court dismissed his appeal from

lower court proceedings and denied a motion by plaintiff for a transfer of venue. *Id.* at 3, 5. *See also* Dkt. No. 1 at 8-11. In his three causes of action plaintiff claims that he was denied due process, as guaranteed under the Fourteenth Amendment to the United States Constitution, by Judges Edward D. Carni, John V. Centra, Patrick H. NeMoyer, Shirley Troutman, Joanne M. Winslow, Henry J. Scudder, Gerald J. Whalen, Nancy E. Smith, Erin M. Peradotto, Stephen K. Lindley, and John M. Curran.[2] *Id.* at 5.

Plaintiff's complaint is accompanied by an application for leave to proceed without prepayment of fees or costs. Dkt. No. 2. That application sets forth the necessary financial information concerning plaintiff's income and expenses to permit the court to determine whether he qualifies for IFP status.

II. DISCUSSION

A. IFP Application

**\*2** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[3] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application for leave to proceed without prepayment of fees is granted.[4]

B. Sufficiency of Plaintiff's Complaint

1. Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 203 of 338

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual

allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## 2. Analysis

Federal district courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must insure that the subject matter requirement is met, and may raise the question of jurisdiction *sua sponte* at any point in the litigation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997) ("[A] challenge to subject matter jurisdiction ... may be raised ... *sua sponte*." (quotation marks and alterations omitted)). "Where jurisdiction is lacking, ... dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In this case, two legal doctrines implicating this court's jurisdiction require dismissal of plaintiff's complaint—the domestic-relations exception and *Rooker-Feldman* doctrine. I will address each separately below.

### a. Domestic-Relations Exception

Because plaintiff's claims, brought under 42 U.S.C. § 1983, are couched in terms of constitutional deprivations, the court would ordinarily possess subject matter jurisdiction over them. 28 U.S.C. §§ 1331, 1343. There exists, however, a judicially recognized exception to federal subject matter jurisdiction in matters involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 204 of 338

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' " [5] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703).

**\*4** The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.*

In this case, it is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court. Dkt. No. 1 at 3, 6. In order to adjudicate plaintiff's claims, this court would be forced to examine the family court and Appellate Division decisions, and the evidence upon which those decisions were rendered, in the domestic relations proceedings. Because the court lacks jurisdiction over plaintiff's claims, I recommend the complaint be dismissed. *See, e.g., Kneitel v. Palos*, No. 15-CV-2577, 2015 WL 3607570, at \*4-5 (E.D.N.Y. June 8, 2015) (relying on the domestic-relations exception to federal court jurisdiction when dismissing the plaintiff's claims that challenged the state courts' determinations concerning his child support obligations).

### b. *Rooker-Feldman*

Plaintiff's claims are also precluded by the *Rooker-Feldman* doctrine, which recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates

to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

This preclusion "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, a role which Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

"A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.' " *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quotation marks omitted).

**\*5** The four elements required for the application of the *Rooker-Feldman* doctrine are clearly satisfied in this case. In his complaint, plaintiff effectively asks this court to assume appellate jurisdiction over matters pending in a New York State family court and the Appellate Division. Dkt. No. 1 at 3, 6. Because plaintiff's claims are precluded on this separate and independent basis, as well, I recommend their dismissal.

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil

**Rotondo v. New York, Not Reported in Fed. Supp. (2017)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 205 of 338

RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

III. SUMMARY AND RECOMMENDATION

Because plaintiff's IFP application demonstrates that he qualifies for leave to proceed without prepayment of fees or costs, that application is granted.

Turning to the merits of plaintiff's claims, I conclude that they are precluded by both the domestic relations exception to this court's jurisdiction and the *Rooker-Feldman* doctrine, and that

plaintiff would be unable to overcome these deficiencies by better pleading. Accordingly, it is hereby

ORDERED that plaintiff's application for leave to proceed without prepayment of cost and fees (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED without leave to amend; and it is further

RECOMMENDED that plaintiff's letter requesting the court expedite review of this matter (Dkt. No. 4) be DENIED as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[6] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

 *6 The clerk of the court is respectfully directed to serve a copy of this report, recommendation, and order on plaintiff in accordance with the local rules of practice for this court.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5201738

---

**Footnotes**

1    *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

2    As was previously indicated, the sole named defendant in this case is the State of New York. In the event that plaintiff intended to name the judges identified in his causes of action as defendants, his claims against them would be precluded. "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991)); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young*, 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin*, 320 F. Supp. 2d at 41.

3    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the

**Rotondo v. New York, Not Reported in Fed. Supp. (2017)**

governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4  Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

5  "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas*, 814 F. Supp. at 1146 (citations omitted).

6  If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Oliver v. Punter, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 207 of 338

2022 WL 3228272
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Albert OLIVER, Plaintiff,

v.

Ayesha PUNTER, Meridith Lafler, Support
Magistrate; Harmon Lutzer, Attorney; Steve Bellone,
Suffolk County Executive; SCCSEB, Defendants.

22-CV-3580(GRB)(LGD)
|
Signed August 10, 2022

**Attorneys and Law Firms**

Albert Oliver, Huntington Sta., NY, Pro Se.

## ORDER

GARY R. BROWN, United States District Judge:

**\*1** On June 16, 2022, *pro se* plaintiff Albert Oliver ("plaintiff") filed a complaint in this Court against Ayesha Punter ("Punter"), Meridith Lafler ("Lafler"), Harmon Lutzer ("Lutzer"), Suffolk County Executive "Steve Bellone" ("Bellone"), and "SCCSEB"[1] (collectively, "defendants") using the Court's form for civil rights actions brought pursuant to 42 U.S.C. § 1983. *See* Docket Entry "DE" 1. Plaintiff also filed an application to proceed *in forma pauperis* ("IFP") together with the complaint. DE 2.

Upon review, the Court finds that plaintiff is qualified by his financial status to commence this action without prepayment of the filing fee. Accordingly, plaintiff's application to proceed IFP is granted. However, for the reasons that follow, the complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. §§ 1915(e)(2)(B).

## BACKGROUND

### 1. Summary of the Complaint[2]

*Pro se* plaintiff's brief submission seeks to challenge an underlying state court child support proceeding. According to the complaint, at the Family Court building located in Central Islip, New York:

On April 26, 2022 both Support Magistrate Meridith Lafler and Attorney Harmon Lutzer held a support hearing without following the rules of Due Process. On May 25, 2022, Support Magistrate Meridith Lafler disregarded Due Process by not following the rules of Due Process.

DE 1 at 5, ¶ III. Although plaintiff left the space on the form complaint that calls for a description of any injuries suffered as a result of the challenged conduct blank, he seeks to recover a monetary damages award in the sum of $240,222.00 as well as an order terminating any debts or arrears owed and the return of funds he already paid together with 6% interest. *Id.* at 6, ¶¶ IV-V. Plaintiff also requests that the defendants "[l]eave me alone from this forthwith." *Id.* at ¶ V.

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure wherein the district court first considers whether plaintiff qualifies for *in forma pauperis* status, and then considers the merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### 1. *In Forma Pauperis*

Upon review of the IFP application, the Court finds that plaintiff is qualified by his financial status to commence this action without the prepayment of the filing fee. Therefore, the application to proceed IFP (DE 2) is granted.

### 2. Sufficiency of the Pleadings

As Judge Bianco summarized,

A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes

Oliver v. Punter, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 208 of 338

such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).

**\*2** It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them " 'to raise the strongest arguments that [they] suggest [ ].' " *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, ––– U.S. ––––, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at \*1-2 (E.D.N.Y. Dec. 31, 2014).

### DISCUSSION

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id.* The Court analyzes plaintiff's Section 1983 claims below.

### I. Lack of State Action

"[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). Although plaintiff names Punter and Lutzer as defendants, he has not alleged that either defendant is a state actor or has otherwise acted under color of state law. *See* DE 1, *in toto*. Accordingly, plaintiff has not plausibly alleged a Section 1983 claim against Punter and Lutzer and these claims are thus dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### II. Lack of Personal Involvement

**\*3** Plaintiff's sparse complaint does not include any factual allegations of conduct or inaction attributable to any of the defendants. Indeed, apart from the caption and "Parties" section of the complaint, Punter, Bellone, and SCCSEB are not again mentioned. *See* DE 1, *in toto*. Moreover, plaintiff has alleged only that Lafler and Lutzer "held a Support Hearing without following the rules of Due Process." *Id.* at 5, ¶ III.C.

Oliver v. Punter, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 209 of 338

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations marks omitted). "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Moreover, an individual will not be held liable by virtue of his or her supervisory position alone. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Rather, as the Second Circuit Court of Appeals recently made clear, "there is no special rule for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d. 609, 620 (2d Cir. 2020). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

Here, as is readily apparent, Plaintiff has omitted any factual allegations of conduct or inaction attributable to any defendant and his "bald assertions and conclusions of law" do not suffice. Thus, in the absence of any alleged personal involvement by any defendant, plaintiff has not set forth a plausible Section 1983 claim against them. Thus, plaintiff's Section 1983 claims are not plausible and are thus dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### III. The Domestic Relations Exception

Even if Plaintiff had alleged the personal involvement of each defendant, this Court could not adjudicate his claims challenging an underlying state court child support proceeding. The domestic relations exception to federal jurisdiction " 'divests the federal courts of power to issue divorce, alimony and child custody decrees.' " *Stumpf v. Maywalt*, No. 21-CV-06248(EAW), 2022 WL 2062613, at *4 (W.D.N.Y. June 6, 2022) (quoting *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (citation omitted)). This exception also extends to child support determinations and the enforcement thereof. *See, e.g.*, *Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau*, 07-CV-03755(JFB)(AKT), 2009 WL 580426, at *6-7 (E.D.N.Y. Mar. 5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment

regarding child support arrears, or the County's enforcement of that judgment"); *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (plaintiff's constitutional claims, which were directly related to an underlying child support determination, were barred by the domestic relations exception because "to decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings," which "is the role of the Appellate Division ... not the role of this Court."). Thus, the domestic relations exception divests the Court of subject matter jurisdiction to adjudicate plaintiff's Section 1983 claims. Accordingly, they are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3). [3]

### IV. Leave to Amend

**\*4** The Second Circuit has held that "[d]istrict courts should generally not dismiss a *pro se* complaint without permitting at least one opportunity to amend, but granting leave to amend is not necessary when it would be futile." *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Where a complaint has been dismissed for lack of subject matter jurisdiction, denial of leave to amend on the basis of futility may be appropriate. *Rahim v. Secretary, Establishment Div., Gov't of People's Republic of Bangl.*, 481 F. App'x 18, 19 (2d Cir. 2012) (affirming district court's dismissal of *pro se* plaintiff's complaint without leave to amend where complaint was dismissed for lack of subject matter jurisdiction).

Here, leave to amend would be futile given that the domestic relations exception divests this Court of subject matter jurisdiction. Accordingly, leave to amend the complaint is denied.

### CONCLUSION

Based on the foregoing, plaintiff's application to proceed IFP is granted. The complaint is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). Leave to further amend the complaint is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Oliver v. Punter, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 210 of 338

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3228272

## Footnotes

1      The Court understands this to reference the Suffolk County Child Support Enforcement Bureau.

2      Excerpts from the complaint are reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

3      It also appears that plaintiff is challenging state court judgments rendered in April and May 2022, well before the complaint was filed in this Court on June 16, 2022. Thus, the *Rooker-Feldman* doctrine would also require this Court to decline plaintiff's invitation to review and reject those state court judgments. *Stumpf*, 2022 WL 2062613, at 4 n. 4 ("The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (internal quotation marks omitted)); *Fernandez v. Turetsky*, No. 12-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).

---

2024 WL 1464346
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,

v.

Myra MONTAQUE, Defendant.

5:24-cv-0223 (BKS/TWD)
|
Signed April 4, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, pro se, PO Box 7124,
Syracuse, NY 13261.

### REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

#### I. INTRODUCTION

 *1  The Clerk has sent to the Court for review five
submissions filed by *pro se* plaintiff Ellis Davon Dudley, II
("Plaintiff"), as well as a motion to proceed *in forma pauperis*
("IFP"). Dkt. No. 1; Dkt. No. 2. For the reasons stated below,
the Court recommends Plaintiff's pleadings be dismissed.

#### II. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks
leave to proceed IFP. Dkt. No. 2. Upon review, Plaintiff's IFP
application demonstrates economic need. *See id.* Therefore,
he is granted permission to proceed IFP.

#### III. PLAINTIFF'S SUBMISSIONS

Plaintiff's first submission is a document labeled "NOTICE
OF REMOVAL" which purports to remove to this Court "all
claims and causes of action in the civil action styled IV-D
Support Myra Montaque against Ellis Dudley Jr., File# 31274
Docket# F-06437-22 ... now dismissed in the Onondaga
County Family Court .... pursuant to 28 U.S.C. § 1331, 28
U.S.C. 1441, 42 U.S.C. 660." Dkt. No. 1. [1], [2] He next lists
fifteen "grounds for removal" which appear to invoke this
Court's federal question jurisdiction under 28 U.S.C. § 1331.
*See id.* at 1-2. The document further states "A copy of all

process, pleadings and orders served upon defendants to date
in the State Court Attached are all instruments filed under this
situation." *Id.* at 2.

Plaintiff's next two submissions appear to contain, *inter alia*,
materials related to proceedings between himself and Myra
Montaque in Onondaga County Family Court. *See generally*,
Dkt. Nos. 1-1, 1-2. The filings contain, but are not limited
to: notices and summons to appear; an Order of Support by
Default, dated April 11, 2023; findings of fact; notices of
motions; orders dismissing petitions to vacate; a notice of
appeal; a brief to the Appellate Division, Fourth Department;
and transcripts. *See id.*

Plaintiff also submitted a document captioned
"CERTIFICATE OF SERVICE BY MAIL." *See* Dkt. No.
1-3 at 1. The document, dated February 14, 2024, indicates
Plaintiff served a copy of the "Notice of Removal and
Exhibits" on "Myra Montaque" by depositing a copy of the
documents in a mailbox. *Id.*

Finally, Plaintiff submitted a "CIVIL COVER SHEET." *See*
Dkt. No. 1-4 at 1. He indicated this Court has federal question
jurisdiction over the present matter. *Id.* In the nature of
suit portion of the sheet, Plaintiff checked the following
boxes: Negotiable Instrument, Recovery of Overpayment,
Other Contract, Contract Product Liability, Personal Injury
- Product Liability, Other Fraud, Commerce, Administrative
Procedure Act/Review or Appeal of Agency Decision, and
Constitutionality of State Statutes. *Id.* Plaintiff indicated the
case was removed from state court, identified "42 U.S.C.
1981" as the statute under which he filed, and listed "Contract
Product liability" as a brief description. *Id.* His sole listed
demand is for "full Disclosures." *Id.* Finally, Plaintiff listed
Docket Number "F-02393-21" as a related case before Judge
"Jefferey A Dom." *Id.*

#### IV. STANDARD OF REVIEW

 *2  Section 1915 of Title 28 requires a district court
to dismiss an IFP complaint if the action is frivolous or
malicious, fails to state a claim upon which relief may be
granted, or seeks monetary relief against a defendant who
is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)
(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d
434, 437 (2d Cir. 1998). The Court must also dismiss a
complaint, or portion thereof, when the Court lacks subject
matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not

required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

 **\*3** Even affording Plaintiff's filings a liberal construction, his submissions are difficult to decipher and fail to provide sufficient factual information for the Court to review or for the Defendant(s) to have notice of any claims against them. Therefore, the Court recommends this action be dismissed.

As an initial matter, the Court notes Plaintiff has not filed a complaint. While a plaintiff's initial filing(s) need not be titled "complaint," *see, e.g., Muhammad v. Smith*, No. 3:13-CV-0760 (MAD/DEP), 2013 WL 5652495, at \*2 (N.D.N.Y. Oct. 16, 2013) (construing the plaintiff's initial filings as a complaint), *report and recommendation adopted in part, rejected in part*, 2014 WL 3670609 (N.D.N.Y. July 23, 2014), here, the Plaintiff's submissions lack any document which comports with the Federal Rules' pleading requirements.

Under Rule 8, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (citing *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)) (emphasis omitted). Here, the Plaintiff's filings are entirely devoid of a statement of any claim against Montague.

Furthermore, Plaintiff's submissions lack factual allegations against Montague. From what the Court can glean, Plaintiff's contentions arise from a petition to vacate an Order of Support by Default, issued by Onondaga County Family Court, which was itself dismissed by that Court prior to the commencement of this action. *See* Dkt. No. 1 at 1; Dkt. No. 1-1 at 1, 3. While Dkt. No. 1 references a multitude of federal statutes, none of Plaintiff's statements constitute allegations *against Montague.* Indeed, the Defendant's name appears only in the document's caption. Accordingly, dismissal of any "claim" against Montague is warranted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See, e.g., Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (Although the Court is "obligated to draw the most favorable inferences that [the Plaintiff]'s complaint supports, we cannot invent factual allegations that he has not pled."); *Drawhorne v. Aloise*, No. 6:23-CV-1278 (TJM/

TWD), 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (dismissing the plaintiff's claims against an individual where the plaintiff listed the individual "as a defendant in the caption of his complaint but fails to assert any allegations against him or her."), *report and recommendation adopted*, 2024 WL 532572 (N.D.N.Y. Feb. 8, 2024); *Joseph v. Annucci*, 7:18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants that were "named in the caption only" where "[t]he body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured Plaintiff in some manner.").

In any event, it is likely any claim based on these facts would be barred. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Id.* (citing *Sims v. Kaufman*, No. 1:23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, No. 14-CV-4568, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases ... in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016). Therefore, to the extent Plaintiff seeks to challenge a final judgment of Onondaga County Family Court, any such claim is barred by the *Rooker-Feldman* doctrine. *See, e.g., Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims, while not entirely clear, seem to challenge an order ... in which the Family Court determined that he owes child support .... Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine ....") (citation omitted), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023). [3]

**\*4** Furthermore, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce,

alimony, and child custody remain outside this Court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also, e.g., Oliver v. Punter*, No. 2:22-CV-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce, alimony and child custody decrees .... This exception also extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted). Accordingly, this Court lacks jurisdiction to adjudicate a claim involving issues of child custody and support. *See Rotondo v. New York*, No. 5:17-CV-1065 (GLS/DEP), 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *report and recommendation adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017); *Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

Although this Court has serious doubts, it is not clear whether Plaintiff could assert a cognizable cause of action against Defendant by way of a better pleading. Therefore, out of an abundance of caution and in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed with leave to amend. If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted, which Plaintiff has a legal right to pursue, and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION
**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [4] and it is

**RECOMMENDED** that Plaintiff's claims be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5] Such objections shall be filed with

the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1464346

---

## Footnotes

1   Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

2   This matter was directly assigned to this Court by text order, *see* Dkt. No. 4, as deemed related to *Dudley v. Burgos et al.*, No. 5:24-CV-0223 (BKS/TWD), another action commenced by Plaintiff and assigned to this Court. The Court also takes judicial notice of a third action currently pending in this district, *Dudley v. Hochul et al.*, No. 5:24-CV-0048 (DNH/ML), which Plaintiff commenced by filing a complaint on January 11, 2024.

3   Alternatively, "in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971); *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *11 (N.D.N.Y. Jan. 26, 2022)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, No. 2:19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.') (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, No. 8:19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019).

4    Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

5    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                            © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   5

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 216 of 338

2019 WL 3759174
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert G. BOWMAN, Plaintiff,

v.

Honorable Cecily L. MORRIS, Judge-New York State
Family Court for the County of St. Lawrence, Defendant.

8:19-cv-00097 (BKS/DJS)
|
Signed 08/09/2019

**Attorneys and Law Firms**

Plaintiff pro se: Robert G. Bowman, Gouverneur, New York.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

**\*1** On January 24, 2019, Plaintiff pro se Robert G.
Bowman filed this action for declaratory and injunctive
relief naming Honorable Cecily L. Morris, a judge in St.
Lawrence County Family Court, as a defendant. (Dkt. No. 1).
This matter was referred to United States Magistrate Judge
Daniel J. Stewart, who, on April 10, 2019, issued a Report-
Recommendation recommending, among other things, that
the Complaint be dismissed because the Court lacks subject-
matter jurisdiction. (Dkt. No. 7). Magistrate Judge Stewart
concluded that: the Complaint does not identify a federal
statutory right enforceable under 42 U.S.C. § 1983; in any
event, under the *Rooker-Feldman* doctrine and the domestic-
relations exception to federal subject-matter jurisdiction,
this Court does not have jurisdiction to consider Plaintiff's
challenge to the St. Lawrence County Family Court orders;
and the *Younger* abstention doctrine prevents this Court from
interfering with any ongoing proceedings in St. Lawrence
County Family Court. (Dkt. 7, at 5-14). Plaintiff has filed
an objection to Magistrate Judge Stewart's determination that
this Court lacks jurisdiction. (Dkt. No. 9). For the reasons
set forth below, the Report-Recommendation of dismissal
for lack of subject-matter jurisdiction is adopted and the
Complaint is dismissed.

**II. STANDARD OF REVIEW**

This court reviews de novo those portions of the Magistrate
Judge's findings and recommendations that have been
properly preserved with a specific objection. 28 U.S.C. §
636(b)(1)(C); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29
(N.D.N.Y. 2012). Findings and recommendations for which
there was no properly preserved objection are reviewed for
clear error. *Id.*

**III. DISCUSSION**

Plaintiff filed this Complaint "seek[ing] to enforce" 42 U.S.C.
§ 667(b)(2), which allegedly entitles him to the "opportunity
to rebut the presumptive child support award" that Plaintiff
was ordered to pay. (Dkt. No. 1, at 1). Plaintiff alleges that
§ 667(b)(2) "confers a personal right upon the plaintiff that
is enforceable under [42 U.S.C.] § 1983. (*Id.*). Plaintiff has
identified two orders of the St. Lawrence County Family
Court ("Family Court"), filed in 2003 and 2007, that he claims
should be modified or vacated. (*Id.* at 3). On March 16, 2016,
Plaintiff submitted an application to show cause in Family
Court, seeking to "modify, terminate, and vacate those parts
of the child support order plaintiff was no longer legally
obligated to pay," but Defendant Judge Morris denied his
application. (*Id.* at 1–2). Plaintiff filed a motion to reargue
and renew, which the Family Court denied, and an appeal
to the New York Supreme Court's Appellate Division, Third
Department, which was dismissed. (*Id.* at 4–6). *St. Lawrence
County Support Collection Unit ex rel. Bowman v. Bowman*,
152 A.D.3d 899, 899–900 (3d Dep't 2017), *appeal dismissed*,
30 N.Y.3d 1032 (2017).[1] In this action Plaintiff seeks,
among other things, a declaration that Judge Morris's conduct
violates 42 U.S.C. § 667(b)(2) and "plaintiff's right of access
to the courts guaranteed by the First Amendment," as well
as an injunction restraining Judge Morris from any further
violations of § 667(b)(2).

**\*2** In a thorough Report-Recommendation, Magistrate
Judge Stewart concluded that § 667(b)(2) does not create
a right that is enforceable under § 1983 and that, even if
there were an enforceable federal right, under the *Rooker-
Feldman* doctrine and the domestic-relations exception to
federal subject matter jurisdiction, this Court does not have
jurisdiction to consider Plaintiff's claims. Further, Magistrate
Judge Stewart determined that, under the *Younger* abstention
doctrine, the Court must abstain from exercising jurisdiction
to interfere with any ongoing proceedings in Family Court.
Magistrate Judge Stewart thus concluded, *inter alia*, that the
Court lacks subject-matter jurisdiction and the Complaint
should be dismissed.

Plaintiff argues that Magistrate Judge Stewart erred in concluding that the Complaint is insufficient to confer jurisdiction. (Dkt. No. 9). Plaintiff himself describes his Complaint as a challenge to "the Family Courts refusal to allow the plaintiff an opportunity to rebut the presumptive child support award contained in [the 2003, 2007 and 2011] child support orders as is mandated by 42 U.S.C. 667[(b) (2)]." (Dkt. No. 9, at 3). For the reasons explained by Magistrate Judge Stewart, the domestic-relations exception and the *Rooker-Feldman* doctrine divest this Court of jurisdiction to consider that challenge. (Dkt. No. 7, at 11– 13). Plaintiff argues that *Rooker-Feldman* does not preclude a § 1983 action, citing *Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014). But *Teichmann* does not provide any support for subject-matter jurisdiction here. In *Teichmann*, the Second Circuit affirmed the dismissal of a § 1983 action for failure to state a claim because the defendant prosecutor and other state officials had absolute immunity. Since the plaintiff was seeking to vacate his conviction, the Second Circuit noted that its decision found "additional support in the principle that animates the *Rooker-Feldman* doctrine: namely that federal district courts do not have authority to review the judgments of state courts." *Teichmann*, 769 F.3d at 826. Plaintiff relies on the Court's subsequent statement: that *Rooker-Feldman* "does not preclude a § 1983 action or a hypothetical direct constitutional tort action, against a state official who violates a plaintiff's constitutional rights." *Id.* Indeed, as the Second Circuit later noted, only those § 1983 plaintiffs who "complain of an injury caused by a state judgment" are subject to the *Rooker-Feldman* bar. *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007). Here, because Plaintiff's complaint seeks review and rejection of a state court judgment—i.e., a declaration that Judge Morris's orders violated the First Amendment and § 667(b)(2)—his claims are barred by *Rooker-Feldman*.

Plaintiff argues that Magistrate Judge Stewart erred in concluding that § 667(b)(2) does not provide a personal federal right enforceable under 42 U.S.C. § 1983. But the Court need not consider whether Plaintiff has raised a colorable federal claim under § 1983 for the purposes of subject-matter jurisdiction because, regardless of whether § 667(b)(2) creates a personal right enforceable under § 1983, the *Rooker-Feldman* doctrine and the domestic-relations exception divest this Court of jurisdiction to consider Plaintiff's challenge to Judge Morris's decisions. The Court therefore adopts Magistrate Judge Stewart's recommendation that this action be dismissed for lack of subject-matter jurisdiction.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 7) recommending that this action be dismissed for lack of subject-matter jurisdiction is **ADOPTED**; and it is further

**\*3 ORDERED** that Plaintiff's complaint is **DISMISSED** without prejudice for lack of subject-matter jurisdiction; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3759174

## Footnotes

1    In its recitation of the facts, the Third Department noted that the Family Court "declined to issue the order to show cause, finding that [Plaintiff] failed to file timely written objections to the three [child support] orders ... and, as to the money judgment, [Plaintiff] failed to establish a reasonable excuse for his default." *Bowman*, 152 A.D. 3d at 899.

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 218 of 338

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

2019 WL 5150196
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert G. BOWMAN, Plaintiff,

v.

Honorable Cecily L. MORRIS, Judge, New York State
Family Court: County of St. Lawrence, Defendant.

Civ. No. 8:19-CV-97 (BKS/DJS)
|
Signed 04/10/2019

**Attorneys and Law Firms**

ROBERT G. BOWMAN, Plaintiff, Pro Se, 104 Prospect
Street, Gouverneur, NY 13642.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by
Plaintiff Robert Bowman. Dkt. No. 1, Compl. Plaintiff has not
paid the filing fee, but instead submitted a Motion to Proceed
*in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate
Order, this Court granted Plaintiff's Application to Proceed
IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court
will *sua sponte* review the sufficiency of the Complaint.

## I. INTRODUCTION

The following facts are drawn from the *pro se* Complaint
as well as the third Department decision of *St. Lawrence
Cty. Support Collection Unit ex rel. Bowman v. Bowman*, 152
A.D.3d 899 (N.Y. App. Div.), *appeal dismissed sub nom. St.
Lawrence Cty. Support Collection Unit v. Bowman*, 30 N.Y.3d
1032 (2017), which is referred to and specifically referenced
in the Complaint.[1] *See* Compl. at ¶¶ 32-35. Plaintiff is the
subject of a St. Lawrence County Family Court order of child
support. Compl. at ¶¶ 15-24; *Bowman*, 152 A.D. 3d at 899. At
issue in this proposed federal action is a 2003 Family Court
consent order regarding child support, a December 2007
consent order, and a November 2011 modification order. *Id.*
Further, in 2015, Plaintiff's ex-wife, through the St. Lawrence
County Support Collection Unit, commenced a proceeding
in state court alleging that Plaintiff willfully failed to make

payments required by the November 2011 order. *Id.* As a
result of that action, a money judgment was entered against
Plaintiff. *Id.*

In March 2016, Plaintiff filed an *ex parte* motion to show
cause in St. Lawrence Family Court asking the court to vacate
the 2003, 2007, and 2011 support orders. *Id.* The Family Court
denied Plaintiff's motion on timeliness grounds, as well as
his failure to establish a reasonable excuse for his default.
*Id.* Plaintiff appealed that denial to the Appellate Division,
Third Judicial Department. The Third Department rejected
Plaintiff's appeal upon the grounds that an appeal of an *ex
parte* motion to issue an order to show cause is not available
as of right, and that Plaintiff failed to provide an argument for
relief on the merits pursuant to CPLR 5704(a). *Bowman*, 152
A.D.3d at 899. Thereafter, the Court of Appeals dismissed
Plaintiff's appeal to that Court, noting that the order appealed
from does not finally determine the proceedings within the
meaning of the Constitution. *Bowman*, 30 N.Y. 3d 1032.
Having failed at all levels of state court review, Plaintiff now
commences this action pursuant to 42 U.S.C. § 1983. While
the Complaint specifically asks for declaratory and injunctive
relief, it is clear that the primary focus of what Plaintiff seeks
is an invalidation of the previously issued support orders. *See*
Compl. at ¶ 46 ("As a direct and approximate (sic) result
of Defendant[']s violation of plaintiff's federal right under
42 USC 667(b)(2), plaintiff has suffered severe ... financial
injuries.").

## II. DISCUSSION

**\*2** Section 1915(e) of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed *in forma
pauperis*, "the court shall dismiss the case at any time if the
court determines that ... the action or appeal (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may
be granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).
Thus, it is a court's responsibility to determine that a plaintiff
may properly maintain his complaint before permitting him
to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly*,
912 F.2d 605, 606 (2d Cir. 1990), and should exercise
"extreme caution ... in ordering sua sponte dismissal of a
pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had an

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 219 of 338

**Bowman v. Morris, Not Reported in Fed. Supp. (2019)**

opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id. at 679* (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015).

### A. Jurisdiction

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of Plaintiff's *pro se* status, the Court will *sua sponte* assess whether subject matter jurisdiction is present in this case. *Kruglov v. Copart of Connecticut, Inc.*, 2018 WL 1399332, at *3 (N.D.N.Y. Jan. 16, 2018), *report and recommendation adopted*, 2018 WL 1399337 (N.D.N.Y. Mar. 19, 2018).

**\*3** In the present case, Plaintiff cites to a violation of federal statutory and constitutional law relating to child support awards, and seeks redress under the Civil Rights Statute, 42 U.S.C. § 1983. The jurisdictional issues in this case are therefore multifaceted. Does the federal statute at issue create rights enforceable under section 1983? Does the First Amendment right of access cause of action state a claim? Even if the answer to either of these questions is yes, are there exceptions to the Court's jurisdiction which preclude the Court from assuming jurisdiction over the claims?

### B. The Proposed Laws Action

42 U.S.C. § 1983 makes actionable not only constitutional violations but also violations of those rights secured by the "laws." However, not every violation of a federal law is enforceable under section 1983, and it is incumbent upon a prospective 1983 plaintiff to assert a violation of a federal "right" and not simply that he or she benefits from the federal law. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). The Supreme Court's most recent laws decision emphasizes that, to be enforceable by a private plaintiff under section 1983, the statute must establish an "unambiguously conferred right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (holding that the Federal Education Rights Privacy Act did not support a section 1983 claim as the provisions of the statute relied upon "contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the ... distribution of public funds....").

The Supreme Court has provided specific guidance regarding the federal statute at issue in the present lawsuit, Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b. In *Blessing*,

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 220 of 338

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

five mothers due child support payments brought a section 1983 suit claiming that they had a right to have the State of Arizona substantially comply with the federal mandate regarding its child-support enforcement programs, especially as it relates to support payments. *Blessing v. Freestone*, 520 U.S. at 333-34. The plaintiffs, in justifying their claim, relied upon the statute's provision that in the event that the State had not substantially complied with the dictates of the federal law, the Secretary of the Department of Health and Humans Services could reduce the federal grant to that particular state. *Id.* at 335; 42 U.S.C. § 609(a)(8); 45 C.F.R. § 305.20 (1995).

The Supreme Court agreed that the plaintiffs in the action benefitted from the federal statute, and further, that Arizona's efforts under the statute were "less than stellar," but, nevertheless, it did not authorize a section 1983 claim based upon the facts presented. In reviewing the remedial scheme, the Supreme Court concluded:

> Far from creating an *individual* entitlement to services, the [substantial compliance] standard is simply a yardstick for the Secretary to measure the *systemwide* performance of the State's Title IV-D program. Thus, the Secretary must look to the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied.... Moreover, even upon a finding of substantial noncompliance, the Secretary can merely reduce the State's AFDC grant by up to five percent; she cannot, by force of her own authority, command the State to take any particular action or to provide any services to certain individuals. In short, the substantial compliance standard is designed simply to trigger penalty provisions that increase the frequency of audits and reduce the State's AFDC grant by a maximum of five percent. As such, it does not give rise to individual rights. [2]

**\*4** *Blessing v. Freestone*, 520 U.S. at 343-44 (emphasis in the original).

In the present case, Plaintiff seeks to avoid the effect of a judgment for failure to pay child support, and to declare illegal the child support obligation identified by the Family Court. Plaintiff points to 42 U.S.C. § 667, "State guidelines for child support awards," and notes that it creates a rebuttable presumption that a support award should be within such guidelines. 42 U.S.C. § 667(b)(2). That Statute states in pertinent part, as follows:

**(a) Establishment of guidelines; method**

Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the state....

**(b) Availability of guidelines; rebuttable presumption**

**(2)** There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, *as determined under criteria established by the State*, shall be sufficient to rebut the presumption in that case.

*Id.* (emphasis added).

In his Complaint, Plaintiff does not allege that the State of New York did not create such guidelines, or that the support order applied to him does not in fact fall within those guidelines; indeed a careful reading of his Complaint confirms that it does. Compl. at ¶ 43 ("Plaintiff's[ ] application for the issuance of an order to show cause, was legally sufficient to overcome the presumptive child support award ..."). He maintains instead that the Family Court erred when it failed to accept his rebuttal argument [3] that the guidelines should not apply in his case upon the grounds that they are unjust or inappropriate. Compl. at ¶¶ 36-48. [4]

The Complaint, as it presently stands, is insufficient to confer jurisdiction upon the federal courts. The provisions of Title IV-D relied upon by Plaintiff do not create an individualized right to have a federal court review his support order. While the statute refers to the establishment of child support award

guidelines, it makes clear that they are exactly that: guidelines to which exceptions can be made. The statute does indicate that in the event that the state were to apply an award outside the presumptive guidelines, that it should set forth its reasons for doing so, relying upon guidelines to be set by the state. 42 U.S.C. § 667(b)(2). The statute says nothing more, and certainly provides no guidance for federal courts to calculate a below-guideline support order. In other words, the statutory provision sets forth general standards concerning support award guidelines applicable to the states, but it does not create individualized federal rights. At no point does the statute state, or even intimate, that an affected parent has a claim in federal court based upon that parent's belief that a particular state child support order is in error. *De La Cruz v. Irizarry*, 946 F. Supp. 2d 244, 254 (D.P.R. 2013) ("Here, the statute does not contain any rights-creating language or focus on individuals. Rather, the statute simply imposes a requirement on states to periodically review their child support guidelines. *See* § 667. Therefore, no private right of action is available to Plaintiffs to enforce § 667 by way of § 1983."); *see also Jones v. State*, 2014 WL 4630933, at *1 (W.D. Mo. Sept. 16, 2014) ("[T]he Family Support Act of 1988, Pub.L. 100-485, required the states to enact mandatory, or presumptively correct, guidelines for awards of child support in order to continue to participate in the federal Aid to Families with Dependent Children Program; and to operate child support enforcement programs. The Act makes no provision for suit by private parties in federal court.").

**\*5** Accepting Plaintiff's argument that federal courts should utilize this statute to confer jurisdiction and decide child support orders would violate nearly all the traditional "rights-creating" requirements identified by the Supreme Court. As noted above, there is no indication that the statute itself was intended to benefit Plaintiff in particular. *Cuvillier v. Taylor*, 503 F.3d 397, 406 (5th Cir. 2007) (construing the child support provisions of Title IV-D, and noting that "individuals may be beneficiaries even though Congress did not confer a right on them."). The statute itself does not establish individual rights with sufficient specificity so that they are capable of enforcement by the federal courts. *Blessing v. Freestone*, 520 U.S. at 340-41. That a particular parent may rebut the projected support guidelines by a standard that is left to be developed by the states, certainly falls under the category of "vague and amorphous." *Id.* Further, the enforcement statute provided for in the support section of Title IV-D is limited to lawsuits by states, and only where there has been preapproval by the Secretary of Health and Human Services. 42 U.S.C. §§ 652(a)(8) & 660.

Accordingly, the Complaint as presently pled does not identify a particular right created by a federal statute enforceable under section 1983, and therefore it should be dismissed at this initial stage. However, even if an enforceable federal right were identified, this case runs afoul of other exceptions to federal court jurisdiction.

### 1. The Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted) (citation omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, as the present *pro se* Complaint seeks to overturn a child support decision of the St. Lawrence County Family Court, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at *5 (N.D.N.Y. Sept. 15, 2017); *see also McArthur v. Bell*, 788 F. Supp. 706, 708-09 (E.D.N.Y. 1992) ("[T]o decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings.... That is not the role of this Court.").

### 2. The Rooker-Feldman Doctrine

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed. Appx. 16, 18 (2d Cir. 2013). This doctrine "divests federal courts of jurisdiction to

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 222 of 338

consider suits which seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Here, Plaintiff is challenging the support judgment entered against him, and therefore all four elements of *Rooker-Feldman* are present in this case, and the matter should be dismissed. *Fernandez v. Turetsky*, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 Fed. Appx. 103 (2d Cir. 2016) ("Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases); *see also Dinsio v. Appellate Div., Third Dep't*, 2017 WL 3016832, at *10-12 (N.D.N.Y. July 14, 2017), *reconsideration denied*, 2018 WL 1156005 (N.D.N.Y. Mar. 5, 2018).

### 3. Younger Abstention

**\*6** In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971). The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal prosecutions"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings. *Id.* at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by

their parents)); *see also Davis v. Baldwin*, 594 Fed. Appx. 49, 51 (2d Cir. 2015) (summary order) (same). In this case Plaintiff specifically seeks injunctive relief "restraining the Defendant ... from any further violations of Title IV-D." Compl. at ¶ 68(7). Such relief would make little sense, or be moot, if proceedings were not ongoing in Family Court. Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### C. Plaintiff's First Amendment Right of Access Claim

Plaintiff's Second Cause of Action, also seeking declaratory relief, alleges that Plaintiff's inability to challenge, in Family Court, the presumptive child support award calculated under New York States' child support guidelines, violates his First Amendment right of access to the courts. Compl. at ¶¶ 49-67. The Supreme Court has generally recognized this type of claim. *See Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971) ("... the State's refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process."). As the Supreme Court has further articulated, however, a backward-looking right of access claim generally alleges that official action is presently denying the plaintiff the opportunity to litigate his case, and seeks to remove that frustrating condition. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). Of course, due process is not necessarily violated every time a defendant in a civil case does not have a merits hearing. The Supreme Court has noted as an example that this may occur where a defendant does not timely respond and a default is entered. *Boddie v. Connecticut*, 401 U.S. at 375-78.

In the present case it is difficult to discern exactly what Plaintiff's right of access claim really is, and as such Plaintiff's second cause of action fails to state a claim. In the event that Plaintiff is resting his claim upon the rebuttable presumption set forth in 42 U.S.C. § 667(b)(2), as noted *supra*, there are no actionable individual federal rights that flow from that statute.

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 223 of 338

Plaintiff cannot simply resurrect a faulty "laws" action by construing it as a right of access claim.

While the Court would normally allow Plaintiff an opportunity to replead a cause of action that fails to state a claim, any such right of access claim would also run contrary to the jurisdictional limitations previously detailed in this opinion, including the domestic relations exception and the *Rooker-Feldman* doctrine. *See Kneitel v. Palos*, 2015 WL 3607570, at *4-5 (E.D.N.Y. June 8, 2015) ("However characterized, Plaintiff's claims fundamentally challenge state court child support orders."). In addition, to the extent Plaintiff seeks to use this claim to essentially appeal unfavorable determinations in state court, "[d]istrict courts 'do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional,' and '[r]eview of those decisions may be had only' in the Supreme Court of the United States." *Cassidy v. Madoff*, 2018 WL 5792786, at *5 (N.D.N.Y. Nov. 5, 2018) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). Therefore, Plaintiff's second cause of action should be dismissed.

### D. Plaintiff's State Law Claims

**\*7** Plaintiff attempts, possibly, to assert state law claims against Judge Morris based upon alleged violations of the New York State Family Court Act and the Domestic Relations Law. Compl. at ¶¶ 56-59. In light of the recommendation that all of Plaintiff's federal claims against Judge Morris be dismissed, the Court also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law and state constitutional claims, without prejudice, subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's federal claims. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Medina v. Cuomo*, 2015 WL 13744627, at *15 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2016 WL 756539 (N.D.N.Y. Feb. 25, 2016).

### III. CONCLUSION

Plaintiff requests that the federal court review his state court support award in light of his particular financial condition and conclude that the Family Court judge's determination was in error. This it should not, and cannot, do. Plaintiff points to the federal statute regarding guidelines for child support, but that statute creates no individually enforceable rights. Plaintiff's First Amendment access to the courts claim is factually and legally defective. Having considered the viability of the Complaint under the applicable standard of review, the Court has concluded that Plaintiff fails to state a claim upon which relief could be granted and that the Court lacks jurisdiction to hear the matter. As such, his entire Complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

In light of his *pro se* status, the Court would typically, prior to outright dismissal, afford Plaintiff the opportunity to amend his Complaint in order to state cognizable claims. However, upon completing my review of the Complaint, I determine that any such amendment of any federal claims over which the Court would have jurisdiction would be futile in light of the facts presented and the legal obstacles outlined above. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *Davis v. Kushner*, 2014 WL 5308142, at *4 (N.D.N.Y. Oct. 16, 2014) ("[T]he domestic relations exception bars this Court from exercising its jurisdiction over the instant action. Furthermore, granting [Plaintiff] an opportunity to amend his complaint would be futile because from the face of the complaint, the Court lacks subject matter jurisdiction.").

Thus, for the reasons stated herein, it is hereby

**RECOMMENDED**, that the entire Complaint be **dismissed**, pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 224 of 338

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5150196

## Footnotes

1    The Court therefore takes judicial notice of the Family Court orders and decisions referenced in the Complaint. *Trombley v. O'Neill,* 929 F. Supp. 2d 81, 103 (N.D.N.Y. 2013) (taking judicial notice of custody order of the Family Court; *Villanueva v. City of New York,* 2010 WL 1654162, at *5 (S.D.N.Y. Apr. 14, 2010) ("[W]e consider the court orders and hearing transcripts from the underlying Family Court proceedings....").

2    While the Supreme Court in *Blessing* did not foreclose every section 1983 claim predicated upon Title IV-D, it emphasized that a potential plaintiff must identify a particularized portion of the statute and establish that it did in fact create individually enforceable rights. As an example, the Court highlighted the potential situation where the State did collect support payments but then failed to pass through a portion of the payment to the party entitled to it by § 657(b)(1) of the Act. *Id.* at 345-46.

3    Plaintiff presented this argument by way of an *ex parte* order to show cause motion after a default judgment had already been entered.

4    Plaintiff also makes a state law claim that, under the Family Court Act, a cap of five hundred dollars should have been placed upon any child-support order based upon his financial condition. Compl. at ¶ 56 (citing Family Court Act § 413(1)(g)).

5    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 225 of 338

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

RICO Bus.Disp.Guide 13,190

2019 WL 2437849

United States District Court, E.D. New York.

Kieth TOMCZYK, Plaintiff,

v.

NEW YORK UNIFIED COURT SYSTEM, Office
of Court Administration, County of Suffolk, N.Y.,
Suffolk County 10th Judicial District, H. Patrick Leis,
III, in Official Capacity and Personal Capacity, Jennifer
Lippman, Esq., Theresa Mari, Esq., Sari Friedman,
Esq., Jessica Tomczyk, State Defendants John Does
1-10 and Jane Does 1-10, Suffolk County Defendants
John Does 1-10 and Jane Does 1-10, Defendants.

19-CV-2753(JS)(AYS)
|
Signed 06/10/2019

**Attorneys and Law Firms**

For Plaintiff: Kieth Tomczyk, pro se, 21 Soloff Road,
Massapequa, New York 11758.

For Defendants New York Unified, Court System, Office of
Court Administration, H. Patrick Leis, III: Ralph Pernick,
Esq., Office of the N.Y. State Attorney General, 200 Old
Country Road, Suite 240, Mineola, New York 11501.

For Defendants County of Suffolk, N.Y.: Brian C. Mitchell,
Esq., Suffolk County Dept. of Law, 100 Veterans Memorial
Highway, P.O. Box 6100, Hauppauge, New York 11788.

For Defendants Sari Friedman, Esq.: Jenna Lyn Fierstein,
Esq., Matthew K. Flanagan, Esq., Catalano Gallardo &
Petropoulos, LLP, 100 Jericho Quadrangle, Suite 326,
Jericho, New York 11753.

For Defendants Suffolk County 10th District, Jennifer
Lippman, Esq., Theresa, Mari, Esq., Jessica Tomczyk, John
and Jane Does: No appearances.

MEMORANDUM & ORDER

SEYBERT, District Judge

**\*1** On May 10, 2019, Kieth Tomczyk ("Plaintiff"), acting
pro se, filed a Complaint in this Court against the New
York Unified Court System ("Court System"), the Office
of Court Administration ("OCA"), the County of Suffolk,

New York ("Suffolk County"), Suffolk County 10th Judicial
District ("10th District"), the Honorable H. Patrick Leis, III,
in his official capacity and personal capacity ("Justice Leis"),
Jennifer Lippman, Esq. ("Lippman"), Theresa Mari, Esq.
("Mari"), Sari Friedman, Esq. ("Friedman"), Jessica Tomczyk
("Tomczyk"), State Defendants John Does 1-10 and Jane
Does 1-10 ("State Does 1-20"), Suffolk County Defendants
John Does 1-10 and Jane Does 1-10 ("County Does 1-20"
and collectively, "Defendants"). The Complaint challenges
an on-going divorce and child support enforcement action,
Jessica Tomczyk v. Kieth Tomczyk, Index No. 33914/2013,
in the New York State Supreme Court, Suffolk County, and
seeks "damages, injunctive relief and declaratory relief for
violations of his fundamentally secured rights, for violating
his parental rights through a campaign of parental alienation,
and violating his fundamental rights through a campaign
of judicial terrorism." (Compl. ¶ 1.) More specifically, in
addition to alleging a deprivation of his First, Fourth, Fifth,
Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment
rights, Plaintiff claims that the "Defendants conducted a
RICO enterprise of racketeering, extortion, fraud, wire fraud,
and mail fraud for profit and gain against Plaintiff as a litigant
and taxpayer, thus violating 18 U.S.C. §§ 1961-68, 18 U.S.C.
§ 1951, 18 U.S.C. § 1341, and other violations and causes of
action." (Compl. ¶¶ 3-4, 17.) Plaintiff paid the filing fee to
commence this action.

Because Plaintiff seeks to challenge his on-going state court
divorce/child support enforcement action, this Court lacks
subject matter jurisdiction to adjudicate his claims for the
reasons that follow.

BACKGROUND

Plaintiff's voluminous Complaint is eighty-three typed pages
and is comprised of 281 paragraphs with an additional
771 pages of exhibits. Though styled as a civil rights and
RICO action, Plaintiff seeks to challenge rulings made in an
underlying state court divorce and child support enforcement
case pending in New York State Supreme Court, Suffolk
County (the "State Court"), under Index No. 33914/2013 (the
"State Case"). (See generally Compl., D.E. 1.) Plaintiff also
seeks to recover a damages award in the sum of $ 200 billion
dollars on each of his claims. (Compl. at 55-57, 60, 62, 69,
72, 74, 77-79, 81-82.)

Plaintiff is no stranger to this Court. The instant Complaint
is Plaintiff's second attempt to bring his on-going state

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

RICO Bus.Disp.Guide 13,190

court matrimonial and child support enforcement action to this Court. In June 2017, Plaintiff paid the Court's $ 400 filing fee and unsuccessfully sought to remove the State Case to this Court (see Tomczyk v. Tomczyk, 17-CV-3630 ("Tomczyk I")). By Memorandum and Order dated June 29, 2017, the Court sua sponte remanded the action to the State Court pursuant to 28 U.S.C. § 1447. (See Tomczyk I M&O, D.E. 6.) The Court cautioned Plaintiff that, "under the domestic relations exception to this Court's subject matter jurisdiction, 'divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds[ ]' [quoting Marshall v. Marshall, 547 U.S. 293, 308, 126 S. Ct. 1735, 1746, 164 L. Ed. 2d 480, 495 (2006)" and that "jurisdiction over the Complaint is likely barred by the domestic relations exception to the jurisdiction of the federal courts." (See Tomczyk I M&O at 4.) Notwithstanding the Court's guidance, Plaintiff has paid the $ 400.00 filing fee again and continues his attempt to bring the State Case to this Court.

## DISCUSSION

### I. Standard of Review

**\*2** Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Further, regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, sua sponte, if it determines that the court lacks jurisdiction over the matter. FED. R. CIV. P. 12(h)(3); Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000).

### II. The Domestic Relations Exception Bars Plaintiff's Claims

Under the domestic relations exception, "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds. Marshall, 547 U.S. at 308, 126 S. Ct. at 1746 (internal quotation marks and citation omitted); Mitchell-Angel v. Cronin, 101 F.3d 108 (2d Cir. 1996) (unpublished opinion); Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (dismissing pro se complaint seeking to challenge state court child custody order because federal court review was barred by the domestic relations exception) (citing Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S. Ct. 2206, 2214-15, 119 L. Ed. 2d 468 (1992)). This exception is based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack." Thomas v. N.Y. City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Applying these principles, courts in the Second Circuit have abstained from controversies that, regardless of how a plaintiff characterizes them, "begin and end in a domestic dispute." Tait v. Powell, 241 F. Supp. 3d 372, 377 (E.D.N.Y. 2017) (citation and quotation marks omitted); see also Martinez v. Queens Cty. Dist. Atty., 596 F. App'x 10, 12 (2d Cir. 2015) (applying domestic relations exception to plaintiff's conspiracy claim against state judges and officials involved in divorce proceeding and reasoning that "subject matter jurisdiction may be lacking in actions directed at challenging the results of domestic relations proceedings," even if parties are not seeking a custody decree).

As is readily apparent, Plaintiff's claims here seek to challenge determinations in the State Case. Such claims unquestionably implicate the judicially recognized exception to federal subject matter jurisdiction in cases involving domestic relations. Ankenbrandt, 504 U.S. at 714, 112 S. Ct. at 2221 ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.") (internal quotation marks and citation omitted).

Although Plaintiff styles some of his claims as raising statutory and constitutional issues, the allegations stem from an on-going state domestic relations matter and are thus outside this Court's jurisdiction. McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (former husband's 42 U.S.C.

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

RICO Bus.Disp.Guide 13,190

§ 1983 action in which he claimed that his constitutional rights were violated in proceedings in which former wife obtained upward adjustment of child support would require the court to "re-examine and re-interpret all the evidence brought before the state court" in the earlier state proceedings and, therefore, the district court did not have subject matter jurisdiction) (citing Neustein v. Orbach, 732 F. Supp. 333 (E.D.N.Y. 1990) (district court lacked jurisdiction because it could not resolve factual disputes connected to domestic relations); see also Sullivan v. Xu, 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) (no jurisdiction over the plaintiff's challenges to child custody and child support orders).

**\*3**  Accordingly, because Plaintiff challenges the underlying, on-going State Court matrimonial and child support enforcement action, the Court lacks subject matter jurisdiction under the domestic relations exception to this Court's jurisdiction. The Complaint is thus DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(h)(3).

### III. Younger Abstention also Precludes this Court from Exercising Jurisdiction

Plaintiff seeks declaratory and injunctive relief that would cause this Court to intervene in Plaintiff's ongoing state-court divorce and child support proceedings. Under Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) and its progeny, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court, in Sprint Communications, Inc. v. Jacobs, clarified that district courts should abstain from exercising jurisdiction only in three "exceptional circumstances." 571 U.S. 69, 78, 134 S. Ct. 584, 591, 187 L. Ed. 2d 505 (2013). These involve: "(1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.' " Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015) (quoting Sprint Commc'ns, Inc., 571 U.S. at 73, 134 S. Ct. 588). The Supreme Court explained that "these three 'exceptional' categories ... define Younger's scope." Sprint Commc'ns, Inc., 571 U.S. at 78, 134 S. Ct. at 591.

Here, Younger and Sprint Commc'ns, Inc.'s require this Court to abstain. Plaintiff's federal Complaint "implicates the way that New York courts manage their own divorce and custody proceedings--a subject in which 'the states have an especially strong interest.' " Falco, 805 F.3d at 427 (quoting Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d Cir. 1973)). Additionally, New York has an important interest in the accurate and bias-free functioning of its judicial system. See, e.g., Pennzoil v. Texaco, Inc., 481 U.S. 1, 12–14, 107 S. Ct. 1519, 1526–28, 95 L. Ed. 2d 1 (1987) (state interest in regulating judicial procedures); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982) (state interest in functioning of judicial system). Accordingly, this Court abstains under Younger from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and "implicat[ing] a State's interest in enforcing the orders and judgments of its courts." Sprint Comm'ns, Inc., 571 U.S. at 72-73, 134 S. Ct. at 588. Therefore, Plaintiff's claims for injunctive and/or declaratory relief are DISMISSED WITHOUT PREJUDICE on Younger abstention grounds as well. [1]

### IV. The Rooker-Feldman Doctrine also bars Plaintiff's Claims

**\*4**  Even if Plaintiff's Complaint was not barred by the domestic relations exception and/or Younger abstention, the Rooker-Feldman doctrine precludes review of Plaintiff's claims in this Court. Coalescing the Supreme Court's holdings in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-17, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923), the Rooker-Feldman doctrine prohibits federal district courts from considering collateral attacks to state court judgments. "Underlying the Rooker-Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state court decisions." Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (internal quotation marks and citation omitted).

There are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. See Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). "A plaintiff may not overcome the doctrine

Case 5:24-cv-00048-DNH-ML  Document 5  Filed 05/01/24  Page 228 of 338

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

RICO Bus.Disp.Guide 13,190

and seek a reversal of a state court judgment simply by casting his [or her] complaint in the form of a civil rights action." Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (internal quotation marks and citations omitted). In addition, a plaintiff cannot circumvent Rooker-Feldman's bar by recasting his claims as civil rights violations or as RICO claims. Davidson v. Garry, 956 F. Supp. 265, 269 (E.D.N.Y. 1996)

Here, Plaintiff's allegations seek to collaterally attack the state court's orders against him relating to child support and visitation with his children. Plaintiff who has lost in state court and who now complains of injuries caused by the state court, invites this Court to review and reject the state court orders, all of which were issued before Plaintiff filed his Complaint in this Court on May 10, 2019. In broad terms, Plaintiff claims that an overarching racketeering enterprise tainted the state court action, and those involved conspired to, among other things, imprison Plaintiff for failing to pay his court-ordered child support and maintenance obligations. Plaintiff's claims here hinge on his allegations of unlawful conduct in the underlying state court action, and invite this Court to review and reject such conduct. Thus, because all the Rooker-Feldman requirements are satisfied, the Court lacks jurisdiction to adjudicate Plaintiff's claims. Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(h)(3) on the additional ground that the Rooker-Feldman doctrine divests this Court of jurisdiction.[2]

V. Immunity Also Bars Plaintiff's Claims

A. The Eleventh Amendment

**5** The Eleventh Amendment bars suits brought by a state's own citizens in federal court. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Alden v. Maine, 527 U.S. 706, 712, 119 S. Ct. 2240, 2246, 144 L. Ed. 2d 636 (1999)). It is well-established that, as an agency or arm of the State of New York, the New York Unified Court System, the Office of Court Administration, and the 10th Judicial District, are immune from suit under the Eleventh Amendment. Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) ("[T]he New York State Unified Court System is an arm of the State ..., and is therefore protected by Eleventh Amendment sovereign immunity"); Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin., 818 F. Supp. 2d 712, 734 (S.D.N.Y. 2011), aff'd sub nom., Seck v. Off. of Ct. Admin., 582 F. App'x 47 (2d Cir. 2014). The Supreme Court instructs that the Eleventh Amendment gives a state

government immunity from suit, not just from liability. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 144, 113 S. Ct. 684, 687, 121 L. Ed. 2d 605 (1993) (citation omitted).

In addition, insofar as Plaintiff seeks to recover a monetary award against Justice Leis, Mari (the Court-appointed law guardian for the children), and the unnamed State Defendants in their official capacities, they are immune from suit under the Eleventh Amendment. Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 2939, 92 L. Ed. 2d 209 (1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100, 104 S. Ct. 900, 906-08, 79 L. Ed. 2d 67 (1984). Because Section 1983 does not operate as a waiver of New York's Eleventh Amendment immunity and New York has not consented to such suits in federal Court, Walter v. Queens College, 18-CV-3060, 2019 WL 2342700, *4 (E.D.N.Y. June 3, 2019) ("Congress did not waive the states' Eleventh Amendment immunity from suit when it enacted Section 1983"), Plaintiff's claims against the State of New York, the New York Unified Court System, the Office of Court Administration, the 10th District, Justice Leis, Mari, and the unnamed State Defendants in their official capacities are barred by the Eleventh Amendment and are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. See, e.g., Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54, 116 S. Ct. 1114, 1121, 134 L. Ed. 2d 252 (1996) (a claim that is barred by a state's sovereign immunity is properly dismissed under the Eleventh Amendment for a lack of subject matter jurisdiction).

B. Absolute Judicial Immunity

Further, to the extent that Plaintiff seeks prospective injunctive relief from Justice Leis in his official capacity (which is not barred by the Eleventh Amendment) such claims are barred by absolute judicial immunity. It is well-established that judges have absolute judicial immunity from suit for their judicial actions. Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."). This absolute "judicial immunity is not overcome by allegations of bad faith or malice" nor can a judicial officer be deprived of immunity "because the action he took was in error or was in excess of his authority." Mireles, 502 U.S. at 11, 13, 112 S. Ct. at 288 (internal quotation marks and citations omitted; ellipsis omitted). This immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." Id. at 11–12, 112 S. Ct. at 288.

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

RICO Bus.Disp.Guide 13,190

Here, Plaintiff complains of conduct allegedly performed by Justice Leis while presiding over the underlying state court proceeding. There is nothing in the Complaint from which the Court could reasonably construe that any alleged misconduct occurred outside of that capacity or that Justice Leis lacked jurisdiction over the proceedings. Thus, as is readily apparent, Justice Leis is entitled to absolute judicial immunity. Plaintiff may seek to appeal the adverse ruling he seeks to challenge here within the state court system, but he may not subject Justice Leis to personal liability in this Court. Accordingly, Plaintiff's claims against Justice Leis are DISMISSED.[3]

VI. The All Writs Act

**\*6** Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." MLE Realty Assocs. v. Handler, 192 F.3d 259, 261 (2d Cir. 1999). Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits. See Malley v. N.Y. City Bd. of Educ., 112 F.3d 69 (2d Cir. 1997) (per curiam) (filing injunction may issue if numerous complaints filed are based on the same events); In re Martin-Trigona, 9 F.3d 226, 227-28 (2d Cir. 1993). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction. Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

The instant Complaint is Plaintiff's second attempt to bring his on-going divorce and child support enforcement action pending in the New York State Supreme Court, Suffolk County, to this Court. Plaintiff is cautioned that this Court will not tolerate frivolous filings. The Court has an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F. 3d 121, 123 (2d Cir. 2000) (internal quotation marks, citations, and alteration omitted). The Court is especially cognizant of Plaintiff's pro se status and has considered his submissions in as positive a light as possible. Nonetheless, the Court now warns Plaintiff

that similar, future attempts to bring his divorce and/or child support enforcement action to this Court or any new complaint concerning the same subject matter as set forth in the instant Complaint will not be tolerated. Should Plaintiff continue in this course of action, the Court will order Plaintiff to show cause why an order prohibiting Plaintiff from filing any future lawsuit relating to the State Case without first obtaining leave of Court should not be entered.

Finally, Plaintiff is cautioned that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants, see Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants ..."), and should he file another action relating to the State Case, it is within the Court's authority to consider imposing sanctions upon him. See FED. R. CIV. P. 11; In re Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984) (a district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities"); Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986) ("'A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.'") (quoting Abdullah v. Gatto, 773 F.2d 487, 488 (2d Cir. 1985) (per curiam)).

CONCLUSION

For the reasons set forth above, the Complaint is DISMISSED pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. Plaintiff's claims are barred by Younger abstention, the Domestic Relations exemption, the Rooker-Feldman doctrine, and immunity. Plaintiff is warned that similar, future complaints will not be tolerated. If Plaintiff persists in this course of conduct, the Court may issue an Order prohibiting Plaintiff from filing any future lawsuit relating to the State Case without first obtaining leave of Court after affording Plaintiff notice and an opportunity to be heard. Plaintiff is also cautioned that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants, and should he file another action relating to the State Case, it is within the Court's authority to consider imposing sanctions upon him.

**\*7** Although Plaintiff paid the filing fee in this Court, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore, should Plaintiff seek leave to appeal in forma pauperis, such status is DENIED for the purpose of any

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

RICO Bus.Disp.Guide 13,190

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 230 of 338

appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2437849, RICO Bus.Disp.Guide 13,190

# Footnotes

1    Notably, insofar as Plaintiff seeks to challenge the judgment of contempt entered against him for failing to pay child support, such claims fall squarely within the scope of abstention. See, e.g., Juidice v. Vail, 430 U.S. 327, 339, 97 S. Ct. 1211, 1219, 51 L. Ed. 2d 376 (1977) (holding that Younger required the district court to abstain in an action that sought to challenge the statutory contempt procedures in New York); see also Heck v. Humphrey, 512 U.S. 477, 486, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994). Moreover, New York courts provide process for individuals who wish to challenge their contempt proceedings. See N.Y. C.P.L.R. § 7001; People ex rel. Foote v. Lorey, 28 A.D.3d 917, 918, 813 N.Y.S.2d 798 (3d Dept. 2006) (addressing a petition for a writ of habeas corpus filed pursuant to N.Y. C.P.L. Article 70 challenging a family court order of contempt). Thus, Plaintiff has an adequate avenue for review of the contempt order in state court.

2    Given that this Court lacks subject matter jurisdiction, it need not address Plaintiff's Section 1983, 1985, and 1986 claims. However, because a Section 1983 claim requires a plaintiff to "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States", Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (internal quotation marks and citation omitted), his Section 1983 claims would fail as a matter of law because Lippman, Tomczyk, and Friedman are not state actors and Plaintiff has not alleged a plausible conspiracy claim. Similarly, Plaintiff's Section 1985 and 1986 claims would also fail. Section 1985 requires: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Robinson v. Allstate Ins. Co., 508 F. App'x 7, 9 (2d Cir. 2013) (internal quotation marks and citation omitted); see also 42 U.S.C. § 1985(2)-(3). A claim for conspiracy under Section 1985 "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Robinson, 508 F. App'x at 9 (internal quotation marks and citation omitted). Because Plaintiff does not allege he is a member of a protected class or that he was a victim of class-based, invidiously discriminatory animus, his Section 1985 claim is implausible. A Section 1986 claim is premised upon the validity of a claim under Section 1985. Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (dismissing Section 1986 claims because they are contingent upon valid Section 1985 claims). Accordingly, Plaintiff's Section 1986 claim is implausible. Asensio v. Roberts, 19-CV-3384, 2019 WL 1877386, *3 n.2 (S.D.N.Y Apr. 26, 2019) ("And, if Plaintiff cannot allege sufficient facts to state a § 1985 claim, he cannot state a related claim under 42 U.S.C. § 1986.").

3    Plaintiff's RICO claims would also fail. To bring a RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." See Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983) quoting 18 U.S.C. § 1962. As is readily apparent, the Complaint is silent, for example, as to how

RICO Bus.Disp.Guide 13,190

Defendants' activities in the underlying matrimonial and child support enforcement action in Suffolk County affected interstate or foreign commerce.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2805462

2022 WL 2805462
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendant.

1:22-CV-581
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton Road, Sand Lake, NY 12153.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On June 2, 2022, *pro se* plaintiff Alisha Clark Walker ("plaintiff") filed this action alleging that defendant, a private individual ordered by a state court to render forensic psychological evaluations in an underlying child custody dispute, discriminated against her. Dkt. No. 1. Along with her complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application for the purpose of an initial review and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4. Although Judge Dancks observed that plaintiff's claims were almost certainly barred by various jurisdictional or immunity principles, in light of plaintiff's *pro se* status Judge Dancks concluded that plaintiff should be given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this Order in which to amend her pleading in accordance with the instructions set forth in Judge Dancks's Report & Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this thirty-day period, the Clerk of the Court shall enter a judgment accordingly and close the file without further Order of this Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2805462

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 233 of 338

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,
v.
Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774,
Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding
*pro se*, filed an action against Ulster County Family Court
Judge Anthony McGinty ("Defendant" or "Judge McGinty").
(Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-
cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid
the filing fee, but instead seeks leave to proceed *in forma
pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed
below, the Court grants Plaintiff's fourth IFP application (Dkt.
No. 16) and recommends dismissal of the amended complaint
(Dkt. No. 6) in its entirety.

**I. BACKGROUND**
Plaintiff initiated this action and moved to proceed IFP
on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial
pleading was not signed and Plaintiff was directed to submit
a signed copy of the complaint. (Dkt. No. 5.) On August 13,
2021, Plaintiff submitted a signed copy of the complaint, but
also attached five exhibits that were not submitted with the
original pleading. (Dkt. No. 6.) As such, the signed pleading
was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17,
2021, and December 17, 2021, this Court denied Plaintiff's
motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December
17, 2021, Order, Plaintiff was afforded one final opportunity

to submit a fully completed IFP application or pay the entire
filing fee by January 6, 2022. (Dkt. No. 14.) Despite the
foregoing directive, Plaintiff's fourth IFP application was not
filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**
Plaintiff declares in her fourth IFP application that she is
unable to pay the filing fee. (Dkt. No. 16.) After reviewing the
submission, the Court finds Plaintiff meets the requirement
for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED
COMPLAINT**

**A. Legal Standard**
28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to
proceed *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that – ... (B) the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B).

To determine whether an action is frivolous, a court must
look to see whether the complaint "lacks an arguable basis
either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,
325 (1989). To survive dismissal for failure to state a claim,
a complaint must plead enough facts to state a claim that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009). While Rule 8(a) of the Federal Rules of Civil
Procedure, which sets forth the general rules of pleading,
"does not require detailed factual allegations, ... it demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." *Id.*

**\*2** In determining whether a complaint states a claim upon
which relief may be granted, "the court must accept the
material facts alleged in the complaint as true and construe all
reasonable inferences in the plaintiff's favor." *Hernandez v.
Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).
"[T]he tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal
conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 234 of 338

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### B. Summary of the Amended Complaint
Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1. [2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')—hereby makes these allegations against Defendant herein as follows[.]").

Her disabilities are listed as "ptsd" and "LAS", which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal

Protection Clauses of the Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> **\*3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentially program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able

to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.* [3]

Plaintiff explains that "anytime I enter the Family Court it will be the three of them [4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

**\*4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

> refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3[rd] trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after

he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15. [5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16. He also denied C.A.B. his "full service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 236 of 338

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.* [6]

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

### C. Discussion

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure

provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, \*1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **\*6** (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at \*2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 237 of 338

numerous sentences, and/or contain multiple paragraphs, and/or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

### 1. Minor Plaintiff

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at *4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

**\*7** Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

### 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity. [7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at *4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at *4. The same result is required here.

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

**\*8** As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at \*7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past

conduct and does not seek to prevent an ongoing or future violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a current, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous. [8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at \*4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at \*2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at \*9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper

defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

**\*9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at \*9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at \*18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's

ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed. [9]

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity, [10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

**\*10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman*[11] Doctrine, and *Younger*[12] Abstention

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 240 of 338

#### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g.*, *Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at *8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

#### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims

that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

**\*11** The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

#### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 241 of 338

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

## IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g.*, *Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]

## V. PLAINTIFF'S ADDRESS

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15] ) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

## VI. CONCLUSION

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

**\*13 RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 242 of 338

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health*

*and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 226798

## Footnotes

1    Amato was terminated as party plaintiff in the related action by Order entered August 7, 2019. *See Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 73. The Court assumes familiarity with the related case.

2    Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

3    Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

4    Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

5    However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

6    Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

7    Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No.

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 243 of 338

12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v. Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

8   Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.' " *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to liability under Title VII.") (quotation marks and citation omitted).

9   The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, 2018 WL 2108282, at *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

10  As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr. v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (allowing ADA claims seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

11  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

12  *Younger v. Harris*, 401 U.S. 37 (1971).

13  At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

14  If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

15  While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

16  Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

17      If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 245 of 338

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,
v.
Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton Road, Sand Lake, NY 12153.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Alisha Clark Walker ("Plaintiff") initiated this action *pro se* on June 2, 2022, claiming Dr. Mary O'Connor ("Defendant") violated 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1.) Plaintiff simultaneously moved to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed Plaintiff's motion to proceed IFP, the undersigned GRANTS the motion for purposes of this review. *See id.* The undersigned now considers the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. § 1915(e). For the reasons discussed below, the undersigned recommends that the Court dismiss Plaintiff's Complaint in its entirety with leave to amend. (Dkt. No. 1.)

## I. SUMMARY OF THE COMPLAINT [1]

This is the second of two actions Plaintiff initiated against various individuals stemming from a child custody dispute in New York State Family Court. (*See* Dkt. No. 1; *see also* Case No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker I*"), Plaintiff claimed several New York State Family Court Judges, two private attorneys, and the Averill Park School District violated her First and Fourteenth Amendment rights. (Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff restates and reasserts many of the same claims against Dr. Mary O'Connor, a private individual ordered by the New State Family Court to render forensic psychological evaluations in the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.) Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1331 and § 1343, purporting to advance several causes of action under 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and standards established and/or maintained by Defendant/s [sic] violate the Right to Free speech under the First Amendment, and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution." *Id.* at 4. Plaintiff accordingly recycles many of the same claims against Dr. O'Connor that she asserted against the Defendants in *Walker I. See id.* at 9-31. Through the first cause of action, Plaintiff claims Dr. O'Connor "religiously discriminated against" her in violation of the First Amendment. *Id.* at 9. In her second cause of action, Plaintiff claims Dr. O'Connor retaliated against her in violation of the First Amendment. *Id.* at 10. By her third cause of action, Plaintiff claims Dr. O'Connor "deprived [her] of the rights of a mother to her children and due process and freedom of speech" in violation of the First and Fourteenth Amendments. *Id.* at 12-13. Through her fourth cause of action, Plaintiff claims Dr. O'Connor discriminated against her. *Id.* at 14-19. In her fifth cause of action, Plaintiff claims Dr. O'Connor used her position to "maliciously intentionally inflict harm and pain on the Plaintiff." *Id.* at 20. By her sixth and final cause of action, Plaintiff claims Dr. O'Connor engaged in sex bias discrimination. *Id.* at 25.

## II. STANDARD OF REVIEW

**\*2** This Court must conduct an initial review of complaints filed *in forma pauperis*, and "complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government). When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [2]

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 246 of 338

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted.

*See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [3] Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g.*, *Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp.

2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jensen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at \*6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at \*7 (N.D.N.Y. June 4, 2019) (same).

**B. Plaintiff's Section 1985 Claims**

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778,

791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at \*3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at \*3; *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g.*, *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at \*3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS) (ATB), 2016 WL 4046780, at \*18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

**\*5** Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g.*, *Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. *See, e.g., Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 9-31; *see, e.g., Tirse*, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation".).) Plaintiff alleged in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

**C. Jurisdiction**

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

*\*6 First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL 226798, at *11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g., Stumpf*, 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 249 of 338

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases). "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g., Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV. CONCLUSION

*7 For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

### All Citations

Not Reported in Fed. Supp., 2022 WL 2341420

## Footnotes

1    The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review. *See, e.g., LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

2    Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g., Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

3    Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned

**Walker v. O'Connor, Not Reported in Fed. Supp. (2022)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 250 of 338

accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See Sealed Plaintiff*, 537 F.3d at 191.

4   Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. *See Sealed Plaintiff*, 537 F.3d at 191.

5   The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

6   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4445323
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Julius PHILLIPS, Plaintiff-Appellant,

v.

Bruce J. WAGNER, Reilly Dylion,
Rebecca Bauscher, Defendants-Appellees.

23-68
|
April 25, 2023

N.D.N.Y., 22-cv-833, Hurd, J., Lovric, M.J.

**Attorneys and Law Firms**

Julius Phillips, Schenectady, NY, Pro Se.

Robert M. Carney, Office of the Schenectady County District Attorney, Schenectady, NY, for Defendants-Appellees.

Present: Guido Calabresi, Michael H. Park, Steven J. Menashi, Circuit Judges.

**Opinion**

**\*1** This Court has determined sua sponte that the notice of appeal was untimely filed. Upon due consideration, it is hereby ORDERED that the appeal is DISMISSED for lack of jurisdiction. *See* 28 U.S.C. § 2107; *Bowles v. Russell,* 551 U.S. 205, 214-15 (2007).

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 4445323

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17403441
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Julius PHILLIPS, Plaintiff,

v.

Bruce J. WAGNER, Reilly Dylion,
and Rebecca Bauscher, Defendants.

1:22-CV-833
|
Signed December 2, 2022

**Attorneys and Law Firms**

JULIUS PHILLIPS, Plaintiff, Pro Se, 800 State Street, Apt. 105, Schenectady, NY 12307.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On August 10, 2022, *pro se* plaintiff Julius Phillips ("plaintiff") filed this action alleging that defendants violated his rights in connection with a New York State Family Court child support proceeding. Dkt. No. 1. Although this matter was initially closed due to plaintiff's failure to pay the filing fee, Dkt. No. 2, the Clerk of the Court reopened the case after plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 3, 4.

On November 4, 2022, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that the complaint be dismissed without prejudice, but without leave to amend. Dkt. No. 5. As Judge Lovric explained, better pleading could not cure a fundamental jurisdictional defect that arose based on the set of facts alleged; *i.e.*, clear precedent demonstrated that state judicial officers and others acting as arms of the state court are generally immune from suit under § 1983. *Id.* As for plaintiff's claims against a private attorney who appeared before the state court, Judge Lovric correctly noted that private actors generally cannot be sued under § 1983. *Id.*

Plaintiff has filed objections. Dkt. No. 7. Upon *de novo* review, the R&R will be accepted and adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED without prejudice and without leave to amend for lack of subject matter jurisdiction.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17403441

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 253 of 338

2022 WL 17406092
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Julius PHILLIPS, Plaintiff,

v.

Bruce J. WAGNER; Reilly Dylion;
and Rebecca Bauscher, Defendants.

1:22-CV-0833 (DNH/ML)
|
Signed November 4, 2022

**Attorneys and Law Firms**

JULIUS PHILLIPS, Plaintiff, Pro Se, 800 State Street, Apt.
105, Schenectady, New York 12307.

## <u>ORDER and REPORT-RECOMMENDATION</u>

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 3) filed by Julius Phillips ("Plaintiff") to the Court
for review. For the reasons discussed below, I grant Plaintiff's
*in forma pauperis* application (Dkt. No. 3), and I recommend
that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its
entirety without prejudice and without leave to amend.

## I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his
rights were violated by Defendants Bruce J Wagner, Reilly
Dylion, and Rebecca Bauscher (collectively "Defendants"),
who were all involved in Plaintiff's New York State Family
Court ("Family Court") child support proceeding. (*See
generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that his constitutional
rights were violated by Defendants when they demanded that
he provide his personal information and proceeded to garnish
his wages based on a child support determination against
Plaintiff. (*Id.*) In addition, Plaintiff alleges that he is involved
in his child's life and thus, should not have to pay child
support. (*Id.*)

Based on these factual allegations, Plaintiff appears to assert
the following causes of action: (1) a claim that his wages
were garnished without due process; (2) a claim that his
rights pursuant to the Fourth, Fifth, Seventh, and Fourteenth
Amendments were violated; (3) conspiracy to commit a crime
and forced labor. (*Id.*) As relief, Plaintiff appears to seek a
new trial in the Family Court child support proceeding. (*Id.*)

Plaintiff also filed an application to proceed *in forma
pauperis.* (Dkt. No. 3.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $402, must ordinarily
be paid. 28 U.S.C. § 1914(a). A court is authorized, however,
to permit a litigant to proceed *in forma pauperis* status if a
party "is unable to pay" the standard fee for commencing an
action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in
forma pauperis* application (Dkt. No. 3), the Court finds that
Plaintiff meets this standard. Therefore, Plaintiff's application
to proceed *in forma pauperis* is granted. [3]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*2** Although the court has a duty to show liberality toward
*pro se* litigants, and must use extreme caution in ordering
*sua sponte* dismissal of a *pro se* complaint before the adverse
party or parties have been served and have had an opportunity
to respond, 28 U.S.C. § 1915(e) directs that, when a plaintiff
seeks to proceed IFP, "the court shall dismiss the case at any
time if the court determines that ... the action ... (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may
be granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B);
*Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

In addition, the Court shall dismiss any action where the
Complaint fails to allege facts plausibly suggesting subject
matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see Steel Co. v.
Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding
that subject matter jurisdiction is a "threshold question that
must be resolved ... before proceeding to the merits.");
*Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06
(2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255,
263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits,
a district court must determine that it has subject matter

**Phillips v. Wagner, Not Reported in Fed. Supp. (2022)**

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 254 of 338

jurisdiction over the matter.")); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. The *Rooker-Feldman* Doctrine

Federal district courts lack authority to review state-court orders. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments....").

"[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Federal review of such claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must

complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district-court review and rejection of the state-court judgment; and (4) the state-court judgment must have been rendered before the district-court proceedings commenced. *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

**\*3** "A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself" is barred by the *Rooker-Feldman* doctrine." *Ganiyu v. Lopez*, 19-CV-11605, 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013)). "Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license." *Ganiyu*, 2020 WL 1467356, at *3 (citing *Fernandez v. Turtsky*, 12-CV-4092, 2014 WL 5823116, at *1, 3-4 (E.D.N.Y. Nov. 5, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016); *Leftridge v. Support Enforcement Servs.*, 12-CV-0150, 2013 WL 1947174, at *2 (D. Conn. May 3, 2013); *Remy v. NYS Dep't of Taxation & Fin.*, 09-CV-4444, 2010 WL 3925184, at *8 (E.D.N.Y. Aug. 18, 2010), *report and recommendation adopted by*, 2010 WL 3926919 (E.D.N.Y. Sept. 29, 2010), *aff'd*, 507 F. App'x 16 (2d Cir. 2013); *see also Adams v. Vt. Office of Child Support*, 717 F. App'x 33, 34 (2d Cir. 2017) (action seeking "an injunction relieving [the plaintiff] of the obligation to pay child support, preventing the garnishment of her future wages, and requiring the return of the monies already collected from her, as well as an award of damages for injuries caused by the child support obligation" should have been dismissed because of the *Rooker-Feldman* doctrine)).

Plaintiff's claims, while not entirely clear, seem to challenge an order by the Family Court, issued before Plaintiff filed this action, in which the Family Court determined that he owes child support. By asking this Court to issue an order allowing for Plaintiff's Family Court proceeding to be "redone" and "thrown out" (Dkt. No. 1 at 7), Plaintiff appears to challenge the validity of that order and its enforcement by garnishment. Thus, Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine, and I recommend that they be dismissed for lack of subject-matter jurisdiction. *See Exxon Mobil Corp.*, 544 U.S. at 291 (the *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction.").

### B. The Domestic-Relations Abstention Doctrine

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 255 of 338

"In *American Airlines, Inc. v. Block*, the Second Circuit instructed federal district courts to abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those claims could be fairly determined in the state courts." *Ganiyu*, 2020 WL 1467356, at *4 (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)). For example, the Second Circuit directed that federal district courts should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child...." *Am. Airlines, Inc.*, 905 F.2d at 14.

Plaintiff alleges that his future wages have been garnished apparently due to his child-support debt. His claims therefore involve domestic-relations issues and thus, "unless he shows that there is an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts, this Court must abstain from exercising its federal-question jurisdiction over his claims arising from the Family Court's order and its enforcement." *Ganiyu*, 2020 WL 1467356, at *4 (citing *Am. Airlines*, 905 F.2d at 14; *Simmons v. NYS Dep't of Soc. Servs.*, 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("Thus, even if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing")).

In New York State, a child-support debtor is entitled to the post-judgment remedies outlined in Article 52 of the New York Civil Practice Law and Rules ("Article 52"). For example, when a local government's support collection unit issues an execution for enforcement of current support or arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and "shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy" of the execution. N.Y. C.P.L.R. § 5241(a)(8), (e). The appropriate agency rules on the objection and "notif[ies] the debtor of its determination within forty-five days" of service of the execution. N.Y. C.P.L.R. § 5241(e). If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). *Beattease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (N.Y. App. Div. 3d Dep't 2012) (noting that an applicant for relief should commence an Article

78 proceeding after exhausting his administrative remedies before a support collection unit).

**\*4** The Complaint fails to allege facts plausibly suggesting that there are any obstacles preventing Plaintiff from receiving a full and fair determination regarding the amount of child support he owes or the garnishment of his income. As a result, in the alternative, I recommend that the Court abstain from exercising its federal-question jurisdiction over Plaintiff's claims arising from those events pursuant to the domestic-relations abstention doctrine.

### C. Immunity

In the alternative, I recommend that Plaintiff's claims against Defendants Wagner and Bauscher pursuant to 42 U.S.C. § 1983, be dismissed based on the doctrine of judicial immunity.

### 1. Defendant Wagner

Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Further, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the

**Phillips v. Wagner, Not Reported in Fed. Supp. (2022)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 256 of 338

immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). "District courts within this Circuit have applied this immunity doctrine to New York Family Court Support Magistrates," like Defendant Wagner. *Roger of the Family Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, 18-CV-10866, 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting cases).

Plaintiff asserts claims arising from the efforts of Defendant Wagner, in his capacity as a New York Family Court Support Magistrate, to assess and collect child support that Plaintiff owes pursuant to Family Court orders and judgments. Defendant Wagner is therefore immune from suit under the doctrine of judicial immunity.

As a result, in the alternative, I recommend that Plaintiff's claims against Defendant Wagner pursuant to 42 U.S.C. § 1983, be dismissed under the doctrine of judicial immunity and because those claims are frivolous. *See* 28 U.S.C. § 1915(e)(2)(b)(i), (iii); *Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are frivolous for the purpose of the IFP statute, 28 U.S.C. § 1915).

### 2. Defendant Bauscher

"Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "In New York, courts have regularly found that attorneys for children in custody proceedings (called 'law guardians' until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity." *Thomas v. Martin-Gibbons*, 19-CV-7695, 2020 WL 5026884, at *7 (S.D.N.Y. Aug. 25, 2020) (citing *Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012)).

**\*5** Plaintiff's allegations against Defendant Bauscher arise out of her court-appointed representation of Plaintiff's child during the Family Court proceedings. As a result, I recommend that Plaintiff's claims against Defendant Bauscher pursuant to 42 U.S.C. § 1983, be dismissed pursuant to the doctrine of quasi-judicial immunity. *Thomas v. Martin-Gibbs*, 2020 WL 5026884, at *7 (citing *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to

quasi-judicial immunity)) (dismissing the plaintiff's claims against the Children's Law Center, which arose out of their court-appointed representation of "J.O." during family court proceedings).

### D. Failure to State a Claim Upon Which Relief May Be Granted

Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Defendant Dylion are inadequately pled because he failed to allege that Defendant Dylion acted under color of state law. 42 U.S.C. § 1983; *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).

Although it is not clear from the face of the Complaint whether Defendant Dylion was appointed by the court to represent "the defendant" in the Family Court proceeding, or whether "the defendant" in the Family Court proceeding privately retained Defendant Dylion, the difference is inconsequential. "It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. May 24, 2011) (Hurd, J.) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *accord Agron v. Douglas W. Dunham Esq. & Assocs.*, 02-CV-10071, 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004); *see Walker v. Rivera*, 22-CV-0560, 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (recommending dismissal of the plaintiff's Section 1983 claims against the defendant private attorney and defendant attorney for the child because the plaintiff failed to allege facts plausibly suggesting that they acted under color of state law); *DeRouseau v. Fam. Ct., Westchester Cnty.*, 21-CV-8716, 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."); *Cleveland v. Schenectady Cnty. Dep't of Children and Families*, 16-CV-1235, 2016 WL 8193590, at *6 (N.D.N.Y. Dec. 30, 2016) (Stewart, M.J.) ("It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action.").

As a result, in the alternative, I recommend that Plaintiff's claim against Defendant Dylion be dismissed for failure to state a claim upon which relief may be granted.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once when "a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [4]

**\*6** Here, better pleading could not cure the Court's lack of subject matter jurisdiction described above. As a result, I recommend that Plaintiff's claims be dismissed without prejudice but without leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1), because the Court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. __**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**__. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17406092

---

## Footnotes

1      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2      The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3      Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

4      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate

**Phillips v. Wagner, Not Reported in Fed. Supp. (2022)**

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 258 of 338

recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds,* 682 F. App'x 30.

5   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,

v.

Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

TOWNES, District Judge.

**\*1** Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section– Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4,

Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction.[1]

**Legal Standard**

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at \*10 (E.D.N.Y. June 18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *' Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

**Factual History**

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York, Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of

New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic*] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further support obligations and all subsequent child support collection efforts were unconstitutional.[2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia,* lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

## Discussion

### A. *Domestic Relations Exception to Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce,

alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *aff'd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at \*11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at \*2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at \*2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at \*1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly-to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at \*2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters."). [3] This Court need not resolve whether such a narrow challenge would be barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,* [4] the *Rooker–Feldman* doctrine.

### B. *Rooker–Feldman Doctrine*

The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

**\*4** *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKit hen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at \*6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at \*3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with the state court judgment." *Sorenson,* 2009 WL 580426, at \*7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

 **\*5** The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, —— F. App'x ——, 2014 WL 4233392, at \*1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *Rooker–Feldman* doctrine. For the same reasons, the Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5823116

### Footnotes

1   Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

2   *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

3   *But see King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated.

Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted).

4    Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

---

**End of Document**  <span style="float:right">© 2024 Thomson Reuters. No claim to original U.S. Government Works.</span>

2024 WL 757338
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Richard SIMS, Plaintiff,

v.

Rachelle C. KAUFMAN; Rachel
Tanguay AJSC, Defendants.

23-CV-7927 (LTS)

|

Signed February 14, 2024

**Attorneys and Law Firms**

Richard Sims, Birmingham, AL, Pro Se.

ORDER OF DISMISSAL WITH LEAVE TO REPLEAAD

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action
under 42 U.S.C. § 1983, alleging that Defendants violated his
constitutional rights. By order dated September 26, 2023, the
Court granted Plaintiff's request to proceed *in forma pauperis*
("IFP"), that is, without prepayment of fees. For the following
reasons, the Court dismisses the complaint, with 30 days'
leave to replead.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it
does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the Court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Richard Sims, who resides in Alabama, brings this
complaint under the court's federal question jurisdiction,
claiming that Rockland County Family Court Judge Rachel
Kaufman, and Rockland Family Court Magistrate Rachel
Tanguay "stripped away" his constitutional rights during child
support proceedings. (ECF 1 ¶ I and page 8.) The following
facts are drawn from the complaint.

On August 3, 2018, Plaintiff was "supposed to have" a remote
child support hearing in his local court, but it did not happen,
because Judge Kaufman "didn't follow proper protocol by
sending the court the proper forms." (ECF 1 ¶ I.) Judge
Kaufman told Plaintiff that it was "[his] job to deal with [his]
courthouse. [He] put a court clerk one the phone so she could
explain the rules to [Kaufman] but she became disrespectful
and rude. So the clerk told [Plaintiff] to file a motion to get
another date granted." (*Id.*) Plaintiff asserts that Defendants
denied or "overlooked" all of his motions, and that he "never
had a fair day in court." (*Id.* ¶ III.) Judge Kaufman held
Plaintiff in default," denied him a paternity test, and "named
[him] the father for both children," although Plaintiff's name
is on only one of the birth certificates. (*Id.* at 8.)

**\*2** In April 2023, "JA," who appears to be the children's mother, "tried to collect funds from" Plaintiff in Alabama, but because he is "not on child support in the system," he had to hire a lawyer. A court attorney in Alabama told Plaintiff that "it's not fair how [he has] been treated"; that he "deserves a DNA test"; and that "if it was in her jurisdiction she would give [him] one." (*Id.* at 8.) Plaintiff asks that the Court "help [him] get [his] rights back." (*Id.*)

## DISCUSSION

### A. Judicial immunity

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judges are also immune from civil rights claims for injunctive relief based on actions taken in their judicial capacities, "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "A court's control of its docket is ... a judicial act because it is part of a court's function of resolving disputes between parties." *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005) "Even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when the judge takes action "outside" her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings. *See Acre v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order); *Legister v. Radowitz*, No. 20-CV-9330 (LLS), 2020 WL 7405672, at \*5 (S.D.N.Y. Dec. 16, 2020); *Charles v. Lopez*, No. 19-CV-8706 (CM),

2019 WL 5261154, at \*2 (S.D.N.Y. Oct. 15, 2019); *Roger of the Fam. Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, No. 18-CV-10866 (CM), 2019 WL 4194332, at \*4 (S.D.N.Y. Aug. 30, 2019) (collecting other district court cases within the Second Circuit).

Plaintiff alleges that his constitutional rights were violated because a remote hearing did not take place due to a technology problem; that he was found to be in default; that he was ordered to pay child support in the absence of a paternity test; and that he felt compelled to hire an attorney because the mother of his children made efforts to enforce the child support order in Alabama. Plaintiff, however, fails to allege any facts showing that, in presiding over Plaintiff's child support proceedings and issuing orders, Defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12.

Moreover, Plaintiff appears to seek injunctive relief, but he does not allege facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable. Declaratory relief against a judge for actions taken within her judicial capacity is ordinarily available by appealing the judge's order. *See Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (dismissing Section 1983 claim for injunctive relief because declaratory relief was available through appeal in state court); *LeDuc v. Tilley*, No. 3:05-CV-0157 (MRK), 2005 WL 1475334, at \*7 (D. Conn. June 22, 2005) (same). Here, the remedy that is available to Plaintiff is to appeal within the state court system, rather than filing an action in federal court. Plaintiff has alleged no facts suggesting that he was unable to appeal any decision made by Judge Kaufman or Judge Tanguay. Because Plaintiff has not alleged facts suggesting that either judge violated a declaratory decree or that declaratory relief was unavailable, Section 1983 precludes any award of injunctive relief against these defendants.

### B. The *Younger* doctrine

**\*3** If Plaintiff's child support proceedings are pending in the New York Family Court, Bronx County, this Court may not intervene in them. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of the *Younger* abstention doctrine has been extended to the three

following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("Sprint"). Courts have held that pending state child support proceedings involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied. *See Francis v. Dep't of Soc. Servs.*, No. 22-CV-6860 (DSS), 2023 WL 5096145, at *4 (E.D.N.Y. Aug. 9, 2023) ("The merits of that appeal – challenging both the Family Court order and Francis's need to exhaust administrative remedies through [the Department of Social Services] – implicate New York's state interest in managing and enforcing child support payments."); *Perso v. Perso*, No. 19-CV-2858 (JMA) (SIL), 2019 WL 4415399, at *3 (E.D.N.Y. Sept. 13, 2019) (same as to ongoing divorce and child support proceedings); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753 (JS) (AYS), 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (same); *Bowman v. Morris*, No. 8:19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) ("[T]o the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process."), *report & recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019); *Gravagna v. Eisenpress*, No. 19-CV-0700 (CM), 2019 WL 1469289, at *2 (S.D.N.Y. Apr. 2, 2019) ("[T]his Court must abstain under *Younger* from interfering in Plaintiff's ongoing state-court proceedings[ ] involving ... child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.' " (citation and second alteration omitted)); *Brock v. City of New York*, No. 19-CV-0957 (BMC) (RML), 2019 WL 438356, at *3 (E.D.N.Y. Feb. 4, 2019) (applying *Younger* abstention to a claim in which the plaintiff asked the federal court "to enjoin [a New York City official] from continuing to prosecute [the plaintiff's] child support obligations in New York family court" because "actions to enforce child support orders implicate important state interests").

Plaintiff has not alleged any facts showing bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect to his child support proceedings that may be pending in the New York Family Court, Bronx County. Thus, to the extent that Plaintiff asks this Court to intervene in those pending proceedings, the Court dismisses his claims under the *Younger* abstention doctrine. [1]

## C. The *Rooker-Feldman* doctrine

**\*4**  To the extent that Plaintiff asks this Court to overturn a final order or judgment issued in his concluded child support proceedings in the New York Family Court, Bronx County, the *Rooker-Feldman* doctrine requires the dismissal of his claims for such relief. Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine ... recognizes that 28 U.S.C. § 1331[,] [the statute granting federal district courts' federal question jurisdiction,] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments...."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress, *see, e.g.*, 28 U.S.C. § 2254 (habeas corpus review)." (citation omitted)). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Exxon Mobil Corp.*, 544 U.S. at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court. *See, e.g.*, *Legister*, 2020 WL 7405672, at *3 ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings

commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

Inasmuch as Plaintiff criticizes any final child support decision of the New York Family Court, Bronx County, in an effort to request that this Court overturn that final decision, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief. The Court therefore dismisses any claims that essentially challenge a final decision of the New York Family Court, Bronx County, arising from Plaintiff's concluded child support proceedings in that court, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

**D. Leave to Amend**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In an abundance of caution, and in light of Plaintiff's *pro se* status, the Court grants him 30 days' leave to file an amended complaint should he be able to provide additional facts in support of a viable claim arising out of his child support proceedings in state court. If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action for the reasons laid out in this order.

**CONCLUSION**

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed on immunity grounds, 28 U.S.C. § 1915(e)(2)(B)(iii) and for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3), with 30 days' leave to replead.

 **\*5** The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and

therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\_\_\_ Civ. _____ ( \_\_ )

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

AMENDED
COMPLAINT

Jury Trial:  ☐ Yes   ☐ No
              *(check one)*

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

I.      **Parties in this complaint:**

A.      List your name, address and telephone number.  If you are presently in custody, include your identification number and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff       Name _____
                Street Address _____
                County, City _____
                State & Zip Code _____
                Telephone Number _____

B.      List all defendants.  You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

*Rev. 12/2009*                                     1

Defendant No. 1    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 2    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 3    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 4    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

**II.    Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*
      ☐ Federal Questions            ☐ Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____
      _____
      _____

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?
      Plaintiff(s) state(s) of citizenship _____
      Defendant(s) state(s) of citizenship _____

**III.    Statement of Claim:**

State as briefly as possible the <u>facts</u> of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper is necessary.

A.    Where did the events giving rise to your claim(s) occur? _____
      _____

B.    What date and approximate time did the events giving rise to your claim(s) occur? _____
      _____
      _____

C.    Facts: _____

[ What happened to you? ]    _____
                             _____
                             _____

[ Who did what? ]            _____
                             _____
                             _____

[ Was anyone else involved? ] _____
                             _____
[ Who else saw what happened? ] _____
                             _____

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____
_____
_____
_____
_____

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ____ day of _____, 20___.

                        Signature of Plaintiff _____
                        Mailing Address _____
                                        _____
                                        _____
                        Telephone Number _____
                        Fax Number *(if you have one)* _____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

                        Signature of Plaintiff _____
                        Inmate Number _____

## All Citations

Slip Copy, 2024 WL 757338

## Footnotes

1    In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal question jurisdiction of claims involving domestic relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court should abstain from exercising its federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted). Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992); *see id.* at 705 (allowing for the possibility that such an exception to jurisdiction could be extended to "elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody"); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of Donohue's child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). More recently, the Second Circuit, in *Deem v. DiMella-Deem*, held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019). Thus, notwithstanding whether this Court is considering this action under its original federal question or diversity jurisdiction, it must either abstain from considering, or lacks subject matter jurisdiction to consider, any request by Plaintiff to issue a decision determining whether he owes child support.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1142144
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,
v.
Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)
|
Signed March 15, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, 175 Parkside Ave, Syracuse, NY 13207, Plaintiff, pro se.

### ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint together with an application to proceed *in forma pauperis* ("IFP") filed by Plaintiff John A. Porter, III, to the Court for review. (Dkt. Nos. 1, 2.)

### I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 alleging Defendant Susan Hamlin Nasci, "acting as a non-judicial court employee without proper authority and jurisdiction," violated his "constitutional rights." [1] *Id.* Plaintiff claims "Defendant's actions constitute a violation of the Plaintiff's right to a trial by jury, equal protection of the law, and due process, resulting in substantial emotional and financial harm to the Plaintiff." [2] *Id.* The complaint does not include any other factual allegations.

As relief, Plaintiff seeks: (1) $50,000 in actual damages "for medical conditions and lost income due to severe anxiety and reduced work capacity"; (2) $50,000 in compensatory damages for emotional distress "caused by the estrangement from the Plaintiff's son"; (3) $50,000 in punitive damages to "penalize the Defendant and deter similar future misconduct"; (4) "the immediate dismissal" of the "fraudulent child support financial order imposed upon the Plaintiff"; and (5) the "return of all payments made by the Plaintiff under the fraudulent child support order up to the present day." *Id.* at 2.

### II. IFP APPLICATION

Plaintiff declares in his IFP application that he is unable to pay the statutory filing fee to commence this action. (Dkt. No. 2.) After reviewing his application, this Court finds Plaintiff is financially eligible for IFP status. According, Plaintiff's IFP application is granted. [3]

### III. STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion thereof, if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

**\*2** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts

alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

## IV. ANALYSIS

Liberally construed, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) ("42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").[4]

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Having carefully reviewed Plaintiff's complaint and for the reasons discussed below, the Court recommends dismissal of complaint without prejudice and with leave to amend.

### A. Failure to State a Claim

The complaint alleges Defendant denied Plaintiff his "right to a trial by jury, equal protection of the law, and due process." (Dkt. No. 1 at 1.) However, Plaintiff has failed to adequately set forth sufficient factual content to allow this Court to reasonably infer Defendant was personally involved and liable for the alleged unconstitutional conduct. *See Iqbal*,

556 U.S. at 678. Specifically, he has failed to set forth a short and plain statement stating what Defendant did to him, when she did it, and how he was injured. *See id.*; *see also* Fed. R. Civ. P. 8(a)(2). Absent these basic details, Plaintiff's complaint has failed to give Defendant fair notice of what his claims are, and the Court is left with "an unadorned, the-defendant-harmed-me accusation." *See Iqbal*, 556 U.S. at 678.

**\*3** Therefore, it is recommended that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a).

### B. Judicial Immunity

Judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action "outside" his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

"New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings."[5] *Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, at *2 (S.D.N.Y. Feb. 5, 2024) (citing *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order)); *see, e.g.*, *Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at *4 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial

immunity."), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

While not entirely clear, Plaintiff seems to assert claims for damages and injunctive relief pursuant to Section 1983 against Defendant, a Support Magistrate, who presumably presided over the child support proceedings that resulted in the alleged "fraudulent child support financial order imposed upon the Plaintiff." (Dkt. No. 1 at 1-2.) Plaintiff, however, fails to allege any facts showing Defendant acted beyond the scope of her judicial responsibilities or outside her jurisdiction. *See Mireles*, 509 U.S. at 11-12. Moreover, Plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable.

**\*4** Thus, insofar as Plaintiff sues Defendant "for acts arising out of, or related to, individual cases before [her]," Defendant would be entitled to judicial immunity. [6] *Bliven*, 579 F.3d at 210; *see* 28 U.S.C. § 1915(e)(2)(b)(iii); *see also Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

### C. Jurisdiction
Although the nature of Plaintiff's complaint makes it difficult to precisely determine which doctrines apply, based on the relief Plaintiff seeks, this Court may lack jurisdiction to hear Plaintiff's claims and/or it should likely abstain from hearing Plaintiff's claims.

Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Sims v. Kaufman*, No. 23-CV-7927, 2024 WL 757338, at \*4 (S.D.N.Y. Feb. 14, 2024) (citing *Legister v. Radowitz*, No. 1:20-CV-9330, 2020 WL 7405672, at \*3

(S.D.N.Y. Dec. 16, 2020)) ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted). [7]

**\*5** Plaintiff's claims also appear to implicate the domestic relations abstention doctrine, which requires federal courts to abstain from exercising federal question jurisdiction of domestic relations issues such as divorce, child support payments and child custody. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621-24 (2d Cir. 2019) (holding that federal district courts must abstain from exercising federal-question jurisdiction of claims involving domestic-relations issues); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that where a federal district court is "asked to grant a divorce or annulment, determine support payments, or award custody of a child," the court should abstain from exercising its jurisdiction of such claims if "there is no obstacle to their full and fair determination in [the] state courts.") (internal quotation marks omitted); *see, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at \*4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[C]alculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing.").

## V. OPPORTUNITY TO AMEND
As discussed above, the Court finds Plaintiff's complaint is subject to dismissal failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a). Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such

that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Although the Court has serious doubts about whether Plaintiff can amend to assert an actionable claim given the various jurisdictional and immunity principles discussed above, since this is Plaintiff's initial complaint and out of an abundance of caution, the Court recommends that Plaintiff be given an opportunity to amend to cure the deficiencies identified above.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.[8] Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.[9] **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**\*6 IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1142144

## Footnotes

1    The Court takes judicial notice Susan Hamlin Nasci, Esq., is a New York Family Court Support Magistrate. *See* https://ww2.nycourts.gov/courts/5jd/onondaga/index.shtml (last visited Mar. 13, 2024).

2    Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

3    Plaintiff is advised that he will still be required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

4    Plaintiff also claims Defendant, "acting as a non-judicial court employee without proper authority and jurisdiction, has trespassed upon the Plaintiff's right, specifically under 18 USC Section 242." (Dkt. No. 1 at 1.) However, 18 U.S.C. § 242 is a criminal statute, which does not give rise to civil liability or authorize a private right of action. *See Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (holding there is "no private right of action" under 18 U.S.C. § 242).

2024 WL 1142144

5  According to the website maintained by the New York State Unified Court System, "[a] 'Support Magistrate' conducts the hearing, taking testimony from both sides concerning their income and expenses and the cost of supporting the child. The parties can present evidence and witnesses and cross-examine each other and the witnesses. The Support Magistrate calculates how much support the non-custodial parent must pay to the parent with custody, and sets a schedule for regular payments." *See* https://ww2.nycourts.gov/courts/5jd/ family/support.shtml (last visited Mar. 13, 2024).

6  Defendant also would be protected under the doctrine of sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). That holding was recently reaffirmed by the Second Circuit. *Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit.").

7  To the extent Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court proceedings, including any post-judgment proceedings, the Court must likely abstain from hearing those claims under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

8  "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

9  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 75029

2012 WL 75029
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

R. Bertil PETERSON, Plaintiff,
v.
The CITY OF NEW YORK, et al., Defendants.

No. 11 Civ. 3141(DLC).
|
Jan. 9, 2012.

**Attorneys and Law Firms**

Richard Bertil Peterson, Lake Success, NY, pro se.

Diana Marsh Murray, NYC Law Department, Office of the
Corporation Counsel (N.Y.C), New York, NY, for defendants
City of New York and Kevin Watz.

OPINION & ORDER

DENISE COTE, District Judge.

**\*1** *Pro se* plaintiff R. Bertil Peterson ("Peterson") brings
this action against the City of New York (the "City"),
Police Officer Kevin Watz ("Officer Watz"), and one-hundred
unnamed employees, independent contractors, agents, and/
or assignees. Peterson brings claims for compensatory and
punitive damages, attorney's fees, and costs pursuant to §§
1962(c) and (d) of the Racketeer Influenced and Corrupt
Organizations Act, 18 U.S.C. § 1962, the Fourth Amendment
to the U.S. Constitution, Article I § 12 of the New York
State Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1988, New
York Civil Practice Law and Rules § 8303–a, and New York
State law. The City and Officer Watz have filed a motion to
dismiss the complaint for lack of subject matter jurisdiction
and for failure to state a claim. For the following reasons, the
motion to dismiss is granted with respect to all of plaintiff's
federal claims with the exception of his Fourth Amendment
claim of unreasonable seizure. Certain state law claims and
the unreasonable seizure claim are stayed.

*BACKGROUND*

The following facts are taken from the plaintiff's
complaint unless otherwise noted, and are taken to be
true for purposes of this motion. *LaFaro v. New York
Cardiothoracic Group, PLLC,* 570 F.3d 471, 475 (2d
Cir.2009). On March 6, 2010, Peterson was pulled over
for a traffic stop by Officer Watz, and was issued a traffic
summons for driving while using a cell phone. Peterson
claims that he was not, in fact, using his cell phone prior
to being pulled over.

On May 14, 2010, a hearing on the traffic violation
was held before Department of Motor Vehicles ("DMV")
Administrative Law Judge William Lee ("ALJ Lee"). ALJ
Lee convicted Peterson of improper cell phone use in
violation of New York State Vehicle & Traffic Law, Article
33, § 1225–c. Peterson was fined 130 dollars, including a
30 dollar surcharge. Peterson maintains that he produced
evidence at this hearing, such as his cell phone records,
that demonstrates his innocence. He also claims that he
successfully impeached the testimony of Officer Watz during
cross-examination.

On October 12, 2010, the State of New York DMV
Appeals Board sustained the determination of ALJ Lee. On
November 1, 2010, Peterson filed a petition in the New York
State Supreme Court pursuant to Article 78 of the CPLR
seeking to annul, vacate, and set aside the determination
of the DMV Appeals Board. On January 12, 2011, the
petition was transferred to the Appellate Division, Second
Judicial Department. The defendants have asserted that this
proceeding (the "Article 78 Proceeding") is currently pending
before the Appellate Division, and Peterson has not countered
this assertion.

Peterson filed his complaint in this Court on May 10, 2011.
The complaint asserts the following nine causes of action
against all defendants:

1. A substantive RICO violation pursuant to 18
U.S.C.1962(c);

2. A RICO conspiracy pursuant to 18 U.S.C.1962(d);

**\*2** 3. An illegal search and seizure in violation of the
Fourth Amendment of the Constitution and Article I §
12 of the New York State Constitution;

4. Malicious prosecution pursuant to § 1983 and the Fourth
Amendment;

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 276 of 338

2012 WL 75029

5. Malicious abuse of process under § 1983 and the Fourth Amendment;

6. A procedural due process violation pursuant to § 1983 and the Fourteenth Amendment;

7. A claim for costs and attorney's fees pursuant to 42 U.S.C. § 1988 and CPLR § 8303–a;

8. Malicious prosecution under New York State law; and

9. Malicious abuse of process under New York State law.

On August 15, 2011, defendants the City and Officer Watz moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., on grounds that the Court should abstain from exercising jurisdiction over the federal claims in light of plaintiff's pending state proceeding, that plaintiff failed to state a federal claim, that the Court should decline to exercise supplemental jurisdiction over State law claims, and that the complaint failed to state a State law claim in any case. The motion to dismiss was fully submitted on October 31, 2011. For the following reasons, the federal claims in counts one, two, and four through seven, and the state law claims in counts eight and nine, are dismissed for failure to state a claim. The remaining claims are stayed until completion of the Article 78 Proceeding.

*DISCUSSION*

On a motion to dismiss under Rule 12(b)(6), the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro, 570 F.3d at 475* (citation omitted). A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).* Accordingly, a court may disregard "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id. at 1940.*

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id. at 1949* (citation omitted). If the factual allegations "are merely consistent with a defendant's liability, [the complaint] stops short of the line between

possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. There must be a "reasonably founded hope that the discovery process will reveal relevant evidence." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)* (citation omitted). "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir.2011).*

**\*3** Pleadings filed by *pro se* plaintiffs are to be construed liberally. *Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.2010).* The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims. *Hemphill v. New York, 380 F.3d 680 (2d Cir.2004).*

**I. The RICO Claims**

The City and Officer Watz have moved to dismiss the complaint's two RICO claims. To state a viable RICO claim pursuant to 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496.* To state a RICO claim pursuant to 18 U.S.C.1962(d), a plaintiff must allege a conspiracy to commit a substantive RICO violation pursuant to 18 U.S .C. § 1962(a), (b), or (c). *See* 18 U.S.C. § 1962(d).

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In his complaint, Peterson describes the RICO enterprise as consisting of an "associationin-fact" among the named and unnamed defendants. An "association-in-fact" enterprise must have at least three structural features: 1) a purpose, 2) relationships among those associated with the enterprise, and 3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States, 556 U.S. 938, 129 S.Ct. 2237, 2244, 173 L.Ed.2d 1265 (2009).* Accordingly, a plaintiff's "conclusory naming of a string of entities does not adequately allege an enterprise." *First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir.2004)* (citation omitted).

Peterson does not plead sufficient facts to support a plausible claim to the existence of an association-in-fact enterprise. Peterson claims that the defendants participated in a racketeering scheme whereby 1) police officers would illegally stop and detain motorists and falsely accuse them of violating traffic laws, 2) police officers would present false testimony at hearings before DMV Administrative Law Judges ("ALJs"), 3) the DMV ALJs would validate this false testimony and find innocent motorists guilty of traffic violations, and 4) the DMV Appeals Board would affirm these convictions. In furtherance of this scheme, Peterson claims that defendants and their co-conspirators adopted rules that made it easier to convict motorists of traffic violations, such as not providing for prehearing discovery or a supporting deposition, and allowing ALJs to question motorists and convict them based on "clear and convincing evidence." According to Peterson, the scheme garnered over $76 million in traffic fines, surcharges and suspension termination fees.

In support of these claims, Peterson alleges the following facts: that he was not driving while using his cell phone, that he was nonetheless subject to a traffic stop and issued a traffic summons by Officer Watz, that he was convicted by ALJ Lee after an opportunity to present his case and cross-examine Officer Watz, that this conviction was upheld on appeal, that the DMV has adopted certain rules of procedure and evidence in its adjudicatory proceedings that differ from those in more formal proceedings, and that the collection of fines, surcharges and suspension fees from motorists results in income to the City and other municipalities. These facts do not support a plausible claim that the defendants and any co-conspirators shared a common purpose to defraud motorists, that there was a relationship among the defendants, or that the defendants worked towards this common purpose for any amount of time beyond that which was necessary to sustain Peterson's conviction. The sole connection among the entities and individuals in the alleged enterprise is the traffic summons and its subsequent adjudication.[1] The complaint thus fails to plead those facts necessary to nudge plaintiff's claim across the line "between possibility and plausibility" with respect to all three structural features of an association-in-fact enterprise. *Iqbal,* 129 S.Ct. at 1949.

*4 The existence of a RICO enterprise is a necessary element for liability under 28 U.S.C. § 1962(c). *City of N.Y. v. Smokes–Spirits.com, Inc.,* 541 F.3d 425, 439 (2d Cir.2008). Plaintiff's claims pursuant to 28 U.S.C. § 1962(c) must therefore be dismissed.

To state a RICO conspiracy claim pursuant to 28 U.S.C. § 1962(d), a plaintiff must successfully plead the existence of a substantive RICO violation. *See Cofacredit, S.A. v. Windsor Plumbing,* 187 F.3d 229, 244–45 (2d Cir.1999). Thus, because plaintiff has failed to state a claim pursuant to 28 U.S.C. § 1962(c), his claim pursuant to 28 U.S.C. § 1962(d) must also fail.

In his opposition to the motion to dismiss, Peterson cites to a number of cases that, he argues, demonstrate that a municipal corporation such as the City can be a member of a RICO enterprise and that Officer Watz can be named as a RICO defendant. Regardless of whether the City *can* be a member of a RICO enterprise and whether Officer Watz *can* be a RICO defendant, the pleadings do not give rise to a plausible claim that an association-in-fact enterprise *does,* in fact, exist.

Similarly, the plaintiff relies on *Floyd v. The City of New York,* 2011 WL 3856515 (S.D.N.Y.2011), which held that a triable issue of material fact exists as to whether New York Police Department supervisors have a custom or practice of imposing quotas on officers' stop and frisks, summonses, and arrests. *Id.* at *20. *Floyd* did not involve alleged RICO violations or the alleged existence of an association-in-fact enterprise, and therefore does not salvage plaintiff's RICO claims.

## II. Malicious Prosecution and Abuse of Process

Plaintiff fails to state a claim for malicious prosecution under § 1983 and the Fourth Amendment. To state such a claim, a plaintiff must plead 1) that the defendant initiated a criminal proceeding, 2) that the proceeding was terminated favorably to the plaintiff, 3) that there was no probable cause for the criminal charged, and 4) that the defendant acted maliciously. *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir.2003). Plaintiff has not been the subject of a criminal proceeding that was terminated in his favor.

Likewise, plaintiff's claim for malicious abuse of process fails to meet the pleading standards of *Iqbal* and *Twombly.* To state a claim for malicious abuse of process under § 1983 and the Fourth Amendment, a plaintiff must successfully plead that a defendant 1) employed regularly issued legal process to compel performance or forbearance of some act, 2) with intent to do harm without excuse or justification, and 3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). Plaintiff's factual allegations that he was wrongfully subject

to a traffic stop and a conviction for driving while using a cell phone, and that this conviction was wrongfully upheld on appeal, fall well short of stating a plausible claim to relief with respect to these three elements. Plaintiff offers no facts to support the conclusion that the defendants intended to do harm without justification, or that they had some collateral objective outside the legitimate ends of Peterson's traffic summons.

**\*5** The elements of malicious prosecution and malicious abuse of process are the same under state law as they are under § 1983. *Id* . Thus, the pleadings on these state law claims are insufficient as well.

## III. Procedural Due Process

Plaintiff has not stated a § 1983 claim for violation of procedural due process. To succeed on a procedural due process claim, a plaintiff must establish (1) a deprivation of life, liberty or property (2) without due process of law. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In accordance with New York Vehicle and Traffic Law § 225, plaintiff has been afforded a hearing in front of an ALJ at which he could have been represented by a lawyer, an opportunity to cross-examine Officer Watz, an administrative appeal, and an appeal before the Appellate Division that is currently pending. Plaintiff has been afforded an opportunity to be heard "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

## IV. Attorney's Fees

Plaintiff's claim for attorney's fees pursuant to 42 U.S.C. § 1988 fails because, although plaintiff is an attorney, he is proceeding *pro se* and is thus not entitled to attorney's fees. *See Kay v. Ehrler,* 499 U.S. 432, 437–38, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991).

## V. Fourth Amendment

The sole remaining federal claim is the Fourth Amendment unreasonable search and seizure claim. "[T]he Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Harrison,* 606 F.3d 42, 45 (2d Cir.2010) (citation omitted). According to the complaint, there was no legal justification whatsoever for the traffic stop because

Peterson was not observed using his cell phone while driving as claimed by Officer Watz. The complaint provides detailed facts in support of this conclusion, including Peterson's cell phone records and his recollections of the traffic stop.

Defendants argue that this claim should be dismissed because a pre-arraignment, non-felony summons requiring a later court appearance does not constitute a seizure under the Fourth Amendment. *See Burg v. Collen Gossellin,* 591 F.3d 95, 101 (2d Cir.2010). But Peterson claims that he was issued such a summons *and* that he was subjected to a traffic stop. His unreasonable seizure claim therefore survives.

## VI. Abstention

This litigation will be stayed pending completion of the Article 78 Proceeding. Generally, district courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Royal and Sun Alliance Ins. Co. of Canada v. Century,* 466 F.3d 88, 92 (2d Cir.2006) (citation omitted). *Younger v. Harris,* 401 U.S. 37 (1971), and its progeny delineate an exception to this rule, requiring federal courts to abstain where appropriate to "allow state courts to resolve pending matters within their jurisdiction." *Washington v. County of Rockland,* 373 F.3d 310, 318 (2d Cir.2004). In *Younger,* the Supreme Court explained that a federal court, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger,* 401 U.S. at 44. Abstention is mandatory when "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 100–01 (2d Cir.2004) (citation omitted). While "Younger was a challenge to an ongoing state criminal case ... the doctrine has been extended with equal force to federal civil litigation challenging certain other state proceedings." *Kaufman v. Kaye,* 466 F.3d 83, 86 (2d Cir.2006). Such state proceedings may include Article 78 proceedings pursuant to the CPRL. *See Christ the King regional High School v. Culvert,* 815 F.2d 219, 224–25 (2d Cir.1987).

**\*6** When the *Younger* requirements are met, the doctrine mandates dismissal of claims for both injunctive and declaratory relief. *See Samuels v. Mackell,* 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Dismissal may not be appropriate, however, when the *Younger* requirements are met in a lawsuit for damages. *See Kirschner v. Klemons,*

225 F.3d 227, 237–38 (2d Cir.2000). In such cases, a district court may stay the federal case pending resolution of the state proceeding. *Id.* at 238–39.

Peterson's Article 78 petition was transferred to the Appellate Division on January 12, 2011, and Peterson does not challenge defendants' claim that it is currently pending. The Article 78 Proceeding implicates an important state interest, specifically, the safety of the roads and highways. *See Dixon v. Love,* 431 U.S. 105, 114, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). Furthermore, a finding for or against Peterson on the Fourth Amendment unreasonable seizure claim would rest on the very same factual determinations as the Article 78 Proceeding: whether Peterson was using his cell phone before Officer Watz pulled him over. Such a determination by this Court would fail to afford the Appellate Division proper respect for its function as a judicial entity capable of adjudicating federal claims, and call into question the State proceedings. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (grounding abstention in "the notion of 'comity,' that is, a proper respect for state functions") (citation omitted). Accordingly, the litigation is stayed.

*CONCLUSION*

The August 15, 2011 motion to dismiss is granted with respect to plaintiff's federal claims for violations of the RICO statute under 18 U.S.C. §§ 1962(c) and (d), for malicious prosecution and malicious abuse of process under 42 U.S.C. § 1983 and state law, for violation of procedural due process under 42 U.S.C. § 1983, and for attorney's fees pursuant to 42 U.S.C. § 1988. The remainder of the action is stayed pending resolution of plaintiff's Article 78 proceedings.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 75029

---

## Footnotes

1    By all accounts, the proceedings were held in full accordance New York's Vehicle and Traffic Law and the Rules and Regulations of the State of New York. *See* Vehicle and Traffic Law §§ 225 and 228; 15 NYCRR § 124.4. Plaintiff does not claim otherwise; nor does he claim that these regulations themselves violate any state or federal law.

---

**End of Document**                                                                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    5

2013 WL 5366394
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Gary LIANG, Plaintiff,
v.
The CITY OF NEW YORK; Raymond Kelly,
Commissioner of the New York City Police Department;
Brian J. Maguire, Deputy Inspector: of NYPD 109th
Precinct; New York City Police Department; Detective
Robert Zee, individually and in his official capacity as
a detective in the New York City Police Department;
Detective Albert Hawkins, individually and in his official
capacity as a detective in the New York City Police
Department; Detective Shim, individually and in his
official capacity as a detective in the New York City
Police Department; Detective Christopher Vaughn,
individually and in his official capacity as a detective
in the New York City Police Department; Detective
Scali, individually and in his official capacity as a
detective in the New York City Police Department;
Lieutenant Conforti, individually and in his official
capacity as a lieutenant: in the New York City Police
Department; Sergeant Michetti, individually and in his
official capacity as a sergeant in the New York City
Police Department; Sergeant Natoli, individually and in
his official capacity as a sergeant in the New York City
Police Department; "John Doe," individually and in his
official capacity as a New York City police officer, "John
Doe" being a fictitious name, the true name not known
at this time; "Jane Doe," individually and in her official
capacity as a New York City police offer, "Jane Doe"
being a fictitious name, the true name not known at this
time; Xin Xu; Bei Wang; Da Peng: Song; Ivan Quek,
aka Ivan Sun; and Yi Jing Tan, aka "Kerry," Defendants.

No. 10–CV–3089 (ENV)(VVP).
|
Sept. 24, 2013.

## Attorneys and Law Firms

Chunyu Jean Wang, Wang Law Office, PLLC, Flushing, NY,
for Plaintiff.

Elizabeth N. Krasnow, Shlomit Aroubas, Sumit Sud, New
York City Law Department, Wei Ji, Alliance Law PLLC, New
York, NY, Mingli Chen, Kevin Kerveng Tung, P.C., Thomas
D. Gearon, Law Office of Thomas D. Gearon, P.C., Flushing,
NY, for Defendants.

Ivan Quek, pro se.

## *MEMORANDUM AND ORDER*

VITALIANO, District Judge.

**\*1** Plaintiff Gary Liang brings this civil rights action against
defendants the City of New York ("the City"), the New
York Police Department ("NYPD"), Police Commissioner
Raymond Kelly, Deputy Inspector Brian Maguire, Captain [1]
Thomas Conforti, Sergeant Michetti, [2] Sergeant Brian
Natoli, Detectives Robert Zee, Albert Hawkins, Jae Shim,
Christopher Vaughn, and Edward Scali, and Police Officers
"John Doe" and "Jane Doe" (collectively "the City
defendants"), as well as against Xin Xu, Bei Wang, Da
Peng Song, Ivan Quek (aka Ivan Sun) and Yi Jing Tan (aka
Kerry Tan), individuals unaffiliated with the City (collectively
"the non-City defendants"). Liang alleges violations of his
constitutional rights relating to three occasions on which he
was arrested. In his amended complaint, plaintiff sues the
City and NYPD as institutional entities, defendants Kelly and
Maguire in their official capacities, defendants Zee, Hawkins,
Shim, Vaughn, Scali, Conforti, Michetti, Natoli, "John Doe,"
and "Jane Doe" in both their official and personal capacities,
and all non-City defendants personally. (Am.Compl.(Dkt. No.
2) ¶¶ 8–26). The City defendants now move under Rule 12(b)
(6) to dismiss all counts against them except for plaintiffs
claim for unreasonable search and seizure. [3] For the reasons
discussed below, the motion is granted.

## *Factual Background*

Liang claims that this § 1983 action springs from the fact,
he believes, that he is or was the target of a large conspiracy
involving all defendants to deprive him of his civil rights.
He alleges that the City defendants falsely arrested him on
three occasions in response to the non-City defendants' bribes
or improper gratuities and false complaints. (Am.Compl.¶¶
145–149.) [4] He alleges further that, in the case of each arrest,
NYPD officers unlawfully seized or searched his belongings,

(*id.* ¶¶ 143–44), failed to read him his Miranda rights, (*id.* ¶ 90), declined to take a statement from him, (*id.* ¶ 91), prohibited him from contacting counsel for approximately 12 hours, (*id.* ¶ 92), and detained him for approximately 24 hours. (*Id.* ¶ 93). The charges stemming from all three arrests were dismissed on speedy trial grounds, pursuant to New York Criminal Procedure Law § 30.30. (*Id.* ¶¶ 53, 80, 89, 147(h)). At the center of the litigation vortex is defendant Tan, with whom Liang had been romantically involved from 1999 through 2007 [5] and with whom he co-owned several businesses. (*Id.* ¶¶ 27–28.)

### I. The July 9 Arrest

On or about July 5, 2007, Tan filed a complaint with NYPD's 109th Precinct in Queens. (Decl. of Elizabeth Norris Krasnow in Support of City Defs.' Mot. to Dismiss ("Krasnow Decl.") (Dkt. No. 54), Exh. B). During her interview with Detective Zee, Tan claimed Liang assaulted her and stole $5000 from her pocketbook before departing for Shanghai. (*Id.*). She showed Detective Zee bruises on her arms and legs that she attributed to Liang, and informed the detective that Liang would be returning from Shanghai on the night of July 8, 2007. (*Id;* Krasnow Decl., Exh. E). On that date, Detectives Zee and Shim met plaintiff at the airport and Detective Zee arrested him (without a warrant, according to Liang) for burglary, robbery, and assault. (Krasnow Decl., Exhs. D, E; Am. Compl. ¶¶ 36–44). [6] According to Liang, Zee claimed that the laptop Liang was carrying belonged to Tan, and seized both the laptop and Liang's passport. (Am.Compl. ¶ 45). Additionally, Tan was at the 109th Precinct when Liang was brought in; she was permitted to search his belongings and to take several items, including Liang's apartment keys and ATM card. (*Id.* ¶¶ 49–50). Liang alleges that he received no property voucher for any of the items that were taken from him, and that none of the seizures were documented. (*Id.* ¶ 46).

### II. The February 28 Arrest

**\*2** On January 30, 2008, Tan obtained an order of protection against plaintiff ("the January 30 order of protection"). (*Id.* ¶ 54; Krasnow Decl., Exh. F). The order forbade Liang from communicating with Tan or going to her residence/place of business, but permitted "incidental contact at work and apartment," (Exh. F), presumably because Liang and Tan co-owned properties and businesses. The addresses where Liang and Tan had joint interest are not explicitly listed on the order of protection. On February 28, 2008, Liang went

with three friends to 41–40 Kissena Boulevard. (Am.Compl. ¶ 57). Although the amended complaint is not entirely clear on this point, it seems to indicate that 41–40 Kissena Boulevard housed EW Studio, a business Liang and Tan jointly owned. (*Id.* ¶¶ 29, 64). Liang claims he had learned that Tan "had started her own company and had attempted to have the landlord assign the lease to this new company." (*Id.* ¶ 57). The purpose of Liang's visit, he claims, was to defend his property. [7] Upon encountering several people at the premises he determined were Tan's employees, and who are now also non-City defendants, [8] Liang called the police to report the intruders' presence in his store. (*Id.* ¶ 59).

Two uniformed officers arrived in response to Liang's call. (*Id.* ¶ 60). Shortly thereafter, Detectives Zee, Shim, and Hawkins arrived at the scene in plain clothes, but in response to a complaint by Tan, which they received by radio dispatch. (Krasnow Decl., Exh. H). The three detectives instructed the uniformed officers to "step aside," explaining that Liang was not permitted to be on the premises. (*Id.* ¶¶ 61–63). Liang pointed out indicia of his business ownership —namely, two licenses on the wall bearing the name of one of Liang's companies, certificates of incorporation, and stock certificates. (*Id.* ¶¶ 65–66). However, Detective Shim discounted those business authorizations in favor of a customer's invoice that displayed the new company's name, "Sagar Wireless." (*Id.* ¶¶ 63, 67).

Next, Liang claims, Detective Zee searched his belongings without his permission, then instructed the uniformed officers to arrest him and one of his friends. (*Id.* ¶¶ 69–70). Following his arrest, Liang was charged, in a complaint authored by Detective Hawkins, with criminal contempt (violation of an order of protection) and trespassing. (*Id.* ¶ 71; Exh. G). The next day, February 29, Tan obtained a second order of protection prohibiting Liang from going to her residence or place of business and from contacting her ("the February 29 order of protection"). (Krasnow Decl., Exh. L).

### III. The June 18 Arrest

On March 24, 2008, in response to a complaint filed by Tan, Detective Vaughn issued a criminal complaint against Liang charging him with violating the February 29 order of protection by contacting Tan two days earlier and threatening to kill her. (Krasnow Decl., Exhs. M, S; Am. Compl. ¶ 81). On or around 8 p.m. on May 30, Detective Vaughn and four other detectives went to plaintiff's apartment. (Am.Compl. ¶¶ 82–83). After learning Liang was out, Detective Vaughn left his

card with plaintiff's doorman. (*Id* .) On June 18, 2008, Liang voluntarily surrendered at the 109th Precincts station house and was arrested by Detective Vaughn. (*Id* . ¶ 84; Krasnow Decl., Exh. T). Liang claims he had an alibi for March 22, 2008, the date of the alleged violation, but that Detective Vaughn refused to take his statement. (Am.Compl.¶¶ 87–88).

### IV. Liang's Post–Arrest Allegations

**\*3** Liang relies on a number of happenings that occurred after one or more of the arrests. First, he claims that, on July 9, 2007, Detective Zee, and/or someone affiliated with Detective Zee and at his behest, went to the office of Allen Chiu, Liang's attorney, and threatened him not to close on a real estate transaction that Liang and Tan had negotiated earlier to transfer a condo from Tan to Liang's mother. (*Id.* ¶¶ 31, 52). Second, he alleges that, on or about July 13, 2007, Detective Zee "activated a demo line phone, which allows the user to make free calls to any number and is supposed to be reserved to either mobile phone carrier employees or affiliates." (*Id.* ¶ 55). Third, he alleges that, "on or about November 10, 2007, Defendant Hawkins activated a wireless account with EW Studio Inc., one of Plaintiffs businesses." (*Id.* ¶ 56).

Liang next claims that, on or about September 23, 2008, an otherwise unidentified "Judge Grace" issued an order enjoining Tan, Tan's employees, and her "agents" from conducting business at 41–40 Kissena Boulevard and enjoining Tan from interfering with EW Studio's business operations. (*Id.* ¶ 98). On or about October 28, 2008, Liang further asserts, Steve Wong, to whom he had granted power of attorney, attempted to execute the "order" issued by "Judge Grace." That effort was stymied, however, when Tan's employees refused to leave the store premises. When Wong and an otherwise unidentified "retired police officer Phil" went to 41–40 Kissena Boulevard accompanied by two officers, one of Tan's employees, he alleges, contacted Detective Zee, who then spoke with the officers who had accompanied Wong to the premises. (*Id.* ¶¶ 99–105).

Following this episode, plaintiff claims that, in October and November of 2008, Defendant Scali convinced two individuals—Xiao Yun Li and "retired police officer Phil"—to falsely accuse him of plotting to murder Detective Zee. (*Id.* ¶¶ 106–07). Liang also alleges that Detectives Conforti and Michetti took from him the key to the store at 41–40 Kissena Boulevard on December 2, 2008 and gave it to Tan. (*Id.* ¶¶ 109–112). Finally, Liang asserts that, on May 27, 2010, he received a letter from the NYPD Investigations Unit in

response to two complaints [9] he had filed against Detective Zee, stating there was sufficient evidence to prove misconduct against the detective. (*Id.* ¶¶ 96–97, 119–120).

### V. Liang's Causes of Action

Liang's 13–count complaint asserts federal causes of action based on denial of equal protection of the law in violation of the Fourteenth Amendment (Count 1), unreasonable search and seizure of property in violation of the Fourth Amendment (Count 2), false arrest in violation of the Fourth Amendment (Count 3), civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 5), conspiracy to violate his civil rights under 42 U.S.C. § 1985 [10] (Count 10), and violations of his civil rights under 42 U.S.C. § 1983 (Counts 11–13). [11] Liang also asserts supplemental state law claims for unlawful detention and confinement (Count 4), filing of false criminal complaints (Count 6), violations of parallel rights under the New York state constitution (Count 7), tortious interference with a contract (Count 8), violation of the state's police power (Count 9), and negligent supervision (Count 10). As relief, plaintiff seeks, among other things, compensatory damages and injunctions against both the City and non-City defendants.

### *Standard of Review*

### I. Stating a Claim

**\*4** When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). To survive the motion, the complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. To the extent there are disagreements or ambiguities of fact, the Court must construe all the facts in a light most favorable to the plaintiff and draw all reasonable inferences in his favor. *See Matson v. Board of Educ. of City School Dist. of New York,* 631 F.3d 57, 72 (2d Cir.2011).

However, the court need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain,* 478 U.S.

265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Moreover, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). On the other hand, "a complaint need not pin plaintiffs claim for relief to a precise legal theory." *Skinner v. Switzer*, ——U.S. ——, ——, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011). All that is required is "a plausible 'short and plain' statement of the plaintiffs claim, not an exposition of his legal argument." *Id.*

II. Consideration of Materials Outside the Pleadings

"[O]n a motion to dismiss, a court may only consider [1] the pleading itself, [2] documents that are referenced in the complaint, [3] documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and [4] matters of which judicial notice may be taken." *Arrocha v. City Univ. of New York*, 878 F.Supp.2d. 364, 368 (E.D.N.Y.2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) and *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)). Throughout their briefing, the City defendants refer to various extrinsic documents they have submitted to the Court as exhibits to the Krasnow Declaration. These exhibits are as follows: Liang's amended complaint (Exh. A); arrest or complaint reports (Exhs.D, H, J, M); resulting criminal complaints and their supporting affidavits (Exhs.E, G, K, V); complaint follow-up reports (or DD5s) (Exhs.B–C, N–T); the two orders of protection issued against plaintiff (Exhs.F, L); and an invoice from the 41–40 Kissena Boulevard store (Exh. I).

There is no dispute that Liang's amended complaint is properly considered on a motion to dismiss. However, Liang contends that none of the City defendants' other exhibits fall within any of the four fair game categories described in *Arrocha*. (*See* PL's Mem. at 3). The City defendants press their consideration, claiming that all exhibits have been implicitly incorporated by reference into the complaint and/or are proper for judicial notice. (*See* City Defs.' Reply (Dkt. No. 58) at 1–3). All but the invoice (Exh. I), the Court finds, are properly considered on this motion.

*5 To start, throughout his complaint, Liang explicitly references and relies upon a number of the exhibits he now seeks to exclude from the Court's consideration. These documents include the first criminal complaint preferred against Liang, (*see* Am. Compl. ¶¶ 33, 146(a)), the first order

of protection, (*see id.* ¶¶ 54, 75, 86, 88), the second criminal complaint, (*see id.* ¶¶ 73, 147(a)), supporting affidavits made by Tan, Song, and Wang on March 12, 2008, (*see id.* ¶¶ 73–74, 76–77), and the second order of protection. (*See id.* ¶ 79). Exhibits E, F, G, K, and L, therefore, are clearly incorporated by reference into the complaint, and the Court may consider them as though they were part of the complaint itself.

With the exception of Exhibit I (the invoice), the remaining exhibits are all either complaint reports (Exhs.H, M), follow-up reports to the complaint (DD5s) (Exhs.B–C, N–T), arrest reports (Exhs.D, J), or documents filed in a court of record (Exhs.U, V).[12] The Court may take judicial notice of these materials, as they are in the public record. *See Wims v. New York City Police Dep't.*, No. 10–Civ–6128,2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (a district court may take judicial notice of "arrest reports, criminal complaints, indictments and criminal disposition data" when deciding a 12(b)(6) motion); *Obilo v. City Univ. of City of New York*, No. 01–CV–5118, 2003 WL 1809471, at *5 (E.D.N.Y. Apr. 07, 2003) ("[J]udicial notice can be taken of the incident report, police complaint and two DD5s completed by [defendant police officer]."); *Wingate v. Deas*, No. 11CV1000, 2012 WL 1134893, at *1 n. 1 (E.D.N.Y. Apr. 02, 2012) (taking judicial notice of arrest reports); *Canessa v. Cnty. of Suffolk*, No. 09–CV–3256, 2010 WL 1438822, at *1–2 (E.D.N.Y. Apr.10, 2010) (taking judicial notice of arrest records). Consequently, the Court may consider these records as well, but only to establish "their existence and legal effect," or to "determine what statements [they] contained ... not for the truth of the matters asserted." *Twine v. Four Unknown New York Police Officers*, No. 10–cv–6622, 2012 WL 6184014, at *7 (S.D.N.Y., Dec.12, 2012); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007) (internal quotation marks and emphases omitted).

*Discussion*

I. Claims Against NYPD

Among the flock of defendants sued by Liang is NYPD. But, as an organizational entity, NYPD is not a proper defendant, since agencies of New York City do not have a separate legal identity from the City. *See, e.g., Nnebe v. Daus*, 644 F.3d 147, 158 n. 6 (2d Cir.2011) ("It is well settled in this Court that, as a general matter, agencies of New York City are not suable entities in § 1983 actions."); *Graham v. City of New York*, 869 F.Supp.2d 337, 348 (E.D.N.Y.2012) (" 'All actions and proceedings for the recovery of penalties for the violation

of any level shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.' ") (quoting N.Y. City. Charter, Ch. 17 § 396); *Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir.2007) ("The district court correctly noted that the NYPD is a non-suable agency of the City."). Accordingly, all claims against the NYPD are dismissed with prejudice.

## II. Claims Against All Other City Defendants

### a. The Legal Framework for § 1983 Claims

**\*6** "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere. In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." *Id.* (internal citations omitted). Although individual state officials, such as police officers, may be liable under § 1983 in their individual capacities, they may assert an affirmative defense of qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Southerland v. City of New York,* 680 F.3d 127, 141 (2d Cir.2012) (internal quotations omitted). "A right is 'clearly established' when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotations and alterations omitted). An officer's actions are "objectively reasonable" if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Id.* (internal quotations omitted).

### b. False Arrest Claims

Claims for false arrest under § 1983 are based on the Fourth Amendment's protection against unreasonable seizures, which includes the right to remain free from arrest absent probable cause. *See, e.g., Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006). It is well established in the Second Circuit that "[p]robable cause is a complete defense to an action for false arrest brought under New York Law or § 1983." *Ackerson v. City of White Plains,* 702 F.3d 15, 19 (2d Cir.2012) (internal quotations omitted); *accord Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118–19 (2d Cir.1995);

*Jaegly,* 439 F.3d at 151. Courts will dismiss a claim for false arrest if the complaint is devoid of facts showing that the arresting officer could not have reasonably concluded that there was probable cause to make the arrest. *See, e.g., Kennie v. White Plains Police Dep't Vice Control Unit,* 108 F.3d 1369, at \*2 (2d Cir.1997); *Kafafian v. Young,* 477 Fed.Appx. 762, at \*1 (2d Cir.2012); *Pugach v. Ventrella,* 152 F.3d 920, at \*1 (2d Cir.1998).

In general, an officer has probable cause to make an arrest if he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). Probable cause exists as a matter of law when there is no dispute as to the relevant facts and officers' knowledge at the time of arrest. *See also Fabrikant v. French,* 691 F.3d 193, 217 (2nd Cir.2012) ("Probable cause encompasses only that information available to the arresting officer prior to and including the point of seizure.") (internal quotations omitted). When information is received from a putative victim or eyewitness, probable cause exists "unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern,* 268 F.3d 65, 70 (2d Cir.2001).

**\*7** As the record makes clear, the City defendants had, at the very least, a reasonable basis to find probable cause when arresting Liang on each of the three occasions described in the complaint. Each arrest either followed a complaint made by civilians Tan, Wang, and/or Song to officers at the 109th Precinct. That these complainants would later be named as defendants in this action is irrelevant to the analysis of the false arrest claims lodged against the City defendants. Each citizen complaint to the police involved allegations that Liang had committed (or was in the process of committing) a crime, or had violated (or was in the process of violating) an order of protection, or both. The record on this motion supports those facts convincingly, and, other than his naked assertion of conspiracy, Liang offers not a single plausibly pleaded fact to the contrary. Surely, Liang protested his innocence to the arresting officers, but points to nothing to show why it was unreasonable for them to believe the contrary claims that established probable cause to arrest him. His false arrest claims therefore fall short. *See, e.g., Coyle v. Coyle,* 354 F.Supp.2d 207, 211–12 (E.D.N.Y.2005) (dismissing false arrest claims on a 12(b)(6) motion because officers had no reason to doubt victim's statement that plaintiff violated a restraining order).

Specifically, regarding the July 9, 2007 arrest, Tan filed a criminal complaint with the 109th Precinct three days before the arrest, alleging that Liang physically assaulted her, took $5000 from her pocketbook, and used the money to purchase a round-trip ticket to Shanghai. (Am. Compl. ¶ 33; Exh. B). The complainant even advised that plaintiff had a return ticket for July 8. (*Id.*). As reflected in Exhibit E to the Krasnow Declarations—the criminal complaint issued against Liang in New York City Criminal Court, Queens County—Detective Zee personally interviewed Tan on July 5. (Exh. E). Consistent with her allegations, he observed bruises on her arms and legs. (*Id.*).

With a powerful effect on this claim, opposite the one he intended, Liang acknowledges Tan made these statements to Detective Zee, but claims that her statements were "false," and asserts that Detective Zee did not conduct an investigation to verify her claims before making the arrest. (Am.Compl.¶ 34). Simply, "[t]he actual accuracy or veracity of [a witness's] statement is irrelevant to a determination of whether [an officer] had arguable probable cause. Rather, the question is whether [the officer] could have reasonably relied on it." *Escalera v. Lunn,* 361 F.3d 737, 745 (2d Cir.2004). Although Tan's complaint alone would have been sufficient for probable cause, even without further verification, Detective Zee visually confirmed that she had injuries consistent with her allegations of assault. (Exh. E). There can be no contest that Detective Zee had, at a minimum, an objectively reasonable basis to find probable cause. Indeed, he had probable cause. *See, e.g., Obilo,* 2003 WL 1809471, at \*7 (victim's identification of plaintiff as her assailant, as well as visible bruises on her arms, supplied arresting officer with probable cause) . [13]

 **\*8** If anything, the circumstances surrounding the February 28 arrest, including breach of the stay away order, demonstrate an even more compelling showing of probable cause. Detectives Zee, Hawkins, and Shim arrived at the Kissena Boulevard address in response to a complaint from Tan alleging that Liang had entered the store, in violation of the January 30 order of protection, and was threatening and harassing her employees, Song and Wang. (Exhs.G–H, K). In line with ordinary police procedures, the arresting officers, the record shows, were dispatched to the store via NYPD's control radio communications. Courts in this circuit have repeatedly found that, in the absence of reason to doubt the complainant, an allegation that an individual has violated a stay away order supports probable cause for arrest. *See,*

*e.g., Jaegly,* 439 F.3d at 151; *Carthew v. Cnty. of Suffolk,* 709 F.Supp.2d 188, 197 (E.D.N.Y.2010) (dismissing false arrest claims because officer had probable cause based on report that plaintiff violated order of protection); *Dudley v. Torres,* No. 05–CV–1729, 2008 WL 2149603, at \*4–5 (E.D.N.Y. May 21, 2008) (finding probable cause for an arrest based on plaintiff's alleged violation of a stay away order, despite plaintiff's statement that he "didn't do anything"); *Welch v. City of New York,* 95Civ8953, 1997 WL 436382, at \*5 (S.D.N.Y. Aug.4, 1997) (finding probable cause to arrest plaintiff for violation of an expired order of protection because officer had a reasonable basis to believe it was still in effect), *aff'd,* 166 F.3d 1203 (2d Cir.1998) (summary order).

Once again, Liang pleads no facts supporting even an inference that any of the City defendants had reason to doubt the information provided by Wang, Song, or Tan. Indeed, he readily admits to the existence of the January 30 order of protection, which explicitly directed him to avoid Tan's "place of employment." (Exh. F). Although the Kissena Boulevard address was not explicitly mentioned in the order, it was certainly reasonable for the officers to conclude that the store at that address constituted Tan's "place of employment," since she told the officers that it was "[her] business." (Exh. H). Nothing in any pleading or paper filed by plaintiff suggests Tan's business was not located at that address. Moreover, as the Complaint Report specifies, Tan alleged that Liang "did steal and hold in his possession a cell phone contract which he removed from the office without authority," (*id.*), another allegation Liang does not deny anywhere in his pleadings. As a result, without a reason to disbelieve the complainants, the officers had an objectively reasonable basis to conclude that there was probable cause to arrest Liang on the evening of February 28, 2008.

Liang sees a firewall barring dismissal. He correctly observes that the January 30 stay away order still permitted "incidental contact ... at work and apartment." (*Id.;* Am. Comp. ¶¶ 54, 75). This limited option avails him nothing. But, the contact on February 28 was far from "incidental." Liang states that he went with three friends to the store that evening because "he heard that Defendant Tan had started her own company and had attempted to have the landlord assign the lease to a new company." (Am.Compl.¶ 57). By his own account, Liang went to the store to provoke a confrontation, and to resort to self-help to recover what he thought was rightfully his. Indeed, Liang stayed at the store for approximately two hours, where, arrest records show, he threatened to beat up Song if he saw him in the store again. (Exh. K). At a minimum,

any officer aware of the January 30 order would have had a reasonable basis to conclude that Liang had violated the order. Admissions by plaintiff in his pleadings show that probable cause abounded.

**\*9** Nor did that probable cause evaporate because, as Liang claims, the arresting officers ignored his protestations and the visible indications that he owned and operated the business at 40–41 Kissena Boulevard—namely, two Department of Consumer Affairs licenses on the wall, certificates of incorporation, and stock certificates. (Am.Compl.¶¶ 64–66). All of it, of course, is beside the point. None of it, even if authentic, provided an exception to the January 30 order of protection. At that location, only "incidental" contact was excepted. And, obviously, business ownership and its indicia would not excuse the threatening and harassing conduct about which Tan and her employees complained to the police—crimes chargeable independent of any criminal contempt charge for violating an order of protection.

But, clearly, notwithstanding any other objectively reasonable grounds to conclude that probable cause to arrest Liang existed, the officers arrived at the store to find a confrontational scene, as the pleadings describe, with an order of protection barring the arrestee's presence there (except incidentally). This is enough to establish probable cause, and no further investigation was required to justify the arrest. *See, e.g., Carthew,* 709 F.Supp.2d. at 197–99 (officers had probable cause based on victims statements, despite "plaintiff's claim that the building was his place of business and that [the victim] did not work there"); *Dudley,* 2008 WL 2149603 at \*5; *Welch,* 1997 WL 436382 at \*5. Indeed, "officers need not conduct an investigation which exculpates an arrestee.... To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me .' " *Dukes v. City of New York,* 879 F.Supp. 335, 343 (S.D.N.Y.1995) (internal citations and quotations omitted); *see also Curley,* 268 F.3d at 70 ("[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.") (internal quotations omitted). [14] Liang's third arrest, which occurred on June 18, 2008, followed a similar pattern. On February 29, 2008, Tan obtained a second order of protection against Liang, the terms of which mirrored, or were stronger than, the January 30 order. (Exh. L). On March 24, Tan filed a complaint with the 109th Precinct, alleging that Liang had violated the second order two days earlier by harassing her by telephone. (Exh. M). The harassing

call demanded payment of $200,000. (*Id.*). Tans' complaint also accused Liang of approaching her in the garage of the building in which they both lived while brandishing a knife at her. (Exh. M). On June 18, after learning that Detective Vaughn and other officers had been looking for him during the previous days, Liang voluntarily surrendered at the police station. (Am.Compl.¶¶ 82–84). There, he was arrested for violating the February 29 order of protection and was charged by a criminal complaint authored by Detective Vaughn. (Exh. U).

**\*10** Once again, Liang fails to plead a plausible false arrest claim. Given the antecedents of the arrest in the record, Liang is required, and fails, to offer reasons why the arresting officers should have doubted Tan's veracity. Instead, he accuses Detective Vaughn of refusing to credit his alibi for March 22, 2008. (Am.Compl.¶¶ 87–88). As discussed above, the case law makes clear that the officers were not obliged to accept Liang's explanation of events over Tan's, and were permitted to arrest him based on Tan's allegations. Stated differently, the officers had an objectively reasonable basis to believe that they had probable cause to arrest Liang for violating the February 29 order of protection.

For these reasons, the Court finds that the officers had probable cause, or a reasonable basis to find probable cause, on all three occasions Liang complains of. Consequently, his § 1983 claims and state law claims sounding in false arrest are dismissed with prejudice against the City defendants.

### c. Equal Protection Claims

In Count 1, Liang alleges that he was denied equal protection in violation of the Fourteenth Amendment because the City defendants selectively enforced state criminal laws against him. (Am.Compl.¶¶ 130–141). Specifically, he claims that he was selectively mistreated as compared to Tan on account of his gender. However, he fails to plead facts supporting his otherwise speculative assertions. Any claim of improper targeting for prosecution requires pleading of facts to support it. His equal protection claim fails because he offers no such facts in his pleading. *See, e.g., Kamholtz v. Yates County,* 350 Fed. Appx. 589, 590 (2d Cir.2009) (selective enforcement claim lacking sufficient factual support in the complaint was properly dismissed on a Rule 12(b)(6) motion); *33 Seminary LLC v. City of Binghamton,* 869 F.Supp.2d. 282, 309–10 (N.D.N.Y.2012) (same).

Broadly, to succeed on a selective enforcement claim, a plaintiff must prove that "(1) compared with others

similarly situated, [he] was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Brown v. Syracuse,* 673 F.3d 141, 151–52 (2d Cir.2012) (internal quotations omitted). There can be little doubt that an arrestee's gender is an "impermissible consideration" for the purposes of a selective enforcement claim. *See, e.g., Annis v. County of Westchester,* 136 F.3d 239, 247–48 (2d Cir.1998) (upholding jury's finding that county had selectively enforced workplace rules against plaintiff on account of her gender).

However, Second Circuit courts appear split on how to define "similarly situated." *See Viteritti v. Inc. Vill. of Bayville,* No. 10–CV–3283, 2013 WL 145811, *8 (E.D.N.Y. Jan.14, 2013) (describing competing definitions of "similarly situated"). Under the stricter definition, the aggrieved party must show that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the [treatment selectors] acted on the basis of a mistake." *Id.* (quoting *Ruston v. Town Bd. for the Town of Skaneateles,* 610 F.3d 55, 58 (2d Cir.2010)). Under the looser standard, the aggrieved party need only show that the comparator was or is "similarly situated in all material respects." *Viteritti,* 2013 WL 145811 at *8 (quoting *Vassallo v. Lando,* 591 F.Supp.2d 172, 184 (E.D.N.Y.2008)).

 *11 Even under the looser standard, Liang still cannot satisfy the threshold showing described in *Brown.* He conclusorily states that he received disparate treatment as compared to Tan, (*see* Am. Compl. ¶¶ 135–38), but, from his recitation of the actual facts, it is readily apparent that the two were not "similarly situated in all material respects." As discussed in section II.b, *supra,* the City defendants arrested Liang on all three occasions after specific allegations of criminal behavior —physical abuse, verbal harassment, theft of property, violations of the orders of protection, making threatening statements, and brandishing a weapon—had been leveled against him by the putative victims. By contrast, Liang does not allege that he or anyone else ever made complaints about criminal behavior against Tan at or around the time of his arrests, let alone the kinds of allegations that would cause her to be "similarly situated in all material respects." On this ground alone, his selective enforcement claim is subject to dismissal. *See, e.g., Christian v. Town of Riga,* 649 F.Supp.2d

84, 94 (W.D.N.Y.2009) (dismissing selective enforcement claim because plaintiff failed to plead facts showing disparate treatment to similarly situated individuals).

Assuming, *arguendo,* that Liang could satisfy *Brown's* first prong, his claim would still fail on the second. Front and center are Liang's charge that law enforcement selectively targeted him based on his gender, and/or their malicious intent to deprive him of equal protection. What is missing from his pleadings is something that plausibly pegs this claim to facts. Without even a whiff of facts other than the gender difference between Liang and Tan, all that is offered are naked assertions of discrimination. (*See* Am. Compl. ¶¶ 134–35, 137). They cannot survive a 12(b) motion. *See, e.g., 33 Seminary LLC,* 869 F.Supp.2d at 309–10 (plaintiffs failed to satisfy second prong of selective enforcement claim because their claims were based on "mere[ly] conclusory allegations"); *John Gil Const., Inc. v. Riverso,* 99 F.Supp.2d 345, 353 (S.D.N.Y.2000) ("[P]laintiff's assertions of selective enforcement and racial animus are wholly conclusory and unaccompanied by any supporting factual allegations."); *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) ("[I]t is well settled that ... allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983."). Nor do they support Liang's claim here, which is dismissed with prejudice.

### d. Civil RICO Claims

Next for consideration are Liang's claims that he was injured by violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* To maintain a civil action under RICO, a plaintiff must show "(1) a violation of the RICO statute; (2) an injury to business or property; and (3) that the injury was caused by the violation of RICO." *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 107 (2d Cir.2001). To state a violation of the RICO statute, the plaintiff must allege "(1) conduct (2) of an enterprise [15] (3) through a pattern (4) of racketeering activity, which is defined to include specified predicate acts." [16] *Zimmerman v. Poly Prep Country Day School,* 888 F.Supp.2d 317, 327 (E.D.N.Y.2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473, U.S. 479 (1985)). A plaintiff may also advance a cause of action for conspiracy to violate RICO, regardless of whether the predicate acts were successfully carried out. *See* 18 U.S.C. § 1962(d). Courts have required that "each predicate act ... be articulated clearly in a civil RICO complaint. This articulation requirement is particularly enforced when, as in the case at bar, a RICO civil

conspiracy claim is made." *Rafter v. Bank of America,* No. 04–Civ.–3341, 2009 WL 691929, at \*14 (S.D.N.Y. Mar. 12, 2009).

**\*12** Liang alleges that the City defendants violated RICO by harassing him and taking false complaints against him. (Am.Compl.¶¶ 156–157, 160). He further claims that the City defendants conspired together and with the non-City defendants to violate his constitutional rights, harass and falsely arrest him, seize his business and property, and accept benefits from the non-City defendants in order to harm him. (*Id.* ¶¶ 158–159, 161–164). His litany of injurious wrongs include complaints that he suffered physical, emotional, mental, and financial harm as a result of the conduct violating RICO. (*Id.* ¶ 165).

At the pleading doorway, Liang's RICO claim against the City itself is dismissed because, as many previous courts in this Circuit have held, "a municipal corporation is incapable of having the criminal intent to support RICO's predicate offense requirement." *Brewer v. Vill. of Old Field,* 311 F.Supp.2d 390, 398 (E.D.N.Y.2004) (internal quotations and alterations omitted); *see also, e.g., Rafter,* 2009 WL 691929, at \*15; *Pilitz v. Inc. Vill. of Rockville Centre,* No. 07–CV–4078, 2008 WL 4326996, at \*5 (E.D.N .Y. Sept. 22, 2008); *Interstate Flagging, Inc. v. Town of Darien,* 283 F.Supp.2d 641, 645–46 (D.Conn.2003); *Frooks v. Town of Cortland,* 997 F.Supp. 438, 457 (S.D.N.Y.1998); *Wee v. Rome Hosp.,* No. 93–CV–498, 1996 WL 191970, at \*5 (N.D.N.Y. Apr. 15, 1996); *O & K Trojan, Inc. v. Mun. & Contractors Equipment Corp.,* 751 F.Supp. 431, 434 (S.D.N.Y.1990); *Nu–Life Construction Corp. v. Bd. of Educ.,* 779 F.Supp. 248, 251 (E.D.N.Y.1991). Furthermore, because the City is immune to civil RICO liability, its individual officers and agents are similarly immune in their official capacities. *See, e.g., Frooks,* 997 F.Supp. at 457 ("[B]ecause the Town cannot be held liable under RICO as a matter of law, neither may the Town employees in their official capacities."); *Rini v. Zwirn,* 886 F.Supp. 270, 295 (E.D.N.Y.1995 ("[S]ince the municipality cannot be held liable for the acts of its agents, the Town employees, in their official capacity, cannot be held liable under RICO."). All civil RICO claims against the individual City defendants in their official capacities are dismissed. *See Wood v. Inc. Vill. of Patchogue of New York,* 311 F.Supp.2d 344, 354 (E.D.N.Y.2004).

Plaintiff fares no better on his individual capacity claims against the City defendants. None of his allegations are more than "merely consistent" with these officers' liability, had

such liability otherwise been plausibly pleaded. *Iqbal,* 556 U.S. at 678. Bluntly, he fails to state facts that plausibly allege racketeering activity. Under § 1961(1), "racketeering activity" encompasses an extensive catalogue of prohibited activities that range from murder to mail fraud. 18 U.S.C. § 1961(1); *see, supra,* p. 27 n. 16. Liang's complaint cites none of the predicate offenses listed in § 1961(1). In their stead, he alleges in vague terms that the City defendants harassed and accepted false complaints against him, and that they conspired with the non-City defendants to do both of those things, as well as to violate his constitutional rights, falsely arrest him, and seize his business and property. (Am.Compl.¶¶ 156–164). None of these acts are among the possible predicate offenses listed in § 1961(1).

**\*13** Hinged to Liang's RICO claim, but an overtone throughout the entire complaint, is his theory of a grand conspiracy—that the City defendants conspired with non-City defendants to punish him and deprive him of his constitutional rights, and did so corruptly (as RICO predicates) in exchange for bribes, gratuities, and other benefits from Tan. (*Id.* ¶¶ 2, 26, 180, 232, 159). The only "benefits" that Liang points to are a demo phone line that Detective Zee allegedly activated, which provides free cell phone calls, and a wireless account that Detective Hawkins opened with EW Studio, one of the companies Tan and Liang had operated together. (*Id.* ¶¶ 55–56).

Deemed true for the purposes of the motion, the fact train stops there. Standing alone, these acts do not qualify as predicate RICO offenses, nor even crimes. The void left by the absence of pleaded facts connecting any of the charged conduct to a conspiracy is even more gaping. No facts supporting the existence a criminal scheme of any kind are pleaded. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (RICO conspiracy must involve a pattern of "related" offenses that "amount to or pose a threat of continued criminal activity"). Indeed, Liang does not even allege that Tan was responsible for providing Zee with access to the demo line, or that Hawkins did not pay for the wireless account with EW Studio. Liang's assertions, plainly, do not "allow[ ] the court to draw the reasonable inference that the defendant[s]" are liable for violating RICO by taking bribes in a conspiracy whose focal point is plaintiffs cell phone business. *Iqbal,* 556 U.S. at 678.

What remains of the wrongdoing charges offered to advance the RICO claim are, at the end, Liang's allegations that Detective Zee and/or un unidentified associate threatened

2013 WL 5366394

Liang's attorney not to proceed with a real estate transaction; that Defendant Scali convinced two individuals—Xiao Yun Li and an otherwise unidentified "retired police officer Phil"—to falsely accuse him of plotting to murder Detective Zee; that Liang had seen Detective Zee leaving the 41–40 Kissena Boulevard store in September 2008; and that in response to two complaints he had filed, the NYPD Investigations Unit informed Liang there was sufficient evidence to prove unspecific misconduct charges against Detective Zee. (Am.Compl.¶¶ 52, 96–97, 106–107, 119–120).

RICO requires more than a scattergun blast. Accepting as true, as the Court must, the litany of peccadilloes pleaded by Liang (even those allegations that are not criminal in nature), Liang pleads no facts showing a pattern of racketeering activity within the meaning of RICO. Of the acts so alleged, only "threatening" (a conclusory allegation) an attorney not to proceed with a legal transaction might conceivably fall within one of the predicate offenses described in § 1961(1). Yet, at the amended complaint stage, the nature of the putative "threat" is entirely undescribed. In any case, a single predicate offense will not suffice. Rather, a plaintiff must show a pattern of predicate offenses—at least two—such that the acts are "related, and that they amount to or pose a threat of *continued criminal activity." H.J. Inc.,* 492 U.S. at 239 (emphasis added). Liang pleads no facts to suggest that the City defendant have constructed a network of related and ongoing racketeering activities. For this reason in isolation, his RICO claim fails against those defendants involved in this list of alleged misdeeds.

 **\*14** Furthermore, Liang does not show the existence of an "enterprise" within the meaning of RICO, which defines it as "group of persons associated together for a common purpose of engaging in a course of conduct" and united by "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Although Liang levels most of his fire against officers or detectives from NYPD's 109th Precinct, the bullets are blank. He pleads no facts to support his conclusory assertions that the City defendants constitute, control, or participate in an enterprise with a distinguishable existence or purpose. Nor, from what is in the record, may the Court infer the existence of an enterprise with the objective, as plaintiff effectively claims, to persecute him through a pattern of racketeering activity. Without such an enterprise, a RICO claim like Liang's must fail.

Finally, Liang accuses the City defendants of conspiring to violate RICO. The requirements for maintaining a cause of action under § 1962(d), which creates a private right of action to bring RICO conspiracies to justice, "are less demanding" than those for standard-issue RICO claims. To be liable, a " 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.' " *Baisch v. Gallina,* 346 F.3d 366, 376–77 (2d Cir.2003) (quoting *Salinas v. United States,* 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)). "In the civil context, a plaintiff must allege that the defendant knew about and agreed to facilitate the scheme." *Baisch,* 346 F.3d at 377 (internal quotations omitted).

Liang's RICO conspiracy claim is no more meritorious than his standard RICO claim, and for the simple (and identical) reason that he has pleaded no facts suggesting either the kind of "scheme" described in *Baisch* or any enterprise intent on executing such a scheme. To state a claim for a RICO conspiracy, "mere allegations of agreement to commit predicate acts are insufficient." *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 145 (S.D.N.Y.1991) (describing the holding in *Morin v. Trupin,* 711 F.Supp. 97, 111–12 (S.D.N.Y.1989)). At the core, a plaintiff must plead facts from which a court may infer that a "meeting of the minds" occurred between the defendants. *Rosenshein,* 114 F.Supp. at 145. Liang fundamentally fails to meet that standard, pleading no facts to support the conclusion that there was a meeting of the minds, or to permit even an inference supporting it. As a result, all of Liang's RICO claims, including his claims alleging a conspiracy to violate RICO, are dismissed as to the City defendants.

### e. Claims Under 42 U.S.C. § 1985(3)

Civil rights law § 1985(3) allows plaintiffs to sue state officials who have conspired to violate their constitutional rights. *Morpurgo v. Inc. Vill. of Sag Harbor,* 697 F.Supp.2d 309, 339 (E.D.N.Y.2010). A plaintiff advancing such a claim must plead facts that show: 1) a conspiracy; 2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen. *See Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999). A conspiracy is "an agreement between two or more individuals where one

2013 WL 5366394

acts in further[ance] of the objective of the conspiracy and each member has knowledge of the nature and scope of the agreement." *Morpurgo,* 697 F.Supp.2d at 339. To sustain a § 1985 claim, a "plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003). Further, for a § 1985(3) claim to survive dismissal, the conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas,* 165 F.3d at 146 (internal quotations omitted).

**\*15** Liang's § 1985(3) claim fails as a matter of law because, as discussed previously, he has pleaded no facts suggesting a "meeting of the minds" among the City defendants, or any subset of them, or by any one of them with any other person, to violate his civil rights. Although his complaint states, for instance, that "defendants acted together to deprive Plaintiff of equal protection and of forth (sic) amendment protection from unlawful search and seizure," and that they "conspired ... to victimize the plaintiff and take his business away from him," (Am.Compl.¶¶ 16–21, 206), these are textbook examples of the kinds of conclusory allegations that are devoid of factual content. The crumbling point is Liang's failure to plead facts to support a conspiratorial meeting of the minds. From plaintiffs vantage point, the claim is nevertheless tantalizing. Given the nature of police work, seizure of person and property (clearly a harm) is often the result of officers working together as a team to execute a common plan. What is missing from the pleadings are any facts plausibly showing that any of the City defendants' conduct was prompted by a meeting of the minds to a commit a constitutional violation. *See, e.g., Webb,* 340 F.3d at 110 (rejecting a § 1985(3) claim because "plaintiffs have not alleged, except in the most conclusory fashion, that any meeting of the minds occurred among any or all of the defendants"); *Bod die v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (internal quotations omitted).

Furthermore, plaintiff's § 1985(3) claim presents no facts supporting the charge that the conspiratorial harm flowed from "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas,* 165 F.3d at 146 (internal quotations omitted). Liang asserts that the City defendants discriminated against him

based on his gender and "arbitrarily chose[ ] to support the female complainant." (Am.Compl.¶¶ 134, 137). Assuming that any non-race based claims qualify, and assuming further that if gender claims *do* qualify, that males fall within a protective umbrella, all there is to support such a claim is Liang's bald assertions that gender drove the conspiracy. That is, as is his entire claim, wholly without support. The § 1985(3) claims is dismissed.

*f. Monell Claims*

Liang also brings a claim for *Monell* liability against the City of New York under § 1983. A § 1983 cause of action against a municipality cannot be premised on *respondeat superior. See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Instead, a plaintiff suing a city under § 1983 must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *see also Pearl v. City of Long Beach,* 296 F.3d 76, 87 (2d Cir.2002) (under *Monell,* "a municipality could be held liable for constitutional torts committed pursuant to a municipal custom or policy"). *See also Roe,* 542 F.3d at 36 ("[M]unicipal liability under § 1983 attaches where—and only where— a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

**\*16** Under *Monell,* an actionable municipal policy or custom exists in the following circumstances:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiffs civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a

> failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Bliven v. Hunt,* 478 F.Supp.2d 332, 336–37 (E.D.N.Y.2007) (citing *Moray v. City of Yonkers,* 924 F.Supp. 8, 12 (S.D.N.Y.1996)). If a plaintiff seeks to show a city policy by referring to only a single act, that act must have been committed by a city official "responsible for establishing final policy with respect to the subject matter in question," and must represent a deliberate and considered choice among competing alternatives. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). If the plaintiff is challenging what he claims is an unofficial custom or practice of the city, he must show that the practice was "so widespread as to have the force of law." *Id.* (quoting *Bd. of Cnty. Comm'rs,* 520 U.S. at 404). The custom "need not [have] receive[d] formal approval by the appropriate decision-maker ... [but] plaintiff must prove ... that [it] is permanent." *Davis v. City of New York,* 228 F.Supp.2d 327, 337 (S.D.N.Y.2002) (internal citations omitted).

Plaintiff cannot establish a claim for *Monell* liability. He charges generally that the City "maintains an unconstitutional policy, practice, and custom of toleration and approval of their detectives receiving bribes from one party to harass and assault another party," as well as "policies or customs exhibiting deliberate indifference to the constitutional rights of victims of hate crimes in the jurisdiction of the 109th precinct." (Am.Compl.¶¶ 232–32). However, using the same whole cloth throughout, the complaint is entirely devoid of facts to buttress these assertions. Liang makes no claim, much less pleads facts showing, that the City has enacted any sort of official policy pursuant to which his rights were violated, and his allegations regarding an unofficial practice or custom are limited to the actions of specific detectives in a single police unit and factually supported only by a pleader's perceptions of his own experience.

Though accepted as true on the motion, these factual allegations show nothing like the kind of "widespread" and "permanent" unconstitutional practices or customs that *Monell* implicates. Nor does Liang include any facts showing that a single city official with final decisionmaking authority had any awareness of the supposed "policies or customs" he describes, let alone enacted, formulated, or ratified those

policies. Indeed, he actually pleads facts to the contrary—that NYPD's Investigations Unit was investigating Liang's claims against Detective Zee actions because they were *out* of policy. (*See* Am. Compl. ¶ 120).

**\*17** Furthermore, Liang fails to plead facts indicating that the City's alleged failure to properly train or supervise its police officers was so egregious as to amount to "deliberate indifference" to the rights of individuals such as plaintiff. Although he contends that defendants Conforti, Michetti, and Natoli negligently supervised the officers under their command by failing to prevent the actions of which he complains, that charge is but another factually unsupported conclusion. It provides no prop for *Monell* liability.

Finally, as a related matter, Liang brings charges personally against Police Commissioner Kelly and Deputy Inspector Maguire of the 109th Precinct in their official capacities only. An official-capacity suit is in essence another avenue to sue the government entity to which the agent belongs. *See, e.g., Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("An official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.") (internal quotations omitted); *5 Borough Pawn, LLC v. City of New York,* 640 F.Supp.2d 268, 297 (S.D.N.Y.2009) ("A suit for damages against a municipal officer in their official capacity is the equivalent of a damage suit against the municipality itself.") (internal quotations omitted). Consequently, Liang's claims against Commissioner Kelly and Deputy Inspector Maguire, being equivalent to his *Monell* claim against the City, are dismissed along with the claims against the City, and for the same reasons.

### g. The Sole Remaining Federal Claim for Unreasonable Search and Seizure

The Court having dismissed Liang's federal claims for false arrest, denial of equal protection, RICO violations, and conspiracy to violate civil rights, his sole remaining federal cause of action is a § 1983 claim for unreasonable search and seizure under the Fourth Amendment. Because the City defendants have explicitly declined to include this claim in their motion to dismiss, and since the parties have not briefed the issue, the Court does not address it. The Court does, though, observe that Liang may only sue those officers who are alleged to have been personally involved in the searches and/or seizures in question. *See, e.g., Farrel v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) ("It is well settled in [the

2013 WL 5366394

Second] Circuit that *personal involvement* of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (emphasis added) (internal quotations omitted); *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986) (a plaintiff in a § 1983 suit must allege "a tangible connection between the acts of the defendant and the injuries suffered"). Therefore, though not deciding the viability of the claim *in toto,* the Court notes these limiting parameters of case law. At no point does Liang plead facts connecting defendants Kelly, Maguire, Scali, or Natoli to the relevant searches or seizures in any personal manner. Accordingly, to the extent plaintiff's unreasonable search and seizure claim intended to encompass these individual defendants, those claims are dismissed by force of the Court's other determinations.

### h. State Law Claims

**\*18** Liang also interposes a slew of state law claims against the City defendants that are largely duplicative of his federal claims. The Court shall address them in turn. [17] First, he asserts a cause of action for unlawful detention and confinement, which is fundamentally identical to his federal false arrest claim. (Am.Compl.¶¶ 151–154). For the reasons discussed in section II.b, *supra,* the claim is dismissed. Likewise, his cause of action for filing false complaints is effectively another iteration of false arrest, (*id.* ¶¶ 167–178), and is dismissed as well. [18]

Next, Liang asserts a cause of action for tortious interference with contract. (*Id.* ¶¶ 184–192). To succeed on such a claim, Liang would have to plead "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages." *Foster v. Churchill,* 87 N.Y.2d 744, 749–50, 642 N.Y.S.2d 583, 665 N.E.2d 153, 156 (1996). Liang alleges that he had "valid contracts with Open Lifetime Group and a store at 41–40 Kissena Blvd.," that the City defendants "knew of the contract as evidenced by his [sic] relationship with Plaintiffs ex-girlfriend, Defendant Tan," and that they "intentionally interfered with the contract by engaging in false arrests of Plaintiff." (Am.Compl.¶¶ 184–86). Putting aside the question of whether Liang has otherwise pleaded a plausible tortious interference claim, he does specifically plead that his false arrests were the wrongful acts of interference. Since the Court has already found that Liang has not plausibly pleaded viable false arrest claims, his tortious interference claim, with its pleaded link to these allegations, lacks an essential element, and it, too, is dismissed as a matter of law.

Incidentally, as putatively additional component of his tortious interference claim, Liang alleges that "Defendant Zee intentionally interfered with the contract by accepting the demo phone." (Am.Compl.¶ 191). First, he does not specify what contract he is referring to, nor does he plead facts indicating breach. Furthermore, aside from being a naked accusation of a *quid pro quo* (and therefore insufficiently pleaded), it is clear that even this naked claim suggests nothing more than a motive for Detective Zee's "false" arrest of Liang. Neither the interactions between Zee and Tan, nor any other factual allegations in the complaint, plausibly support a claim that Zee or any other defendant tortuously interfered in Liang's contractual relationships.

Liang's next claim is for negligent supervision against the City defendants. As discussed in Section II.f, *supra,* he pleads no material facts to support his conclusory allegations that the supervisory officials exercised improper oversight over subordinate officers. As a consequence, this claim fails as a matter of law.

Lastly, plaintiff advances catchall claims against the City defendants under the New York State Constitution for violating the same kinds of rights protected under the United States Constitution, and for violating the state's police power. (*Id.* ¶¶ 180–82, 194–98, 642 N.Y.S.2d 583, 665 N.E.2d 153). The parallel pleading on identical facts yields a congruent result. More importantly, "a private right of action for a violation of the [New York] Constitution is unavailable where an alternative remedy ... exists." *Waxter v. State,* 33 A.D.3d 1180, 1181, 826 N.Y.S.2d 753, 754 (3d Dep't 2006) (citing *Lyles v. State of New York,* 2 A.D.3d 694, 770 N.Y.S.2d 81 (2d Dep't 2003)). As is, by now, obvious, Liang has had a whole host of alternative remedies available to him to vindicate every claim of harm. (Indeed, a federal search and seizure claim remains open.) Plaintiff has made no showing that he lacks an alternative remedy, justifying a private right of action under New York's state constitution. He has convincingly established just the opposite. That his pursuit of alternative relief fails for lack of merit *does not* mean the alternate avenues to relief did not exist.

**\*19** As for Liang's claim that the City defendants "violat[ed] the state's police power," after the pleadings, it is hard to divine what that last straw is. It seems to amount to nothing more than a vague recapitulation of all his claims that the City and its police officers cloaked with and wielding the power of state law acted unlawfully and caused him injury.

It duplicates his federal civil rights claims, but, if having any legitimacy under state law at all, it must be viewed as a private action claiming violations directly under the New York State constitution. The availability of alternative remedies defeats it.

*Conclusion*

For the reasons set forth above, the motion of New York City and its defendant employees is granted. All claims against them are dismissed, except for Liang's § 1983 claim for unreasonable search and seizure under the Fourth Amendment. That claim survives, but only as to defendants Zee, Hawkins, Shim, Vaughn, Conforti, and Michetti. [19]

So Ordered.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5366394

## Footnotes

1   Captain Conforti is listed in the complaint as a lieutenant, but, according to the City defendants, his current rank is that of captain.

2   Plaintiff did not provide a first name for Sergeant Michetti. Defendants state that they have been unable to identify any such individual and have received no request for legal representation by anyone of that name. (City Defs.' Mem. (Dkt. No. 55) at 1 n. 1). However, as a purported officer in the NYPD, the Court considers him among the City defendants and considers their arguments on his behalf.

3   Although they have not moved to dismiss this count, the City defendants have hardly conceded it. They have reserved what is certainly the right to move for summary judgment later. (City Defs.' Mem. at 1 n. 2).

4   According to plaintiff, the City defendants received "benefits" from the civilian defendants that included a demo line for unlimited cell phone calls and cell phone accounts; in exchange, City defendants "took the cell phone business from [p]laintiff and gave it to [defendant] Tan." (Pl.'s Mem. (Dkt. No. 56) at 11).

5   Tan asserts in her answer that the relationship began in 2002 (Def. Tan's Ans. (Dkt. No. 38) ¶ 5), but on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and decide factual disputes in favor of the nonmoving party. *See Midouin v. Downey Savings and Loan Ass'n, F.A.,* 834 F.Supp.2d 95, 102 (E.D.N.Y.2011).

6   The arrest was actually made shortly after midnight on July 9. (Exh. D).

7   Liang does not identify the landlord of 40–41 Kissena Boulevard.

8   It is unclear precisely which non-City defendants were at the store when Liang arrived. The criminal complaint filed against Liang mentions Wang (Krasnow Decl., Exh. G); Tan mentions Wang and Song in her statement (Krasnow Decl., Exh. K); and the Amended Complaint mentions Quek. (Am.Compl.¶ 58). That someone was there is not disputed; the identities of the entire cast *are* disputed, but the issue is immaterial to this motion.

9   Liang submitted the first of these complaints on July 11, 2008, and the second on or about September 18, 2008, after allegedly seeing Detective Zee walking out of the store at 41–40 Kissena Boulevard. (Am.Compl.¶¶ 96–97).

10    Although plaintiff does not specifically cite 42 U.S.C. § 1985 in this count, it is clear from the context of the complaint that he intends to assert this cause of action.

11    Counts 1, 2 and 3 are folded into Liang's § 1983 claim, which is the statutory vehicle by which an individual may assert a private cause of action against state officials for federal constitutional injuries.

12    Although Liang explicitly references a complaint filed against him regarding the third incident for which he was arrested, he dates this complaint March 22, 2008. (Am.Compl.¶¶ 81, 148(a)). Exhibit V is dated July 18, 2008, and is therefore not incorporated by reference into the complaint.

13    Liang also asserts a false arrest claim against Detective Shim in connection with the July 9 arrest. However, in the complaint, Liang merely alleges that he saw Detective Shim at the airport when he was being escorted a customs agent. (Am.Compl.¶ 37). This allegation cannot support a claim against Detective Shim for false arrest, and the count is dismissed as to that defendant as well.

14    In any event, it is of no moment whether Liang owned and operated a business out of 40–41 Kissena Boulevard, since stay away orders often forbid an individual from entering a place he previously shared with the victim. See, e.g., Joan FF. v. Ivon GG, 85 A.D.3d 1219, 1219–20, 924 N.Y.S.2d 611, 611 (3d Dep't 2011) (upholding issuance of order of protection barring plaintiff from entering apartment he had shared with victim); People v. Qike, 182 Misc.2d 737, 740, 700 N.Y.S.2d 640, 643 (Sup.Ct., Kings County, 1999) (defendant required to vacate apartment he shared with victim after an order of protection was issued against him); People v. Scott, 195 Misc.2d 647, 649, 760 N.Y.S.2d 828, 830 (Sup.Ct., Kings County, 2003) (noting that a home owner can be convicted of burglary for unlawfully entering his own home in defiance of an order of protection).

15    The statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

16    These predicate acts must fall within one of the following categories: a broadly-defined class of offenses encompassing most state—level felonies; an enumerated list of federal felonies; certain offenses pertaining to union and labor activities; various fraud offenses; acts indictable under the Currency and Foreign Transactions Reporting Act; specified acts indictable under the Immigration and Nationality Act; and any act that is indictable under any provision listed in 18 U.S.C. § 2332b(g)(5)(B). 18 U.S.C. § 1961(1). A "pattern of racketeering activity" means two or more predicate acts separated by fewer than ten years. Id. § 1961(5).

17    With regard to any state law claims, the Court may only exercise jurisdiction over them if they are "so related" to his remaining federal claim for unreasonable search and seizure "that they form part of the same case or controversy." Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 332 (2d Cir.2011) (quoting 28 U.S.C. § 1367(a)). That is, the claims "must stem from the same common nucleus of operative fact," and "must be such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." Montefiore Med. Ctr., 642 F.3d at 332 (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

18    In the fact section of his complaint, Liang alleges that defendant Scali convinced two individuals—Xiao Yun Li and an unidentified "Officer Phil"—to accuse Laing of "want[ing]" and "attempting" to murder defendant Zee. It is not clear whether he intended to include these allegations as part of his claim against the City defendants for filing false complaints. If he did, they are dismissed along with that claim. Even assuming these allegations are true, Liang makes no claim that any claims or charges were brought against him for attempt or conspiracy to commit murder, nor that he was ever arrested on those grounds. These accusations also concern entirely different events from those on which he bases his Fourth Amendment claim. Hence,

2013 WL 5366394

they are not part of the same "common nucleus of operative fact," *Montefiore Med. Ctr.,* 642 F.3d at 332, and the court lacks jurisdiction over those claims in any event.

19    Because plaintiff has neither identified nor served John and Jane Doe defendants despite ample time to amend his complaint, and because he has not alleged facts in the complaint supporting Fourth Amendment claims against them, all causes of action against John and Jane Doe defendants are dismissed. *See* Fed.R.Civ.P. 4(m); *Hayward v. City of New York,* No. 12–CV–3220, 2012 WL 3580286, at *2 (E.D.N.Y. Aug. 17, 2012); *Cantave v. New York City Police Officers,* No. 09–CV–2226, 2011 WL 1239895, at *8 n. 4 (E.D.N.Y. Mar.28, 2011).

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML  Document 5  Filed 05/01/24  Page 296 of 338

Weiss v. David Benrimon Fine Art LLC, Not Reported in Fed. Rptr. (2021)

2021 WL 6128437
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Sidney N. WEISS, Appellant,

Alejandro Domingo Malvar Egerique, Plaintiff,

v.

DAVID BENRIMON FINE ART LLC, David
Benrimon, Linda Benrimon, aka Linda Rosen, Piedmont
Capital LLC, Avichai Rosen, Defendants-Appellees,

Ezra Chowaiki, Defendant. *

20-3842-cv
|
December 28, 2021

Appeal from orders of the United States District Court for the
Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS
HEREBY ORDERED, ADJUDGED, AND DECREED**
that the April 24, 2020, order of the District Court be and
hereby is **VACATED** insofar as it ordered Sidney N. Weiss
to pay sanctions of $20,000 to David Benrimon Fine Art
LLC, Linda Benrimon, David Benrimon, Piedmont Capital
LLC, and Avichai Rosen, and the cause is **REMANDED**
to the District Court for further proceedings consistent with this
order.

**Attorneys and Law Firms**

FOR APPELLANT: Tyler Maulsby, Frankfurt Kurnit Klein
& Selz PC, New York, NY.

FOR DEFENDANTS-APPELLEES: Luke W. Nikas (Maaren
A. Shah, on the brief), Quinn Emanuel Urquhart & Sullivan,
LLP, New York, NY.

PRESENT: José A. Cabranes, Raymond J. Lohier, Jr., Eunice
C. Lee, Circuit Judges.

## SUMMARY ORDER

**\*1** Plaintiff through his lawyer Weiss alleged that he in
2015 consigned an artwork by Picasso to an art gallery
operated by Ezra Chowaiki. In 2017, Piedmont Capital LLC
("Piedmont"), on behalf of David Benrimon Fine Art LLC
("DBFA"), loaned $300,000 to Chowaiki's gallery, which

wrongfully pledged as collateral Plaintiff's Picasso. The
loan was to be repaid in 30 days with $50,000 interest.
When Chowaiki's gallery failed to pay, DBFA took Plaintiff's
Picasso.

The District Court sanctioned Weiss for signing a pleading
that contained two claims. First, it held that Weiss without
"articulable legal or factual basis" certified a pleading
alleging that all of the appellees were in the business
of collecting usurious debts in violation of the Racketeer
Influenced and Corrupt Organizations Act ("RICO") based
only on the single loan from Piedmont to Chowaiki's gallery.
App'x 640. Second, it held that Weiss "reckless[ly]" certified
a pleading alleging that DBFA and its affiliates fraudulently
failed to disclose a Shtar Ikso, a document that, according
to Plaintiff, made Chowaiki and Piedmont 50%-50% equal
partners in connection with the loan. *Id.* Weiss appeals from
this sanctions ruling. We assume the parties' familiarity with
the underlying facts, the procedural history of the case, and
the issues on appeal.

## I.

We reject Weiss's procedural argument. Rule 11(c)(2) of the
Federal Rules of Civil Procedure contains a 21-day "safe
harbor period." *Star Mark Mgmt., Inc. v. Koon Chun Hing
Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir.
2012). It requires that a motion for sanctions be served, and
that this motion "must not be filed or be presented to the court
if the challenged paper, claim, defense, contention, or denial
is withdrawn or appropriately corrected within 21 days after
service or within another time the court sets." Fed. R. Civ. P.
11(c)(2).

We have not reversed a district court's award of sanctions
despite the moving party's "failure to adhere to the procedural
requirements of Rule 11" and its safe harbor where "there
[was] no indication that [the sanctioned party] would have
corrected or amended its frivolous arguments even had it
been given the opportunity." *Perpetual Sec., Inc. v. Tang*,
290 F.3d 132, 142 (2d Cir. 2002). By contrast, we have
reversed a Rule 11 sanctions award where "the record
indicate[d] that [the sanctioned party] would have withdrawn
or appropriately corrected his misstatements, thus avoiding
sanctions altogether." *Hadges v. Yonkers Racing Corp.*, 48
F.3d 1320, 1328 (2d Cir. 1995) (internal quotation marks
omitted).

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 297 of 338

Weiss v. David Benrimon Fine Art LLC, Not Reported in Fed. Rptr. (2021)

**\*2** Here, although the time from service to filing was shorter than 21 days, Weiss clearly refused to change his position. Weiss responded to the served sanctions motion before it was filed, stating "we are not withdrawing the first amended complaint or case" and that the appellees' "Rule 11 motion lacks any merit." App'x 499. While the appellees did not send Weiss their accompanying motion-to-dismiss brief, this was not required. *Star Mark*, 682 F.3d at 176 (holding that Rule 11 "does not require the service of a memorandum of law or affidavits"). And we see no basis in law for Weiss's proposal that "a court must assess whether the recipient of a Rule 11 motion had sufficient time to consider his options before deciding whether to withdraw or amend the allegedly frivolous pleading." Weiss's Br. 29. Thus, the sanctions order was not procedurally improper.

## II.

We agree with Weiss that the District Court erred, or "abused its discretion," *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (alteration and citation omitted), by sanctioning him for bringing Plaintiff's RICO unlawful debt collection claims while alleging only one usurious loan. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 102 (2d Cir. 2015) ("We review all aspects of a District Court's decision to impose sanctions for abuse of discretion.") (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999)).

A court may sanction counsel for signing pleadings whose legal theories are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *see also id.* 11(c). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend ... the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). "The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011). The inquiry is one of "objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (citation omitted).

The District Court reasoned that it was frivolous to allege that the appellees were involved in "the business of" making usurious loans based on "a single allegation of a single usurious transaction." App'x 640. In analyzing these claims,

the District Court relied on our opinion in *Durante Bros. & Sons v. Flushing Nat. Bank*, 755 F.2d 239 (2d Cir. 1985). There, the district court dismissed some of the plaintiff's RICO claims before trial on statute of limitations grounds. *Id.* at 242. We vacated the judgment in part and remanded those claims, reasoning that the district court had applied the wrong statute of limitations. *Id.* at 248–49. We noted regarding the proceedings on remand that the remaining RICO claims "were adequately pleaded," but that "the complaint did not unequivocally allege that the defendants were in the business of making usurious loans." *Id.* at 249–50. We further stated that the requirement under RICO that the defendant act "in connection with 'the business of' making usurious loans seems aimed at ... the exclusion from the scope of the statute of occasional usurious transactions by one not in the business of loan sharking," and that "the target of RICO is not sporadic activity." *Id.* at 250 (alterations and citation omitted).

These statements in *Durante* were dicta. Only the statute of limitations issue was before us. *See id.* at 248–49. Our comments regarding the requirement that a RICO defendant act in "the business of" making usurious loans were "not essential to the decision." *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006). Indeed, we said as much, "leav[ing] for determination by the district court in the first instance the precise parameters of 'the business' of usury as intended by Congress." *Durante*, 755 F.2d at 250. Thus, *Durante* "[is] not and cannot be binding" on this issue, and only its "persuasiveness" is considered. *Jimenez*, 458 F.3d at 142.

**\*3** Weiss made colorable arguments supporting a broader standard than the one suggested in *Durante*. Most significantly, he cited a district court case that rejected the appellees' argument that "one loan cannot constitute a 'business.' " *Middle States Knowlton Corp. v. Esic Cap., Inc.*, Nos. 82-CV-1911, 82-CV-1912, 82-CV-1913, 82-CV-1926, 82-CV-1941, 1985 WL 7441, at \*8 (D.D.C. Oct. 16, 1985) ("Even if the loan were the sole consummated transaction which [the defendant] undertook, we believe that [the defendant] was in the 'business' of lending money for profit."). Weiss also advanced various statutory arguments, and cited the New York Court of Appeals' treatment of a comparable state statute.

" 'However faulty,' [Weiss's] positions 'were not so untenable as a matter of law as to necessitate sanction.' " *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir. 2000) (alteration and citation omitted). Indeed, "[t]he mere fact that" a court in a different jurisdiction agreed with Weiss "is enough, in the absence of

controlling authority to the contrary, to support a good faith argument for extension ... of existing law." *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 831 (2d Cir. 1992). Thus, we hold that it was error to sanction Weiss for bringing Plaintiff's RICO unlawful debt collection claims while alleging only one usurious loan. [1]

### III.

We reject Weiss's argument that the District Court erred or abused its discretion in sanctioning him for alleging that the appellees committed fraud on the court by failing to disclose the Shtar Ikso. A court may sanction an attorney for signing a pleading that fails to comply with the requirement that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3); *see also id.* 11(c).

The Amended Complaint alleged that the appellees caused Piedmont's verified petition, submitted in Chowaiki's criminal case, to "omit the *Shtar Isko*, which shows that [Chowaiki and Piedmont] were actually 50%-50% equal partners – and not unrelated bona fide purchasers for value." App'x 145. The Parties agree that a Shtar Isko is a document "which creates a partnership between the [Jewish] borrower and [Jewish] lender in order to avoid a religious prohibition against the charging of interest." *Arnav Indus., Inc. Emp. Ret. Tr. v. Westside Realty Assocs.*, 579 N.Y.S.2d 382, 383 (1st Dep't 1992).

The District Court found that Plaintiff's claim was "factually inaccurate" and "careless[ ]." App'x 641. It pointed to a Note between Piedmont and Chowaiki, which was attached to Piedmont's petition in Chowaiki's criminal case. This Note states that payments would be made "in accordance with Heter Iska." App'x 325. The District Court concluded that this text "disclose[d] the existence of the Shtar Isko." App'x 641.

The District Court did not abuse its discretion by adopting "a clearly erroneous assessment of the evidence." *Cooter &*

*Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Even assuming Weiss is correct that a Shtar Isko is a document while Heter Iska is a concept, it is "plausible in light of the record viewed in its entirety" that the Note's reference to Heter Iska disclosed the existence of the Shtar Isko. *United States v. Gonzalez*, 764 F.3d 159, 165 (2d Cir. 2014) (citation omitted). The District Court thus did not err in concluding that Weiss was "reckless[ ]" in signing a pleading that claimed that the failure to disclose the Shtar Isko was "part of the continuing fraud." App'x 145, 640.

### IV.

**\*4** The District Court characterized its "decision to impose sanctions" as "*in large part*[ ] due to the Complaint's overstep in asserting four RICO claims for collection of unlawful debt against all six Defendants in this action, based on allegations of a single usurious loan." App'x 642 (emphasis added). It is not apparent that the District Court would have ordered Weiss to pay $20,000—or anything at all—based solely on his signing a pleading with reckless factual claims. Accordingly, we vacate the April 24, 2020, order imposing sanctions and remand the cause for further proceedings. *See Salovaara v. Eckert*, 222 F.3d 19, 34–35 (2d Cir. 2000).

### CONCLUSION

For the foregoing reasons, we **VACATE** the April 24, 2020, order of the District Court insofar as it ordered Sidney N. Weiss to pay sanctions of $20,000 to David Benrimon Fine Art LLC, Linda Benrimon, David Benrimon, Piedmont Capital LLC, and Avichai Rosen, and we **REMAND** the cause to the District Court for further proceedings consistent with this order.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 6128437

### Footnotes

\*      The Clerk of Court is directed to amend the caption as set forth above.

1      Weiss challenges only the District Court's conclusion that he advanced a frivolous legal argument. We thus take no position on whether sanctions were appropriate based on his claims' lack of "factual basis." App'x 640 (noting Weiss's "attempt[ ] to string out this one [loan] into four separate causes of action that implicate all six Defendants," including while "lack[ing] even conclusory allegations").

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 300 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

2020 WL 1974228
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Alejandro Domingo MALVAR EGERIQUE, Plaintiff,

v.

Ezra CHOWAIKI, David Benrimon Fine Art LLC,
Linda Benrimon, Piedmont Capital LLC, Avichai Rosen,
David Benrimon, and John Does 1-10, Defendants.

19 Civ. 3110 (KPF)
|
Signed 04/24/2020

**Attorneys and Law Firms**

Sidney N. Weiss, Sidney N. Weiss, Attorney at Law, New
York, NY, for Plaintiff.

Adam Michael Felsenstein, Tannenbaum Helpern Syracuse
& Hirschtritt LLP, New York, NY, for Defendant Ezra
Chowaiki.

Luke William Nikas, Maaren Alia Shah, Quinn Emanuel
Urquhart & Sullivan LLP, New York, NY, for Defendants
David Benrimon Fine Art LLC, Linda Benrimon, Piedmont
Capital LLC, Avichai Rosen, David Benrimon.

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

**\*1** Plaintiff Alejandro Domingo Malvar Egerique is
understandably upset. He was deprived of two valuable
artworks of which he was the rightful owner, and the person
responsible for that deprivation was ultimately convicted of
fraud charges in this District. Unsatisfied with the results of
the criminal prosecution and a related bankruptcy proceeding,
Plaintiff has decided to take matters into his own hands,
bringing a civil lawsuit under the Racketeer Influenced
and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§
1961-1968, against a wide swath of individuals (collectively,
"Defendants") he blames for his losses. In relevant part,
Plaintiff alleges that: (i) Ezra Chowaiki, the convicted art
dealer, used his art gallery to engage in a pattern of
fraudulently acquiring and selling artwork; (ii) David and
Linda Benrimon, through their art gallery David Benrimon
Fine Art LLC ("DBFA"), engaged in a pattern of selling

artwork that they had no legal right to sell; (iii) the Benrimons,
through DBFA, engaged in the unlawful collection of debt;
(iv) Avichai Rosen, through his enterprise, Piedmont Capital
LLC ("Piedmont"), also engaged in the unlawful collection
of debt; (v) Defendants conspired to facilitate each of the
previously mentioned RICO violations; and (vi) Defendants
committed analogous state-law claims of fraud, conversion,
and replevin.

Because of the sanctions and stigma attendant to them,
civil RICO claims are notoriously — and appropriately —
difficult to plead. Chowaiki has moved to dismiss the claims
against him, and the remaining Defendants, David and Linda
Benrimon, DBFA, Piedmont, and Rosen (collectively, the
"Benrimon Defendants"), have separately moved to dismiss
the claims against them. The Benrimon Defendants have
also moved for sanctions pursuant to Rule 11 of the Federal
Rules of Civil Procedure. For various reasons outlined herein,
Plaintiff has not pleaded viable RICO claims in this case.
Accordingly, Chowaiki's motion to dismiss is granted in part
and denied in part; the Benrimon Defendants' motion to
dismiss is granted in part and denied in part; and the Benrimon
Defendants' motion for Rule 11 sanctions is granted in part
and denied in part.

**BACKGROUND**

**A. Factual Background** [1]

**1. The Parties**

**\*2** Plaintiff is a citizen and resident of Spain, and the
owner of two works of art, *le Gueridon* by Pablo Picasso
(the "Picasso"), and *Composition avec Profil de Femme* by
Fernand Leger ("the Leger"). (Compl. ¶¶ 3, 4). Plaintiff
acquired both works of art at a sale at Sotheby's in London on
February 6, 2007. (*Id.* at ¶ 4). The Picasso was purchased as
Lot 0152, and the Leger was purchased as Lot 0235. (*Id.*).

Because Plaintiff alleges several RICO enterprises involving
different permutations of the defendants, a word about each
Defendant is in order. During the relevant time period, Ezra
Chowaiki was the Chief Executive Officer and one of the
owners of Chowaiki & Co. Fine Art Ltd. (the "Gallery"),
an art gallery in New York City. (Compl. ¶ 5). On or about
November 13, 2017, the Gallery filed a voluntary petition
under Chapter 7 of the Bankruptcy Code in the United States
Bankruptcy Court for the Southern District of New York. *See
In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (MKV)

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

(Bankr. S.D.N.Y. Nov. 13, 2017) (the "Bankruptcy Case"). Six months later, on May 3, 2018, Chowaiki pleaded guilty to a single count of wire fraud, in violation of 18 U.S.C. § 1343, in this District, relating to his theft of several pieces of artwork. *See United States v. Ezra Chowaiki*, No. 18 Cr. 323 (JSR) (the "Criminal Case"). As part of Chowaiki's plea and sentencing, Chowaiki agreed to forfeit to the United States 26 works of art that were the proceeds of his crimes. (*Id.*). The Picasso is one of the forfeited works. (*Id.*).

DBFA is an art gallery in New York City. (Compl. ¶ 6). David Benrimon is the Director and Chief Executive Officer of DBFA. (*Id.* at ¶ 7). Linda Benrimon is the Executive Director of DBFA. (*Id.* at ¶ 8). She is also the daughter of David Benrimon and the spouse of Avichai Rosen. (*Id.*). As Director and Executive Director of DBFA, respectively, David and Linda Benrimon buy and sell art for DBFA. (*Id.* at ¶ 19). Piedmont, of which Rosen is a principal, is a boutique investment manager specializing in strategic investments in alternative asset classes, including artwork. (*Id.* at ¶¶ 9-10).[2] As noted above, the Court refers to DBFA, David and Linda Benrimon, Avichai Rosen, and Piedmont as the "Benrimon Defendants."

## 2. Plaintiff Consigns the Picasso and the Leger to Chowaiki and the Gallery

Immediately after purchasing the Picasso and the Leger from Sotheby's in February 2007, Plaintiff installed them in his home in Spain, where they remained for eight years. (Compl. ¶ 34). On April 27, 2015, Plaintiff's brother, Benito Malvar, at Plaintiff's instruction and authority, and on Plaintiff's behalf, consigned the Picasso and the Leger to the Gallery. (*Id.* at ¶ 35). Plaintiff sent the two pieces of art to the Gallery that month (*id.* at ¶ 34), and they arrived in early June 2015 (*id.* at ¶ 36). After the consignments expired, Plaintiff — through his brother and through Chowaiki's agent — repeatedly demanded the return of the artwork. (*Id.* at ¶ 37). Chowaiki promised by telephone and email to return the artwork, but never did so. (*Id.* at ¶¶ 37, 105).

**\*3** Instead, Chowaiki converted the artwork for his own purposes. In January or February of 2017, Chowaiki, through the Gallery, sold and shipped the Leger from New York to Glowside Investment Trading, the listed address of which was 115 George Street, 4th Floor, Edinburgh, Scotland, United Kingdom. (Compl. ¶ 106). Chowaiki received money from that sale that was never shared with Plaintiff. (*Id.*). More troublingly, Glowside Investment Trading does not exist, and

no such entity maintains an office at the address given in Edinburgh or elsewhere. (*Id.* at ¶ 107). Further, as described below, Plaintiff alleges that Chowaiki also sold the Picasso without Plaintiff's knowledge or authorization.

## 3. The Alleged Schemes

Plaintiff's Complaint outlines several frauds or schemes that, he alleges, constitute predicate acts sufficient to support his RICO claims. To set the stage for its legal analysis, the Court describes those schemes in the remainder of this section.

### a. The Latamie Acts

The first scheme concerns the sale of Andy Warhol artwork in which DBFA is alleged to have been involved. On February 2, 2012, DBFA — or Benrimon Contemporary LLC, a related art gallery — sold a painting and a set of ten Mao Zedong prints, all by Warhol, to Marc Latamie and DM Fountain, Inc. ("DM"), Latamie's corporate entity, for $1,750,000. (Compl. ¶ 24). The Warhol painting was delivered to Latamie and DM. (*Id.*). However, neither DBFA nor Benrimon Contemporary LLC delivered the complete set of ten Mao Zedong prints to Latamie or DM. (*Id.*).

Cribbing from a state-court complaint filed by Latamie and DM against Benrimon Contemporary LLC, DBFA, David Benrimon, and son Leon Benrimon, Plaintiff alleges that, in connection with the Warhol transaction, Latamie and DM negotiated with, *inter alia*, several members of the Benrimon family. (Compl. ¶ 25). David and Linda Benrimon, in particular, repeatedly promised Latamie and DM that they (the Benrimons) would deliver the Warhol prints to the purchasers, despite the fact that Benrimon Contemporary LLC never had ownership, custody, or control over these prints. (*Id.* at ¶ 26). Plaintiff also alleges that David and Linda Benrimon, through DBFA, sold and delivered to others the very same Warhol prints that they supposedly sold, but failed to deliver, to Latamie and DM. (*Id.* at ¶ 27).

### b. The Pledge Agreement Acts

The second scheme alleged by Plaintiff involved David and Linda Benrimon, through DBFA, acquiring works from Chowaiki and the Gallery — works they knew Chowaiki and the Gallery did not own — at deeply discounted prices. In support of this claim, Plaintiff alleges the following facts:

**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**

2020 WL 1974228

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 302 of 338

On September 19, 2017, David and Linda Benrimon, on behalf of DBFA, agreed to acquire three works of art in a bulk transaction from the Gallery. (Compl. ¶ 45). These were the Picasso; Takashi Murakami's *Jellyfish Eyes* (*Black I*) (the "Murakami"), which belonged to Thomas Morgan; and Pablo Picasso's *Le Clown* ("*Le Clown*"), which belonged to Andrew and Kristen Neumann. (*Id.*). David and Linda Benrimon structured this transaction with Chowaiki so that Piedmont would "lend" Chowaiki and his Gallery money that, by design, would not be repaid, using the works of art as "collateral" for the "loan." (*Id.* at ¶ 44).

Plaintiff cites several emails between David Benrimon and Chowaiki confirming the loan transactions. (Compl. ¶ 47). He also cites the loan documents comprising the transaction, which include: (i) a "Note" for a loan of $300,000.00 from Piedmont to the Gallery, to be repaid in 30 days, together with $50,000.00 interest, for a total uncompounded annual interest rate of 202.18%; (ii) a "Pledge Agreement" in which Piedmont is given the Picasso, the Murakami, and *Le Clown* as security for repayment of the loan; (iii) a "Shtar Isko" [3] in which the $300,000.00 loan creates a 50%-50% partnership between Piedmont and Chowaiki; and (iv) a "Release and Settlement Agreement" in which the parties agreed that, in light of the Gallery's failure to repay the $300,000.00 loan plus $50,000.00 in interest when due on October 19, 2017, all title and ownership of the three artworks passed to Piedmont. (*Id.* at ¶ 48). Plaintiff alleges that while Piedmont was listed as the lender in the documents, the transactions were negotiated by David and Linda Benrimon, on behalf of, and from, DBFA, and that the $300,000.00 loan was listed on the books and records of the Gallery as being from David Benrimon. (*Id.* at ¶ 50).

 **\*4** Significantly, Plaintiff claims that, at the time of the loan agreement, the Benrimon Defendants knew or should have known that: (i) Chowaiki had a court-documented history of selling and pledging artwork, particularly previously consigned artwork, that neither he nor his Gallery owned or had a right to sell or pledge; (ii) Chowaiki was in desperate financial straits, had no assets, and was likely insolvent; (iii) Chowaiki was selling or pledging artwork that he did not own and had no right to sell or pledge; (iv) Chowaiki needed the $300,000 to pay off another loan, and by depleting his inventory by hypothecating or selling three works of art at steeply discounted prices, it would be impossible to pay back the loan at 202.18% interest within 30 days, or to remain in business; (v) Chowaiki would not and could

not fulfill the terms of the Shtar Isko to buy and sell works of art with the $300,000 loan because the $300,000 loan was needed immediately to pay off another loan; (vi) there was a real likelihood that Chowaiki would be arrested for his fraudulent activity; (vii) Chowaiki was selling artwork in bulk at deeply discounted prices, thus giving a clear warning that those works were stolen; and (viii) the price for the three works of art was less than one-third of their true value. (*Id.* at ¶ 55). Further, Plaintiff claims that while the Benrimon Defendants and Chowaiki were structuring the loan for which the Picasso was posted as collateral, the Benrimon Defendants had in their possession a document titled "Provenance" that described the most recent ownership of the Picasso as "Sale Sotheby's London, 6 February 2007, lot 152 Private Collection (acquired at the above sale)." (*Id.* at ¶ 52).

On October 4, 2017, David and Linda Benrimon, on behalf of DBFA, picked up the Picasso from the Gallery. (Compl. ¶ 62). Thereafter, the Benrimons transported the Picasso (or caused it to be transported) to Europe. (*Id.* at ¶ 21). The Picasso has been transported several times — once from Italy to Switzerland in the spring or summer of 2018, a second time from Switzerland to London in the summer or fall of 2018, and a third time from London to Switzerland a few weeks thereafter. (*Id.* at ¶ 64). Further, from March 13 through May 25, 2018, the Picasso was exhibited at the Tega Gallery in Milan. (*Id.* at ¶ 67). Plaintiff alleges that David and Linda Benrimon continue to pay for the Picasso's storage and concealment abroad. (*Id.* at ¶ 72).

### c. The Court Filing Acts

Critical to the success of these schemes of deprivation, Plaintiff alleges, were schemes to create false paper trails. In this regard, Plaintiff alleges that, in order to conceal the true nature of the acquisition of the three works of art by the $300,000 loan, each of the Benrimon Defendants caused numerous "fraudulent" electronic filings to be made in the Bankruptcy Case and Criminal Case. (Compl. ¶ 73). In those filings, Piedmont asserts ownership of the Murakami and *Le Clown*, two of the works taken as security for the $300,000 loan. (*Id.*). Further, Piedmont's verified petition for the Murakami and *Le Clown* in the Criminal Case omits the existence of the Shtar Isko, which shows that Chowaiki and Piedmont were actually 50-50% equal partners and not unrelated *bona fide* purchasers for value. (*Id.* at ¶ 76). Plaintiff alleges that these filings were "fraudulent" because they were

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 303 of 338

**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**

2020 WL 1974228

intended to deceive other owners of the artwork, the creditors of Chowaiki's Gallery, the victims of Chowaiki's crimes, the Bankruptcy Case Trustee, the courts, and law enforcement officials into believing that David and Linda Benrimon and DBFA had nothing to do with these fraudulent transactions. (*Id.* at ¶ 74).

### d. The *Le Compotier* Acts

The fourth fraudulent scheme alleged in the Complaint concerns a transaction between the Benrimons and Chowaiki in which Plaintiff was not involved. In brief, David and Linda Benrimon acquired *Le Compotier* by Juan Gris from Chowaiki and the Gallery at some point before the summer of 2017. (Compl. ¶ 29). However, *Le Compotier* was owned by Eli Sakhai or his company, The Art Collection Inc., and Chowaiki and his Gallery had no right to sell it. (*Id.* at ¶ 30).

Plaintiff alleges that the Benrimons acquired *Le Compotier* with full knowledge of the fact that Chowaiki and his Gallery did not own it. (Compl. ¶ 29). As support, Plaintiff cites to a complaint filed by The Art Collection Inc. against David Benrimon and DBFA, in which Sakhai alleges that he "specifically told [defendant David Benrimon] that he [Sakhai] owned" *Le Compotier*, and that he (Sakhai) had consigned the work to the Gallery, but "had demanded that Chowaiki and Chowaiki & Co. return that painting to" Sakhai's corporation, and, further, that David Benrimon and DBFA should not pay either Chowaiki or his Gallery for the painting because neither Chowaiki nor his Gallery owned the painting or had the right to sell it to the Benrimons. (*Id.* at ¶ 31).

### e. The Fraud Allegations Specific to Chowaiki

**\*5** Plaintiff's Complaint also contains certain allegations directed specifically towards Chowaiki and his Gallery. (*See* Compl. ¶¶ 95-111). Specifically, Plaintiff alleges that from its inception through at least July 20, 2009, Chowaiki conducted the Gallery's affairs through repeated acts of wire fraud in which he obtained customers' artworks by fraudulently telling them he would sell them on consignment, when in fact he used those artworks as collateral for loans. (*Id.* at ¶ 96). Plaintiff alleges that, during this time, Chowaiki used $13 million worth of artwork as collateral, without his clients' knowledge or consent. (*Id.* at ¶ 97).

Plaintiff's only specific example of this type of fraud is the conduct defined earlier as the Pledge Agreement Acts. To substantiate the allegation that Chowaiki engaged in similar conduct repeatedly, Plaintiff relies exclusively on documents filed in the Criminal Case and Bankruptcy Case. Beginning with the former, Plaintiff cites the criminal complaint filed against Chowaiki, which alleges that Chowaiki, with others,

> through the use of e-mail messages, telephone calls, and electronic fund transfers, defrauded purchasers and sellers of fine art by deceiving them into sending funds or artwork to his gallery in New York, New York under the false pretenses that CHOWAIKI would either use the funds to purchase works of art, or that he could sell the artworks that had been provided to him when, in truth and fact, CHOWAIKI never made such purchases and sales.

(Compl. ¶ 99 (quoting Criminal Case, Dkt. #1)). Plaintiff also notes that Chowaiki pleaded guilty to Count One of the Indictment, which charges:

> From at least in or about 2015 through at least in or about 2017, in the Southern District of New York and elsewhere, EZRA CHOWAIKI, the defendant, willfully and knowingly, having devised a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CHOWAIKI, through the use of e-mail messages, telephone calls, and electronic fund transfers, defrauded purchasers and sellers of fine art by deceiving them into sending funds or

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

artwork to his gallery in New York, New York under the false pretenses that CHOWAIKI would either use the funds to purchase works of art or that he would sell the artworks that had been provided to him.

(*Id.* at ¶ 100 (quoting Criminal Case, Dkt. #14)).

Ultimately, as part of Chowaiki's guilty plea and resulting conviction, Chowaiki admitted to the forfeiture of at least 26 works of art that he had stolen or otherwise fraudulently acquired (including the Picasso), worth over $16.6 million, and agreed to make restitution to his victims. (Compl. ¶ 101 (citing Criminal Case, Dkt. #16)). In the Criminal Case, the court adjudged Plaintiff's right to the Picasso to be superior to that of the Bankruptcy Case Trustee and the United States. (*Id.* at ¶ 102). Plaintiff alleges that no other party, including Piedmont, filed a petition with respect to the Picasso. (*Id.*).

Plaintiff also cites limited information from the Bankruptcy Case. Plaintiff notes that, in the Bankruptcy Case, there were 69 claims filed against the Gallery, totaling $56,249,794.49. (Compl. ¶ 103). Plaintiff alleges that almost all of those claims were made by claimants who had given Chowaiki money or art, only to have him convert the money or art for his own use. (*Id.*).

**B. Procedural Background**

**\*6** Plaintiff filed the Complaint on April 8, 2019. (Dkt. #1). On June 10, 2019, Defendants DBFA, David Benrimon, Linda Benrimon, Alex Benrimon, Lauren Benrimon, Piedmont, and Avichai Rosen filed a letter requesting a pre-motion conference for their proposed motion to dismiss under Rule 12(b)(6). (Dkt. #14). The same day, Chowaiki also filed a letter requesting a pre-motion conference for his proposed motion to dismiss. (Dkt. #17). Also on the same day, Plaintiff filed a letter in response to the two letters. (Dkt. #18). On June 11, 2019, the Benrimon Defendants filed a letter requesting a pre-motion conference before moving for sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiff and his counsel. (Dkt. #21). On June 14, 2019, Plaintiff filed a letter opposing the substance of the Benrimon Defendants' letter. (Dkt. #22).

The Court held a pre-motion conference on July 29, 2019, at which time the Court heard arguments from all parties on the Defendants' proposed motions and Plaintiff's

proposed amended complaint. (Dkt. #27 ("July 29, 2019 Tr.")). On September 6, 2019, Plaintiff voluntarily dismissed Defendants Alex Benrimon and Lauren Benrimon from the action. (Dkt. #25). Plaintiff filed an amended complaint (the "Complaint") the same day. (Dkt. #26).

The Complaint alleges the following causes of action:

(i) a RICO claim against David and Linda Benrimon for engaging in pattern of racketeering activity through DBFA;

(ii) a RICO conspiracy claim against David and Linda Benrimon, Rosen, Chowaiki, and Piedmont for facilitating the RICO violations in Count I;

(iii) a RICO claim against Rosen for the collection of unlawful debt through Piedmont;

(iv) a RICO conspiracy claim against David and Linda Benrimon, DBFA, Rosen, and Chowaiki for facilitating the RICO violations in Count III;

(v) a RICO claim against David and Linda Benrimon for collection of unlawful debt through DBFA;

(vi) a RICO conspiracy claim against David and Linda Benrimon, Rosen, Chowaiki and Piedmont for facilitating the RICO violations in Count V;

(vii) a RICO claim against Chowaiki for a pattern of racketeering activity;

(viii) a RICO conspiracy claim against all of the Defendants for facilitating the RICO violations in Count VII;

(ix) a common-law fraud claim against Chowaiki and conspiracy to defraud claim against all the Benrimon Defendants;

(x) a conversion claim against all of the Defendants for Plaintiff's loss of the Picasso and a conspiracy to convert claim against all of the Defendants for Plaintiff's loss of the Leger; and

(xi) a replevin claim against all of the Defendants for Plaintiff's Leger.

(Compl. ¶¶ 112-53).

On October 18, 2019, Chowaiki filed his motion to dismiss. (Dkt. #29-31). The Benrimon Defendants filed their motion

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 305 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

to dismiss on October 21, 2019. (Dkt. #32-34). The Benrimon Defendants filed their motion for sanctions the same day. (Dkt. #35-38). On November 18, 2019, Plaintiff filed a brief and declaration in opposition to both Chowaiki's and the Benrimon Defendants' motions to dismiss. (Dkt. #39-40). Plaintiff also filed a brief and declaration in opposition to the Benrimon Defendants' motion for sanctions. (Dkt. #41-42). Chowaiki filed his reply brief on December 6, 2019. (Dkt. #45). That same day, the Benrimon Defendants filed their replies in support of both their motion to dismiss and motion for sanctions. (Dkt. #46-48). On December 13, 2019, Plaintiff requested oral argument on the motions. (Dkt. #49). The Court has reviewed the motions and, for the reasons explained below, does not believe that oral argument would be useful.

## DISCUSSION

### A. Plaintiff Has Failed to Allege a Civil RICO Claim Against Any of the Defendants

#### 1. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**\*7** The heightened pleading standard specified in *Twombly* "require[s] enough facts to nudge [the plaintiff's] claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). While a court should accept plaintiff's allegations from the complaint as true, it need not follow that course for any of plaintiff's legal conclusions. See *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Legal conclusions that are stated to support "[t]hreadbare recitals of the elements of a cause of action ... do not suffice." *Id.* Therefore, a court is entitled to dismiss a complaint under Rule 12(b)(6) if the plaintiff merely offers "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Am. Fed'n of State, Cty. & Mun. Emp. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

In resolving a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (collecting cases). A court may also consider "matters as to which judicial notice may be taken, such as pleadings in other lawsuits and other public records[.]" *Rosado-Acha v. Red Bull Gmbh*, No. 15 Civ. 7620 (KPF), 2016 WL 3636672, at *6 (S.D.N.Y. June 29, 2016) (quoting *Agron v. Douglas W. Dunham, Esq. & Assocs.*, No. 02 Civ. 10071 (LAP), 2004 WL 691682, at *2 (S.D.N.Y. Mar. 31, 2004)) (internal quotation marks omitted); see also *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."); see generally *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a Rule 12(b)(6) motion).

More specifically, "[i]n the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012); see also *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleading in another lawsuit). The Court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted); *accord In re Ridgemour Meyer Properties, LLC*, 599 B.R. 215, 220 (S.D.N.Y. 2019), *aff'd*, 791 F. App'x 279 (2d Cir. 2020) (summary order).

#### 2. Pleading a Civil Action Under RICO

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1962(d) applies the same prohibitions to a defendant who conspires to violate subsection (c). Of particular significance here, RICO affords a private right of action to individuals who are harmed by racketeering activity. See 18 U.S.C. § 1964. This private right of action allows a plaintiff to bring a claim under

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 306 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

RICO for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). A plaintiff who proves injuries in his business or property may "recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" *Id.* A plaintiff bringing a civil RICO claim under Section 1962(c) must allege that: (i) the defendant has violated the substantive RICO statute; and (ii) the plaintiff was injured in his business or property "by reason of a violation of section 1962." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c)); *accord Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). To make out a substantive RICO violation, in turn, a plaintiff must allege the (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

**\*8** To establish a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege "a conspiracy to commit a substantive RICO violation." *Spool*, 520 F.3d at 183. "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). To make out a RICO conspiracy charge, under § 1962(d), a plaintiff must allege that the conspirator intended to further an endeavor that, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that the conspirator has adopted the goal of furthering or facilitating the criminal endeavor. *First Capital Asset Mgmt. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (quoting *Baisch v. Gallina*, 346 F.3d 366, 376-77 (2d Cir. 2003)). In the civil context, a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme." *Salinas v. United States*, 522 U.S. 52, 66, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *accord City of New York v. Bello*, 579 F. App'x 15, 17 (2d Cir. 2014) (summary order).

### a. The RICO Enterprise Requirement

An "enterprise" within the meaning of the RICO statute includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

*United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

A RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524. As the Second Circuit has "long recognized, the plain language and purpose of the statute contemplate that a person violates the statute by conducting an enterprise through a pattern of criminality. It thus follows that a corporate person cannot violate the statute by corrupting itself." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citing *Bennett v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir. 1985)). Rather, a plaintiff bringing a RICO claim must allege the existence of two distinct entities — a person and an enterprise. *See id.* (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 438 n.15 (2d Cir. 2008)).

### b. The Pattern Requirement

A "pattern of racketeering activity" requires at least two acts of "racketeering activity" occurring within 10 years of each other. *See* 18 U.S.C. § 1961(5); *accord Spool*, 520 F.3d at 183. The term "racketeering activity" refers to the predicate acts necessary to sustain a RICO claim and includes mail fraud and wire fraud. *See* 18 U.S.C. § 1961(1). In order to constitute a "pattern" of racketeering activity, the predicate acts must be [i] related and [ii] constitute a threat of continued racketeering activity." *H.J. Inc., et al. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238-44, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *accord United States v. Alkins*, 925 F.2d 541, 551 (2d Cir. 1991).

### i. Relatedness

Predicate crimes must be related both to each other ("horizontal relatedness") and to the enterprise as a whole ("vertical relatedness"). *See Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (citing *United States v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012)). "Vertical relatedness, which entails the simpler analysis, requires only 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise.' " *Reich*, 858 F.3d at 61 (quoting *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010)).

2020 WL 1974228

**\*9** "[P]redicate acts are horizontally related when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Reich,* 858 F.3d at 61 (emphasis in original) (quoting *H.J.,* 492 U.S. at 240, 109 S.Ct. 2893). "When dealing with 'an enterprise whose business is racketeering activity, such as an organized crime family,' horizontal relatedness can be established simply by linking each act to the enterprise." *Id.* (quoting *United States v. Coppola,* 671 F.3d 220, 243 (2d Cir. 2012) (internal punctuation and citations omitted)). "When dealing with an enterprise that is primarily a legitimate business, however, courts must determine whether there is a relationship between the predicate crimes themselves; and that requires a look at, *inter alia,* whether the crimes share 'purposes, results, participants, victims, or methods of commission.' " *Id.* (quoting *H.J.,* 492 U.S. at 240, 109 S.Ct. 2893). "[T]he overall pattern requirement, of which relatedness is one component, is a bulwark against the application of RICO to the perpetrators of isolated or sporadic criminal acts." *United States v. Daidone,* 471 F.3d 371, 376 (2d Cir. 2006).

### ii. Continuity

To satisfy continuity, the plaintiff must establish either "a series of related predicate acts extending over a substantial period of time" ("closed-ended continuity") or "a threat of continuing criminal activity" ("open-ended continuity"). *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir. 1999). "RICO targets conduct that 'amounts to or poses a threat of continued criminal activity.' " *Reich,* 858 F.3d at 60 (alterations omitted) (quoting *H.J.,* 492 U.S. at 239, 109 S.Ct. 2893). "Such continuity can be closed-ended or open-ended." *Id.* "Criminal activity that occurred over a long period of time in the past has closed-ended continuity, regardless of whether it may extend into the future." *Reich,* 858 F.3d at 60. "As such, closed-ended continuity is 'primarily a temporal concept' " *id.* (quoting *Spool,* 520 F.3d at 184), "and it requires that the predicate crimes extend 'over a substantial period of time' " *id.* (quoting *H.J.,* 492 U.S. at 242, 109 S.Ct. 2893). The Second Circuit "generally requires that the crimes extend over at least two years." *Id.* (citing *Spool,* 520 F.3d at 184 ("Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity[.]")).

"On the other hand, criminal activity 'that by its nature projects into the future with a threat of repetition' possesses open-ended continuity, and that can be established in several ways." *Reich,* 858 F.3d at 60 (quoting *H.J.,* 492 U.S. at 241, 109 S.Ct. 2893). When, for example, "the business of an enterprise is primarily unlawful, the continuity of the enterprise itself projects criminal activity into the future." *Id.* (citing *Spool,* 520 F.3d at 185). "And similarly, criminal activity is continuous when 'the predicate acts were the regular way of operating that business,' even if the business itself is primarily lawful." *Id.* (quoting *Cofacredit,* 187 F.3d at 243).

### c. The Racketeering Activity Requirement

"Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a variety of offenses including, as relevant here, mail fraud under 18 U.S.C. § 1341; wire fraud under 18 U.S.C. § 1343; interstate transportation of stolen property under 18 U.S.C. §§ 2314 and 2315; and money laundering under 18 U.S.C. §§ 1956 and 1957. *See* 18 U.S.C. § 1961(1).

### i. Mail and Wire Fraud

The "essential elements of [mail and wire fraud] are [i] a scheme to defraud, [ii] money or property as the object of the scheme, and [iii] use of the mails or wires to further the scheme." *United States v. Weaver,* 860 F.3d 90, 94 (2d Cir. 2017) (per curiam) (first alteration in original) (internal quotation marks omitted) (quoting *United States v. Binday,* 804 F.3d 558, 569 (2d Cir. 2015)). "Because the mail fraud and the wire fraud statutes use the same relevant language, [courts] analyze them the same way." *Id.* (internal quotation marks omitted) (quoting *United States v. Greenberg,* 835 F.3d 295, 305 (2d Cir. 2016)).

**\*10** "[T]he gravamen of the offense is the scheme to defraud." *Weaver,* 860 F.3d at 94 (alteration in original) (internal quotation marks omitted) (quoting *Greenberg,* 835 F.3d at 305). "In order to prove the existence of a scheme to defraud, [a party must prove both] 'that the misrepresentations were material' ... and that the defendant acted with fraudulent intent." *Id.* (quoting *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.,* 822 F.3d 650, 657 (2d Cir. 2016)) (citing *Greenberg,* 835 F.3d at 305-06).

Claims for mail and wire fraud are subject to the heightened pleading standards of Rule 9(b), which requires that averments of fraud be stated with particularity. *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). "To satisfy this requirement, a complaint must 'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.' " *Id.* (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted)); *accord Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (holding that allegations of predicate wire fraud must "state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent."). This standard applies to all allegations of fraudulent predicate acts supporting a RICO claim. *First Capital*, 385 F.3d at 178-79.

### ii. Transportation and Receipt of Stolen Property

Section 2314 prohibits, among other things, the interstate or foreign transportation of stolen goods valued at $5,000 or more. 18 U.S.C. § 2314. The elements of such offense are: (i) the defendant transported property, as defined by the statute, in interstate or foreign commerce; (ii) the property was worth $5,000 or more; and (iii) the defendant knew the property was stolen, converted, or taken by fraud. *United States v. Wallach*, 935 F.2d 445, 466 (2d Cir. 1991). The definition of fraud in § 2314 is generally the same as under the mail and wire fraud statutes. *Id.* Where allegations of interstate or foreign transport of stolen property allege that the property has been taken by fraud, the allegations must meet the heightened requirement of Rule 9(b). *See Kades v. Organic Inc.*, No. 00 Civ. 3671 (LTS) (RLE), 2003 WL 470331, at *9 (S.D.N.Y. Feb. 24, 2003) (noting that allegations of transportation of stolen property, mail fraud, and wire fraud must be pleaded with particularity); *Philan Ins. Ltd. v. Hall*, 748 F. Supp. 190, 195 (S.D.N.Y. 1990) (dismissing a RICO claim based on transportation of stolen property, mail fraud, and wire fraud where plaintiffs did not plead each of the elements of these acts with sufficient particularity "to withstand a motion to dismiss under Rules 12(b)(6) and 9(b)").

Section 2315 prohibits the knowing receipt, sale, concealment, possession, or disposition of stolen goods that have been transported interstate or abroad after being stolen,

unlawfully converted, or taken. 18 U.S.C. § 2315. To prove a violation of § 2315, a plaintiff must establish that the goods received had been stolen, that the goods had a value of at least $5,000, that the goods were "moving as," were "part of," or "constituted" interstate or foreign commerce, and that the defendant knew the goods had been stolen. *See United States v. Tashjian*, 660 F.2d 829, 839 (1st Cir. 1981), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981); *accord United States v. Kapelioujnyj*, 547 F.3d 149, 153 (2d Cir. 2008).

### iii. Money Laundering

*11 To establish a violation of the money laundering statute, 18 U.S.C. § 1956, a plaintiff must first show "[i] that the defendant conducted a financial transaction; [ii] that the transaction in fact involved the proceeds of specified unlawful activity as defined in § 1956(c)(7); [and] [iii] that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity." *United States v. Maher*, 108 F.3d 1513, 1527-28 (2d Cir. 1997). The plaintiff must then make one of two additional showings: (a) that the defendant knew "the transaction was designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," 18 U.S.C. § 1956(a)(1)(B)(i); or (b) that the defendant conducted or attempted to conduct the transaction "with the intent to promote the carrying on of specified unlawful activity," *id.* § 1956(a)(1)(A)(i). A plaintiff need not allege money laundering with great particularity, but the plaintiff must plead all elements of the offense. *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 322-23 (S.D.N.Y. 2014).

### d. The Domestic Injury Requirement

In addition to establishing the preceding elements, a plaintiff seeking to allege a civil RICO violation must also adequately plead a "domestic injury." *See RJR Nabisco, Inc. v. European Community*, ––– U.S. ––––, 136 S. Ct. 2090, 2111, 195 L.Ed.2d 476 (2016); *cf. City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272, 281 (S.D.N.Y. 2016) ("*RJR Nabisco* makes clear that domestic injury to business or property is an independent requirement for bringing a private RICO action — separate and apart from the requirement of a substantive RICO violation that is either domestic or permissibly extraterritorial[.]" (internal quotation marks

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 309 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

omitted)), *motion to certify appeal denied*, No. 15 Civ. 5345 (AJN), 2017 WL 1424326 (S.D.N.Y. Apr. 20, 2017). After the Supreme Court's decision in *RJR Nabisco*, putative RICO violations are construed narrowly to adhere to the well-established presumption against extraterritoriality. *RJR Nabisco, Inc.*, 136 S. Ct. at 2108. This presumption holds that "federal laws will be construed to only have domestic application." *Id.* at 2100.

While establishing the requirement of "domestic injury" in *RJR Nabisco*, the Supreme Court left open the question of determining what constitutes a domestic injury, a question taken up by the Second Circuit in *Bascuñán v. Elasca*, 874 F.3d 806 (2d Cir. 2017). There, the Court stated explicitly that "a foreign resident may ... allege a civil RICO injury that is domestic." *Id.* at 814. The Court explained that, "[a]t a minimum, when a foreign plaintiff maintains tangible property in the United States, the misappropriation of that property constitutes a domestic injury." *Id.* The Court explained, however, that application of the domestic injury rule in any given context will, as a general matter, "depend on the particular facts alleged in each case" and "if a plaintiff alleges more than one injury, courts should separately analyze each injury to determine whether any of the injuries alleged are domestic." *Id.* at 818. The Court later "conclude[d] that an injury to tangible property is generally a domestic injury only if the property was physically located in the United States, and that a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." *Id.* at 819. On the other hand, an "injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." *Id.* at 820-21.

**B. Analysis**

The Complaint in this case is both disjointed and replete with conclusory allegations. The Court has carefully reviewed Plaintiff's allegations to separate the wheat from the chaff and, in the remainder of this section, analyzes only those allegations that are well-pleaded.

**1. The Court Dismisses Plaintiff's Substantive RICO Claim Against David and Linda Benrimon (Count I) and Plaintiff's RICO Conspiracy Claim Against David and Linda Benrimon, Rosen, Piedmont, and Chowaiki (Count II)**

**\*12** In his brief in opposition to the motions to dismiss, Plaintiff clarifies that his RICO claims against David and Linda Benrimon are as follows: the Benrimons managed and conducted the affairs of their gallery (and RICO enterprise) DBFA through a pattern of racketeering activity that included unlawfully or fraudulently selling artwork that they had no right to sell. (*See* Pl. Opp. 15-16). Plaintiff states that the predicate racketeering acts include the transportation and/ or receipt of stolen property, money laundering, wire fraud, mail fraud, fraud in a bankruptcy proceeding, and fraudulent filings in this court. (*See id.* at 16).

Plaintiff argues that this racketeering activity began no later than February 2, 2012, when David and Linda Benrimon, or a company they controlled or owned, purported to sell an Andy Warhol painting and ten Warhol prints to Marc Latamie and DM for $1,750,000, and then, instead of delivering the prints, unlawfully sold (or attempted to sell) them through DBFA to others (*i.e.*, the Latamie Acts). (*See* Pl. Opp. 16). He claims that the racketeering activity continued when David and Linda Benrimon purchased *Le Compotier* by Juan Gris for DBFA with full knowledge that Chowaiki had no right to sell or dispose of that work, and that its owner had requested its return (*i.e.*, the *Le Compotier* Acts). (*Id.*). And Plaintiff claims the racketeering activity continued further when David and Linda Benrimon, in the conduct of DBFA's business, negotiated with Chowaiki and his Gallery to acquire additional works of art at a sizable (and, Plaintiff claims, telltale) discount. (*Id.*). They did so by structuring the $300,000 loan from Piedmont to Chowaiki secured by three artworks (the Picasso, the Murakami, and *Le Clown*) (*i.e.*, the Pledge Agreement Acts). (*Id.* at 16-17). Thereafter, David and Linda Benrimon took delivery of the Picasso at DBFA; deleted the Picasso's Provenance, which showed Plaintiff as the artwork's owner; and shipped the stolen Picasso to Milan, where they sold it for $441,000. (*Id.* at 17). Finally, Plaintiff alleges that David and Linda Benrimon's racketeering activity continued as they concealed their role in the loan transaction by having Piedmont make numerous false filings in the Bankruptcy and Criminal Cases (*i.e.*, the Court Filing Fraud). (*Id.*).

**a. Plaintiff Has Failed to Plead a
"Pattern of Racketeering Activity"**

Even accepting Plaintiff's clarification, the Court concludes that the predicate acts here are far too disparate and inadequately pleaded to constitute a pattern of racketeering activity. To begin, the Latamie Acts are not horizontally related to the other predicate acts. "[P]redicate acts are

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 310 of 338

**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**

2020 WL 1974228

horizontally related when they: have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Reich,* 858 F.3d at 61 (citation omitted). Plaintiff gestures at relatedness by asserting that the Latamie Acts had the "same purpose and function: to fraudulently sell and profit from other people's art-work and to conceal what was done." (Pl. Opp. 18). But Plaintiff fails to show, with the requisite specificity, just how the Latamie Acts relate to the other alleged predicate acts.

In point of fact, Plaintiff cannot make such a showing. The gravamen of the Latamie Acts is that a subset of the Defendants here (DBFA, David and Linda Benrimon) and "other members of the Benrimon family" (Leon Benrimon), along with Leon Benrimon's art gallery, Benrimon Contemporary LLC, failed to deliver artworks that either DBFA or Benrimon Contemporary LLC had sold to a *bona fide* purchaser. (*See* Compl. ¶¶ 24-27).[4] The alleged fraudulent sale at the center of the Latamie Acts occurred at least five years before the alleged predicate acts in the other three groups. The Latamie Acts also had nothing to do with Plaintiff and were directed instead at other alleged victims. And, most notably, the Latamie Acts had no connection to Chowaiki or the Gallery, and no connection to Rosen or Piedmont. In sum, Plaintiff fails to connect the Latamie Acts to the remainder of the alleged pattern of racketeering activity.

**\*13** Further, to the extent Plaintiff alleges that the Latamie Acts constitute wire fraud, in violation of 18 U.S.C. § 1343 (*see* Compl. ¶ 26), he fails to meet the heightened pleading standards required by Rule 9(b). Plaintiff merely states that "[u]pon information and belief, and as further to be determined in discovery, during the [Latamie Acts] transaction, the purchasers of the Warhol, at all times negotiated with, *inter alia,* David and Linda Benrimon, and other members of the Benrimon family" (*id.* at ¶ 25); and that "David and Linda Benrimon, directly or at their instruction, by wire, telephone, and in person, continued to falsely, and fraudulently, and repeatedly promise Mr. Latamie and DM, that they (the Benrimons) would deliver the Warhol prints to the purchasers" (*id.* at ¶ 26). Plaintiff's conclusory assertions fail to explain the "the time, place, speaker, and content of the alleged misrepresentations" *Cohen,* 711 F.3d at 359, and Plaintiff fails to explain the "information and belief" upon which his allegations are founded, *see Pilkington North Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.,* 420 F. Supp. 3d 123, 142-43 (S.D.N.Y. 2019). For these reasons as well, Plaintiff fails to plead the Latamie Acts as predicate RICO acts.

The Court next considers whether the Court Filing Acts constitute part of David and Linda Benrimon's alleged pattern of racketeering activity. At the outset, the parties dispute the antecedent issue of whether the Court Filing Acts could qualify as predicate acts for RICO purposes. The Benrimon Defendants cite *Kim v. Kimm,* 884 F.3d 98, 104 (2d Cir. 2018), in support of their argument that these acts cannot serve as predicate acts. In *Kim,* the plaintiff purported to allege various predicate acts of mail fraud, wire fraud, and obstruction of justice, allegedly committed by the defendants, citing declarations that were prepared, signed, and filed by defendants with full knowledge that they contained fraudulent representations intended to persuade the district court to find in their favor in a separate trademark and breach of contract dispute. *Id.* at 103.

The district court concluded that these litigation activities could not provide the basis for predicate acts under § 1962(c). 884 F.3d at 103-04. The Second Circuit agreed, reasoning as follows:

> Although we have not spoken directly on the issue, other courts have held that "[i]n the absence of corruption," such litigation activity "cannot act as a predicate offense for a civil-RICO claim." *Snow Ingredients, Inc. v. SnoWizard, Inc.,* 833 F.3d 512, 525 (5th Cir. 2016); *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1087-88 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); *Deck v. Engineered Laminates,* 349 F.3d 1253, 1258 (10th Cir. 2003) (deciding that meritless litigation is not a predicate act of extortion under RICO); *Gabovitch v. Shear,* 70 F.3d 1252 (table), 1995 WL 697319, at \*2, 1995 U.S. App. LEXIS 32856 (1st Cir. 1995) (per curiam) (concluding that "proffering false affidavits and testimony to [a] state court" does not constitute a predicate act of extortion or mail fraud); *see also Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.,* 758 F. Supp. 2d 153, 171-72 (E.D.N.Y. 2010) (collecting cases from district courts in the Second Circuit deciding "that the litigation activities alleged in [the complaint before the court] cannot properly form the basis for RICO predicate acts"). We agree with the reasoning of these opinions and conclude that allegations of frivolous, fraudulent, or baseless litigation activities — without more — cannot constitute a RICO predicate act.

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 311 of 338

*Id.* at 104 (alterations in original). The Benrimon Defendants argue that *Kim* forecloses Plaintiff from relying on the Court Filing Acts as predicate acts for their RICO claims.

Plaintiff responds that *Kim* is inapposite because, in that case, the Second Circuit explicitly distinguished a district court case relied on by the plaintiff, *Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), where "the district court denied the defendants' motion to dismiss the plaintiffs' section 1962(c) claims, observing that the plaintiff pleaded a pattern of racketeering activity that included at least twenty allegedly fraudulent statements and eighteen acts involving use of the mail or wires over three years, in furtherance of the alleged fraud." *Id.* at 105 (internal quotations omitted). To a degree, Plaintiff is correct: The *Kim* Court did distinguish *Sykes* by explaining that "even though the defendants [in *Sykes*] used litigation to carry out their scheme, they also engaged in a variety of other out-of-court actions to further this activity.... [while] in the case at bar, by contrast, the entire alleged scheme involved the creation of fraudulent court documents." *Id.* But the *Kim* Court "decline[d] to reach the issue of whether all RICO actions based on litigation activity are categorically meritless," and limited its holding to "conclude only that where ... a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *Id.* Accordingly, Plaintiff contends that because the Court Filing Acts are not the only RICO violation alleged — and because "the pattern is the fraudulent selling, and profiting from other people's art-work, and concealing what was done" (Pl. Opp. 20) — the Court may consider the Court Filing Acts as predicate acts of wire and mail fraud (*id.* & n.3).

**\*14** The Court need not resolve whether the Court Filing Acts could qualify as predicate RICO acts because, even if they could, they have not been properly pleaded here. The specific acts Plaintiff alleges in the Complaint are that David and Linda Benrimon caused numerous electronic filings to be made in the Bankruptcy Case and Criminal Case in which Piedmont asserted ownership of the Murakami and *Le Clown*. Plaintiff claims that those filings were fraudulent because: (i) they did not disclose the role or name of the real acquirers/purchasers, *i.e.*, David and Linda Benrimon and DBFA (Compl. ¶ 73); and (ii) Piedmont's petition in the Criminal Case did not disclose the existence of the Shtar Isko (*id.* at ¶ 76). Plaintiff further asserts that

> [t]he filings were each fraudulent and each was designed to deceive plaintiff, other owners of works of art, the creditors of Mr. Chowaiki's Gallery, the victims of Chowaiki's crimes, the Trustee in the Bankruptcy [C]ase, the courts, and law enforcement officials into believing that David and Linda Benrimon and David Benrimon Fine Art LLC had nothing to do with these fraudulent transactions[.]

(*Id.* at ¶ 74). In his brief in opposition to the motions to dismiss, Plaintiff adds that the "fraudulent filings conceal the fact that the $300,000.00 loan was not merely a loan, but was a device to conceal the fact that the Benrimon [D]efendants (and not Piedmont alone) knowingly were acquiring, at a steep discount, fraudulently obtained art belonging to other people and selling it for their own benefit and concealing what they were doing." (Pl. Opp. 20-21).

Despite the sweeping language, Plaintiff provides little in the way of support for his contention that these filings were indeed fraudulent. As it is permitted to do, the Court has reviewed the allegedly fraudulent filings incorporated by reference in the Complaint. The Bankruptcy Case filings consist of (i) a proof of claim filed by Piedmont reciting Piedmont as the owner of the Murakami and *Le Clown* pursuant to the Release and Settlement Agreement between Piedmont and the Gallery (Bankruptcy Case, Claims 62, 63 (the "Piedmont Petition")), and (ii) a stipulation between the Bankruptcy Trustee and Piedmont, by which Piedmont agreed that " 'the Neumans [who Plaintiff contends are the lawful owners of *Le Clown*] would have right, title and interest in *Le Clown* ... and Piedmont further agreed to withdraw the Piedmont Petition' " (*id.* at Dkt. #174 (the "Stipulation")). [5]

With respect to the Criminal Case, Plaintiff cites to Piedmont's petition in the district court asserting its interest as claimant in the Murakami and *Le Clown*. (Criminal Case, Dkt. #57). The remainder of Plaintiff's citations to the Criminal Case docket are to Piedmont's opposition to the Government's motion to dismiss its petition (*id.* at Dkt. #98); the oral argument held on the motion (*id.* at Dkt. #114 (transcript)); and Judge Rakoff's decision in that case, concluding, under New York property law and at the motion to dismiss stage, that Piedmont had

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)
Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 312 of 338

2020 WL 1974228

acquired a legal interest in *Le Clown* as a *bona fide* purchaser for value (*id.* at Dkt. #119). A review of those documents reveals that Piedmont relied on the transaction documents — the pledge agreement documents and the later settlement agreement with the Gallery — to substantiate its interest in the relevant artwork. The Court cannot infer fraudulent intent on the part of Piedmont, let alone the remaining Benrimon Defendants, from Piedmont asserting an ownership interest in the artwork consistent with the loan transaction documents.

And despite Plaintiff's contention otherwise, the docket in the Criminal Case reveals that Piedmont *did* disclose the existence of the Shtar Isko. When Piedmont filed its petition for the Picasso in the Criminal Case, it included as an exhibit the Note between Piedmont and Chowaiki. (*See* Criminal Case, Dkt. #57). The Note explicitly states that the Gallery "shall pay, in accordance with Heter Iska, all outstanding principal to" Piedmont. (*Id.* at Ex. A). Accordingly, Plaintiff's claim that the Benrimons defrauded the court by having Piedmont keep the existence of the Shtar Isko undisclosed, is belied by the public record in the Criminal Case of which the Court takes judicial notice. [6]

**\*15** Further, Plaintiff cites nothing to suggest that David and Linda Benrimon had any duty to disclose their involvement with the artwork. Given that Piedmont was the entity with the right to the artwork, it is far from clear that David and Linda Benrimon would be obligated to disclose their affiliations with Piedmont. Since Plaintiff has failed to allege or show that David and Linda Benrimon had a duty to disclose anything to the bankruptcy and criminal courts, Plaintiff's claim for fraud fails. *See United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000) ("[A]n omission can violate the fraud statute only in the context of a duty to disclose[.]"); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 296 (S.D.N.Y. 2000) ("In case of fraud resting on an alleged omission, plaintiff must allege facts giving rise to a duty to disclose."). Thus, Plaintiff has failed to plead the Court Filing Acts as predicate acts.

Having rejected two putative categories of racketeering acts, the Court is left to consider whether the *Le Compotier* Acts and the Pledge Agreement Acts constitute a pattern of racketeering activity. Put simply, these two sets of Acts do not a pattern of racketeering activity make. [7] Plaintiff has at best pleaded that on two instances, David and Linda Benrimon acquired artwork from either Chowaiki or the Gallery, knowing that neither Chowaiki nor the Gallery had the lawful ability to transfer it.

Plaintiff has demonstrated neither closed-ended nor open-ended continuity sufficient to satisfy the pattern requirement for racketeering activity. The *Le Compotier* Acts and the Pledge Agreement Acts are alleged to have occurred between "the summer of 2017" and May 2018. (Compl. ¶¶ 29, 67-68). But the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time.' " *Spool*, 520 F.3d at 184 (quoting *Cofacredit*, 187 F.3d at 242); *see Ramiro Aviles v. S & P Glob. Inc.*, 380 F. Supp. 3d 221, 269 (S.D.N.Y. 2019) (noting that "two years may be the *minimum* duration necessary to find closed-ended continuity" (quotation omitted)). Because the putative predicate acts spanned less than a year's time, they do not satisfy the requirements of closed-ended continuity.

Plaintiff has likewise failed to demonstrate open-ended continuity, because there is no allegation that David and Linda Benrimon's "regular way of operating" DBFA involved retaining artwork after being informed that the individual from whom they purchased the artwork had no right to sell it; obtaining artwork as collateral on fraudulent loans; or falsifying chain of ownership records. *See Reich*, 858 F.3d at 60 (noting that "false phone calls were not [defendant's] regular way of operating its business" (quotation omitted)). To the contrary, Plaintiff's Complaint acknowledges that DBFA "operates as an art gallery" (Compl. ¶ 6), and that David and Linda Benrimon "are in the business of buying and selling art, either for their own accounts or the account of [DBFA]" (*id.* at ¶ 19).

Nor do the predicate acts "imply a threat of continued activity." *Reich*, 858 F.3d at 60. Predicate acts imply a continued threat only when the acts are "inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement." *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995). By contrast, "frauds in the sale of property," such as those alleged here, "are not inherently unlawful." *Id.* These incidents are much better characterized as isolated and sporadic criminal acts, rather than a pattern of racketeering activity. *See United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989). For all of these reasons, Plaintiff's has not adequately pleaded that David and Linda Benrimon engaged in a pattern of racketeering activity.

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

### b. Plaintiff Has Failed to Plead That the Pledge Agreement Acts Constitute Wire Fraud or Transportation of Stolen Property

**\*16** To review, allegations sounding in fraud must be pleaded with particularity. *See Cohen,* 711 F.3d at 359. As a separate reason to dismiss Plaintiff's RICO claim against the Benrimon Defendants, the Court concludes that Plaintiff has failed to plead, with the requisite particularity, that the Pledge Agreement Acts depict an instance of fraud.

In stating a claim for fraud, a "plaintiff[ ] must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 52 (2d Cir. 1995); *accord Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006). "The requisite 'strong inference' of fraud may be established either [i] by alleging facts to show that defendants had both motive and opportunity to commit fraud, or [ii] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Acito,* 47 F.3d at 52 (quoting *Shields v. CityTrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994)).

Plaintiff attempts to show that the Benrimon Defendants acted with fraudulent intent because Piedmont loaned Chowaiki $300,000 for which Chowaiki pledged artwork that the Benrimon Defendants knew to be stolen. But Plaintiff has pleaded no facts supporting his oft-repeated contention that the Benrimon Defendants knew that the artwork pledged as collateral was stolen. He asks the Court to infer as much based on several alleged facts about Chowaiki and the Gallery. (*See* Compl. ¶ 55). These allegations consist of the following facts: (i) Chowaiki had a court-documented history of selling and pledging stolen artwork that he had no right to sell or pledge; (ii) Chowaiki was in desperate financial straits; (iii) Chowaiki was selling or pledging artwork he did not own; (iv) Chowaiki needed the $300,000 from the loan with Piedmont to pay off another loan; (v) Chowaiki would not and could not fulfill the terms of the Shtar Isko; (vi) there was a real likelihood that Chowaiki would be arrested for his fraudulent activity; (vii) Chowaiki was selling artwork at deeply discounted prices; and (viii) the price of the three artworks was less than one-third of their true value. (*Id.*). Plaintiff claims that, from these facts, the Benrimon Defendants "knew or should have known" that Chowaiki was pledging them stolen artwork. But for several reasons these allegations do not plausibly allege that the Benrimon Defendants knew that they were buying

stolen artwork, let alone give rise to a strong inference of fraudulent intent.

*First*, if claim (i) should have indicated to the Benrimon Defendants that Chowaiki was committing fraud, it should have indicated the same to Plaintiff, who nevertheless chose to consign his artwork with Chowaiki. At the pre-motion conference in this case, Plaintiff's counsel sourced his allegation that Chowaiki had a "court-documented history" of selling and pledging stolen artwork to an unrelated civil litigation, *Mosionzhnik v. Chowaiki,* 41 Misc. 3d 822, 972 N.Y.S.2d 841 (Sup. Ct. N.Y. Cty. 2013). (*See* July 29, 2019 Tr. 7:10-19). Of note, the decision in that case was issued on July 29, 2013, two years *before* Plaintiff consigned his artwork with Chowaiki. Plaintiff would have the Court infer that this state-court decision should have signaled to the Benrimon Defendants that Chowaiki was a crook. But it is entirely unclear to the Court why a decision in a case in which they were neither named nor involved would have put the Benrimon Defendants on notice of Chowaiki's activities. And to the extent that public access to this decision would or should have alerted the Benrimon Defendants to Chowaiki's perfidy, the same argument can be directed at Plaintiff. Relatedly, the Court rejects Plaintiff's claim (vi) that the Benrimon Defendants are liable under RICO for failing to predict that, some time off in the future, Chowaiki would be arrested and charged with wire fraud.

**\*17** *Second*, Plaintiff does not elaborate on how the Benrimon Defendants would know claim (ii), that Chowaiki was in desperate financial straits. And Plaintiff's claim (iii), that Chowaiki was selling or pledging artwork he did not own, is a circular allegation when proffered for the purpose of showing that the Benrimon Defendants *knew* he was selling or pledging stolen artwork.

*Third*, Plaintiff's claims (iv) and (v) fail to give rise to an inference that the Benrimon Defendants knew that the pledged artwork was stolen. Again, Plaintiff fails to explain how the Benrimon Defendants obtained or should have obtained knowledge of Chowaiki's financial predicament. *Fourth*, claim (viii) does not help because the loan documents evidence that Chowaiki did not sell the pledged artwork to Piedmont; he used it as collateral for the loan. And Plaintiff has not adequately explained how or why the Benrimon Defendants would or should have known that Chowaiki was going to default on the loan. [8]

2020 WL 1974228

Plaintiff's strongest allegation is claim (vii), that Chowaiki was selling artwork at deeply discounted prices, giving clear warning that those works were stolen. But this still is insufficient to prove fraudulent intent. At the best, this allegation tends to show that the Benrimon Defendants should have been suspicious of Chowaiki. It certainly does not provide a "strong inference of fraud." *Acito*, 47 F.3d at 52 (internal quotation marks omitted).

The pleading technique utilized by Plaintiff here is similar to that in *Shields*, 25 F.3d at 1129 (2d Cir. 1994), where the Second Circuit rejected a plaintiff's attempt to "couple a factual statement with a conclusory allegation of fraudulent intent." This type of pleading does not suffice to meet the heightened pleading requirements of Rule 9(b), and Plaintiff therefore has not adequately pleaded the Pledge Agreement Acts as qualifying acts of wire fraud or of transportation or receipt of fraudulently obtained property. [9] The reality of the situation is that Chowaiki and the Benrimon Defendants were both participants in an elite, but opaque, fine art market. That Chowaiki and the Benrimon Defendants engaged in a transaction in which Chowaiki posted collateral that was stolen does not, in and of itself, give rise to the inference that the Benrimon Defendants were in on the fraud. On Plaintiff's reasoning, any person who purchased artwork from Chowaiki or otherwise came to obtain artwork he had stolen would be subject to RICO liability.

### c. Plaintiff Has Failed to Plead a Nexus

**\*18** A RICO violation requires a specific relationship between the enterprise and the pattern of racketeering. *D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) (summary order). Under § 1962(c), the enterprise's affairs must be conducted "through" the pattern of racketeering. *Id.* In other words, a plaintiff must also plausibly allege "that a nexus exist[s] between the enterprise and the racketeering activity that is being conducted." *Id.* (alteration in original) (quoting *First Capital*, 385 F.3d at 174). Plaintiff has failed to plead the required nexus for a RICO claim.

Although the Complaint parrots the RICO statute by alleging that David and Linda Benrimon "control, conduct or participate, directly or indirectly, in the conduct of [DBFA]'s affairs through a pattern of Racketeering Activity" (Compl. ¶ 20), it is devoid of any allegations supporting that characterization. To establish the required "nexus," Plaintiff must show that the Benrimons "engaged in racketeering

through [DBFA] or leveraged the [DBFA] corporate structure to perpetrate the fraud." *D. Penguin Bros*, 587 F. App'x at 667; *see also United States v. Thai*, 29 F.3d 785, 815 (2d Cir. 1994) (finding that predicate acts must be "related to the enterprise's activities" or defendant must have been "enabled to commit the offense solely by virtue of his position in the enterprise").

There is no allegation that the Benrimons used or leveraged DBFA to commit any of the alleged RICO predicates. The Complaint itself alleges that the Latamie Acts were accomplished, at least in part, through a separate entity, Benrimon Contemporary LLC (*see* Compl. ¶¶ 24-28), which was owned by David Benrimon's son, who is not a defendant in this case. And Plaintiff does not explain how the Benrimons used or leveraged DBFA to commit the *Le Compotier* Acts, other than by proffering conclusory assertions that (i) the Benrimons acquired the artwork "through their conduct of the affairs of [DBFA]," and (ii) they "knew or should have known," "based on their conduct of the affairs of DBFA," that Chowaiki had no authority to sell the painting. (*Id.* at ¶¶ 29, 32). This form of generic and group pleading — which does not state what David and Linda Benrimon each did, much less how such conduct involved DBFA — cannot establish the required nexus. Finally, with respect to the Pledge Agreement Acts and the Court Filing Acts, the Complaint itself alleges that the relevant transactions and court filings were conducted through Piedmont, not DBFA. (*See id.* at ¶¶ 34-80). Accordingly, when the Court analyzes the Complaint to discern a nexus between the alleged pattern of racketeering activity and the alleged enterprise, Plaintiff's RICO claim falls apart.

### d. Plaintiff Has Failed to Plead That Defendants Conspired to Participate in David and Linda Benrimon's Pattern of Racketeering Activity

Building on the foregoing analysis, the Court concludes that Count II of the Complaint must also be dismissed. In that count, Plaintiff alleges that the Benrimon Defendants and Chowaiki conspired to facilitate David and Linda Benrimon's racketeering activity in Count I. But beyond the allegations underlying the substantive RICO claim, Plaintiff has not pleaded any facts from which the Court could infer a conspiracy to commit a RICO violation. *See Hecht*, 897 F.2d at 25 (affirming dismissal of RICO conspiracy claim where complaint "d[id] not allege facts implying any agreement involving each of the defendants to commit at least two predicate acts"). And, as explained above, the allegations

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 315 of 338

2020 WL 1974228

making out the substantive RICO claim are deficient. *See Johnson v. Nextel Commc'ns, Inc.*, 763 F. App'x 53, 56 (2d Cir. 2019) (summary order) (dismissing plaintiffs' RICO conspiracy claim for the same reasons that their substantive RICO claim was deficient). Accordingly, the Court dismisses Counts I and II of the Complaint.

**2. The Court Dismisses Plaintiff's RICO Claims Predicated on Unlawful Debt Collection (Counts III, IV, V, and VI)**

**\*19** Plaintiff's Complaint also contains several RICO claims based on unlawful debt collection. In particular, Count III of the Complaint alleges that Avichai Rosen conducted or participated in the conduct of the Piedmont enterprise's affairs through the collection of unlawful debt. (Compl. ¶¶ 119-21). Count IV alleges that David and Linda Benrimon, DBFA, and Chowaiki conspired with Rosen to conduct or participate in the affairs of Piedmont through the collection of unlawful debt. (*Id.* at ¶¶ 122-25). Count V alleges that David and Linda Benrimon conducted or participated in the conduct of the DBFA enterprise's affairs through the collection of unlawful debt. (*Id.* at ¶¶ 126-28). And Count VI alleges that David and Linda Benrimon, Chowaiki, Rosen, and Piedmont conspired with each other in the collection of unlawful debt through the affairs of DBFA. (*Id.* at ¶¶ 129-32).

Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through ... unlawful collection of debt." 18 U.S.C. § 1962(c). The statute defines "unlawful debt" to mean (as relevant here) debt "which was incurred in connection with ... the business of lending money ... at a rate usurious under State or Federal law." *Id.* § 1961(6).

"The inclusion of 'collection of unlawful debt' as a major predicate for RICO liability seems to have been an explicit recognition of the evils of loan sharking, and there is no indication that Congress was taking aim at legitimate banking institutions." *Durante, Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 250 (2d Cir. 1985). In consequence, the Second Circuit has interpreted the statute to make clear that a RICO claim for collection of unlawful debt does not encompass "occasional usurious transactions by one not in the business of loan sharking." *Id.* (noting that "[t]he target of [RICO] is ... not sporadic activity"). Instead, to state a claim under RICO for unlawful debt collection, the plaintiff must allege that "each defendant was lending money or a thing of value at a rate usurious under State or Federal law" and

that "each defendant was in the business of doing so." *United States v. Persico*, No. 10 Cr. 147, 2011 WL 2433728, at \*2 E.D.N.Y. June 14, 2011 (internal quotation marks omitted).

Plaintiff comes nowhere close to meeting his burden to state a claim for unlawful debt collection practices by any of the Defendants. The Complaint describes but one instance (the $300,000 loan from Piedmont to the Gallery) in which Piedmont made a usurious loan. [10] The remainder of Plaintiff's allegations on this point is wholly (and impermissibly) conclusory. (*See, e.g.*, Compl. ¶ 85 ("Piedmont and Avichai Rosen's business is to lend money or a thing of value at a usurious rate. This business involves extensive activity over a substantial period of time and constitutes a substantial portion of the activities of both Piedmont and Avichai Rosen.")). Plaintiff does not point to a single other instance in which any of the Defendants made a usurious loan, and there is nothing in the Complaint to support his conclusory assertion that any of the Defendants is in the business of making usurious loans.

Accordingly, as in *Durante*, the Complaint here "gives no promise that [Plaintiff] will be able to establish that [any of the Defendants was] engaged in 'the business of' making usurious transactions." 755 F.2d at 250; *see also Weisel v. Pischel*, 197 F.R.D. 231, 241 (E.D.N.Y. 2000) (finding plaintiff had not established that defendant was in the business of making usurious transactions where "at no point in the complaint, or in any other document submitted to the court, do the plaintiffs describe other individuals or companies to whom [defendants] lent money or the usurious interest rates attached to any other loan by the defendants"); *Robidous v. Conti*, 741 F. Supp. 1019, 1021-22 (D.R.I. 1990) (dismissing RICO claim for collection of unlawful debt where allegations involved just "two isolated incidents" in which defendant charged usurious rates). [11] And, because the Complaint does not provide any further allegations evidencing that Defendants "consciously agreed" to collect unlawful debts under § 1962(c), *see Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999), the Complaint does not "set forth a conspiracy to commit such violations" under § 1962(d), *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998). Accordingly, Counts III, IV, V, and VI of the Complaint are dismissed.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 316 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

### 3. The Court Dismisses Plaintiff's RICO Claims Against Chowaiki (Count VII) and His RICO Conspiracy Claim Against All Defendants (Count VIII)

**\*20** Count VII of the Complaint alleges a RICO claim against Chowaiki for engaging in a pattern of racketeering activity through the Gallery (Compl. ¶¶ 133-35), while Count VIII alleges that the remaining Defendants conspired with Chowaiki to facilitate his racketeering (*id.* at ¶¶ 136-40). According to Plaintiff, the pattern of racketeering activity consisted of numerous acts of wire fraud, transportation of stolen or fraudulently acquired property, money laundering, and various other acts. (*See* Pl. Opp. 13). A look at the substance of Plaintiff's allegations, however, makes clear that he has failed to state a RICO claim against Chowaiki.

With respect to Chowaiki, Plaintiff has pleaded only the following facts: (i) Chowaiki repeatedly promised to return the Picasso and the Leger to Plaintiff but never did; (ii) Plaintiff sold the Leger to another entity, while it belonged to Plaintiff; (iii) Chowaiki used the Picasso, and two other artworks that he did not own, as collateral for a loan. The remainder of Plaintiff's allegations against Chowaiki are conclusory. (*See* Compl. ¶ 96 ("Upon information and belief, from its inception, through at least July 20, 2009, Mr. Chowaiki, repeatedly conducted or participated, directly or indirectly, in the conduct of his Gallery's affairs by repeated acts of wire fraud in which he obtained his customers' art works by fraudulently telling them that he would sell them on consignment, whereas, he illegally used those artworks as collateral for loans, each such instance involving one act of wire fraud[.]"); *id.* at ¶ 100 (quoting wire fraud charging language against Chowaiki); *id.* at ¶¶ 29-30 (alleging that Chowaiki committed fraud by selling *Le Compotier* to the Benrimons despite not owning it, but failing to allege the time, place, speaker, and content of any misrepresentation)). Plaintiff seems to assume that because Chowaiki pleaded guilty to wire fraud, and because the Gallery filed for bankruptcy, it is obvious that Chowaiki can be held liable for RICO violations. While the docket in the Criminal Case undoubtedly contains factual material that could bolster Plaintiff's claims, he does not include any such information in his Complaint, nor does he adequately incorporate such material by reference. (*See, e.g.*, Compl. ¶¶ 98-99 (referring only to paragraphs 1 through 4 of the criminal complaint); *id.* at ¶ 101 (citing forfeiture order in the Criminal Case as evidence that Chowaiki stole the Picasso)). [12] Plaintiff's Complaint does not explain which artwork (other than his

own and *Le Compotier*) was stolen, from whom Chowaiki stole any artwork, what misrepresentations he made to obtain such artwork, where it was transported, or how he disposed of such artwork. To the extent Plaintiff relies on predicate acts of wire or mail fraud or transportation of fraudulently obtained property, he must plead them with particularity, which he has failed to do. [13]

**\*21** Further, the acts that Plaintiff does allege with some level of specificity could have spanned, at most, from August 2016 (which is when the Picasso and Leger consignments ended and Chowaiki began promising he would return the paintings (*see* Compl. ¶ 105)), to December 2017, when Chowaiki was arrested (*see* Criminal Case, Dkt. #4). Because the acts occurred over the span of a little more than one year, they cannot demonstrate closed-ended continuity. *See Spool*, 520 F.3d at 184 ("Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity[.]"). And Plaintiff has not alleged open-ended continuity because, among other things, Chowaiki was criminally charged and sentenced to 18 months' imprisonment in Federal Bureau of Prisons custody. (*See* Compl. ¶ 5; Criminal Case, Dkt. #76). For this reason, Plaintiff has not adequately pleaded a RICO claim against Chowaiki. [14]

Plaintiff has also failed to plead a claim against the Benrimon Defendants for conspiracy to facilitate Chowaiki's pattern of racketeering activity. As explained above, Plaintiff has not adequately pleaded that the Benrimon Defendants knew that the collateral Chowaiki pledged to Piedmont was obtained fraudulently. (*See supra* 39-42). The most Plaintiff alleges is that the Benrimon Defendants bought *Le Compotier* from Chowaiki despite knowing that Chowaiki had no authority to transfer the artwork to them. (*See* Compl. ¶¶ 32-33). This was just one act. The remainder of Plaintiff's allegations merely incant that the Benrimon Defendants "knew or should have known" about Chowaiki's alleged scheme, or that they "could and should have" done more to vet the provenance of Chowaiki's artworks. (*See, e.g.*, Compl. ¶ 43 ("each of the defendants knew or should have known that the works of art to be sold were in the Gallery's continued possession as a result of fraud"); *id.* at ¶ 53 (defendants "could and should have demanded proof of how Mr. Chowaiki and/or his Gallery came into possession of that work of art"); *id.* at ¶ 55 ("each of the defendants knew, or should have known, that ... Mr. Chowaiki was selling or pledging works of art he did not own and had no right to sell or pledge")). The

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

Court does not credit these conclusory statements about a defendant's knowledge. *See Anonymous v. Simon*, No. 13 Civ. 2927 (RWS), 2014 WL 819122, at *4 (S.D.N.Y. Mar. 3, 2014). In any event, allegations about what the Benrimon Defendants "should have known" do not "show specifically that [they] had any 'meeting of the minds' [with Chowaiki] in the alleged violations," an essential feature of the required agreement. *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014); *Browning Ave. Realty Corp. v. Rosenshein*, 774 F. Supp. 129, 145 (S.D.N.Y. 1991) (no "meeting of the minds" or agreement can be inferred from allegations about what a defendant "knew or should have known").

As yet another pleading deficiency, the Complaint lacks sufficient allegations that the Benrimon Defendants actually agreed with Chowaiki and with each other to violate RICO's substantive provisions. Plaintiff asserts in vague and conclusory terms that Defendants "conspired" and "agreed" with each other. (*See, e.g.*, Compl. ¶¶ 14, 57, 61, 108, 111, 137.) But all that the Complaint shows is that the Benrimon Defendants and Chowaiki did business together on two separate occasions. Such allegations are plainly insufficient to show a RICO conspiracy. *See Foster v. 2001 Real Estate*, No. 14 Civ. 9434 (RWS), 2015 WL 7587360, at *6 (S.D.N.Y. Nov. 24, 2015); *Ray Larsen Assocs., Inc. v. Nikko America, Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *9 (S.D.N.Y. Aug. 6, 1996) (finding that conclusory allegations that defendants "agreed and conspired" do not provide a "factual basis for a finding of conscious agreement among [defendants] to commit predicate acts"). Accordingly, Counts VII and VIII of the Complaint are dismissed.

### 4. The Court Dismisses Plaintiff's RICO Claims Based on a Failure to Allege Domestic Injury

**\*22** In addition to the defects outlined above, the Complaint also fails to plead domestic injury. In *Bascuñán*, the Second Circuit instructed that an "injury to tangible property is generally a domestic injury only if the property was physically located in the United States." 874 F.3d at 819. The Court again explained that "[w]here the injury is to tangible property ... absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." *Id.* at 820-21; *see Elsevier Inc. v. Grossmann*, No. 12 Civ. 5121 (KPF), 2017 WL 5135992, at *4 (S.D.N.Y. Nov. 2, 2017). "The [*Bascuñán*] court stressed that the focus of the domestic injury analysis is on the location of the plaintiff's property when it is harmed,

and not on the location of the defendant when the wrongful conduct was committed." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 345 (S.D.N.Y. 2019). Following from *Bascuñán*, Plaintiff has alleged domestic injury if his property was located in the United States when it was stolen or harmed, despite the fact that Plaintiff is a foreign resident. *See id.* at 346-47. Conversely, to the extent Plaintiff's property was located abroad when it was stolen or harmed, he has not alleged a domestic injury. *See id.* at 347.

The facts of this case resemble those in *Martin Hilti*. In that case, the plaintiff learned about and received false information about a painting when he visited the defendant-gallery in New York. 386 F. Supp. 3d at 346. The painting was not available to be shown to the plaintiff, however, so the gallery delivered the painting to Liechtenstein, so that the plaintiff could view the painting before deciding whether to purchase it. *Id.* The plaintiff then decided to purchase the painting and transferred money from its bank account in Liechtenstein to the defendant's bank account in New York. *Id.* In *Martin Hilti*, the defendant argued that plaintiff was injured in Liechtenstein, when the funds constituting the purchase price for the painting were transferred from the plaintiff's Liechtenstein bank account to defendant's bank account in New York. *Id.* The district court agreed with the defendant, explaining that the plaintiff's "injury occurred where it relinquished control over its property ... [and] [b]ecause [the plaintiff] relinquished control over its money in Liechtenstein — when it authorized a transfer of funds from its Liechtenstein bank account to [defendant's] New York account — the [plaintiff's] injury was suffered in Liechtenstein." *Id.* at 347-48.

Plaintiff here argues that his artwork was located in New York when it was stolen. He explains that he sent the Picasso and the Leger to Chowaiki on consignment in June 2015, and that it was only after termination of the consignment, once the artwork was already in New York, that the artwork was, in essence, stolen from him. (Pl. Opp. 33 (citing Compl. ¶¶ 35-37)). In opposition, Defendants point to the Complaint's repeated allegations that Chowaiki's scheme was to lure clients to consign their art with him and then sell or otherwise use the artwork in a way in which he was not authorized to do. (*See, e.g.*, Compl. ¶ 96 ("Upon information and belief, from its inception, through at least July 20, 2009, Chowaiki repeatedly conducted or participated, directly or indirectly, in the conduct of his Gallery's affairs by repeated acts of wire fraud in which he obtained his customers' art works by fraudulently telling them that he would sell them on

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 318 of 338

**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**
2020 WL 1974228

consignment, whereas, he illegally used those artworks as collateral for loans[.]"); *id.* at ¶ 99 (describing Chowaiki's illegal practice as "defraud[ing] purchasers and sellers of fine art by deceiving them into sending funds or artwork to his gallery in New York, New York, under false pretenses")). They also point to Plaintiff's counsel's statements at the pre-motion conference, at which time counsel represented that Plaintiff was injured as part of Chowaiki's scheme of stealing "artwork from abroad on consignment and other ways." (July 29, 2019 Tr. 5:11-15). From these allegations, Defendants reason that the fraud resulting in the alleged theft of the Picasso and the Leger was actually committed at the time Chowaiki represented that he would sell Plaintiff's works on consignment and remit the funds to Plaintiff, with no intention of doing so. Thus, the argument proceeds, Plaintiff's injury occurred in Spain, when Plaintiff was falsely induced into parting with his artwork, and not in the United States, where Chowaiki was located.

  **\*23**  The Court agrees with the Defendants that Plaintiff has failed to allege a domestic injury. While Plaintiff claims that he began demanding his artwork back after the expiration of the consignment period (*see* Compl. ¶ 37),[15] he also repeatedly alleges that Chowaiki "obtained his customers' art works by fraudulently telling them that he would sell them on consignment" (*id.* at ¶ 96), and that the purpose of the scheme was to "defraud[ ] ... sellers of fine art by deceiving them into sending ... artwork to [Chowaiki's] gallery in New York, New York under ... false pretenses" (*id.* at ¶ 99). The Court cannot turn a blind eye to these allegations when considering when and where Plaintiff's injury occurred. Accepting Plaintiff's own allegations, his injury occurred in Spain, when he relinquished control over the Picasso and the Leger to Chowaiki. Accordingly, Plaintiff's failure to allege a domestic injury provides yet another ground for dismissing his RICO claims.

### C. The Court Dismisses Certain of Plaintiff's State-Law Claims

Having dismissed Plaintiff's RICO claims, the Court now turns to Plaintiff's state-law claims for fraud, conspiracy to defraud, conversion, conspiracy to convert, and replevin. For the reasons explained below, Plaintiff's claims against Chowaiki for fraud, conversion, and replevin survive with respect to both the Picasso and the Leger, and Plaintiff's claims against the Benrimon Defendants for conversion and replevin survive with respect to the Picasso. Plaintiff's remaining state-law claims are dismissed.

### 1. The Court Has Subject Matter Jurisdiction to Consider Plaintiff's State-Law Claims

Chowaiki argues that if the Court dismisses the RICO claims, which are indisputably the only federal claims in this action, it should decline to exercise supplemental (or pendent) jurisdiction over Plaintiff's state-law claims. (Chowaiki Br. 19-20). He argues that, to the extent Plaintiff's claims are viable against Chowaiki, they should be heard in state court in New York, rather than in federal court, in the absence of a viable federal cause of action. (*Id.*).

What Chowaiki fails to recognize is that the Court has original jurisdiction over this case in the forms of both subject matter *and* diversity jurisdiction. (*See* Compl. ¶ 1). The Court has diversity jurisdiction over this case because Plaintiff is a citizen of a foreign state (Spain) and is not a permanent resident of the United States; Defendants are all citizens of the United States; and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(2). Accordingly, the Court can exercise diversity jurisdiction over the remaining state-law claims, without resorting to supplemental jurisdiction. For this reason, the Court will maintain jurisdiction over this matter, despite the dismissal of the RICO claims.

As it happens, Chowaiki moves to dismiss the state-law claims only on jurisdictional grounds. In other words, he does not attack the adequacy of the pleading of those claims.[16] For this reason, Chowaiki's motion is denied insofar as it seeks dismissal of the state-law claims against him. The Court addresses the adequacy of the pleadings of the state-law claims only with respect to the Benrimon Defendants, who have actually challenged the viability of those claims as pleaded.

### 2. Plaintiff Has Not Adequately Pleaded Claims for Common-Law Fraud and Conspiracy to Defraud Against the Benrimon Defendants

  **\*24**  To state a claim for fraud under New York law, a plaintiff must allege that (i) the defendant made a misrepresentation or material omission of fact, (ii) that was false and known to be false by the defendant, (iii) made for the purpose of inducing the plaintiff to rely upon it, (iv) the plaintiff's justifiable reliance on the misrepresentation or material omission, and (v) injury. *Pasternack v. Laboratory Corp. of America Holdings,* 27 N.Y.3d 817, 827, 59 N.E.3d 485 (2016); *see In re Fyre Festival Litig.,* 399 F. Supp. 3d 203, 212-13 (S.D.N.Y. 2019). As noted above, claims for fraud, even under state

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 319 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

law, must also satisfy the heightened pleading requirements of Rule 9(b). See *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009). To review, Rule 9(b) requires a plaintiff to specify the fraudulent statements, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004). To plead a viable claim for conspiracy to commit fraud under New York law, in addition to pleading the underlying fraud, the plaintiff must allege the following with the required specificity as to each defendant: "[i] an agreement among two or more parties, [ii] a common objective, [iii] acts in furtherance of the objective, and [iv] knowledge." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 259 (S.D.N.Y. 2005).

As the Benrimon Defendants note (*see* Benrimon Br. 21 n.8), Plaintiff's fraud claim appears to allege only that the Benrimon Defendants conspired in Chowaiki's commission of fraud — that is, Plaintiff does not appear to allege a direct claim of fraud against the Benrimon Defendants. (*See* Compl. ¶¶ 141-44). However, the Complaint repeatedly states that the Benrimon Defendants "defrauded" Plaintiff. (*See, e.g., id.* at ¶¶ 21, 59, 63). For this reason, and for the avoidance of doubt, the Court considers both species of fraud claims.

Ultimately, the Court concludes that Plaintiff has not satisfied the pleading requirements with respect to either type of claim against the Benrimon Defendants. The Court dismisses the conspiracy to defraud claim because Plaintiff has failed to allege "a corrupt agreement" and "membership in the conspiracy by each defendant." *Cofacredit*, 187 F.3d at 240. Plaintiff repeatedly protests that the Benrimon Defendants "knew or should have known" about Chowaiki's scheme. (*See, e.g.,* Compl. ¶¶ 40, 43, 46, 54, 57, 60, 61, 86). However, his claim is supported only by conclusory allegations, which are insufficient to establish that the Benrimon Defendants had a "meeting of the minds" with Chowaiki. See *Browning Ave. Realty Corp.*, 774 F. Supp. at 145 (concluding that allegation that defendant "knew or should have known" of another defendant's fraud was insufficient to show that defendant entered into a conspiracy with the other defendant); *see also Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 630 (S.D.N.Y. 2004) ("[M]ere allegations that defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim."). For this reason, Plaintiff's claim that the Benrimon Defendants conspired with Chowaiki to defraud him of the Picasso is dismissed.

To the extent Plaintiff attempts to assert a fraud claim directly against the Benrimon Defendants, that claim is also dismissed. Plaintiff has not alleged a single misstatement or omission that any of the Benrimon Defendants made to Plaintiff. Indeed, aside from alleging that Plaintiff demanded the return of the Leger from the Benrimon Defendants, Plaintiff has not alleged that the Benrimon Defendants had any communication with Plaintiff. Plaintiff vaguely asserts that the Benrimon Defendants intended for Plaintiff to rely on the documents evidencing the $300,000 loan. (*See* Compl. ¶ 59). However, Plaintiff does not allege that the Benrimon Defendants ever provided these documents to him, nor does he allege that (or even how) he reasonably could have relied on them. Accordingly, Plaintiff's fraud claim against the Benrimon Defendants is dismissed.

### 3. Plaintiff Has Adequately Pleaded a Conversion Claim Against the Benrimon Defendants as to the Picasso

**\*25** By contrast, Plaintiff's non-fraud-based state-law claims survive. Under New York law, to plead a claim of conversion, a plaintiff must establish that "[i] the property subject to conversion is a specific identifiable thing; [ii] plaintiff had ownership, possession[,] or control over the property before its conversion; and [iii] defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Murray Eng'g P.C. v. Remke*, No. 17 Civ. 6267 (KPF), 2018 WL 3773991, at \*13 (S.D.N.Y. Aug. 9, 2018). "The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (quotation omitted). Further, New York distinguishes claims that the defendant wrongfully detained — in contrast to having wrongfully taken — the property in question. *Newbro v. Freed*, 409 F. Supp. 2d 386, 394 (S.D.N.Y. 2006). For claims of wrongful detention, where the possession is originally lawful, a conversion does not occur until the owner makes a demand for return of the property and the person in possession of the property refuses to return it. *See Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007).

Plaintiff alleges that the Benrimon Defendants converted the Picasso, and that they conspired with Chowaiki to convert the Leger. (*See* Compl. ¶¶ 145-49). Plaintiff has stated a claim for conversion against the Benrimon Defendants for

**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**

2020 WL 1974228

the Picasso. The Benrimon Defendants do not dispute that they had possession of the Picasso. They contend, however, that their original possession of the Picasso was lawful because they obtained possession of the Picasso through the Release and Settlement Agreement with Chowaiki, in which Chowaiki stated that he was "the record and beneficial owner" of the Picasso. (*See* Benrimon Br. 21 (quoting Compl. ¶ 49)). The Court agrees. As such, Plaintiff was required to make a demand on the Benrimon Defendants for the return of the Picasso. *See Marks v. Energy Materials Corp.*, No. 14 Civ. 8965 (GHW), 2015 WL 3616973, at *4-5 (S.D.N.Y. June 9, 2015).

The Benrimon Defendants argue that Plaintiff has insufficiently pleaded that the "demand and refusal" requirement was satisfied because "Plaintiff does not specify when he made his demand of each Benrimon Defendant, when each Benrimon Defendant refused, and the words or actions that each party used to convey the demand or refusal." (Benrimon Br. 23). [17] But in so doing, they misperceive the law. The reason for the demand and refusal requirement is simply so that a *bona fide* purchaser of property does not become a wrongdoer until he is informed of the defect of his title and has an opportunity to deliver the property to its true owner. *See Employers' Fire Ins. Co. v. Cotton*, 245 N.Y. 102, 105, 156 N.E. 629 (1927). But the demand and refusal requirement of a conversion claim, unlike Plaintiff's many fraud-based claims, need not be pleaded with particularity. Plaintiff has alleged that he "has requested each defendant [ ] return [the Picasso to him], and defendants have refused to do so." (Compl. ¶ 65). That is all Plaintiff must allege at this stage. The Benrimon Defendants' claim that they did not refuse to return the Picasso because they did not have it in the first place (*see* Benrimon Br. 23-24), is contrary to the well-pleaded allegations in the Complaint, which allegations plainly state that the Benrimon Defendants are in possession of the Picasso even today (*see* Compl. ¶¶ 71-72).

That said, to the extent Plaintiff has attempted to plead that the Benrimon Defendants conspired with Chowaiki to convert the Leger, the claim must be dismissed. As explained above, Plaintiff has alleged no facts to establish that the Benrimon Defendants had a "meeting of the minds" with Chowaiki. What is more, there are no non-conclusory allegations in the Complaint to show that the Benrimon Defendants even knew of Chowaiki's conversion of the Leger. Accordingly, the Court sustains Plaintiff's claim against the Benrimon Defendants for conversion of the Picasso, and dismisses his claim against them for conspiracy to convert the Leger.

### 4. Plaintiff Has Adequately Pleaded a Replevin Claim Against the Benrimon Defendants as to the Picasso

**\*26** Replevin is a remedy employed to recover specific, identifiable items of personal property. *TAP Manutenção e Engenharia Brasil S.A.* v. *Int'l Aerospace Grp., Corp.*, 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015). "To establish a claim for replevin, the plaintiff must prove two elements: [i] that plaintiff has a possessory right superior to that of the defendant; and [ii] that plaintiff is entitled to the immediate possession of that property." *Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128 (PAC), 2013 WL 1775367, at *9 (S.D.N.Y. Apr. 25, 2013). Notably, New York allows a claim of replevin to lie even if the defendant is no longer in possession of the property in question. *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 456 (S.D.N.Y. 2014).

As with a conversion claim, "an innocent purchaser of stolen goods becomes a wrongdoer only after refusing the owner's demand for their return." *Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982); *see also Williams v. Nat'l Gallery of Art, London*, No. 16 Civ. 6978 (VEC), 2017 WL 4221084, at *7 n.13 (S.D.N.Y. Sept. 21, 2017) ("[D]emand and refusal are requisite elements of the cause of action for replevin and conversion if defendant is a good faith purchaser." (quotation omitted)); *Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) ("Demand upon, and refusal of, the person in possession of the chattel to return it are essential elements of a cause of action in replevin." (citation and alteration omitted)).

Plaintiff has adequately pleaded a replevin claim against the Benrimon Defendants with respect to the Picasso. Plaintiff has claimed that he is the lawful owner of the Picasso; that he has a possessory right superior to that of the Benrimon Defendants because Chowaiki had no right to transfer title of the Picasso to them; and that he has made a demand on the Benrimon Defendants for its return, which demand was refused. The Benrimon Defendants' protestation that they no longer possess the Picasso must be ignored, as the Complaint alleges that the Benrimon Defendants possess the Picasso and continue to pay for its storage abroad. (*See* Compl. ¶¶ 71-72). Accordingly, Plaintiff has adequately pleaded a replevin claim against the Benrimon Defendants for the Picasso.

### D. The Court Denies Plaintiff's Request for Leave to Replead

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 321 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

Plaintiff requests leave to replead his Complaint in the event the Court dismisses any of his claims. (Pl. Opp. 35). Plaintiff's request is denied with respect to his RICO claims. These claims have been dismissed on multiple grounds, and Plaintiff has failed to explain how a further amendment would cure the various deficiencies with these claims. *See Westgate Fin. Corp. v. Beinoni of N.Y. Inc.*, No. 10 Civ. 8102 (TPG), 2012 WL 219334, at *4 (S.D.N.Y. Jan. 25, 2012) (denying leave to replead RICO complaint on futility grounds where plaintiff did not explain how a further amendment would cure deficiencies); *see generally Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (acknowledging that leave to amend a complaint may be denied when amendment would be futile).

Plaintiff's request is also denied insofar as the Court has dismissed his state-law claims. Plaintiff's amendment regarding claims against the Benrimon Defendants relating to the Leger would be futile, as (i) the Complaint contains no allegations tying the Benrimon Defendants to that artwork and (ii) Plaintiff concedes that the Benrimon Defendants are only responsible for the Leger through conspiratorial liability, a theory the Court has already rejected.

### E. The Court Grants in Part and Denies in Part the Benrimon Defendants' Motion for Rule 11 Sanctions

**\*27** The Court now turns to the Benrimon Defendants' motion for sanctions pursuant to Rule 11. Specifically, the Benrimon Defendants have moved for "all available sanctions under Rule 11 against Plaintiff and his counsel ... including by awarding the Benrimon Defendants their attorneys' fees and costs they have incurred in defending this action." (Benrimon Sanctions Br. 3).

#### 1. Applicable Law

Federal Rule of Civil Procedure 11(b) provides, in relevant part, that [b]y presenting to the court a pleading, written motion, or other paper ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The rule imposes on attorneys "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

The Second Circuit has offered the following guidance concerning the imposition of sanctions under Rule 11:

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks omitted). For example, Rule 11 is violated "where it is patently clear that a claim has absolutely no chance of success under the existing precedents." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), *superseded on other grounds by rule.*

*Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) (summary order); *see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (noting that Rule 11 sanctions for pleadings are subject to an "objective unreasonableness" standard); *cf. Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is whether the argument is frivolous, *i.e.*, the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.' " (internal citations omitted)).

"As numerous courts in this Circuit have recognized, Rule 11 is particularly significant in the civil RICO context because commencement of a civil RICO action has an almost inevitably stigmatizing effect on those named as defendants." *Edmonds v. Seavey*, No. 08 Civ. 5646 (HB), 2009 WL

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 322 of 338
**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**
2020 WL 1974228

4404815, at *3 (S.D.N.Y. Dec. 2, 2009) (internal quotation marks omitted) (citing *Hoatson v. New York Archdiocese,* No. 05 Civ. 10467 (PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) (quoting *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd,* 113 F.3d 1229 (2d Cir. 1997))). That is, civil RICO is considered an "unusually potent weapon," often referred to as the "litigation equivalent of a thermonuclear device." *See, e.g., Cedar Swamp Holdings, Inc. v. Zaman,* 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007); *Dubai Islamic Bank v. Citibank, N.A.,* 256 F. Supp. 2d 158, 163 (S.D.N.Y. 2003); *Katzman,* 167 F.R.D. at 655 (quoting *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir. 1991)). Courts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to be frivolous. *Edmonds,* 2009 WL 440815, at *3 (citing *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 02 Civ. 2561 (KMW) (GWG), 2003 WL 22227956, at *13-14 (S.D.N.Y. Sept. 26, 2003) (admonishing plaintiff's counsel for frivolous RICO claim)); *see also, e.g., O'Malley v. N.Y.C. Transit Auth.,* 896 F.2d 704, 709 (2d Cir. 1990) (remanding for imposition of sanctions where plaintiff "failed to allege even one act that could qualify as racketeering activity under RICO"); *Katzman,* 167 F.R.D. at 660 (finding a Rule 11 violation where "even a cursory examination of the requirements for bringing suit under RICO would have revealed the impossibility of the claim's success"); *McLoughlin v. Altman,* 1995 WL 640770, at *2 (S.D.N.Y. Oct. 31, 1995) (finding a Rule 11 violation where plaintiff failed "to properly plead a single element of a substantial RICO claim .... [which] manifest[ed] a total lack of legal research and preparation on the part of plaintiff's attorney"); *Levy v. Aaron Faber, Inc.,* 148 F.R.D. 114, 123 (S.D.N.Y. 1993) (imposing Rule 11 sanctions where "even a cursory investigation into the pleading requirements for RICO would have revealed the inadequacy of [plaintiff's] RICO pleading"). Further, Rule 11 sanctions may also be imposed for baseless factual allegations. *See Levine v. F.D.I.C.,* 2 F.3d 476, 479 (2d Cir. 1993). The creativity of an attorney may not transcend the facts of a given case. *See id.*; *accord In re Kelly,* 808 F.2d 549, 551 (7th Cir. 1986) (when an attorney "chose to state as fact what was at the best a guess and a hope, he engaged in misrepresentation").

**\*28** If a court determines that Rule 11(b) has been violated, Rule 11(c) authorizes the court to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Such a sanction, however, "must be limited to what suffices to deter repetition of the conduct or comparable

conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4); *see LCS Grp., LLC v. Shire LLC,* No. 18 Civ. 2688 (AT), 2019 WL 1234848, at *18 (S.D.N.Y. Mar. 8, 2019) (concluding that appropriate sanctions on defendant and its counsel under Rule 11 for asserting frivolous RICO claims consisted of "reasonable attorney's fees and other expenses associated with briefing the motion to dismiss and the motion for sanctions"); *see also AJ Energy LLC v. Woori Bank,* No. 18 Civ. 3735 (JMF), 2019 WL 4688629, at *12 (S.D.N.Y. Sept. 26, 2019) (awarding attorney's fees and costs where complaint was implausible on its face and assertions clearly lacked reasonable evidentiary support).

If sanctions are imposed, a court must also consider how, if at all, to apportion them between counsel and client. To begin, the court must assess each one's respective responsibility for the offending conduct. *See United Republic Ins. Co., in Receivership v. Chase Manhattan Bank,* 315 F.3d 168, 171 (2d Cir. 2003) (concluding that Rule 11 sanctions should not be imposed on client where attorney bore principal responsibility for any sanctionable conduct); *Greenberg v. Hilton Int'l Co.,* 870 F.2d 926, 939 (2d Cir. 1989) (limiting Rule 11 sanctions to counsel where client unaware of abuses), *vacated on other grounds,* 875 F.2d 39, 42 (2d Cir. 1989); *see also Judin v. United States,* 110 F.3d 780, 785 (Fed. Cir. 1997) (analyzing analogous Court of Claims rule and finding that "[i]n imposing Rule 11 sanctions, a court may allocate sanctions between an attorney and client according to their relative fault" (citing *Borowski v. DePuy,* 850 F.2d 297, 305 (7th Cir. 1988))). At base, the court must distinguish clients who were not adequately advised by counsel that their conduct violated Rule 11 from clients who knew their actions were wrongful, or who misled their attorneys about the facts relating to, or the purposes underlying, the lawsuit.

Notably, additional restrictions pertain in the context of sanctions imposed for improper legal (as distinguished from factual) arguments. "Sanctions that involve monetary awards (such as a fine or an award of attorney's fees) may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law. Monetary responsibility for such violations is more properly placed solely on the party's attorneys." Fed. R. Civ. P. 11, 1993 Advisory Committee Notes.

**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**   Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 323 of 338

2020 WL 1974228

**2. Analysis**

The Benrimon Defendants make four arguments for sanctions under Rule 11; *first*, that Plaintiff's RICO claims against them are frivolous; *second*, that Plaintiff's state-law claims are frivolous; *third*, that Plaintiff's allegations concerning the Shtar Isko are legally frivolous and factually wrong; and *fourth*, that Plaintiff continues to make false and unsubstantiated allegations tying the Benrimon Defendants to the Leger. For the reasons explained below, the Court awards the Benrimon Defendants' a portion of their attorneys' fees and costs in defending against certain of Plaintiff's RICO claims.

**a. The Court Finds the Safe Harbor Provision of Rule 11 to Be Satisfied**

At the outset, the Court addresses the parties' dispute with regard to whether the Benrimon Defendants have complied with the safe harbor provision of Rule 11(c)(2). That provision requires a party seeking sanctions to serve its motion on the party to be sanctioned, pursuant to Rule 5, affording the party upon whom the motion is served 21 days to correct or withdraw the allegedly sanctionable filing. *See* Fed. R. Civ. P. 11(c)(2).

 **\*29** Plaintiff argues that the Benrimon Defendants served their Rule 11 motion on him on October 16, 2019, only two days before the motion was filed with the Court, and that the Benrimon Defendants did not also serve upon him their brief in support of their motion to dismiss the Complaint. (*See* Pl. Sanctions Opp. 2). The declaration supporting Plaintiff's opposition to the sanctions motion attaches an email thread between counsel for the Benrimon Defendants and counsel for Plaintiff. (*See* Weiss Decl., Ex. 1). It demonstrates that, on the evening of October 16, 2019, counsel for the Benrimon Defendants sent their brief in support of the motion for sanctions to Plaintiff's counsel. (*Id.*). Plaintiff's counsel responded the next day, confirming that he had received and reviewed the Benrimon Defendants' Rule 11 motion and responding, "we are not withdrawing the first amended complaint or case. In my opinion, your Rule 11 motion lacks any merit." (*Id.*). This exchange came after the Court's July 29, 2019 pre-motion conference, during which the Court engaged in an extensive colloquy with the parties about the bases for the Benrimon Defendants' motions to dismiss and for sanctions. (*See generally* July 29, 2019 Tr.). True to his

word, Plaintiff and his counsel did not withdraw the first amended complaint or this action in response to the Benrimon Defendants' motions.

The Court recognizes that the safe harbor requirement is a strict procedural requirement. *See Star Mark Mgmt.,* 682 F.3d at 175; *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995). The Second Circuit has held, for instance, that informal warnings and requests for sanctions in letters, without separate service of the motion, do not trigger Rule 11's 21-day fair warning requirement. *See Star Mark Mgmt.,* 682 F.3d at 175-76 (citing cases); *see also Gal v. Viacom International, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock — the rule says nothing about the use of letters"). At the same time, neither party points to any controlling law, and the Court's independent research discloses none, on the precise issue facing the Court: Whether a party seeking to file a sanctions motion must wait 21 days, when the party upon whom such motion was served explicitly confirms, in writing, that it will not withdraw or amend its allegedly sanctionable filing.

In *Perpetual Securities, Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002), the Second Circuit held that the appellees' Rule 11 sanctions motion had been procedurally improper because it was not "made separate from other motions or requests." *Id.* at 142. The appellees' sanctions motion had instead been included in a brief that addressed the underlying issues before the district court. *Id.* The district court's consequent award of sanctions under Rule 11 was thus found to be an abuse of discretion. *Id.* But rather than foreclosing the possibility of sanctions, the Second Circuit remanded the case back to the district court to reconsider the sanctions request, explicitly stating:

> Our decision to remand for reconsideration of the sanctions issues does not conflict with our decision in *Hadges* to reverse an award of sanctions for failure to adhere to the procedural requirements of Rule 11. *See Hadges*, 48 F.3d at 1329. In *Hadges*, it was clear that the sanctioned party would have corrected his misstatements had he been afforded the opportunity to do so; a reversal was

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

thus appropriate. *See id.* at 1328. *Here, there is no indication that Perpetual would have corrected or amended its frivolous arguments even had it been given the opportunity.*

*Id.* (emphasis added).

Courts have interpreted *Perpetual Securities* to find that the "failure to follow the safe harbor provisions perfectly may be excused where there is 'no indication that [a party] would have corrected or amended its frivolous arguments even had it been given the opportunity.' " *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at *6 (S.D.N.Y. Feb. 22, 2013) (quoting *Perpetual Securities*, 290 F.3d at 142); *see id.* at *7 (holding that premature filing of sanctions motion was excused where it was clear that plaintiff would not have withdrawn or corrected his frivolous allegations); *see also Lan v. Time Warner, Inc.*, No. 11 Civ. 2870 (AT) (JCF), 2015 WL 4469838, at *1-2 (S.D.N.Y. July 13, 2015) (same). That is clearly the case here. In response to being served with the Benrimon Defendants' Rule 11 motion, Plaintiff's counsel confirmed in writing that he and his client would not be withdrawing the Complaint.[18] Plaintiff then proceeded to defend the allegations and claims in his Complaint on their merits. Even today, he stands by these allegations. Accordingly, the Court is certain that Plaintiff would not have withdrawn or amended the Complaint, even if he had been provided the full 21 days. Any technical violation of the safe harbor provision is therefore excused, and the Court will consider the merits of the Benrimon Defendants' sanctions motion.

**b. The Benrimon Defendants Are Entitled to a Portion of the Reasonable Attorneys' Fees and Costs Incurred in Defending Against Certain of Plaintiff's RICO Claims**

**\*30** The Benrimon Defendants seek sanctions for defending against each of Plaintiff's RICO claims, and the Court thus begins its analysis with Count I of the Complaint, which alleges a substantive RICO claim against David and Linda Benrimon, and Count II, which alleges a RICO conspiracy claim. The Court has dismissed these claims for failure to satisfy the relatedness, continuity, and nexus requirements for a RICO claim. As previously detailed, Plaintiff's Complaint is brimming with conclusory allegations. The vast majority of Plaintiff's fraud allegations have not been pleaded with the

particularity required by Rule 9(b), and his allegations as a whole fail to satisfy multiple RICO pleading requirements. But buried within this haystack of allegations, the Court has identified a few needles. These factual allegations, from which the Court was able to discern the existence of the *Le Compotier* Acts and the Pledge Agreement Acts, have not been (and, under the governing law, cannot be) joined together to show a pattern of racketeering activity. However, the Court cannot say that Plaintiff's attempt to do so was entirely frivolous or otherwise objectively unreasonable. Thus, the Court will not grant the Benrimon Defendants sanctions as to Counts I and II.

The Benrimon Defendants also seek sanctions for defending against Count VIII of the Complaint, which identifies the Gallery as a RICO enterprise and alleges that the Benrimon Defendants conspired with Chowaiki to facilitate the latter's pattern of racketeering activity through the enterprise. This claim fails for many of the same reasons that Counts I and II failed, and it is additionally inadequate because the Complaint lacks sufficient allegations that the Benrimon Defendants agreed with Chowaiki to violate RICO's substantive provisions, a required element of a RICO conspiracy. Again, however, this claim is not so far-fetched as to be sanctionable.

The unlawful debt collection claims, however, are a different story. Counts III through VI are predicated on the Benrimon Defendants' alleged violation of RICO through the "collection of unlawful debt." The Court dismisses these claims, as explained above, because the Complaint lacks sufficient allegations that any of the Benrimon Defendants was "in the business" of making usurious loans, a required element for such claims. But dismissal is not enough.

In his original complaint (*see* Dkt. #1), Plaintiff failed to allege that any of the Benrimon Defendants was "in the business" of making usurious loans — a necessary element of an unlawful debt claim requiring allegations of "other individuals or companies to whom [defendants] lent money or the usurious interest rates attached to any other loan by the defendants." *Weisel*, 197 F.R.D. at 241. Instead, the original complaint alleged a single usurious loan by Piedmont. The Benrimon Defendants raised this deficiency in their pre-motion letter. (*See* Dkt. #14 at 2). And during the July 29, 2019 pre-motion conference, Plaintiff's counsel assured the Court that he would amend the complaint to "make it very clear" that the Benrimon Defendants were "making usurious

loans, in the business of usurious loans." (July 29, 2019 Tr. 4:1-5).

Despite those assurances, the Complaint as amended still contains a single allegation of a single usurious transaction: the $300,000 loan from Piedmont to the Gallery. (Compl. ¶¶ 81-91). Yet, inexplicably, Plaintiff has attempted to string out this one instance to four separate causes of action that implicate all six Defendants. To do so, Plaintiff attempts to bolster his unlawful debt allegations by stating, in vague and conclusory fashion, that "Piedmont and Avichai Rosen's business is to lend money or a thing of value at a usurious rate." (Compl. ¶ 85). Such an allegation is, of course, patently insufficient. Worse yet, with respect to Count V, the Complaint lacks even conclusory allegations that the Benrimons were "in the business" of making usurious loans. Given the conspicuous absence of supporting allegations for these claims, the Court is in complete agreement with the Benrimon Defendants that the unlawful debt collection claims against them are particularly egregious, and that Plaintiff's persistence in advancing these claims for which he has no articulable legal or factual basis is objectively unreasonable. *See McCabe*, 761 F. App'x at 41 (noting that Rule 11 sanctions require "objective[ ] unreasonab[leness]").

**\*31** In imposing sanctions on Plaintiff for the unlawful debt collection claims in this case, the Court also considers the recklessness with which Plaintiff makes certain factual allegations. For example, as part of his RICO claims, Plaintiff alleges that the Benrimon Defendants committed fraud on the court in the Criminal Case by not disclosing the Shtar Isko, an agreement that, according to Plaintiff, shows that Piedmont and Chowaiki "were actually 50%-50% equal partners — and not unrelated *bona fide* purchasers for value reasonably without knowledge to believe that the property was subject to forfeiture." (Compl. ¶ 76). The Benrimon Defendants argue that the allegations concerning the Shtar Isko are sanctionable because: (i) Piedmont did disclose the existence of the Shtar Isko in the Criminal Case; and (ii) it is settled law that a Shtar Isko document does not create a legally enforceable partnership. (Benrimon Sanctions Br. 8).

The Benrimon Defendants are correct that Plaintiff's allegation is factually inaccurate. When Piedmont filed its petition for the Picasso in the Criminal Case, it included as an exhibit the Note between Piedmont and Chowaiki. (*See* Criminal Case, Dkt. #57). The Note explicitly states that the Gallery "shall pay, in accordance with Heter Iska, all outstanding principal to" Piedmont. (*Id.* at Ex. A). This

document is filed publicly on the Criminal Case docket, on which Plaintiff so heavily relies in his Complaint. In alleging that Piedmont did not disclose the existence of the Shtar Isko in the Criminal Case, Plaintiff either failed to conduct a reasonable inquiry into the Criminal Case, or alleged something he knew to be false. In either case, the accusation that the Benrimon Defendants committed a fraud on the criminal court was completely unwarranted. Plaintiff's failure to correct this allegation evinces a carelessness with lodging very serious accusations that greatly troubles the Court.

Having determined that sanctions are warranted for the unlawful debt collection RICO claims, the next issue concerns who, as between Plaintiff and his counsel, is responsible for the sanctionable conduct. On this record, the Court finds it difficult to discern the degree to which Plaintiff himself had a hand in making frivolous claims and unsupported factual contentions. But for several reasons, the Court believes the sanctions here are appropriately placed on Plaintiff's counsel.

*First*, the Court's decision to impose sanctions is, in large part, due to the Complaint's overstep in asserting four RICO claims for collection of unlawful debt against all six Defendants in this action, based on allegations of a single usurious loan. Putting aside the 1993 Advisory Committee Notes to Rule 11, which state that sanctions based on frivolous contentions of law are properly placed on a party's counsel, it was Plaintiff's counsel who was warned at the July 29, 2019 pre-motion conference that a single allegation of a usurious loan would not suffice to plead such RICO claims adequately. And it was Plaintiff's counsel who told the Court that he would remedy such deficiency in the amended complaint, yet failed to do so. Thus, all facts before the Court indicate that Plaintiff's counsel is responsible for seeking to transmogrify a single transaction with a subset of Defendants into four RICO claims against all Defendants alleging that all were "in the business" of making usurious loans. The Complaint is signed by Plaintiff's counsel; Plaintiff's counsel appeared at the pre-motion conference; and Plaintiff's counsel wrote and filed the opposition briefs, defending the RICO claims. *See Edmonds*, 2009 WL 4404815, at \*5 (sanctioning attorney whose "continued reliance on RICO to prosecute what [was] clearly a private wrong alleged against his former partners and their accounting firm, exhibit[ed] a fundamental lack of familiarity with, or misunderstanding of, the civil RICO statute and the grounds for such an action"); *Dangerfield*, 2003 WL 22227956, at \*12-13 (sanctioning attorney where "no attorney conducting a reasonable inquiry into the legal

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 326 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

viability of [plaintiff's] RICO claim could have thought it had any chance to succeed").

**\*32** *Second*, Plaintiff's counsel is also responsible for the inaccurate factual allegations. Plaintiff's counsel signed the Complaint, indicating that he made the necessary inquiry into the factual allegations substantiating the claims. At bottom, Plaintiff's counsel is responsible for the allegations concerning disclosure of the Shtar Isko and the reputational effects of asserting that the Benrimon Defendants committed fraud in both the Criminal Case and Bankruptcy Case. *See Hoatson*, 2007 WL 431098, at \*9-10 (imposing sanctions on attorney where "the pleadings [were] so far removed from adequate that they cannot be said to have been filed in good faith or after a reasonable inquiry").

For these reasons, the Court has determined, despite resolving all doubts in his favor, that certain of Plaintiff's counsel's arguments concerning RICO are "losing *and* sanctionable." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1994). The Court has determined that the Benrimon Defendants are entitled to a portion of the reasonable attorneys' fees and costs they incurred in defending against the RICO claims in Counts III, IV, V, and VI in this action. *See Bus. Guides, Inc.*, 498 U.S. at 548, 111 S.Ct. 922 (confirming that Rule 11 "states unambiguously that any signer must conduct a 'reasonable inquiry' or face sanctions"). In this regard, the Court recognizes that it has the discretion either to award an absolute number now that it believes fairly vindicates the purposes of Rule 11, or to wait and award fees and costs after review of a fee petition filed by the Benrimon Defendants' counsel and responded to by Plaintiff's counsel. For several reasons, it chooses the former, and will order Plaintiff's counsel to pay a sanction of $20,000 to the Benrimon Defendants.

To begin, the Court recognizes that it may be difficult for defense counsel to separate out the precise amount of fees and costs that were attributable to defending against Plaintiff's unlawful debt collection counts specifically. Moreover, as this section makes clear, not all of Plaintiff's RICO arguments were sanctionable, even if all were ultimately unavailing. The Court also recognizes the disparity in size between Plaintiff's counsel and the Benrimon Defendants' counsel, and strives to sanction, without wholly bankrupting, Plaintiff's counsel. Finally, the Court realizes that a fee petition will itself generate attorneys' fees and costs for which Plaintiff's counsel should arguably be responsible, and wishes to minimize the

resources that have been and are contemplated to be expended in this effort.

Ultimately, the Court is reminded that "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994); *see also Estate of Calloway v. Marvel Entertainment Group*, 9 F.3d 237, 241 (2d Cir. 1993) ("Rule 11 is not a fee-shifting mechanism and does not create an entitlement in adverse parties to compensatory damages or attorney's fees.... Rather it is intended 'to maintain the integrity of the system of federal practice and procedure.' " (citation omitted)), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1984). The Court acknowledges that the $20,000 sanction imposed will not fully compensate the Benrimon Defendants for the fees and costs expended on the unlawful debt collection issue, but it will fully punish Plaintiff's counsel for his conduct in accordance with the letter and spirit of Rule 11.

### c. The Benrimon Defendants Are Not Entitled to Sanctions for Plaintiff's State-Law Claims

**\*33** The Benrimon Defendants also move for sanctions with respect to Plaintiff's state-law claims. Plaintiff's fraud claim against the Benrimon Defendants is dismissed because, as the Court explained above, Plaintiff has not alleged a single misstatement or omission that any of the Benrimon Defendants made to Plaintiff. To the extent Plaintiff pleaded that the Benrimon Defendants conspired with Chowaiki to defraud Plaintiff, the Court has also dismissed this claim, as Plaintiff has not alleged any agreement between them to make any misrepresentation to Plaintiff. However, the Court has found that Plaintiff adequately pleaded his claims for conversion and replevin against the Benrimon Defendants, at least with respect to the Picasso. While Plaintiff's fraud arguments are a stretch, the Court finds that the filing of these state-law claims was not objectively unreasonable and, further, that some of the other factors that animated the Court's decision to impose sanctions for the RICO claims (*e.g.*, the allegations regarding the Shtar Isko and the stigmatizing effect of a RICO claim), are not present with respect to the state-law claims. For this reason, the Court will not sanction Plaintiff or his counsel for alleging these state-law claims against the Benrimon Defendants.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 327 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

#### d. The Benrimon Defendants Are Not Entitled to Sanctions for Plaintiff's Allegations Tying the Benrimon Defendants to the Loss of the Leger

The Benrimon Defendants' final argument on this point is that Plaintiff should be sanctioned because the Complaint contains numerous allegations that Plaintiff lost the Leger as a direct result of the Benrimon Defendants' actions. At the pre-motion conference in this case, counsel for Chowaiki explained to the Court and counsel for all parties that "the Benrimons had nothing to do with Leger at all." (July 29, 2019 Tr. 42:12-14). Plaintiff's counsel seemed to agree that the Benrimon Defendants were not directly responsible for the Leger. Counsel told the Court, with respect to the original complaint, that "[t]here were no allegations that [the Benrimon Defendants] participated in the Leger," and that "there certainly won't be [any] in the amended complaint." (*Id.* at 55:24-56:2). Plaintiff's counsel also clarified the allegation as stating that the Benrimon Defendants participated in a conspiracy with Chowaiki that led to Plaintiff's loss of the Leger.

The Benrimon Defendants now argue that, despite Plaintiff's counsel's assurances during the pre-motion conference, Plaintiff continues to assert that the Benrimon Defendants are responsible for the loss of the Leger. The Court understands this argument, but does not read the Complaint's allegations as accusing the Benrimon Defendants of directly causing Plaintiff to lose the Leger. The Benrimon Defendants cite to the following provisions of the Complaint:

- David and Linda Benrimon, David Benrimon Fine Art LLC, Piedmont Capital LLC, Avichai Rosen, and Ezra Chowaiki — each knowing that Ezra Chowaiki was engaged in a pattern of Racketeering Activity for the explicit purpose of fraudulently defrauding art-owners of the works of art they had consigned to the Gallery — agreed with each other to join, facilitate, further, and to participate in Ezra Chowaiki's pattern of Racketeering Activity, by their own actions, as set out in ¶¶ 21, 26, 28, 33, 59, 60, 61, 63, 64, 72, 75, 79, 80, 86, and related paragraphs, above, and conspired with each other to do so, in violation of 18 U.S.C. § 1962 (d). As a result, plaintiff was injured by the loss, theft, fraudulent taking, or conversion of his Picasso, le Gueridon and his Leger. (Compl. ¶ 111).

- As a direct and proximate result of the conspiracy defendants' predicate actions in furtherance of violating 18 U.S.C. § 1962(d), as described in above, plaintiff has been and is continuing to be injured in his business or property, including by the unlawful conversion of his Leger and his Picasso's le Gueridon, and as set forth more fully above. Each of the conspiracy defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964(c). (*Id.* at ¶ 140).

- Each of Linda and David Benrimon, Avichai Rosen, David Benrimon Fine Art LLC, and Piedmont Capital LLC, knowing that Ezra Chowaiki was defrauding plaintiff and other art owners of the art works they had consigned to Ezra Chowaiki's Gallery, and knowing of Ezra Chowaiki's scheme and plan to do so, conspired and agreed with Mr. Chowaiki to join that scheme and advance it, and engaged in actions, as set out in this Complaint to do so. And plaintiff was harmed thereby in the loss of le Gueridon and the Leger. (*Id.* at ¶ 143).

**\*34** - Each of the defendants, knowing that Ezra Chowaiki was unlawfully selling art consigned to his Gallery against their owners' wishes, agreed and conspired with each other to participate in that scheme. Each defendant intentionally took overt acts in furtherance of that agreement to defraud art owners of the art they had consigned to Mr. Chowaiki's Gallery. And plaintiff was harmed thereby by the loss of his le Gueridon and Leger. (*Id.* at ¶ 148).

(*See* Benrimon Sanctions Br. 10-11). The Court acknowledges the imprecision of these allegations, but reads them merely to allege Plaintiff's loss of the Leger as a result of a conspiracy between Chowaiki and the Benrimon Defendants, which is true to what Plaintiff's counsel stated at the pre-motion conference. Conversely, the Court does not read these allegations as indicating that "Plaintiff lost the Leger as a direct result of the Benrimon Defendants' actions." (*Id.* at 10). Accordingly, the Benrimon Defendants' motion for sanctions is denied insofar as it seeks sanctions for Plaintiff's allegation that the Benrimon Defendants were involved in Plaintiff's loss of the Leger.

#### CONCLUSION

For the reasons explained above, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss. All of the RICO claims in this action are dismissed. Plaintiff may pursue his state-law fraud, conversion, and replevin claims against Defendant Chowaiki for the Picasso

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 328 of 338
Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)
2020 WL 1974228

and the Leger, and Plaintiff may pursue his state-law conversion and replevin claims against the Benrimon Defendants for the Picasso. All other state-law claims are dismissed.

Defendants are hereby ORDERED to file answers to the remaining claims against them on or before **May 15, 2020**.

Counsel for Plaintiff is ORDERED to pay sanctions under Fed. R. Civ. P. 11 in the amount of $20,000 to the Benrimon Defendants on or before **May 22, 2020**.

The parties are hereby ORDERED to provide a proposed case management plan to the Court on or before **May 22, 2020**.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1974228

---

## Footnotes

1   The facts in this Opinion are drawn primarily from Plaintiff's First Amended Complaint ("Complaint" or "Compl." (Dkt. #26)), which is the operative pleading in this case. The Court notes here that the Complaint contains an abundance of conclusory allegations. For purposes of these motions, the Court considers and accepts only the factual allegations that are well-pleaded. *See Lynch v. City of New York*, 952 F.3d 67, 74-76 (2d Cir. 2020).

    For ease of reference, the Court refers to Chowaiki's opening brief as "Chowaiki Br." (Dkt. #31); the Benrimon Defendants' opening brief as "Benrimon Br." (Dkt. #33); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #39); Chowaiki's reply brief as "Chowaiki Reply" (Dkt. #45); and the Benrimon Defendants' reply brief as "Benrimon Reply" (Dkt. #46). Further, the Court refers to the Benrimon Defendants' motion for Rule 11 sanctions as "Benrimon Sanctions Br." (Dkt. #36); Plaintiff's opposition to the Benrimon Defendants' motion for sanctions as "Pl. Sanctions Opp." (Dkt. #41); and the Benrimon Defendants' reply brief in support of their motion for sanctions as "Benrimon Sanctions Reply" (Dkt. #47).

2   Plaintiff also names John Does 1-10 as additional defendants "who, through their own actions, or their actions through agents, conspired with and/or participated in the pattern of racketeering acts and activity, the collection of unlawful debt, and other fraudulent and unlawful acts and activity set out [in the Complaint]." (Compl. ¶ 11).

3   A Shtar Isko, also called a "Heter Iska," is a document that is employed when one Jewish person lends money to another to avoid the Talmudic prohibition on lending money for interest. *See Madison Park Investors LLC v. 488-486 Lefferts LLC*, 2015 N.Y. Slip Op. 30178(U) (Trial Order), 2015 WL 471786, at *10 n.3 (N.Y. Sup. Ct. Feb. 5, 2015).

4   Plaintiff contends that "the common purpose of all these Racketeering Activities is not changed by the fact that Mr. Benrimon's son (Ms. Benrimon's brother, Mr. Rosen's brother-in-law), was involved in yet another art gallery, allegedly acting as a front to help the Benrimons' gallery profit from selling art which was sold to others." (Pl. Opp. 19). But it *does* matter to the Court's analysis that the Latamie Acts involved a different group of players from the ones at the heart of Plaintiff's RICO claims in this Complaint because "no RICO violation can be shown unless there is proof of the specified relationship between the racketeering acts and the RICO enterprise." *United States v. Indelicato*, 865 F.2d 1370, 1384 (2d Cir. 1989); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). While the "enterprise" and "pattern of

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 329 of 338

**Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)**

2020 WL 1974228

racketeering activity" are distinct elements of a RICO case, the existence of different players changes the mode of commission of the predicate activity.

And though not part of its analysis, the Court observes that in the proceeding brought by Marc Latamie against Benrimon Contemporary LLC, upon which Plaintiff bases his allegations, the court found that the plaintiff there "ha[d] not uncovered any evidence to support his" theory that David Benrimon was the alter ego of Benrimon Contemporary LLC. (Dkt. #34, Nikas Decl., Ex. A).

5    The Court notes that the Stipulation was filed by the Bankruptcy Trustee, not Piedmont. (*See* Bankruptcy Case, Dkt. #174).

6    Those courts that have considered the issue have concluded uniformly that a Shtar Isko does not create a legally enforceable partnership. *See Madison Park,* 2015 WL 471786, at *10 n.3 (collecting cases); *Edelkind v. Fairmont Funding, Ltd.,* 539 F. Supp. 2d 449, 454 (D. Mass. Mar. 6, 2008) (collecting cases).

7    *See Sedima,* 473 U.S. at 496 n.14, 105 S.Ct. 3275:

> [T]he definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern "*requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern."

8    Plaintiff's also contends that the Benrimon Defendants knew that Chowaiki stole the Picasso because the Provenance stated that it belonged to someone who bought the Picasso at Sotheby's in London on February 6, 2007, at Lot 152. (*See* Compl. ¶¶ 51-53; Pl. Opp. 2). While it is true that Plaintiff, rather than Chowaiki, was the purchaser of the Picasso at the Sotheby's sale, there is nothing in the Provenance that would put someone on notice of such fact. The Provenance makes no mention of Plaintiff by name; it merely states that ten years before Chowaiki's transaction with Piedmont, someone bought the work at Sotheby's. Plaintiff's further accusation that the Benrimon Defendants "deleted [the Picasso's] provenance which showed that [Plaintiff] was the artwork's owner" (Pl. Opp. 17), is entirely unfounded.

9    Plaintiff's allegations of money laundering are entirely conclusory. (*See* Compl. ¶ 16 ("The common and unifying purpose [of each RICO enterprise] was to ... launder the proceeds, if possible."); *id.* at ¶ 28 (summarily stating that "payment" for Warhol prints or painting "constitutes a violation of 18 U.S.C. § 1956 (money laundering)"); *id.* at ¶ 61 (stating that Chowaiki's deposit of the $300,000 loan payment constitutes an act of wire fraud); *id.* at ¶ 78 ("Upon information and belief and as will be disclosed in discovery, [the Benrimon Defendants] by participating in the continued sending of money or things of value to pay for *le Gueridon's* storage, and to continue fraudulently selling *le Gueridon*, without disclosing the true owner of *le Gueridon*, all in violation of wire fraud, money laundering, etc. statutes."); *id.* at ¶ 98 (describing Chowaiki's "illegal practice" of stealing artwork as money laundering violations); *id.* at ¶ 108 (describing Chowaiki's disposition of the Leger as money laundering)). His brief in opposition to the motions to dismiss does not elaborate on these conclusory assertions. (*See generally* Pl. Opp.).

10    The Court is not swayed by Plaintiff's attempt to disaggregate this single loan transaction into its component pieces in order to substantiate his claim that Piedmont and Rosen were in the business of making usurious loans. (*See* Compl. ¶¶ 85-86; Pl. Opp. 30).

11    Plaintiff argues that he need not allege multiple usurious loans made over a long period of time to state a RICO claim for usurious lending. (Pl. Opp. 26). He explains that "there is no requirement in the statute or case law that plaintiff must allege or prove multiple usurious loans, longevity, or a pattern of usurious loans to prevail on a claim that defendants 'were in the business of lending money or a thing of value at a rate usurious under State or Federal law.' " (*Id.*). Plaintiff is correct that there is nothing in the text of the RICO

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 330 of 338

Malvar Egerique v. Chowaiki, Not Reported in Fed. Supp. (2020)

2020 WL 1974228

statute that requires multiple usurious loans be alleged. But, as explained above, the case law requires a plaintiff to show that the defendants were in the business of making usurious transactions, and Plaintiff's allegations on this point do not suffice.

12   The Court recognizes that a complaint may incorporate material or a document outside of the complaint by reference, and that a court can consider such incorporated material on a Rule 12(b)(6) motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The problem here is that Plaintiff does not refer to portions of the Criminal Case docket that would support his RICO claim. *Cf. Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (finding incorporation where complaint "explicitly refer[ed] to and relie[d] upon two of the documents at issue").

13   As explained *infra* note 9, Plaintiff has failed to allege, with any specificity, how the alleged predicate acts satisfy the elements of money laundering.

14   To the extent that Plaintiff means to allege that his consignment with Chowaiki was fraudulent *ab initio*, it fails for two reasons. *First*, such a fraud is not pleaded with the specificity required by Rule 9(b). *Second*, the claim fails for want of domestic injury, as discussed *infra.*

15   In Plaintiff's brief, he states that "[a]fter termination of the three-month consignment, Mr. Chowaiki, on multiple occasions, fraudulently induced Mr. Malvar to let the works of art remain in New York, [Compl.] ¶¶ 37, 105-106." (Pl. Br. 6). But the paragraphs of Plaintiff's Complaint that he cites do not state that Chowaiki induced Plaintiff to let the artwork remain in New York, nor do they state that the consignment lasted three months. The Complaint merely states that: (i) the artwork was given to Chowaiki on consignment; (ii) at some point, Plaintiff and his brother requested its return; (iii) Chowaiki repeatedly promised to return the artwork; (iv) Chowaiki never actually returned the artwork; and (v) Chowaiki sold the Leger to a company in the United Kingdom. (*See* Compl. ¶¶ 37, 105-06).

16   Indeed, Chowaiki explicitly states that "when the Complaint is distilled to its essential facts, it is plainly evident that it ... is, in actuality the proverbial sheep of [ ] state-law conversion and replevin claims[.]" (Chowaiki Br. 1).

17   It is unclear to the Court from where the Benrimon Defendants discern the requirement that a plaintiff must plead these specific facts to allege demand and refusal.

18   Plaintiff's argument that the Benrimon Defendants did not provide him with a copy of their brief in support of their motion to dismiss is a non-starter. The Benrimon Defendants' brief in support of their motion for sanctions thoroughly describes the bases for the requested sanctions. (*See generally* Benrimon Sanctions Br.). And, further, the technical requirements of the safe harbor provision do not impose upon the Benrimon Defendants the obligation to provide Plaintiff with their brief in support of their separate motion to dismiss. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176-77 (2d Cir. 2012).

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 331 of 338

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,
v.
TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

**B. Defendants' Motion for Summary Judgment**
**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

**C. Plaintiff's Opposition Memorandum of Law**
Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 332 of 338

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 333 of 338

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*& Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

## 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 5:24-cv-00048-DNH-ML   Document 5   Filed 05/01/24   Page 335 of 338

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Case 5:24-cv-00048-DNH-ML Document 5 Filed 05/01/24 Page 336 of 338

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

Case 5:24-cv-00048-DNH-ML    Document 5    Filed 05/01/24    Page 337 of 338

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9**  Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10**  For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000)* (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.